**ORIGINAL**

1   Marcia Hofmann (SBN 250087)
    *marcia@eff.org*
2   ELECTRONIC FRONTIER FOUNDATION
    454 Shotwell Street
3   San Francisco, CA 94110
    Telephone: (415) 436-9333
4   Facsimile: (415) 436-9993

5   David L. Sobel *(pro hac vice pending)*
    *david@eff.org*
6   ELECTRONIC FRONTIER FOUNDATION
    1875 Connecticut Ave. NW
7   Suite 650
    Washington, DC  20009
8   Telephone: (202) 797-9009 x104
    Facsimile: (202) 707-9066

9
    Attorneys for Plaintiff
10  ELECTRONIC FRONTIER FOUNDATION

11
                **UNITED STATES DISTRICT COURT**            **EMC**

12
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13

14
    ELECTRONIC FRONTIER FOUNDATION           )   **C 07 5278**
15                                           )
                               Plaintiff,    )   **COMPLAINT FOR INJUNCTIVE**
16                                           )   **RELIEF**
                                             )
17              v.                           )
                                             )
18  OFFICE OF THE DIRECTOR OF NATIONAL       )
    INTELLIGENCE,                            )
19                                           )
                               Defendant.    )
20

21
        1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for

22  injunctive and other appropriate relief.  Plaintiff seeks the expedited processing and release of

23  records that Plaintiff requested from Defendant Office of the Director of National Intelligence,

24  concerning the agency's efforts to push for changes to federal surveillance law and ensure that

25  telecommunications companies are not held responsible for their role in warrantless government

26  surveillance activities.  There is no dispute that the requested records concern a matter about which

27  there is "[a]n urgency to inform the public about an actual or alleged federal government activity,"

28

and were "made by a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 1700.12(c)(2). Therefore, Plaintiff is statutorily entitled to the expedited treatment it seeks.

## PARTIES

2.    Plaintiff Electronic Frontier Foundation ("EFF") is a not-for-profit corporation established under the laws of the State of California, with offices in San Francisco, California and Washington, DC.    EFF is a donor-supported membership organization that works to inform policymakers and the general public about civil liberties issues related to technology, and to act as a defender of those liberties.    In support of its mission, EFF uses the FOIA to obtain and disseminate information concerning the activities of federal agencies.

3.    Defendant Office of the Director of National Intelligence ("ODNI") is a Department of the Executive Branch of the United States Government. ODNI is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION

4.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## VENUE AND INTRADISTRICT ASSIGNMENT

5.    Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6.    Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in this district and division, where Plaintiff maintains its principal place of business.

## FACTUAL ALLEGATIONS

**I.    The Administration's Campaign to Shield Telecommunications Companies From Liability for Their Role in Unlawful Surveillance Activity**

7.    On December 15, 2005, the *New York Times* reported:

Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to

-2-

search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.

Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 15, 2005. The following day, President Bush confirmed in a radio address that he had authorized a surveillance program to intercept international communications in which one participant was suspected of having a connection to the terrorist organization al Qaeda. President's Radio Address, Dec. 17, 2005, http://www.whitehouse.gov/news/releases/2005/12/

20051217.html.

8.    Shortly thereafter, the *New York Times* reported that the NSA's surveillance activity was far more extensive than the operation President Bush had described. According to the *Times*:

The National Security Agency has traced and analyzed large volumes of telephone and Internet communications flowing into and out of the United States as part of the eavesdropping program that President Bush approved after the Sept. 11, 2001, attacks to hunt for evidence of terrorist activity, according to current and former government officials.

The volume of information harvested from telecommunication data and voice networks, without court-approved warrants, is much larger than the White House has acknowledged, the officials said. It was collected by tapping directly into some of the American telecommunication system's main arteries, they said.

As part of the program approved by President Bush for domestic surveillance without warrants, the N.S.A. has gained the cooperation of American telecommunications companies to obtain backdoor access to streams of domestic and international communications, the officials said.

Eric Lictblau, *Spy Agency Mined Vast Data Trove*, N.Y. TIMES, Dec. 24, 2005.

9.    On February 6, 2006, *USA Today* reported, "[t]he National Security Agency has secured the cooperation of large telecommunications companies, including AT&T, MCI and Sprint, in its efforts to eavesdrop without warrants on international calls by suspected terrorists, according to seven telecommunications executives." Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006.

10.    Approximately forty-one lawsuits have been filed throughout the United States

-3-

1   seeking to hold the government and cooperating telecommunications carriers responsible for

2   violating the law and the privacy of individuals through the NSA's massive and illegal warrantless

3   spying program. An additional seven suits have arisen out of attempts by state public utility

4   commissioners and attorneys general to seek information from telecommunications carriers about

5   their involvement in warrantless surveillance activities.  These lawsuits have been consolidated and

6   are currently pending in the United States District Court for the Northern District of California.  *In*

7   *re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW).[1]

8       11.  On August 5, 2007, President Bush signed into law the Protect America Act of 2007,

9   legislation that amended the Foreign Intelligence Surveillance Act ("FISA") to expand the

10  government's power to intercept overseas communications of Americans without warrants.  Pub.

11  L. No. 110-55, 121 Stat. 552.  Among other things, the law protects telecommunications companies

12  from future legal liability for their role in certain government surveillance activity.

13      12.  In an article published the same day, the *New York Times* reported:

14      [The Protect American Act] gave the administration greater power to force
        telecommunications companies to cooperate with such spying operations. The
15      companies can now be compelled to cooperate by orders from the attorney general
        and the director of national intelligence.

16
        Democratic Congressional aides said Sunday that some telecommunications
17      company officials had told Congressional leaders that they were unhappy with that
        provision in the bill and might challenge the new law in court. The aides said the
18      telecommunications companies had told lawmakers that they would rather have a
        court-approved warrant ordering them to comply.

19
        In fact, pressure from the telecommunications companies on the Bush
20      administration has apparently played a major hidden role in the political battle over
        the surveillance issue over the past few months.

21
    James Risen, *Bush Signs Law to Widen Reach for Wiretapping*, N.Y. Times, Aug. 5, 2007. On

22
    information and belief, the assertions quoted above are substantially correct.

23
        13.  While the Protect America Act will expire in February 2008, President Bush has

24
    indicated that the Administration will push for even greater legal immunity for the

25
    telecommunications industry in the coming months:

26
        When Congress returns in September the Intelligence committees and leaders in
27      both parties will need to complete work on the comprehensive reforms requested by

28  _____
    [1] Plaintiff is Co-Lead Coordinating Counsel in this litigation.

Director [of National Intelligence Mike] McConnell, including the important issue of providing meaningful liability protection to those who are alleged to have assisted our Nation following the attacks of September 11, 2001.

Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007, *available at* http://www.whitehouse.gov/news/releases/ 2007/08/20070805.html. On information and belief, the assertions quoted above are substantially correct.

14. In an interview discussing the government's warrantless surveillance activities published by the *El Paso Times* on August 22, 2007, Director McConnell stated:

[U]nder the president's program, the terrorist surveillance program, the private sector had assisted us. Because if you're going to get access you've got to have a partner and they were being sued. Now if you play out the suits at the value they're claimed, it would bankrupt these companies. So my position was that we have to provide liability protection to these private sector entities.

Chris Roberts, *Transcript: Debate on the Foreign Intelligence Surveillance Act*, EL PASO TIMES, Aug. 22, 2007. On information and belief, the assertions quoted above are substantially correct.

15. According to a recent article published by *Newsweek*, "[t]he nation's biggest telecommunications companies, working closely with the White House, have mounted a secretive lobbying campaign to get Congress to quickly approve a measure wiping out all private lawsuits against them for assisting the U.S. intelligence community's warrantless surveillance programs." Michael Isikoff and Mark Hosenball, *The Phone Companies' Secret Lobbying Campaign*, NEWSWEEK, Sept. 20, 2007. On information and belief, the assertions quoted above are substantially correct.

## II.    Plaintiff's FOIA Requests and Request for Expedited Processing

16. In two letters sent by facsimile to ODNI and dated August 31, 2007, Plaintiff requested under the FOIA all records from April 2007 to August 31, 2007 concerning briefings, discussions, or other exchanges that Director McConnell or other ODNI officials have had concerning amendments to FISA with a.) representatives of telecommunications companies, and b.) offices of members of the Senate or House of Representatives, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities.

17. In its August 31 letters, Plaintiff also formally requested that the processing of these

1   requests be expedited because they pertain to information about which there is "[a]n urgency to

2   inform the public about an actual or alleged federal government activity," and were "made by a

3   person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R.

4   § 1700.12(c)(2).

5       18.   By two facsimiles sent September 10, 2007, ODNI acknowledged receipt of Plaintiff's

6   FOIA requests, and informed Plaintiff that its requests for expedited processing had been granted.

7       19.   Notwithstanding Defendant ODNI's purported decision to expedite the processing of

8   Plaintiff's FOIA requests, to date, the agency has neither completed the processing of Plaintiff's

9   requests, nor informed Plaintiff of an anticipated date for the completion of the processing of the

10  requests.

11      20.   Not only has ODNI failed to expedite the processing of Plaintiff's requests, it has also

12  exceeded the generally applicable twenty-day deadline for the processing of *any* FOIA request.

13      21.   Plaintiff has exhausted the applicable administrative remedies.

14      22.   Defendant ODNI has wrongfully withheld the requested records from Plaintiff.

## CAUSE OF ACTION

**Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records**

16      23.   Plaintiff repeats and realleges paragraphs 1-22.

18      24.   ODNI has wrongfully withheld agency records requested by Plaintiff by failing to

19  comply with the statutory time limit for the processing of FOIA requests.

20      25.   Plaintiff has exhausted the applicable administrative remedies with respect to ODNI's

21  wrongful withholding of the requested records.

22      26.   Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the

23  requested documents.

## REQUESTED RELIEF

25  WHEREFORE, Plaintiff prays that this Court:

26      A.     order Defendant ODNI to process immediately the requested records in their

27             entirety;

28

B.      order Defendant ODNI, upon completion of such expedited processing, to disclose

the requested records in their entirety and make copies available to Plaintiff;

C.      provide for expeditious proceedings in this action;

D.      award Plaintiff its costs and reasonable attorneys fees incurred in this action; and

E.      grant such other relief as the Court may deem just and proper.

DATED: October 17, 2007

By _____

Marcia Hofmann, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

David L. Sobel *(pro hac vice pending)*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC 20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION