David L. Sobel *(pro hac vice pending)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC 20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Kurt Opsahl (SBN 191303)
*kurt@eff.org*
Marcia Hofmann (SBN 250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x116
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br><br>Defendant. | NO. C 07-5278 EMC<br><br>**NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Courtroom: |

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     STATEMENT OF FACTS...................................................................................2

      A.      The Administration's Campaign to Shield Telecommunications
           Carriers From Liability From Their Role in Unlawful Surveillance
           Activity.....................................................................................................2

      B.      EFF's Freedom of Information Act Requests and Request for
           Expedited Processing to the Office of the Director of National
           Intelligence...............................................................................................8

III.    ARGUMENT.......................................................................................................9

      A.      This Court Has Jurisdiction to Grant the Requested Relief.....................9

      B.      EFF is Entitled to Entry of an Order for Preliminary Injunction.............10

           1.      EFF is Likely to Prevail on the Merits of Its Claim....................12

           2.      EFF Will Suffer Irreparable Injury in the Absence of the
               Requested Relief...........................................................................14

           3.      Injunctive Relief Will Not Burden Others' Interests...................17

           4.      The Public Interest Favors the Requested Relief.......................18

      C.      This Court Should Order Defendant ODNI to Process EFF's FOIA
           Requests Immediately...............................................................................18

IV.     CONCLUSION....................................................................................................22

-ii-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.2d 1004 (9th Cir. 2001) ................................................................................. 10-11

*ACLU of Northern California v. Dep't of Defense*,
   No. C 06-01698 WHA, 2006 U.S. Dist. LEXIS 36888 (N.D. Cal. May 25, 2006) ................... 15

*ACLU v. Dep't of Defense*,
   339 F. Supp. 2d 501 (S.D.N.Y. 2004) ................................................................... 19, 20

*ACLU v. Dep't of Justice*,
   321 F. Supp. 2d 24 (D.D.C. 2004) ......................................................................... 16, 19

*Aguilera v. FBI*,
   941 F. Supp. 144 (D.D.C. 1996) .................................................................................. 19

*Al-Fayed v. CIA*,
   254 F.3d 300 (D.C. Cir. 2001) .................................................................................... 10

*Arcamuzi v. Continental Air Lines, Inc.*,
   819 F.2d 935 (9th Cir. 1987) ...................................................................................... 11

*Asseo v. An Am. Grain Co.*,
   805 F.2d 23 (1st Cir. 1986) .......................................................................................... 3

*Board of Educ. v. Pico*,
   457 U.S. 853 (1982) ................................................................................................... 15

*Cherokee National of Okla. v. Babbitt*,
   117 F.3d 1489 (D.C. Cir. 1997) .................................................................................. 18

*Cleaver v. Kelley*,
   427 F. Supp. 80 (D.D.C. 1976) ................................................................................... 19

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
   473 U.S. 788 (1985) ................................................................................................... 14

*Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*
   49 F. Supp. 2d 3 (D.D.C. 1999) .................................................................................. 18

*Dep't of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................................................... 18

*Edmonds v. FBI*,
   No. 02-1294, 2002 U.S. Dist. LEXIS 26578 (D.D.C. Dec. 3, 2002) ........................................ 18

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
   No. 05-845, 2005 U.S. Dist. LEXIS 40318 (D.D.C. Nov. 16, 2005) ................................... 20-21

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,
   416 F. Supp. 2d 24 (D.D.C. 2006) .......................................................................passim

-iii-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

*Elec. Frontier Foundation v. Dep't of Justice*,
   No. 07-0656 (JDB) slip op. (D.D.C. June 15, 2007) ........................................................ 11, 21

*Flynt Distrib. Co. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984) ...................................................................................... 3

*Gerstein v. CIA*,
   No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89847 (N.D. Cal. Nov. 29, 2006) ..........15, 16, 20

*Gerstein v. CIA*,
   No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89883 (N.D. Cal. Nov. 29, 2006) ...............passim

*Idaho Watersheds Project v. Hahn*,
   307 F.3d 815 (9th Cir. 2002) ...................................................................................... 11

*In re NSA Telecommunications Records Litigation*
   (MDL Docket No. 06-1791 VRW) ................................................................................ 5

*Jacksonville Port Authr. v. Adams*,
   556 F.2d 52 (D.C. Cir. 1977) ...................................................................................... 18

*Judicial Watch, Inc. v. Dep't of Energy*,
   191 F. Supp. 2d 138 (D.D.C. 2002) .............................................................................. 20

*Kos Pharm., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004) ........................................................................................ 3

*Leadership Conference on Civil Rights v. Gonzales*,
   404 F. Supp. 2d 246 (D.D.C. 2005) .............................................................................. 16

*Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*,
   668 F.2d 276 (7th Cir. 1981). .................................................................................. 16-17

*Los Angeles Times Communications LLC v. Dep't of Labor*,
   483 F. Supp. 2d 975 (C.D. Cal. 2007) .......................................................................... 18

*Martin-Marietta Corp. v. Bendix Corp.*,
   690 F.2d 558 (6th Cir. 1982) ...................................................................................... 14

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) .................................................................................................. 16

*Nat'l Ctr. For Immigrants Rights v. INS*,
   743 F.2d 1365 (9th Cir. 1984) .................................................................................... 11

*Natural Resources Defense Council v. Dep't of Energy*,
   191 F. Supp. 2d 41 (D.D.C. 2002) ............................................................................17, 20

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................................. 14

*New.Net, Inc. v. Lavasoft*,
   356 F Supp. 2d 1071 (C.D. Cal. 2003) ............................................................................ 3

*Oglesby v. Dep't of the Army,*
   920 F.2d 57 (D.C. Cir. 1990)................................................................................. 10

*Open America v. Watergate Special Prosecution Force,*
   547 F. 2d 605 (D.C. Cir. 1976)............................................................................. 21

*Overstreet v. United Bhd. Of Carpenters & Joiners, Local Union Co. 1506,*
   409 F.3d 1199 (9th Cir. 2005) .............................................................................. 10

*Payne Enterprises, Inc. v. United States,*
   837 F.2d 486 (D.C. Cir. 1988)............................................................................. 14

*Preminger v. Principi,*
   422 F.3d 815 (9th Cir. 2005) ............................................................................... 11

*Prudential Real Estate Affiliates, Inc., v. PPR Realty, Inc.,*
   204 F.3d 867 (9th Cir. 2000) ............................................................................... 11

*Republic of the Philippines v. Marcos,*
   862 F.2d 1355 (9th Cir. 1988) (en banc) ............................................................... 3

*Rosen Entm't Sts. LP v. Eiger Vision,*
   343 F. Supp. 2d 908 (C.D. Cal. 2004) ................................................................... 3

*Sammis v. Barnhardt,*
   No. C01-3973 BZ, 2002 U.S. Dist. LEXIS 10321 (N.D. Cal. June 6, 2002)...........……18

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
   739 F.2d 1415 (9th Cir. 1984) .............................................................................. 10

*Sun Microsystems, Inc. v. Microsoft Corp.,*
   188 F.3d 1115 (9th Cir. 1999) .............................................................................. 11

*United States v. BNS, Inc.,*
   858 F.2d 456 (9th Cir. 1988) ............................................................................... 14

*Vaughn v. Rosen,*
   484 F.2d 820 (D.C. Cir. 1973).......................................................................... 1, 21

**STATUTES**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 ................................................ 1

5 U.S.C. § 552(a)(4)(B) ..........................................................................................9-10

5 U.S.C. § 552(a)(6)(A) ........................................................................................ 9, 10

5 U.S.C. § 552(a)(6)(C) ........................................................................................... 10

5 U.S.C. § 552(a)(6)(E)(i) ........................................................................................ 12

5 U.S.C. § 552(a)(6)(E)(ii)(I) ................................................................................... 18

5 U.S.C. § 552(a)(6)(E)(iii) ...........................................................................9, 12, 19

-v-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

5 U.S.C. § 552(a)(6)(E)(v) .................................................................................... 12

5 U.S.C. § 552(a)(6)(E)(v)(II) ................................................................................. 8

28 U.S.C. § 1331 ................................................................................................... 10

32 C.F.R. § 1700.12(a) .......................................................................................... 19

32 C.F.R. § 1700.12(b) ................................................................................. 12, 19-20

32 C.F.R. § 1700.12(c) .......................................................................................... 19

32 C.F.R. § 1700.12(c)(2) .................................................................................... 8, 12

Protect America Act of 2007, Pub. L. No. 110-55, 121 Stat. 552 (2007) ....................... 5

Fed. R. Civ. P. 65 ............................................................................................. 1, 19

**OTHER AUTHORITIES**

Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006 ...... 4

Eric Lichtblau, *Spy Agency Mined Vast Data Trove*, N.Y. TIMES, Dec. 24, 2005 ........................... 4

*FISA: Hearing of the H. Comm. on Select Intelligence*, 110th Cong. (Sept. 20, 2007) ................... 7

*The Foreign Intelligence Surveillance Act and the Protect America Act: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Sept. 18, 2007) ................................ 6-7

Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, S. 2248 (introduced Oct. 18, 2007) ................................................................................................ 7, 8, 15

Mark Hosenball and Michael Isikoff, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, updated Sept. 26, 2007 .......... 6

*Preserving the Rule of Law in the Fight Against Terrorism: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Oct. 2, 2007) ...................................................................... 7

President's Radio Address, Dec. 17, 2005…………………………………………………………………3-4

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 16, 2005 ...................................................................................................... 3

James Risen, *Bush Signs Law to Widen Reach for Wiretappin*g, N.Y. TIMES, Aug. 5, 2007 ............ 5

Chris Roberts, Transcript: Debate on the Foreign Intelligence Surveillance Act, EL PASO TIMES, Aug. 22, 2007 ................................................................................................... 6

RESTORE Act of 2007, H.R. 3773, 110th Cong. (introduced Oct. 9, 2007). ............................. 7

Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation, Aug. 6, 2007 ..................................................................................................... 6

Tim Starks, *Senate Panel OKs Surveillance Bill*, CQ TODAY, Oct. 18, 2007 ............................. 7

1

*Strengthening FISA: Does the Protect America Act Protect Americans' Civil Liberties and Enhance Security?: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Sept. 25, 2007) .... 7

2

U.S. Office of the Director of National Intelligence, Freedom of Information Act Report for Fiscal Year 2006, Compliance with Time Limits/Status of Pending Requests ................................ 17-18

3

4

*Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part I): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 5, 2007) .................................................................................. 6-7

5

6

*Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part II): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 18, 2007) ............................................................................ 7, 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 20, 2007, or as soon thereafter as the matter may be heard, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Electronic Frontier Foundation ("EFF") will, and hereby does, move for an order granting preliminary injunctive relief.

Pursuant to Federal Rule of Civil Procedure 65, EFF seeks to enjoin the Office of the Director of National Intelligence ("ODNI") from impeding EFF's efforts to expeditiously obtain agency records concerning a lobbying campaign to amend U.S. foreign intelligence surveillance law, particularly to hold telecommunications carriers unaccountable for their cooperation in widespread and illegal government surveillance.  EFF respectfully asks that this Court issue an order requiring Defendant to expedite the processing of two Freedom of Information Act requests submitted to the agency, to complete their processing within 10 days of the Court's order, and to serve on EFF an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 826-8 (D.C. Cir. 1973), 10 days thereafter.  This motion is based on this notice of motion, the memorandum of points and authorities in support of this motion, the declaration of Marcia Hofmann and attached exhibits in support of this motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of records held by Defendant ODNI concerning the efforts of the agency and telecommunications carriers to push for changes in U.S. foreign intelligence surveillance law, especially to ensure that such companies receive legal immunity for their role in

the government's unlawful surveillance of millions of Americans.

Defendant ODNI acknowledges that the requested information fits squarely within the narrow category for which Congress has established a right to expedited processing and, on September 10, 2007, purported to grant EFF's requests for such treatment.   Nonetheless, in violation of the FOIA and ODNI's own regulations, Defendant has failed to process EFF's requests even within the statutory time frame (20 business days) for a standard request that is *not* entitled to expedited treatment.  ODNI's failure to process the requests—or to even identify a date by which it expects to complete processing—violates the law.

An order compelling the timely processing and production of these documents is critical because the information requested is directly relevant to understanding ODNI's role in lobbying on behalf of telecommunications providers for legislation that is designed to force the dismissal of lawsuits against providers, more than 40 of which are currently pending before this Court.   While ODNI stonewalls EFF's lawful FOIA requests, Congress continues to consider the legislation demanded by the Director of National Intelligence.  EFF and the public deserve to know about contacts and connections between ODNI and telecom lobbyists before any legislation granting a get-out-of-jail-free card becomes law. Because time is at the essence of both EFF's rights and Defendant ODNI's obligations, EFF respectfully requests entry of an order compelling Defendant ODNI to process and disclose the requested records immediately.

## II.    STATEMENT OF FACTS

### A.    The Administration's Campaign to Shield Telecommunications Carriers From Liability for Their Role in Unlawful Surveillance Activity

The agency activities at the heart of this case concern ODNI's lobbying efforts to legalize and immunize a massive, well-documented surveillance program through which the United States government has unlawfully gathered information about millions of Americans with the help of the nation's major telecommunications carriers.  The first news of this surveillance program reached

-2-

the public on December 15, 2005, when the *New York Times* reported:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.
>
> Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 16, 2005, *available at* http://www.nytimes.com/2005/12/16/politics/16program.html (subscription required) (attached to the Declaration of Marcia Hofmann (hereafter "Hofmann Decl.") as Ex. A).[1] The following day, President Bush confirmed in a radio address that he had authorized a surveillance program to intercept international communications in which one participant was suspected of having a connection to the terrorist organization al-Qaeda.   President's Radio Address,    Dec.    17,    2005,    http://www.whitehouse.gov/news/releases/2005/12/20051217.html (Hofmann Decl. Ex. B).

---

[1] While newspaper accounts are hearsay, it is well established that this Court has the discretion to consider hearsay or otherwise inadmissible evidence for purposes of deciding whether to issue a preliminary injunction. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc) (allowing hearsay evidence); *accord Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial.  The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *Rosen Entm't Sts. LP v. Eiger Vision*, 343 F. Supp. 2d 908, 912 (C.D. Cal. 2004) ("District courts have discretion to consider otherwise inadmissible evidence in ruling on the merits of an application for a preliminary injunction."); *New.Net, Inc. v. Lavasoft*, 356 F Supp. 2d 1071, 1076 n.3 (C.D. Cal. 2003) ("[T]he Court may, in its discretion, accept hearsay for purposes of deciding whether to issue the preliminary injunction.")   "District courts must exercise their discretion in weighing all the attendant factors, *including the need for expedition*, to assess whether, and to what extent, affidavits or other hearsay materials are appropriate given the character and objectives of the injunctive proceeding."  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 719 (3d Cir. 2004) (quoting *Asseo v. An Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) (quotation marks omitted)) (emphasis added).

Shortly thereafter, the *New York Times* reported that the NSA's surveillance activity was far more extensive than President Bush had admitted.  According to the *Times*:

> The National Security Agency has traced and analyzed large volumes of telephone and Internet communications flowing into and out of the United States as part of the eavesdropping program that President Bush approved after the Sept. 11, 2001, attacks to hunt for evidence of terrorist activity, according to current and former government officials.

> The volume of information harvested from telecommunication data and voice networks, without court-approved warrants, is much larger than the White House has acknowledged, the officials said. It was collected by tapping directly into some of the American telecommunication system's main arteries, they said.

> As part of the program approved by President Bush for domestic surveillance without warrants, the N.S.A. has gained the cooperation of American telecommunications companies to obtain backdoor access to streams of domestic and international communications, the officials said.

Eric Lichtblau, *Spy Agency Mined Vast Data Trove*, N.Y. TIMES, Dec. 24, 2005, *available at* http://www.nytimes.com/2005/12/24/politics/24spy.html (subscription required) (Hofmann Decl. Ex. C).

The true scope of the government's surveillance operation continued to unravel in the press. On February 6, 2006, for instance, *USA Today* reported, "[t]he National Security Agency has secured the cooperation of large telecommunications companies, including AT&T, MCI and Sprint, in its efforts to eavesdrop without warrants on international calls by suspected terrorists, according to seven telecommunications executives."  Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006, *available at* http://www.usatoday.com/news/washington/2006-02-05-nsa-telecoms_x.htm (Hofmann Decl. Ex. D).

Since the Administration's surveillance program was first revealed, approximately 41 lawsuits have been filed throughout the United States seeking to hold the government and cooperating telecommunications carriers responsible for violating the law and privacy of individuals through the NSA's massive and illegal warrantless spying program. An additional seven suits have arisen from attempts by state public utility commissioners and attorneys general to

-4-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

seek information from telecommunications carriers about their involvement in warrantless surveillance activities. These lawsuits have been consolidated and are currently pending here in the United States District Court for the Northern District of California. *In re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW).[2]

On August 5, 2007, President Bush signed into law the Protect America Act of 2007, legislation that amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications of Americans without warrants.   Pub. L. No. 110-55, 121 Stat. 552.   Among other things, the law contains provisions designed to protect telecommunications companies from *future* legal liability for their role in certain government surveillance activity.

In an article published the same day, the *New York Times* reported:

[The Protect American Act] gave the administration greater power to force telecommunications companies to cooperate with such spying operations. The companies can now be compelled to cooperate by orders from the attorney general and the director of national intelligence.

Democratic Congressional aides said Sunday that some telecommunications company officials had told Congressional leaders that they were unhappy with that provision in the bill and might challenge the new law in court. The aides said the telecommunications companies had told lawmakers that they would rather have a court-approved warrant ordering them to comply.

In fact, pressure from the telecommunications companies on the Bush administration has apparently played a major hidden role in the political battle over the surveillance issue over the past few months.

James Risen, *Bush Signs Law to Widen Reach for Wiretapping*, N.Y. TIMES, Aug. 5, 2007, *available at* http://www.nytimes.com/2007/08/06/washington/06nsa.html (subscription required) (Hofmann Decl. Ex. E).

While the Protect America Act will expire in February 2008 without further congressional action, President Bush has indicated that the Administration is already pushing for more extensive

---

[2] EFF is Co-Lead Coordinating Counsel in this litigation.

legal immunity for telecommunications companies:

> When Congress returns in September the Intelligence committees and leaders in both parties will need to complete work on the comprehensive reforms requested by Director [of National Intelligence Mike] McConnell, including the important issue of providing meaningful liability protection to those who are alleged to have assisted our Nation following the attacks of September 11, 2001.

Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation, Aug. 6, 2007, *available at* http://www.whitehouse.gov/news/releases/ 2007/08/20070805.html (Hofmann Decl. Ex. F).  Similarly, in an interview discussing the government's warrantless surveillance activities published by the *El Paso Times* on August 22, 2007, Director McConnell recently stated:

> [U]nder the president's program, the terrorist surveillance program, the private sector had assisted us.  Because if you're going to get access you've got to have a partner and they were being sued.  Now if you play out the suits at the value they're claimed, it would bankrupt these companies.  So my position was that we have to provide liability protection to these private sector entities.

Chris Roberts, *Transcript: Debate on the Foreign Intelligence Surveillance Act*, EL PASO TIMES, Aug. 22, 2007, *available at* http://www.elpasotimes.com/news/ci_6685679 (Hofmann Decl. Ex. G).  Furthermore, according to an article published by *Newsweek*, "[t]he nation's biggest telecommunications companies, working closely with the White House, have mounted a secretive lobbying campaign to get Congress to quickly approve a measure wiping out all private lawsuits against them for assisting the U.S. intelligence community's warrantless surveillance programs." Mark Hosenball and Michael Isikoff, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142 (Hofmann Decl. Ex. H).

Since passing the Protect America Act, Congress has continued to mull over additional changes to FISA. *See, i.e., Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part I): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 5, 2007); *The Foreign Intelligence Surveillance Act*

-6-

*and the Protect America Act: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Sept. 18, 2007); *Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part II): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 18, 2007); *FISA: Hearing of the H. Comm. on Select Intelligence*, 110th Cong. (Sept. 20, 2007); *Strengthening FISA: Does the Protect America Act Protect Americans' Civil Liberties and Enhance Security?: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Sept. 25, 2007); *Preserving the Rule of Law in the Fight Against Terrorism: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Oct. 2, 2007).[3]

Two pieces of legislation recently introduced in Congress may imminently amend FISA again. RESTORE Act of 2007, H.R. 3773, 110th Cong. (introduced Oct. 9, 2007); Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, S. 2248, 110th Cong. (introduced Oct. 19, 2007) (Hofmann Decl. Ex. I.) The Senate bill, which was introduced and approved several days ago by the Senate Select Committee on Intelligence, purports to require dismissal of any state or federal lawsuit against a carrier for facilitation of government surveillance if the Attorney General certifies to the court that the company was assisting in certain intelligence activity authorized by the President. (Hofmann Decl. Ex. I.) "Senate Majority Leader Harry Reid, D-Nev., has targeted mid-November for floor debate on legislation overhauling FISA, according to his spokesman, Jim Manley." Tim Starks, *Senate Panel OKs Surveillance Bill*, CQ TODAY, Oct. 18, 2007, *available at* http://public.cq.com/docs/cqt/news110-000002608382.html (Hofmann Decl. Ex. J).

---

[3] The Senate Committee on the Judiciary plans to hold another hearing entitled *FISA Amendments: How to Protect Americans' Security and Privacy and Preserve the Rule of Law and Government Accountability* on October 31, 2007.

1
2

**B.      EFF's Freedom of Information Act Requests and Request for Expedited
Processing to the Office of the Director of National Intelligence**

3      In two letters sent by facsimile to Defendant ODNI and dated August 31, 2007, EFF

4 requested under the FOIA all records from April 2007 to August 31, 2007 concerning briefings,

5 discussions, or other exchanges that Director McConnell or ODNI officials have had concerning

6 amendments to FISA with a) representatives of telecommunications companies; and b) offices of

7 members of the Senate or House of Representatives, including any discussion of immunizing

8 telecommunications companies or holding them otherwise unaccountable for their role in

9 telecommunications companies or holding them otherwise unaccountable for their role in

10 government surveillance activities.   Letters from Marcia Hofmann, Staff Attorney, Electronic

11 Frontier Foundation, to Freedom of Information Act/Privacy Office, Office of the Director of

12 National Intelligence, August 31, 2007. (Hofmann Decl. Exs. K & L.)  In its August 31 letters, EFF

13 also formally requested that the processing of these requests be expedited because they seek the

14 disclosure of information about which there is "[a]n urgency to inform the public about an actual or

15 alleged Federal Government activity," and were "made by a person primarily engaged in

16 disseminating information," as provided in 5 U.S.C. § 552(a)(6)(E)(v)(II) and 32 C.F.R.

17 § 1700.12(c)(2).  *Id.*

18

19      In two facsimiles dated September 10, 2007, ODNI acknowledged that it had received

20 EFF's FOIA requests and informed EFF that its request for expedited processing had been granted.

21 Letters from John F. Hackett, Chief, Information Management Office, Office of the Director of

22 National Intelligence, to Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, Sept.

23 10, 2007. (Hofmann Decl. Exs. M & N.)  Notwithstanding Defendant ODNI's purported decision

24 to expedite the processing of EFF's FOIA requests, to date, the agency has neither completed the

25 processing of EFF's requests, nor informed EFF of an anticipated date for the completion of the

26

27

28

processing of the requests.[4] (Hofmann Decl. ¶ 16.)   Not only has ODNI failed to expedite the

processing of EFF's requests, it has also exceeded the generally applicable twenty-day deadline for

the processing of any FOIA request.  See 5 U.S.C. § 552(a)(6)(A).

## III.    ARGUMENT

The issue raised in this motion is simple and straightforward.   Although Defendant ODNI

has acknowledged EFF's legal entitlement to expedited processing of its August 31 FOIA requests,

the agency has failed to comply with not only the FOIA's provisions for expedited processing, but

also the statute's mandated time frame of 20 working days for responding to standard, non-

expedited requests. The agency's failure to process the requests is a continuing impediment to

EFF's—and the public's—ability to timely examine the scope of the lobbying campaign to secure

legal immunity for telecommunications carriers for their cooperation with the government's

warrantless surveillance operations.  The agency's action is unlawful and must be enjoined.

### A.    The Court has Jurisdiction to Grant the Requested Relief

The Court's jurisdiction to consider this matter and grant appropriate relief is clear.   The

FOIA provides, in pertinent part:

> Agency action to deny or affirm denial of a request for expedited processing . . .
> shall be subject to judicial review under paragraph (4), except that the judicial
> review shall be based on the record before the agency at the time of the
> determination.

5 U.S.C. § 552(a)(6)(E)(iii).  The referenced judicial review provision states, in pertinent part:

> On complaint, the district court of the United States in the district in which the
> complainant resides, or has his principal place of business . . . has jurisdiction to
> enjoin the agency from withholding agency records and to order the production of
> any agency records improperly withheld from the complainant. In such a case the
> court shall determine the matter de novo . . . .

---

[4] After the introduction and mark-up of S. 2248, discussed in Section I *supra*, EFF contacted
counsel for ODNI on October 22, 25, and 26, 2007, to suggest that the parties negotiate a mutually
agreeable schedule for the processing of EFF's FOIA requests.  (Hofmann Decl. ¶ 17.)  As of the
filing of this motion, ODNI has not responded to EFF's overtures.  *Id.*

5 U.S.C. § 552(a)(4)(B).  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).[5]

Here, notwithstanding ODNI's decision to "expedite" EFF's requests, the agency has failed to respond within the generally applicable 20-working-day time limit established by 5 U.S.C. § 552(a)(6)(A).  EFF's claim is ripe for adjudication because EFF has exhausted all applicable administrative remedies.  The FOIA provides:

> [a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C).  *See also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("If the agency has not responded within the statutory time limits, then . . . the requester may bring suit.").  As the FOIA provides, in reviewing ODNI's actions, "the court shall determine the matter de novo."  5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed*, 254 F.3d at 308 ("[A] district court must review de novo an agency's denial of a request for expedition under FOIA.").

## B.  EFF is Entitled to Entry of an Order for Preliminary Injunction

A preliminary injunction is a device for "preventing the irreparable loss of rights before judgment."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citation omitted).  In considering this motion, the Court will consider "four equitable factors: the movant's likelihood of success on the merits; the possibility of irreparable injury to the moving party; the extent to which the balance of hardships favors each party; and whether the public interest will be advanced by granting the preliminary relief."  *Overstreet v. United Bhd. Of Carpenters & Joiners, Local Union Co.*, 1506, 409 F.3d 1199, 1207 (9th Cir. 2005); *Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89883, at *13 (N.D. Cal. Nov. 29, 2006)

---

[5] EFF's principal place of business is located in San Francisco, California. (Hofmann Decl. ¶ 2.) This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.").

("*Gerstein v. CIA I*"). As it weighs these factors, the Court must find "either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [the plaintiff's] favor." *Preminger v. Principi*, 422 F.3d 815, 823 (9th Cir. 2005) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.2d 1004, 1013 (9th Cir. 2001). These are not two separate, distinct approaches, but rather "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Prudential Real Estate Affiliates, Inc., v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000), citing *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). Furthermore, in deciding whether to grant the injunction, "the court must balance the equities between the parties and give due regard to the public interest." *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833 (9th Cir. 2002).

In determining whether a preliminary injunction is proper, "[t]he district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Id.* at 1423. Moreover, "the greater the relative hardship to the moving party, the less probably of success must be shown." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999), quoting *Nat'l Ctr. For Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984).

Though preliminary injunction is not the norm in FOIA cases, this Court has concluded that such relief is appropriate where a requester establishes that its requests are entitled to expedited processing under the statute, and the government fails to process them in a timely manner.[6] *Gerstein v. CIA I*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89883, at **12-13. The

---

[6] As one judge recently noted, "where a plaintiff contends in good faith that an agency has failed to expedite processing of a FOIA request in accordance with statute or regulation . . . the availability of an order that effectively is an injunction, preliminary or otherwise, should not be foreclosed." *Elec. Frontier Foundation v. Dep't of Justice*, No. 07-0656 (JDB), slip op. at 4 (D.D.C. June 15, 2007) (Hofmann Decl. Ex. O).

preliminary injunction factors in this case firmly establish EFF's entitlement to injunctive relief.

### 1.   EFF is Likely to Prevail on the Merits of Its Claim

Given EFF's uncontested entitlement to the expedited processing of its requests under the explicit terms of the FOIA statute, EFF's likelihood of prevailing on the merits could hardly be stronger.   In assessing EFF's likelihood of success, the Court must consider one discrete issue: whether Defendant ODNI has processed EFF's FOIA requests in an expedited manner within the time frame provided in the FOIA and ODNI regulations.   EFF is entitled to prevail on this issue, since the agency has conceded that EFF's requests are entitled to expedited processing, and yet has violated the FOIA and ODNI regulations by failing to satisfy the processing time permitted for even a standard, non-expedited request.

The FOIA clearly establishes the circumstances in which ODNI must provide expedited processing of requests.   According to the statute, "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need and . . . in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" includes, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v).

Pursuant to the statutory directive, ODNI has issued regulations establishing two grounds for expedited processing, only one of which is relevant here.   That provision states that "requests . . . will be taken out of order and given expedited processing treatment whenever it is determined that they involve . . . [a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person primarily engaged in disseminating information."   32 C.F.R. § 1700.12(c)(2).  If the agency grants expedited treatment, it is obligated to process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); 32 C.F.R. § 1700.12(b).  The statute's "phrase

'as soon as practicable,' in the context of a provision of FOIA allowing for *expedited* processing, cannot be interpreted to impose a lower burden on the agency than would otherwise exist." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 24, 39 (D.D.C. 2006) (hereafter "*Elec. Privacy Info. Ctr. v. Dep't of Justice I*") (emphasis in original). Therefore, an agency is presumed to have violated the "expedited processing" provisions of the FOIA when it fails to comply with the generally applicable 20-working-day deadline imposed by the FOIA for processing a non-expedited request. *Id*. Once the 20-working-day deadline has passed, the agency bears the burden of proving that it is in fact processing the expedited request "as soon as practicable." *Id*. at n.8.

Here, EFF requested expedited processing of its FOIA requests because they concern a lobbying campaign to amend federal surveillance law, which is a matter about which there is "an urgency to inform the public about actual or alleged Federal Government activity." (Hofmann Decl. Exs. K & L.) Furthermore, the requests were made on behalf of EFF, which is a requester "primarily engaged in disseminating information." *Id*. Defendant ODNI determined that EFF's requests were indeed entitled to expedited processing under this standard. (Hofmann Decl. Exs. M & N) ("[Y]our request for expedited processing is granted and your request will be processed as soon as practicable."). There is no indication in the record, however, that ODNI has done anything other than pay lip service to EFF's entitlement to expedition. As this Court has noted, "in the absence of relevant evidence as to the reasons for their delay in processing [a plaintiff's FOIA] requests, [the government] ha[s] *no* likelihood of success on the merits." *Gerstein v. CIA I*, 2006 U.S. Dist. LEXIS 89883 at *14 (emphasis added).

Although it is undisputed that EFF's request are legally entitled to expedited treatment, ODNI has failed to comply with the 20-day time frame required by the FOIA and its own regulations for issuing a determination on even a non-expedited FOIA request. The agency has not (and cannot) offer adequate justification for the delay, and has ignored three attempts by EFF to

negotiate an agreement to process the requests in a timely manner. EFF is entitled to the immediate

processing and release of the requested records, and asks that the Court issue an order to secure this

right.

### 2. EFF Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief

Unless ODNI's unlawful failure to comply with its obligation to expedite the processing of

EFF's FOIA requests is immediately enjoined, EFF will suffer irreparable harm. The very nature of

the right that EFF seeks to vindicate in this action—expedited processing—depends upon

timeliness, because "stale information is of little value." *Payne Enterprises, Inc. v. United States*,

837 F.2d 486, 494 (D.C. Cir. 1988); *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. 2d

at 40-41. Courts have recognized that the requisite injury is present, and preliminary injunctive

relief is appropriate, in cases expedited FOIA processing is at issue and where time thus is of the

essence, because delay "constitutes a cognizable harm." *Gerstein v. CIA I*, 2006 U.S. Dist. LEXIS

89983 at * 15, quoting *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. 2d at 40; *see also*,

*e.g.*, *United States v. BNS, Inc*., 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v.

Bendix Corp*., 690 F.2d 558, 568 (6th Cir. 1982). Under the statutory scheme Congress established

in the FOIA, it is clear that timing is a critical component to expedited processing, and unless

Defendant ODNI is ordered to process EFF's requests immediately, EFF's right to expedition

under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established statutory right, any further delay in the

processing of EFF's FOIA requests will irreparably harm EFF's ability, and that of the public, to

obtain in a timely fashion information vital to the current and ongoing debate surrounding whether

Congress should amend FISA, particularly to render telecommunications carriers immune from

legal liability for their complicity in the government's warrantless surveillance program.

(Hofmann Decl. ¶¶ 18-20.) The Supreme Court has long recognized our democracy's interest in

-14-

"the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (internal quotation marks omitted); *see also Board of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("[T]he Constitution presupposes the existence of an informed citizenry prepared to participate in governmental affairs.").

Furthermore, the courts have recognized that providing information for legislative debate is a compelling public interest. This recognized interest clearly would be compromised by further delay in the disclosure EFF seeks. First, the question of whether and how FISA should be modified, and whether telecommunications companies should receive some governmental protection from liability for their cooperation in unlawful government surveillance, has already garnered extraordinary media interest.  (*See*, *e.g.*, Hofmann Decl. Exs. E, G, H & J.)  As this Court has recognized, there is a "significant recognized interest, beyond the public's mere right to know, in quickly disseminating breaking, general-interest news." *Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89847, at *22 (N.D. Cal. Nov. 29, 2006) ("*Gerstein v. CIA II*") (internal quotation marks omitted), citing *ACLU of Northern California v. Dep't of Defense*, No. C 06-01698 WHA, 2006 U.S. Dist. LEXIS 36888, at *8 (N.D. Cal. May 25, 2006).

Second, since EFF submitted its FOIA requests to ODNI on August 31, the issues about which EFF seeks information have become only more vital to the American public.  Amendments to the Foreign Intelligence Surveillance Act have been discussed in several hearings before congressional committees. In such circumstances, "the public interest is particularly well-served by the timely release of the requested documents." *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. 2d at 42.  Moreover, a legislative proposal currently pending in the Senate would provide retroactive protection to telecommunications carriers involved in the government's warrantless

surveillance program, which has placed the decision of whether to extend immunity to the carriers squarely before Congress.  (Hofmann Decl. Ex. I.)  This Court and others have determined that the existence of pending legislation related to the subject of a FOIA request weighs in favor of a grant of expedited processing. *Gerstein v. CIA II*, 2006 U.S. Dist. LEXIS 89847, at *20 (granting expedited processing where this Court noted that "there is a significant recognized interest in enhancing public debate on potential legislative action"); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 31 (D.D.C. 2004).

If there is to be a meaningful public debate on the issue of retroactive protection for telecommunications companies, however, the examination "cannot be based solely upon information that the Administration voluntarily chooses to disseminate." *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. 2d at 41 n.9.  Indeed, the public oversight mechanism provided by the FOIA is central to open and democratic debate on critical policy issues such as telecommunications industry's lobbying campaign and ODNI's role in it.  As the Supreme Court has observed, the Act is "a means for citizens to know what the Government is up to.  This phrase should not be dismissed as a convenient formalism.  *It defines a structural necessity in a real democracy.*" *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (emphasis added; citation and internal quotation marks omitted).  Moreover, "[n]ot only is public awareness a necessity, but so too is *timely* public awareness." *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. 2d at 40 (emphasis in original).

It is clear that the information EFF seeks must be disclosed expeditiously if it is to contribute to the public debate on amending foreign intelligence surveillance law, particularly on the issue of telecommunications carrier immunity. Because time is of the essence in this matter, EFF will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant

-16-

effective relief," and before "all opportunity to grant the requested relief [is] foreclosed." *Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).[7]

### 3.    Injunctive Relief Will Not Burden Others' Interests

Defendant ODNI cannot be "burdened" by a requirement that it merely comply with the law. The immediate relief EFF seeks will require nothing more of the government than what federal law already mandates: the expedited processing of EFF's FOIA requests, which ODNI does not dispute are entitled to such treatment.  Furthermore, the relief EFF seeks will not burden the interests of other parties who have submitted FOIA requests to ODNI in any manner beyond that foreseen by Congress.  In providing for expedited processing of qualifying requests, Congress intended that such requests would take precedence over those that do not qualify for such treatment. As such, expedited processing here should not be unduly burdensome for any party, since Defendant ODNI carries a relatively small FOIA caseload, and handles few, if any, requests that require expedited processing.  In fact, the most recently published ODNI statistics on FOIA processing shows that the agency received only 44 requests in fiscal year 2006, none of which was afforded expedited processing.  U.S. Office of the Director of National Intelligence, Freedom of Information Act Report for Fiscal Year 2006, Compliance with Time Limits/Status of Pending Requests, http://www.odni.gov/ODNI_FY06_Annual_FOIA.pdf (Hofmann Decl. Ex. P).

### 4.    The Public Interest Favors the Requested Relief

The final factor in the preliminary injunction analysis also weighs in favor of the issuance of the order EFF seeks in this case.  The courts have long recognized that "there is an overriding

---

[7]  As one court has recognized, delay in the processing of FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events."  *Natural Resources Defense Council v. Dep't of Energy,* 191 F. Supp. 2d 41, 43 (D.D.C. 2002) *("NRDC")* (granting motion for release of documents).

public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authr .v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. 2d at 42.  Similarly, it is "axiomatic that an agency is required to follow its own regulations."  *Edmonds v. FBI*, No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) (internal quotation marks omitted)).  Such adherence is all that EFF seeks here.

The public interest will also be served by the expedited release of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989); *Sammis v. Barnhardt*, No. C01-3973 BZ, 2002 U.S. Dist. LEXIS 10321, at **3-4 (N.D. Cal. June 6, 2002); *Los Angeles Times Communications LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 981 (C.D. Cal. 2007).  The public interest weighs in favor of a preliminary injunction because "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities.  *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999).  For these reasons, the public interest favors the issuance of an order directing Defendant ODNI to immediately process and release the requested information.

### C.    The Court Should Order Defendant ODNI to Process EFF's FOIA Requests Immediately

It is well established that preliminary injunctive relief is appropriate when, as in this case, an agency has failed to act upon a well-founded request for expedited processing. *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. at 35 n.4 ("the court may use its equitable power to prevent agency delay, even when exercise of such authority is preliminary in nature.") Congress expressly required agencies to make determinations on requests for expedited processing within 10 calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and provided for immediate judicial review of

-18-

adverse determinations, 5 U.S.C. § 552(a)(6)(E)(iii), demonstrating an intent that the courts should

act quickly to vindicate the right to expedition.  *See*, *e.g.*, *ACLU v. Dep't of Justice*, 321 F. Supp.

2d at 28-29 (complete exhaustion of administrative remedies not a prerequisite to judicial review of

agency expedition decisions).  Congress's mandate that disputes concerning expedited processing

should be quickly resolved would be frustrated if aggrieved requesters were required to remain idle

for 20 days after initiating suit before moving for partial summary judgment.  Fed. R. Civ. P. 56(a).

As such, claims involving entitlement to expedited processing are appropriately addressed through

motions for preliminary relief. *Elec. Privacy Info. Ctr. v. Dep't of Justice I*, 416 F. Supp. at 35.  *See*

*also Aguilera v. FBI*, 941 F. Supp. 144, 152-153 (D.D.C. 1996) (granting preliminary injunction

FOIA lawsuit for expedited processing); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976)

(same); *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) (same).

The appropriate form of relief is no more than ordering the agency to follow the applicable

ODNI regulations that dictate the manner in which expedited FOIA requests must be processed.

The regulations provide that ODNI generally processes requests "in the order received on a strictly

'first-in, first-out' basis," 32 C.F.R. § 1700.12(a), but that requests "will be taken out of order and

given expedited processing treatment whenever it is determined that they [meet the criteria for

expedited processing]."  *Id.* § 1700.12(c).  "If a request for expedited treatment is granted, the

request shall be given priority and shall be processed as soon as practicable."  *Id.* § 1700.12(b).

Defendant ODNI concedes that EFF's request qualifies for expedited treatment, and so there is no

dispute that EFF's request must be processed as soon as practicable. Therefore, the Court should

order Defendant ODNI to complete the processing of EFF's FOIA requests immediately.

In several recent cases, this Court and others have imposed specific processing deadlines on

agencies, requiring the prompt delivery of non-exempt records to FOIA requesters.  For example,

in both *Gerstein v. CIA I & II*, this Court ordered the defendant federal agencies to process and

produce all non-exempt records responsive to this plaintiff's FOIA request within 30 days of the Court's orders. 2006 U.S. Dist. LEXIS 89883, at * 16; 2006 U.S. Dist. LEXIS 89847, at * 27. Similarly, in *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002), the District Court for the District of Columbia ordered the Commerce Department and the Transportation Department to process, respectively, 9000 and 6000 pages of material; to complete the processing within 60 days; and to provide the requester with a Vaughn index within 72 days. *Id*. at 141. It is worth noting that the FOIA requests at issue in that case were not claimed to be entitled to expedited processing. Similarly, in *NRDC*, the same court ordered the Energy Department to process 7500 pages of material; to complete the processing of the "vast majority" of the material within 32 days; to complete all processing within 48 days; and to provide the requester with a *Vaughn* index within 63 days. 191 F. Supp. 2d at 43-44. Again, the FOIA request in *NRDC*, unlike the requests at issue here, had not been granted expedited treatment.

In *ACLU v. Dep't of Defense*, a case involving an expedited request, the District Court for the Southern District of New York ordered a variety of agencies to "produce or identify all responsive documents," and to provide the requesters with a *Vaughn* index, within 30 days. 339 F. Supp. 2d at 505. Furthermore, in *Elec. Privacy Info. Ctr. v. Dep't of Justice*, a court ordered the FBI to "complete the processing of 1500 pages every 15 calendar days, and provide the plaintiff all responsive non-exempt pages contained therein, until processing is complete," after the agency had granted a request for expedited processing but failed to produce any responsive records. Civ. No. 05-845, 2005 U.S. Dist. LEXIS 40318, at **5-6 (D.D.C. Nov. 16, 2005) ("*Elec. Privacy Info. Ctr. v. Dep't of Justice II*. Most recently, in a case involving a request submitted by EFF, a court ordered the FBI to process 2500 pages every 30 days where the Bureau conceded that EFF was entitled to expedited processing of a request, but failed to process the responsive documents quickly. *Elec. Frontier Foundation v. Dep't of Justice*, No. 07-0656 (JDB) (Hofmann Decl. Ex. O

1    at 5).

2         Recognizing the extraordinary public interest in the records at issue here, and in order to

3    facilitate the informed participation of EFF, and the American people, in the current and ongoing

4

5    debate over whether FISA should be amended and telecommunications companies should be held

6    unaccountable for their role in the government's unlawful surveillance operations, EFF respectfully

7    requests the Court to direct Defendant ODNI to complete the processing of EFF's requests and

8    produce or identify all responsive records within 10 days of the issuance of its order.  The Court

9    should further order Defendant ODNI to serve on EFF an index pursuant to *Vaughn v. Rosen* 10

10   days later.[8]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [8] Judicial resolution of the expedited processing issue would not resolve all issues raised in the
     complaint.  Once the question of processing time is resolved, the Court would retain jurisdiction to
27   review the completeness and propriety of ODNI's substantive determination of EFF's FOIA
     requests.  *See Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605 (D.C. Cir.
28   1976).

-21-

1    **IV.    CONCLUSION**

2         For the foregoing reasons, EFF's motion for a preliminary injunction should be granted.

3

4    DATED:  October 29, 2007

5                                    By _____/s/_____

6                                    David L. Sobel (*pro hac vice pending*)
                                     ELECTRONIC FRONTIER FOUNDATION
                                     1875 Connecticut Ave. NW
7                                    Suite 650
                                     Washington, DC  20009
8                                    Telephone: (202) 797-9009 x104
                                     Facsimile: (202) 707-9066

9
                                     Kurt Opsahl, Esq.
10                                   Marcia Hofmann, Esq.
                                     ELECTRONIC FRONTIER FOUNDATION
11                                   454 Shotwell Street
                                     San Francisco, CA  94110
12                                   Telephone:  (415) 436-9333
                                     Facsimile:  (415) 436-9993
13
                                     Attorneys for Plaintiff
14                                   ELECTRONIC FRONTIER FOUNDATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on October 29, 2007, I electronically filed the foregoing PLAINTIFFS

3    NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM

4    IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION with the Clerk of

5    the Court using the CM/ECF system which will send e-mail notification of such filing, and I

6    hereby certify that I will mail the foregoing document or paper on October 29, 2007, via express

7    delivery service for guaranteed delivery on the next business day to the following non-CM/ECF

8    participant:

9    Andrew I. Warden
     Trial Attorney
10   U.S. Department of Justice
     Civil Division, Federal Programs Branch
11   20 Massachusetts Ave., NW, Room 6120
     Washington, DC 20530

12

13

14                                    By _____/s/_____
                                          Marcia Hofmann (SBN 250087)
15                                        ELECTRONIC FRONTIER FOUNDATION
                                          454 Shotwell Street
16                                        San Francisco, CA 94110
                                          Telephone:    (415) 436-9333 x116
17                                        Facsimile:     (415) 436-9993
                                          marcia@eff.org
18

19

20

21

22

23

24

25

26

27

28