# EXHIBIT I

Calendar No. _____

110TH CONGRESS
1ST SESSION

# S. _____

To amend the Foreign Intelligence Surveillance Act of 1978, to modernize
and streamline the provisions of that Act, and for other purposes.

_____

## IN THE SENATE OF THE UNITED STATES

_____

Mr. ROCKEFELLER from the Select Committee on Intelligence reported the
following original bill; which was read twice and placed on the calendar

_____

# A BILL

To amend the Foreign Intelligence Surveillance Act of 1978,
to modernize and streamline the provisions of that Act,
and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

4    (a) SHORT TITLE.—This Act may be cited as the

5    ''Foreign Intelligence Surveillance Act of 1978 Amend-

6    ments Act of 2007'' or the ''FISA Amendments Act of

7    2007''.

2

1    (b) TABLE OF CONTENTS.—The table of contents for

2 this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—FOREIGN INTELLIGENCE SURVEILLANCE

Sec. 101. Targeting the communications of certain persons outside the United
        States.
Sec. 102. Statement of exclusive means by which electronic surveillance and
        interception of domestic communications may be conducted.
Sec. 103. Submittal to Congress of certain court orders under the Foreign In-
        telligence Surveillance Act of 1978.
Sec. 104. Applications for court orders.
Sec. 105. Issuance of an order.
Sec. 106. Use of information.
Sec. 107. Amendments for physical searches.
Sec. 108. Amendments for emergency pen registers and trap and trace devices.
Sec. 109. Foreign Intelligence Surveillance Court.
Sec. 110. Technical and conforming amendments.

TITLE II—PROTECTIONS FOR ELECTRONIC COMMUNICATION
SERVICE PROVIDERS

Sec. 201. Definitions.
Sec. 202. Limitations on civil actions for electronic communication service pro-
        viders.
Sec. 203. Procedures for implementing statutory defenses under the Foreign
        Intelligence Surveillance Act of 1978.
Sec. 204. Preemption of State investigations.
Sec. 205. Technical amendments.

TITLE III—OTHER PROVISIONS

Sec. 301. Severability.
Sec. 302. Effective date; repeal; transition procedures.

3    # TITLE I—FOREIGN

4    # INTELLIGENCE SURVEILLANCE

5 **SEC. 101. TARGETING THE COMMUNICATIONS OF CERTAIN**

6              **PERSONS OUTSIDE THE UNITED STATES.**

7    (a) IN GENERAL.—The Foreign Intelligence Surveil-

8 lance Act of 1978 (50 U.S.C. 1801 et seq.) is amended—

9        (1) by striking title VII; and

10        (2) by adding after title VI the following new

11    title:

3

# "TITLE VII—ADDITIONAL PROCE- DURES FOR TARGETING COM- MUNICATIONS OF CERTAIN PERSONS OUTSIDE THE UNITED STATES

**"SEC. 701. LIMITATION ON DEFINITION OF ELECTRONIC SURVEILLANCE.**

"Nothing in the definition of electronic surveillance under section 101(f) shall be construed to encompass surveillance that is targeted in accordance with this title at a person reasonably believed to be located outside the United States.

**"SEC. 702. DEFINITIONS.**

"(a) IN GENERAL.—The terms 'agent of a foreign power', 'Attorney General', 'contents', 'electronic surveillance', 'foreign intelligence information', 'foreign power', 'minimization procedures', 'person', 'United States', and 'United States person' shall have the meanings given such terms in section 101, except as specifically provided in this title.

"(b) ADDITIONAL DEFINITIONS.—

"(1) CONGRESSIONAL INTELLIGENCE COMMIT- TEES.—The term 'congressional intelligence committees' means—

4

1          "(A) the Select Committee on Intelligence

2      of the Senate; and

3          "(B) the Permanent Select Committee on

4      Intelligence of the House of Representatives.

5      "(2) FOREIGN INTELLIGENCE SURVEILLANCE

6  COURT; COURT.—The terms 'Foreign Intelligence

7  Surveillance Court' and 'Court' mean the court es-

8  tablished by section 103(a).

9      "(3) FOREIGN INTELLIGENCE SURVEILLANCE

10 COURT OF REVIEW; COURT OF REVIEW.—The terms

11 'Foreign Intelligence Surveillance Court of Review'

12 and 'Court of Review' mean the court established by

13 section 103(b).

14     "(4) ELECTRONIC COMMUNICATION SERVICE

15 PROVIDER.—The term 'electronic communication

16 service provider' means—

17         "(A) a telecommunications carrier, as that

18      term is defined in section 3 of the Communica-

19      tions Act of 1934 (47 U.S.C. 153);

20         "(B) a provider of electronic communica-

21      tions service, as that term is defined in section

22      2510 of title 18, United States Code;

23         "(C) a provider of a remote computing

24      service, as that term is defined in section 2711

25      of title 18, United States Code;

5

1          ''(D) any other communication service pro-
2      vider who has access to wire or electronic com-
3      munications either as such communications are
4      transmitted  or  as  such  communications  are
5      stored; or
6          ''(E) an officer, employee, or agent of an
7      entity described in subparagraph (A), (B), (C),
8      or (D).
9      ''(5) ELEMENT OF THE INTELLIGENCE COMMU-
10     NITY.—The term 'element of the intelligence com-
11     munity' means an element of the intelligence com-
12     munity specified in or designated under section 3(4)
13     of the National Security Act of 1947 (50 U.S.C.
14     401a(4)).

**''SEC. 703. PROCEDURES FOR ACQUIRING THE COMMU-**
15
**NICATIONS OF CERTAIN PERSONS OUTSIDE**
16
**THE UNITED STATES.**
17

18     ''(a) AUTHORIZATION.—Notwithstanding any other
19 law, the Attorney General and the Director of National
20 Intelligence may authorize jointly, for periods of up to 1
21 year, the targeting of persons reasonably believed to be
22 located outside the United States to acquire foreign intel-
23 ligence information.
24     ''(b) LIMITATIONS.—An acquisition authorized under
25 subsection (a)—

6

1  "(1) may not intentionally target any person

2  known at the time of acquisition to be located in the

3  United States;

4  "(2) may not intentionally target a person rea-

5  sonably believed to be outside the United States if

6  the purpose of such acquisition is to target for sur-

7  veillance a particular, known person reasonably be-

8  lieved to be in the United States, except in accord-

9  ance with title I; and

10  "(3) shall be conducted in a manner consistent

11  with the fourth amendment to the Constitution of

12  the United States.

13  "(c) UNITED STATES PERSONS LOCATED OUTSIDE

14 THE UNITED STATES.—

15  "(1) ACQUISITION INSIDE THE UNITED STATES

16  OF UNITED STATES PERSONS OUTSIDE THE UNITED

17  STATES.—An acquisition authorized by subsection

18  (a) that occurs inside the United States may not

19  target a United States person except in accordance

20  with the provisions of title I.

21  "(2) ACQUISITION OUTSIDE THE UNITED

22  STATES OF UNITED STATES PERSONS OUTSIDE THE

23  UNITED STATES.—An acquisition by an electronic,

24  mechanical, or other surveillance device outside the

25  United States may not intentionally target the con-

7

1    tents of a wire or radio communication sent by or
2    intended to be received by a United States person
3    who is reasonably believed to be located outside the
4    United States under circumstances in which a per-
5    son has reasonable expectation of privacy and a war-
6    rant would be required for law enforcement purposes
7    if the technique were used inside the United States
8    unless—

9            "(A) the Attorney General or the Attorney
10        General's designee submits an application to
11        the Foreign Intelligence Surveillance Court that
12        includes a statement of the facts and cir-
13        cumstances relied upon by the applicant to jus-
14        tify the Attorney General's belief that the tar-
15        get of the acquisition is a foreign power or an
16        agent of a foreign power; and

17            "(B) the Foreign Intelligence Surveillance
18        Court—

19                "(i) finds on the basis of the facts
20            submitted by the applicant there is prob-
21            able cause to believe that the target of the
22            electronic surveillance is a foreign power or
23            an agent of a foreign power; and

8

1          "(ii) issues an ex parte order as re-
2       quested or as modified approving the ac-
3       quisition.
4       "(3) PROCEDURES.—
5          "(A) SUBMITTAL TO FOREIGN INTEL-
6       LIGENCE SURVEILLANCE COURT.—Not later
7       than 30 days after the date of the enactment of
8       this title, the Attorney General shall submit to
9       the Foreign Intelligence Surveillance Court the
10      procedures to be utilized in determining wheth-
11      er a target reasonably believed to be outside the
12      United States is a United States person.
13         "(B) APPROVAL BY FOREIGN INTEL-
14      LIGENCE SURVEILLANCE COURT.—The proce-
15      dures submitted under subparagraph (A) shall
16      be utilized as described in that subparagraph
17      only upon the approval of the Foreign Intel-
18      ligence Surveillance Court.
19         "(C) UTILIZATION IN TARGETING.—Any
20      targeting of persons authorized by subsection
21      (a) shall utilize the procedures submitted under
22      subparagraph (A) as approved by the Foreign
23      Intelligence Surveillance Court under subpara-
24      graph (B).

9

1    "(d) CONDUCT OF ACQUISITION.—An acquisition au-

2    thorized under subsection (a) may be conducted only in

3    accordance with—

4        "(1) a certification made by the Attorney Gen-

5    eral and the Director of National Intelligence pursu-

6    ant to subsection (g); and

7        "(2) the targeting and minimization procedures

8    required pursuant to subsections (e) and (f).

9    "(e) TARGETING PROCEDURES.—

10        "(1) REQUIREMENT TO ADOPT.—The Attorney

11    General, in consultation with the Director of Na-

12    tional Intelligence, shall adopt targeting procedures

13    that are reasonably designed to ensure that any ac-

14    quisition authorized under subsection (a) is limited

15    to targeting persons reasonably believed to be lo-

16    cated outside the United States.

17        "(2) JUDICIAL REVIEW.—The procedures re-

18    ferred to in paragraph (1) shall be subject to judicial

19    review pursuant to subsection (i).

20    "(f) MINIMIZATION PROCEDURES.—

21        "(1) REQUIREMENT TO ADOPT.—The Attorney

22    General, in consultation with the Director of Na-

23    tional Intelligence, shall adopt, consistent with the

24    requirements of section 101(h), minimization proce-

10

1    dures for acquisitions authorized under subsection

2    (a).

3        "(2) JUDICIAL REVIEW.—The minimization

4    procedures required by this subsection shall be sub-

5    ject to judicial review pursuant to subsection (i).

6    "(g) CERTIFICATION.—

7        "(1) IN GENERAL.—

8            "(A) REQUIREMENT.—Subject to subpara-

9        graph (B), prior to the initiation of an acquisi-

10       tion authorized under subsection (a), the Attor-

11       ney General and the Director of National Intel-

12       ligence shall provide, under oath, a written cer-

13       tification, as described in this subsection.

14           "(B) EXCEPTION.—If the Attorney Gen-

15       eral and the Director of National Intelligence

16       determine that immediate action by the Govern-

17       ment is required and time does not permit the

18       preparation of a certification under this sub-

19       section prior to the initiation of an acquisition,

20       the Attorney General and the Director of Na-

21       tional Intelligence shall prepare such certifi-

22       cation, including such determination, as soon as

23       possible but in no event more than 168 hours

24       after such determination is made.

11

1          "(2) REQUIREMENTS.—A certification made

2      under this subsection shall—

3              "(A) attest that—

4                  "(i) there are reasonable procedures

5              in place for determining that the acquisi-

6              tion authorized under subsection (a) is tar-

7              geted at persons reasonably believed to be

8              located outside the United States and that

9              such procedures have been approved by, or

10             will promptly be submitted for approval by,

11             the Foreign Intelligence Surveillance Court

12             pursuant to subsection (i);

13                 "(ii) the procedures referred to in

14             clause (i) are consistent with the require-

15             ments of the fourth amendment to the

16             Constitution of the United States and do

17             not permit the intentional targeting of any

18             person who is known at the time of acqui-

19             sition to be located in the United States;

20                 "(iii) a significant purpose of the ac-

21             quisition is to obtain foreign intelligence

22             information;

23                 "(iv) the minimization procedures to

24             be used with respect to such acquisition—

12

1          "(I) meet the definition of mini-
2              mization procedures under section
3              101(h); and
4              "(II) have been approved by, or
5              will promptly be submitted for ap-
6              proval by, the Foreign Intelligence
7              Surveillance Court pursuant to sub-
8              section (i);
9          "(v) the acquisition involves obtaining
10     the foreign intelligence information from or
11     with the assistance of an electronic com-
12     munication service provider; and
13         "(vi) the acquisition does not con-
14     stitute electronic surveillance, as limited by
15     section 701; and
16     "(B) be supported, as appropriate, by the
17     affidavit of any appropriate official in the area
18     of national security who is—
19         "(i) appointed by the President, by
20     and with the consent of the Senate; or
21         "(ii) the head of any element of the
22     intelligence community.
23     "(3) LIMITATION.—A certification made under
24 this subsection is not required to identify the specific
25 facilities, places, premises, or property at which the

13

1    acquisition authorized under subsection (a) will be

2    directed or conducted.

3    "(4) SUBMISSION TO THE COURT.—The Attor-

4    ney General shall transmit a copy of a certification

5    made under this subsection, and any supporting affi-

6    davit, under seal to the Foreign Intelligence Surveil-

7    lance Court as soon as possible, but in no event

8    more than 5 days after such certification is made.

9    Such certification shall be maintained under security

10    measures adopted by the Chief Justice of the United

11    States and the Attorney General, in consultation

12    with the Director of National Intelligence.

13    "(5) REVIEW.—The certification required by

14    this subsection shall be subject to judicial review

15    pursuant to subsection (i).

16    "(h) DIRECTIVES.—

17    "(1) AUTHORITY.—With respect to an acquisi-

18    tion authorized under subsection (a), the Attorney

19    General and the Director of National Intelligence

20    may direct, in writing, an electronic communication

21    service provider to—

22    "(A) immediately provide the Government

23    with all information, facilities, or assistance

24    necessary to accomplish the acquisition in a

25    manner that will protect the secrecy of the ac-

14

1    quisition and produce a minimum of inter-

2    ference with the services that such electronic

3    communication service provider is providing to

4    the target; and

5        "(B) maintain under security procedures

6    approved by the Attorney General and the Di-

7    rector of National Intelligence any records con-

8    cerning the acquisition or the aid furnished that

9    such electronic communication service provider

10   wishes to maintain.

11       "(2) COMPENSATION.—The Government shall

12   compensate, at the prevailing rate, an electronic

13   communication service provider for providing infor-

14   mation, facilities, or assistance pursuant to para-

15   graph (1).

16       "(3) RELEASE FROM LIABILITY.—Notwith-

17   standing any other law, no cause of action shall lie

18   in any court against any electronic communication

19   service provider for providing any information, facili-

20   ties, or assistance in accordance with a directive

21   issued pursuant to paragraph (1).

22       "(4) CHALLENGING OF DIRECTIVES.—

23       "(A) AUTHORITY TO CHALLENGE.—An

24   electronic communication service provider re-

25   ceiving a directive issued pursuant to paragraph

15

1    (1) may challenge the directive by filing a peti-
2    tion with the Foreign Intelligence Surveillance
3    Court.

4        "(B) ASSIGNMENT.—The presiding judge
5    of the Court shall assign the petition filed
6    under subparagraph (A) to 1 of the judges serv-
7    ing in the pool established by section 103(e)(1)
8    not later than 24 hours after the filing of the
9    petition.

10        "(C) STANDARDS FOR REVIEW.—A judge
11    considering a petition to modify or set aside a
12    directive may grant such petition only if the
13    judge finds that the directive does not meet the
14    requirements of this section or is otherwise un-
15    lawful. If the judge does not modify or set aside
16    the directive, the judge shall immediately affirm
17    such directive, and order the recipient to com-
18    ply with the directive. The judge shall provide
19    a written statement for the record of the rea-
20    sons for a determination under this paragraph.

21        "(D) CONTINUED EFFECT.—Any directive
22    not explicitly modified or set aside under this
23    paragraph shall remain in full effect.

24    "(5) ENFORCEMENT OF DIRECTIVES.—

16

1          "(A) ORDER TO COMPEL.—In the case of

2      a failure to comply with a directive issued pur-

3      suant to paragraph (1), the Attorney General

4      may file a petition for an order to compel com-

5      pliance with the directive with the Foreign In-

6      telligence Surveillance Court.

7          "(B) ASSIGNMENT.—The presiding judge

8      of the Court shall assign a petition filed under

9      subparagraph (A) to 1 of the judges serving in

10     the pool established by section 103(e)(1) not

11     later than 24 hours after the filing of the peti-

12     tion.

13         "(C) STANDARDS FOR REVIEW.—A judge

14     considering a petition shall issue an order re-

15     quiring the electronic communication service

16     provider to comply with the directive if the

17     judge finds that the directive was issued in ac-

18     cordance with paragraph (1), meets the require-

19     ments of this section, and is otherwise lawful.

20     The judge shall provide a written statement for

21     the record of the reasons for a determination

22     under this paragraph.

23         "(D) CONTEMPT OF COURT.—Failure to

24     obey an order of the Court issued under this

17

1    paragraph may be punished by the Court as
2    contempt of court.

3        ''(E) PROCESS.—Any process under this
4    paragraph may be served in any judicial district
5    in which the electronic communication service
6    provider may be found.

7        ''(6) APPEAL.—

8            ''(A) APPEAL TO THE COURT OF RE-
9        VIEW.—The Government or an electronic com-
10       munication service provider receiving a directive
11       issued pursuant to paragraph (1) may file a pe-
12       tition with the Foreign Intelligence Surveillance
13       Court of Review for review of the decision
14       issued pursuant to paragraph (4) or (5) not
15       later than 7 days after the issuance of such de-
16       cision. The Court of Review shall have jurisdic-
17       tion to consider such a petition and shall pro-
18       vide a written statement for the record of the
19       reasons for a decision under this paragraph.

20           ''(B) CERTIORARI TO THE SUPREME
21       COURT.—The Government or an electronic com-
22       munication service provider receiving a directive
23       issued pursuant to paragraph (1) may file a pe-
24       tition for a writ of certiorari for review of the
25       decision of the Court of Review issued under

18

1       subparagraph (A). The record for such review

2       shall be transmitted under seal to the Supreme

3       Court of the United States, which shall have ju-

4       risdiction to review such decision.

5   "(i) JUDICIAL REVIEW.—

6       "(1) IN GENERAL.—

7           "(A) REVIEW BY THE FOREIGN INTEL-

8           LIGENCE SURVEILLANCE COURT.—The Foreign

9           Intelligence Surveillance Court shall have juris-

10          diction to review any certification required by

11          subsection (d) or targeting and minimization

12          procedures adopted pursuant to subsections (e)

13          and (f).

14          "(B) SUBMISSION TO THE COURT.—The

15          Attorney General shall submit to the Court any

16          such certification or procedure, or amendment

17          thereto, not later than 5 days after making or

18          amending the certification or determination or

19          adopting or amending the procedures.

20      "(2) CERTIFICATIONS.—The Court shall review

21      a certification provided under subsection (g) to de-

22      termine whether the certification contains all the re-

23      quired elements.

24      "(3) TARGETING PROCEDURES.—The Court

25      shall review the targeting procedures required by

19

1    subsection (e) to assess whether the procedures are
2    reasonably designed to ensure that the acquisition
3    activity is limited to the targeting of persons reason-
4    ably believed to be located outside the United States.

5        "(4) MINIMIZATION PROCEDURES.—The Court
6    shall review the minimization procedures required by
7    subsection (f) to assess whether such procedures
8    meet the definition of minimization procedures
9    under section 101(h).

10       "(5) ORDERS.—

11           "(A) APPROVAL.—If the Court finds that
12       a certification required by subsection (g) con-
13       tains all of the required elements and that the
14       targeting and minimization procedures required
15       by subsections (e) and (f) are consistent with
16       the requirements of those subsections and with
17       the fourth amendment to the Constitution of
18       the United States, the Court shall enter an
19       order approving the continued use of the proce-
20       dures for the acquisition authorized under sub-
21       section (a).

22           "(B) CORRECTION OF DEFICIENCIES.—If
23       the Court finds that a certification required by
24       subsection (g) does not contain all of the re-
25       quired elements, or that the procedures re-

20

1          quired by subsections (e) and (f) are not con-
2          sistent with the requirements of those sub-
3          sections or the fourth amendment to the Con-
4          stitution of the United States, the Court shall
5          issue an order directing the Government to, at
6          the Government's election and to the extent re-
7          quired by the Court's order—

8                  ''(i) correct any deficiency identified
9              by the Court's order not later than 30 days
10             after the date the Court issues the order;
11             or

12                 ''(ii) cease the acquisition authorized
13             under subsection (a).

14         ''(C) REQUIREMENT FOR WRITTEN STATE-
15         MENT.—In support of its orders under this sub-
16         section, the Court shall provide, simultaneously
17         with the orders, for the record a written state-
18         ment of its reasons.

19         ''(6) APPEAL.—

20             ''(A) APPEAL TO THE COURT OF RE-
21         VIEW.—The Government may appeal any order
22         under this section to the Foreign Intelligence
23         Surveillance Court of Review, which shall have
24         jurisdiction to review such order. For any deci-
25         sion affirming, reversing, or modifying an order

21

1          of the Foreign Intelligence Surveillance Court,
2          the Court of Review shall provide for the record
3          a written statement of its reasons.

4              "(B) CONTINUATION OF ACQUISITION
5          PENDING APPEAL.—Any acquisitions affected
6          by an order under paragraph (5)(B) may con-
7          tinue during the pendency of any appeal to the
8          Foreign Intelligence Surveillance Court of Re-
9          view.

10             "(C) CERTIORARI TO THE SUPREME
11          COURT.—The Government may file a petition
12          for a writ of certiorari for review of a decision
13          of the Court of Review issued under subpara-
14          graph (A). The record for such review shall be
15          transmitted under seal to the Supreme Court of
16          the United States, which shall have jurisdiction
17          to review such decision.

18      "(j) JUDICIAL PROCEEDINGS.—Judicial proceedings
19  under this section shall be conducted as expeditiously as
20  possible.

21      "(k) MAINTENANCE OF RECORDS.—

22          "(1) STANDARDS.—A record of a proceeding
23          under this section, including petitions filed, orders
24          granted, and statements of reasons for decision,
25          shall be maintained under security measures adopted

22

1   by the Chief Justice of the United States, in con-

2   sultation with the Attorney General and the Director

3   of National Intelligence.

4       "(2) FILING AND REVIEW.—All petitions under

5   this section shall be filed under seal. In any pro-

6   ceedings under this section, the court shall, upon re-

7   quest of the Government, review ex parte and in

8   camera any Government submission, or portions of

9   a submission, which may include classified informa-

10  tion.

11      "(3) RETENTION OF RECORDS.—A directive

12  made or an order granted under this section shall be

13  retained for a period of not less than 10 years from

14  the date on which such directive or such order is

15  made.

16  "(l) OVERSIGHT.—

17      "(1) SEMIANNUAL ASSESSMENT.—Not less fre-

18  quently than once every 6 months, the Attorney

19  General and Director of National Intelligence shall

20  assess compliance with the targeting and minimiza-

21  tion procedures required by subsections (e) and (f)

22  and shall submit each such assessment to—

23          "(A) the Foreign Intelligence Surveillance

24      Court; and

23

1        "(B) the congressional intelligence commit-

2    tees.

3        "(2) AGENCY ASSESSMENT.—The Inspectors

4    General of the Department of Justice and of any

5    element of the intelligence community authorized to

6    acquire foreign intelligence information under sub-

7    section (a)—

8            "(A) are authorized to review the compli-

9        ance of their agency or element with the tar-

10       geting and minimization procedures required by

11       subsections (e) and (f);

12           "(B) with respect to acquisitions author-

13       ized under subsection (a), shall review the num-

14       ber of disseminated intelligence reports con-

15       taining a reference to a United States person

16       identity and the number of United States per-

17       son identities subsequently disseminated by the

18       element concerned in response to requests for

19       identities that were not referred to by name or

20       title in the original reporting;

21           "(C) with respect to acquisitions author-

22       ized under subsection (a), shall review the num-

23       ber of targets that were later determined to be

24       located in the United States and the number of

24

1       persons located in the United States whose

2       communications were reviewed; and

3           "(D) shall provide each such review to—

4               "(i) the Attorney General;

5               "(ii) the Director of National Intel-

6           ligence; and

7               "(iii) the congressional intelligence

8           committees.

9       "(3) ANNUAL REVIEW.—

10          "(A) REQUIREMENT TO CONDUCT.—The

11      head of an element of the intelligence commu-

12      nity conducting an acquisition authorized under

13      subsection (a) shall direct the element to con-

14      duct an annual review to determine whether

15      there is reason to believe that foreign intel-

16      ligence information has been or will be obtained

17      from the acquisition. The annual review shall

18      provide, with respect to such acquisitions au-

19      thorized under subsection (a)—

20              "(i) an accounting of the number of

21          disseminated intelligence reports con-

22          taining a reference to a United States per-

23          son identity;

24              "(ii) an accounting of the number of

25          United States person identities subse-

25

1 quently disseminated by that element in re-

2 sponse to requests for identities that were

3 not referred to by name or title in the

4 original reporting; and

5        ''(iii) the number of targets that were

6    later determined to be located in the

7    United States and the number of persons

8    located in the United States whose commu-

9    nications were reviewed.

10       ''(B) USE OF REVIEW.—The head of each

11   element of the intelligence community that con-

12   ducts an annual review under subparagraph (A)

13   shall use each such review to evaluate the ade-

14   quacy of the minimization procedures utilized

15   by such element or the application of the mini-

16   mization procedures to a particular acquisition

17   authorized under subsection (a).

18       ''(C) PROVISION OF REVIEW TO FOREIGN

19   INTELLIGENCE SURVEILLANCE COURT.—The

20   head of each element of the intelligence commu-

21   nity that conducts an annual review under sub-

22   paragraph (A) shall provide such review to the

23   Foreign Intelligence Surveillance Court.

24       ''(4) REPORTS TO CONGRESS.—

26

1          "(A) SEMIANNUAL REPORT.—Not less fre-
2    quently than once every 6 months, the Attorney
3    General shall fully inform, in a manner con-
4    sistent with national security, the congressional
5    intelligence committees, the Committee on the
6    Judiciary of the Senate, and the Committee on
7    the Judiciary of the House of Representatives,
8    concerning the implementation of this Act.
9          "(B) CONTENT.—Each report made under
10   subparagraph (A) shall include—
11              "(i) any certifications made under
12          subsection (g) during the reporting period;
13              "(ii) any directives issued under sub-
14          section (h) during the reporting period;
15              "(iii) the judicial review during the re-
16          porting period of any such certifications
17          and targeting and minimization procedures
18          utilized with respect to such acquisition,
19          including a copy of any order or pleading
20          in connection with such review that con-
21          tains a significant legal interpretation of
22          the provisions of this Act;
23              "(iv) any actions taken to challenge or
24          enforce a directive under paragraphs (4) or
25          (5) of subsections (h);

27

1          "(v) a description of any compliance

2     reviews conducted by the Department of

3     Justice or the Office of the Director of Na-

4     tional Intelligence of acquisitions author-

5     ized under subsection (a);

6          "(vi) a description of any incidents of

7     noncompliance with a directive issued by

8     the Attorney General and the Director of

9     National Intelligence under subsection (a),

10    including—

11              "(I) incidents of noncompliance

12         by an element of the intelligence com-

13         munity with procedures adopted pur-

14         suant to subsections (e) and (f); and

15              "(II) incidents of noncompliance

16         by a specified person to whom the At-

17         torney General and Director of Na-

18         tional Intelligence issued a directive

19         under subsection (h);

20          "(vii) any procedures implementing

21     this section; and

22          "(viii) any annual review conducted

23     pursuant to paragraph (3).

28

1 **"SEC. 704. USE OF INFORMATION ACQUIRED UNDER SEC-**
2         **TION 703.**

3     ''Information acquired from an acquisition conducted

4 under section 703 shall be deemed to be information ac-

5 quired from an electronic surveillance pursuant to title I

6 for purposes of section 106, except for the purposes of

7 subsection (j) of such section.''.

8     (b) TABLE OF CONTENTS.—The table of contents in

9 the first section of the Foreign Intelligence Surveillance

10 Act of 1978 (50 U.S.C. 1801 et seq.) is amended—

11         (1) by striking the item relating to title VII;

12         (2) by striking the item relating to section 701;

13     and

14         (3) by adding at the end the following:

''TITLE VII—ADDITIONAL PROCEDURES FOR TARGETING COMMU-
NICATIONS OF CERTAIN PERSONS OUTSIDE THE UNITED
STATES

''Sec. 701. Limitation on definition of electronic surveillance.
''Sec. 702. Definitions.
''Sec. 703. Procedures for acquiring the communications of certain persons out-
side the United States.
''Sec. 704. Use of information acquired under section 703.''.

15     (c) SUNSET.—The amendments made by subsections

16 (a) and (b) shall cease to have effect on December 31,

17 2013.

29

1    SEC. 102. STATEMENT OF EXCLUSIVE MEANS BY WHICH

2              ELECTRONIC SURVEILLANCE AND INTERCEP-

3              TION OF DOMESTIC COMMUNICATIONS MAY

4              BE CONDUCTED.

5        (a) STATEMENT OF EXCLUSIVE MEANS.—Title I of

6    the Foreign Intelligence Surveillance Act of 1978 (50

7    U.S.C. 1801 et seq.) is amended by adding at the end

8    the following new section:

9    "STATEMENT OF EXCLUSIVE MEANS BY WHICH ELEC-

10             TRONIC SURVEILLANCE AND INTERCEPTION OF DO-

11             MESTIC COMMUNICATIONS MAY BE CONDUCTED

12       "SEC. 112. Chapters 119 and 121 of title 18, United

13   States Code, and this Act shall be the exclusive means by

14   which electronic surveillance (as defined in section 101(f),

15   regardless of the limitation of section 701) and the inter-

16   ception of domestic wire, oral, or electronic communica-

17   tions may be conducted.".

18       (b) TABLE OF CONTENTS.—The table of contents in

19   the first section of the Foreign Intelligence Surveillance

20   Act of 1978 (50 U.S.C. 1801 et seq.) is amended by add-

21   ing after the item relating to section 111, the following:

"Sec. 112. Statement of exclusive means by which electronic surveillance and
          interception of domestic communications may be conducted.".

30

1   **SEC. 103. SUBMITTAL TO CONGRESS OF CERTAIN COURT**

2   **ORDERS UNDER THE FOREIGN INTEL-**

3   **LIGENCE SURVEILLANCE ACT OF 1978.**

4   (a) INCLUSION OF CERTAIN ORDERS IN SEMI-AN-

5   NUAL REPORTS OF ATTORNEY GENERAL.—Subsection

6   (a)(5) of section 601 of the Foreign Intelligence Surveil-

7   lance Act of 1978 (50 U.S.C. 1871) is amended by strik-

8   ing "(not including orders)" and inserting ", orders,".

9   (b) REPORTS BY ATTORNEY GENERAL ON CERTAIN

10  OTHER ORDERS.—Such section 601 is further amended

11  by adding at the end the following new subsection:

12  "(c) The Attorney General shall submit to the com-

13  mittees of Congress referred to in subsection (a) a copy

14  of any decision, order, or opinion issued by the court es-

15  tablished under section 103(a) or the court of review es-

16  tablished under section 103(b) that includes significant

17  construction or interpretation of any provision of this Act

18  not later than 45 days after such decision, order, or opin-

19  ion is issue.".

20  **SEC. 104. APPLICATIONS FOR COURT ORDERS.**

21  Section 104 of the Foreign Intelligence Surveillance

22  Act of 1978 (50 U.S.C. 1804) is amended—

23          (1) in subsection (a)—

24                  (A) by striking paragraphs (2) and (11);

31

1          (B) by redesignating paragraphs (3)
2    through (10) as paragraphs (2) through (9), re-
3    spectively;
4          (C) in paragraph (5), as redesignated by
5    subparagraph (B) of this paragraph, by striking
6    "detailed";
7          (D) in paragraph (6), as redesignated by
8    subparagraph (B) of this paragraph, in the
9    matter preceding subparagraph (A)—
10              (i) by striking "Affairs or" and insert-
11          ing "Affairs,"; and
12              (ii) by striking "Senate—" and insert-
13          ing "Senate, or the Deputy Director of the
14          Federal Bureau of Investigation, if des-
15          ignated by the President as a certifying of-
16          ficial—";
17          (E) in paragraph (7), as redesignated by
18    subparagraph (B) of this paragraph, by striking
19    "statement of" and inserting "summary state-
20    ment of";
21          (F) in paragraph (8), as redesignated by
22    subparagraph (B) of this paragraph, by adding
23    "and" at the end; and

Case 3:07-cv-05278-SI    Document 7-4    Filed 10/29/2007    Page 33 of 60
O:\EAS\EAS07C20.xml                                   S.L.C.

32

1                  (G) in paragraph (9), as redesignated by

2          subparagraph (B) of this paragraph, by striking

3          "; and" and inserting a period;

4          (2) by striking subsection (b);

5          (3) by redesignating subsections (c) through (e)

6      as subsections (b) through (d), respectively; and

7          (4) in paragraph (1)(A) of subsection (d), as re-

8      designated by paragraph (3) of this subsection, by

9      striking "or the Director of National Intelligence"

10     and inserting "the Director of National Intelligence,

11     or the Director of the Central Intelligence Agency".

**12  SEC. 105. ISSUANCE OF AN ORDER.**

13         Section 105 of the Foreign Intelligence Surveillance

14     Act of 1978 (50 U.S.C. 1805) is amended—

15             (1) in subsection (a)—

16                 (A) by striking paragraph (1); and

17                 (B) by redesignating paragraphs (2)

18             through (5) as paragraphs (1) through (4), re-

19             spectively;

20             (2) in subsection (b), by striking "(a)(3)" and

21         inserting "(a)(2)";

22             (3) in subsection (c)(1)—

23                 (A) in subparagraph (D), by adding "and"

24             at the end;

33

1          (B) in subparagraph (E), by striking ";

2      and" and inserting a period; and

3          (C) by striking subparagraph (F);

4      (4) by striking subsection (d);

5      (5) by redesignating subsections (e) through (i)

6  as subsections (d) through (h), respectively;

7      (6) by amending subsection (e), as redesignated

8  by paragraph (5) of this section, to read as follows:

9  "(e)(1) Notwithstanding any other provision of this

10  title, the Attorney General may authorize the emergency

11  employment of electronic surveillance if the Attorney Gen-

12  eral—

13          "(A) determines that an emergency situation

14      exists with respect to the employment of electronic

15      surveillance to obtain foreign intelligence informa-

16      tion before an order authorizing such surveillance

17      can with due diligence be obtained;

18          "(B) determines that the factual basis for

19      issuance of an order under this title to approve such

20      electronic surveillance exists;

21          "(C) informs, either personally or through a

22      designee, a judge having jurisdiction under section

23      103 at the time of such authorization that the deci-

24      sion has been made to employ emergency electronic

25      surveillance; and

34

1          "(D) makes an application in accordance with

2     this title to a judge having jurisdiction under section

3     103 as soon as practicable, but not later than 168

4     hours after the Attorney General authorizes such

5     surveillance.

6     "(2) If the Attorney General authorizes the emer-

7     gency employment of electronic surveillance under para-

8     graph (1), the Attorney General shall require that the

9     minimization procedures required by this title for the

10    issuance of a judicial order be followed.

11         "(3) In the absence of a judicial order approving such

12    electronic surveillance, the surveillance shall terminate

13    when the information sought is obtained, when the appli-

14    cation for the order is denied, or after the expiration of

15    168 hours from the time of authorization by the Attorney

16    General, whichever is earliest.

17         "(4) A denial of the application made under this sub-

18    section may be reviewed as provided in section 103.

19         "(5) In the event that such application for approval

20    is denied, or in any other case where the electronic surveil-

21    lance is terminated and no order is issued approving the

22    surveillance, no information obtained or evidence derived

23    from such surveillance shall be received in evidence or oth-

24    erwise disclosed in any trial, hearing, or other proceeding

25    in or before any court, grand jury, department, office,

1 agency, regulatory body, legislative committee, or other
2 authority of the United States, a State, or political sub-
3 division thereof, and no information concerning any
4 United States person acquired from such surveillance shall
5 subsequently be used or disclosed in any other manner by
6 Federal officers or employees without the consent of such
7 person, except with the approval of the Attorney General
8 if the information indicates a threat of death or serious
9 bodily harm to any person.

10    ''(6) The Attorney General shall assess compliance
11 with the requirements of paragraph (5).''; and

12          (7) by adding at the end the following:

13    ''(i) In any case in which the Government makes an
14 application to a judge under this title to conduct electronic
15 surveillance involving communications and the judge
16 grants such application, upon the request of the applicant,
17 the judge shall also authorize the installation and use of
18 pen registers and trap and trace devices, and direct the
19 disclosure of the information set forth in section
20 402(d)(2).''.

21 **SEC. 106. USE OF INFORMATION.**

22    Subsection (i) of section 106 of the Foreign Intel-
23 ligence Surveillance Act of 1978 (8 U.S.C. 1806) is
24 amended by striking ''radio communication'' and inserting
25 ''communication''.

36

1  **SEC. 107. AMENDMENTS FOR PHYSICAL SEARCHES.**

2      (a) APPLICATIONS.—Section 303 of the Foreign In-

3  telligence Surveillance Act of 1978 (50 U.S.C. 1823) is

4  amended—

5          (1) in subsection (a)—

6              (A) by striking paragraph (2);

7              (B) by redesignating paragraphs (3)

8          through (9) as paragraphs (2) through (8), re-

9          spectively;

10             (C) in paragraph (2), as redesignated by

11         subparagraph (B) of this paragraph, by striking

12         ''detailed'';

13             (D) in paragraph (3)(C), as redesignated

14         by subparagraph (B) of this paragraph, by in-

15         serting ''or is about to be'' before ''owned''; and

16             (E) in paragraph (6), as redesignated by

17         subparagraph (B) of this paragraph, in the

18         matter preceding subparagraph (A)—

19                 (i) by striking ''Affairs or'' and insert-

20             ing ''Affairs,''; and

21                 (ii) by striking ''Senate—'' and insert-

22             ing ''Senate, or the Deputy Director of the

23             Federal Bureau of Investigation, if des-

24             ignated by the President as a certifying of-

25             ficial—''; and

37

1        (2) in subsection (d)(1)(A), by striking ''or the

2    Director of National Intelligence'' and inserting ''the

3    Director of National Intelligence, or the Director of

4    the Central Intelligence Agency''.

5    (b) ORDERS.—Section 304 of the Foreign Intel-

6    ligence Surveillance Act of 1978 (50 U.S.C. 1824) is

7    amended—

8        (1) in subsection (a)—

9            (A) by striking paragraph (1); and

10           (B) by redesignating paragraphs (2)

11           through (5) as paragraphs (1) through (4), re-

12           spectively; and

13       (2) by amending subsection (e) to read as fol-

14    lows:

15    ''(e)(1) Notwithstanding any other provision of this

16    title, the Attorney General may authorize the emergency

17    employment of a physical search if the Attorney General—

18           ''(A) determines that an emergency situation

19           exists with respect to the employment of a physical

20           search to obtain foreign intelligence information be-

21           fore an order authorizing such physical search can

22           with due diligence be obtained;

23           ''(B) determines that the factual basis for

24           issuance of an order under this title to approve such

25           physical search exists;

38

1    "(C) informs, either personally or through a

2    designee, a judge of the Foreign Intelligence Surveil-

3    lance Court at the time of such authorization that

4    the decision has been made to employ an emergency

5    physical search; and

6    "(D) makes an application in accordance with

7    this title to a judge of the Foreign Intelligence Sur-

8    veillance Court as soon as practicable, but not more

9    than 168 hours after the Attorney General author-

10    izes such physical search.

11    "(2) If the Attorney General authorizes the emer-

12    gency employment of a physical search under paragraph

13    (1), the Attorney General shall require that the minimiza-

14    tion procedures required by this title for the issuance of

15    a judicial order be followed.

16    "(3) In the absence of a judicial order approving such

17    physical search, the physical search shall terminate when

18    the information sought is obtained, when the application

19    for the order is denied, or after the expiration of 168

20    hours from the time of authorization by the Attorney Gen-

21    eral, whichever is earliest.

22    "(4) A denial of the application made under this sub-

23    section may be reviewed as provided in section 103.

24    "(5)(A) In the event that such application for ap-

25    proval is denied, or in any other case where the physical

39

1   search is terminated and no order is issued approving the

2   physical search, no information obtained or evidence de-

3   rived from such physical search shall be received in evi-

4   dence or otherwise disclosed in any trial, hearing, or other

5   proceeding in or before any court, grand jury, department,

6   office, agency, regulatory body, legislative committee, or

7   other authority of the United States, a State, or political

8   subdivision thereof, and no information concerning any

9   United States person acquired from such physical search

10  shall subsequently be used or disclosed in any other man-

11  ner by Federal officers or employees without the consent

12  of such person, except with the approval of the Attorney

13  General if the information indicates a threat of death or

14  serious bodily harm to any person.

15      "(B) The Attorney General shall assess compliance

16  with the requirements of subparagraph (A).".

17      (c) CONFORMING AMENDMENTS.—The Foreign Intel-

18  ligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.)

19  is amended—

20          (1) in section 304(a)(4), as redesignated by

21      subsection (b) of this section, by striking

22      "303(a)(7)(E)" and inserting "303(a)(6)(E)"; and

23          (2) in section 305(k)(2), by striking

24      "303(a)(7)" and inserting "303(a)(6)".

40

1  **SEC. 108. AMENDMENTS FOR EMERGENCY PEN REGISTERS**

2  **AND TRAP AND TRACE DEVICES.**

3    Section 403 of the Foreign Intelligence Surveillance

4  Act of 1978 (50 U.S.C. 1843) is amended—

5        (1) in subsection (a)(2), by striking "48 hours"

6    and inserting "168 hours"; and

7        (2) in subsection (c)(1)(C), by striking "48

8    hours" and inserting "168 hours".

9  **SEC. 109. FOREIGN INTELLIGENCE SURVEILLANCE COURT.**

10    (a) DESIGNATION OF JUDGES.—Subsection (a) of

11  section 103 of the Foreign Intelligence Surveillance Act

12  of 1978 (50 U.S.C. 1803) is amended by inserting "at

13  least" before "seven of the United States judicial cir-

14  cuits".

15    (b) EN BANC AUTHORITY.—

16        (1) IN GENERAL.—Subsection (a) of section

17    103 of the Foreign Intelligence Surveillance Act of

18    1978 (50 U.S.C. 1803), as amended by subsection

19    (a) of this section, is further amended—

20            (A) by inserting "(1)" after "(a)"; and

21            (B) by adding at the end, the following

22        new paragraph:

23    "(2)(A) The court established under this subsection

24  may, on its own initiative or upon the request of the Gov-

25  ernment in any proceeding or a party under section

26  501(c)(2) or paragraph (4) or (5) of section 703(h), hold

41

1  a hearing or rehearing, en banc, when ordered by a major-

2  ity of the judges sitting on such court upon a determina-

3  tion that—

4          "(i) en banc consideration is necessary to se-

5      cure or maintain uniformity of the court's decisions;

6      or

7          "(ii) the proceeding involves a question of ex-

8      ceptional importance.

9      "(B) The court en banc shall consist of all judges

10  who constitute the court established under this sub-

11  section.".

12      (2) CONFORMING AMENDMENTS.—The Foreign

13      Intelligence Surveillance Act of 1978 (50 U.S.C.

14      1801 et seq.) is amended—

15          (A) in the last sentence of section 302(c)—

16              (i) by inserting ", or the en banc

17          court," after "designated"; and

18              (ii) by inserting ", or the en banc

19          court," after "such judge";

20          (B) in section 402(d)(1), by inserting ", or

21      the en banc court," after "judge" both places

22      that term appears; and

23          (C) in section 501(c)(1), by inserting ", or

24      the en banc court," after "judge" both places

25      that term appears.

42

1    (c) STAY OR MODIFICATION DURING AN APPEAL.—

2 Section 103 of the Foreign Intelligence Surveillance Act

3 of 1978 (50 U.S.C. 1803) is amended—

4        (1) by redesignating subsection (f) as sub-

5    section (g); and

6        (2) by inserting after subsection (e) the fol-

7    lowing new subsection:

8    ''(f)(1) A judge of the court established under sub-

9 section (a), the court established under subsection (b) or

10 a judge of that court, the Supreme Court of the United

11 States or a justice of that court, may, in accordance with

12 the rules of their respective courts, enter a stay of an order

13 or an order modifying an order of the court established

14 under subsection (a) or the court established under sub-

15 section (b) entered under any title of this Act, while an

16 appeal is pending to the court established under sub-

17 section (b) or while a petition of certiorari is pending in

18 the Supreme Court of the United States, or during the

19 pendency of any review by that court.

20    ''(2) The authority described in paragraph (1) shall

21 apply to an order entered under any provision of this

22 Act.''.

23 **SEC. 110. TECHNICAL AND CONFORMING AMENDMENTS.**

24    Section 103(e) of the Foreign Intelligence Surveil-

25 lance Act of 1978 (50 U.S.C. 1803(e)) is amended—

43

1       (1) in paragraph (1), by striking "105B(h) or

2    501(f)(1)" and inserting "501(f)(1) or 703"; and

3       (2) in paragraph (2), by striking "105B(h) or

4    501(f)(1)" and inserting "501(f)(1) or 703".

# TITLE II—PROTECTIONS FOR ELECTRONIC COMMUNICA-TION SERVICE PROVIDERS

**SEC. 201. DEFINITIONS.**

9    In this title:

10       (1) ASSISTANCE.—The term "assistance"

11    means the provision of, or the provision of access to,

12    information (including communication contents,

13    communications records, or other information relat-

14    ing to a customer or communication), facilities, or

15    another form of assistance.

16       (2) CONTENTS.—The term "contents" has the

17    meaning given that term in section 101(n) of the

18    Foreign Intelligence Surveillance Act of 1978 (50

19    U.S.C. 1801(n)).

20       (3) COVERED CIVIL ACTION.—The term "cov-

21    ered civil action" means a civil action filed in a Fed-

22    eral or State court that—

23          (A) alleges that an electronic communica-

24       tion service provider furnished assistance to an

25       element of the intelligence community; and

44

1      (B) seeks monetary or other relief from the

2  electronic communication service provider re-

3  lated to the provision of such assistance.

4      (4) ELECTRONIC COMMUNICATION SERVICE

5  PROVIDER.—The term "electronic communication

6  service provider" means—

7      (A) a telecommunications carrier, as that

8  term is defined in section 3 of the Communica-

9  tions Act of 1934 (47 U.S.C. 153);

10      (B) a provider of an electronic communica-

11  tion service, as that term is defined in section

12  2510 of title 18, United States Code;

13      (C) a provider of a remote computing serv-

14  ice, as that term is defined in section 2711 of

15  title 18, United States Code;

16      (D) any other communication service pro-

17  vider who has access to wire or electronic com-

18  munications either as such communications are

19  transmitted or as such communications are

20  stored;

21      (E) a parent, subsidiary, affiliate, suc-

22  cessor, or assignee of an entity described in

23  subparagraph (A), (B), (C), or (D); or

45

1        (F) an officer, employee, or agent of an en-
2    tity described in subparagraph (A), (B), (C),
3    (D), or (E).

4    (5) ELEMENT OF THE INTELLIGENCE COMMU-
5    NITY.—The term "element of the intelligence com-
6    munity" means an element of the intelligence com-
7    munity specified in or designated under section 3(4)
8    of the National Security Act of 1947 (50 U.S.C.
9    401a(4)).

10 **SEC. 202. LIMITATIONS ON CIVIL ACTIONS FOR ELEC-**
11 **TRONIC COMMUNICATION SERVICE PRO-**
12 **VIDERS.**

13    (a) LIMITATIONS.—

14        (1) IN GENERAL.—Notwithstanding any other
15    provision of law, a covered civil action shall not lie
16    or be maintained in a Federal or State court, and
17    shall be promptly dismissed, if the Attorney General
18    certifies to the court that—

19            (A) the assistance alleged to have been
20        provided by the electronic communication serv-
21        ice provider was—

22                (i) in connection with an intelligence
23            activity involving communications that
24            was—

46

1                      (I) authorized by the President

2                  during the period beginning on Sep-

3                  tember 11, 2001, and ending on Jan-

4                  uary 17, 2007; and

5                      (II) designed to detect or prevent

6                  a terrorist attack, or activities in

7                  preparation for a terrorist attack,

8                  against the United States; and

9              (ii) described in a written request or

10         directive from the Attorney General or the

11         head of an element of the intelligence com-

12         munity (or the deputy of such person) to

13         the electronic communication service pro-

14         vider indicating that the activity was—

15                      (I) authorized by the President;

16                  and

17                      (II) determined to be lawful; or

18         (B) the electronic communication service

19         provider did not provide the alleged assistance.

20         (2) REVIEW.—A certification made pursuant to

21     paragraph (1) shall be subject to review by a court

22     for abuse of discretion.

23     (b) REVIEW OF CERTIFICATIONS.—If the Attorney

24 General files a declaration under section 1746 of title 28,

25 United States Code, that disclosure of a certification made

47

1   pursuant to subsection (a) would harm the national secu-
2   rity of the United States, the court shall—

3          (1) review such certification in camera and ex
4      parte; and

5          (2) limit any public disclosure concerning such
6      certification, including any public order following
7      such an ex parte review, to a statement that the con-
8      ditions of subsection (a) have been met, without dis-
9      closing the subparagraph of subsection (a)(1) that is
10     the basis for the certification.

11     (c) NONDELEGATION.—The authority and duties of
12  the Attorney General under this section shall be performed
13  by the Attorney General (or Acting Attorney General) or
14  a designee in a position not lower than the Deputy Attor-
15  ney General.

16     (d) CIVIL ACTIONS IN STATE COURT.—A covered
17  civil action that is brought in a State court shall be
18  deemed to arise under the Constitution and laws of the
19  United States and shall be removable under section 1441
20  of title 28, United States Code.

21     (e) RULE OF CONSTRUCTION.—Nothing in this sec-
22  tion may be construed to limit any otherwise available im-
23  munity, privilege, or defense under any other provision of
24  law.

48

1    (f) EFFECTIVE DATE AND APPLICATION.—This sec-

2 tion shall apply to any covered civil action that is pending

3 on or filed after the date of enactment of this Act.

4 **SEC. 203. PROCEDURES FOR IMPLEMENTING STATUTORY**

5                **DEFENSES UNDER THE FOREIGN INTEL-**

6                **LIGENCE SURVEILLANCE ACT OF 1978.**

7    The Foreign Intelligence Surveillance Act of 1978

8 (50 U.S.C. 1801 et seq.), as amended by section 101, is

9 further amended by adding after title VII the following

10 new title:

11 **"TITLE     VIII—PROTECTION     OF**

12      **PERSONS     ASSISTING     THE**

13      **GOVERNMENT**

14 **"SEC. 801. DEFINITIONS.**

15    "In this title:

16        "(1) ASSISTANCE.—The term 'assistance'

17    means the provision of, or the provision of access to,

18    information (including communication contents,

19    communications records, or other information relat-

20    ing to a customer or communication), facilities, or

21    another form of assistance.

22        "(2) ATTORNEY GENERAL.—The term 'Attor-

23    ney General' has the meaning give that term in sec-

24    tion 101(g).

49

1        ''(3) CONTENTS.—The term 'contents' has the

2  meaning given that term in section 101(n).

3        ''(4) ELECTRONIC COMMUNICATION SERVICE

4  PROVIDER.—The term 'electronic communication

5  service provider' means—

6        ''(A) a telecommunications carrier, as that

7        term is defined in section 3 of the Communica-

8        tions Act of 1934 (47 U.S.C. 153);

9        ''(B) a provider of electronic communica-

10       tions service, as that term is defined in section

11       2510 of title 18, United States Code;

12       ''(C) a provider of a remote computing

13       service, as that term is defined in section 2711

14       of title 18, United States Code;

15       ''(D) any other communication service pro-

16       vider who has access to wire or electronic com-

17       munications either as such communications are

18       transmitted or as such communications are

19       stored;

20       ''(E) a parent, subsidiary, affiliate, suc-

21       cessor, or assignee of an entity described in

22       subparagraph (A), (B), (C), or (D); or

23       ''(F) an officer, employee, or agent of an

24       entity described in subparagraph (A), (B), (C),

25       (D), or (E).

50

1        ''(5) ELEMENT OF THE INTELLIGENCE COMMU-
2    NITY.—The term 'element of the intelligence com-
3    munity' means an element of the intelligence com-
4    munity as specified or designated under section 3(4)
5    of the National Security Act of 1947 (50 U.S.C.
6    401a(4)).
7        ''(6) PERSON.—The term 'person' means—
8            ''(A) an electronic communication service
9        provider; or
10            ''(B) a landlord, custodian, or other person
11        who may be authorized or required to furnish
12        assistance pursuant to—
13                ''(i) an order of the court established
14            under section 103(a) directing such assist-
15            ance;
16                ''(ii) a certification in writing under
17            section 2511(2)(a)(ii)(B) or 2709(b) of
18            title 18, United States Code; or
19                ''(iii) a directive under section
20            102(a)(4), 105B(e), as in effect on the day
21            before the date of the enactment of the
22            FISA Amendments Act of 2007 or 703(h).
23        ''(7) STATE.—The term 'State' means any
24    State, political subdivision of a State, the Common-
25    wealth of Puerto Rico, the District of Columbia, and

51

1    any territory or possession of the United States, and

2    includes any officer, public utility commission, or

3    other body authorized to regulate an electronic com-

4    munication service provider.

5    **"SEC. 802. PROCEDURES FOR IMPLEMENTING STATUTORY**

6    **DEFENSES.**

7    "(a) REQUIREMENT FOR CERTIFICATION.—

8        "(1) IN GENERAL.—Notwithstanding any other

9    provision of law, no civil action may lie or be main-

10   tained in a Federal or State court against any per-

11   son for providing assistance to an element of the in-

12   telligence community, and shall be promptly dis-

13   missed, if the Attorney General certifies to the court

14   that—

15           "(A) any assistance by that person was

16       provided pursuant to an order of the court es-

17       tablished under section 103(a) directing such

18       assistance;

19           "(B) any assistance by that person was

20       provided pursuant to a certification in writing

21       under section 2511(2)(a)(ii)(B) or 2709(b) of

22       title 18, United States Code;

23           "(C) any assistance by that person was

24       provided pursuant to a directive under sections

25       102(a)(4), 105B(e), as in effect on the day be-

52

1          fore the date of the enactment of the FISA

2          Amendments Act of 2007, or 703(h) directing

3          such assistance; or

4               "(D) the person did not provide the alleged

5          assistance.

6          "(2) REVIEW.—A certification made pursuant

7     to paragraph (1) shall be subject to review by a

8     court for abuse of discretion.

9          "(b) LIMITATIONS ON DISCLOSURE.—If the Attorney

10    General files a declaration under section 1746 of title 28,

11    United States Code, that disclosure of a certification made

12    pursuant to subsection (a) would harm the national secu-

13    rity of the United States, the court shall—

14               "(1) review such certification in camera and ex

15          parte; and

16               "(2) limit any public disclosure concerning such

17          certification, including any public order following

18          such an ex parte review, to a statement that the con-

19          ditions of subsection (a) have been met, without dis-

20          closing the subparagraph of subsection (a)(1) that is

21          the basis for the certification.

22          "(c) REMOVAL.—A civil action against a person for

23    providing assistance to an element of the intelligence com-

24    munity that is brought in a State court shall be deemed

25    to arise under the Constitution and laws of the United

53

1 States and shall be removable under section 1441 of title

2 28, United States Code.

3     "(d) RELATIONSHIP TO OTHER LAWS.—Nothing in

4 this section may be construed to limit any otherwise avail-

5 able immunity, privilege, or defense under any other provi-

6 sion of law.

7     "(e) APPLICABILITY.—This section shall apply to a

8 civil action pending on or filed after the date of enactment

9 of the FISA Amendments Act of 2007.".

**10 SEC. 204. PREEMPTION OF STATE INVESTIGATIONS.**

11     Title VIII of the Foreign Intelligence Surveillance

12 Act (50 U.S.C. 1801 et seq.), as added by section 203

13 of this Act, is amended by adding at the end the following

14 new section:

**15 "SEC. 803. PREEMPTION.**

16     "(a) IN GENERAL.—No State shall have authority

17 to—

18         "(1) conduct an investigation into an electronic

19     communication service provider's alleged assistance

20     to an element of the intelligence community;

21         "(2) require through regulation or any other

22     means the disclosure of information about an elec-

23     tronic communication service provider's alleged as-

24     sistance to an element of the intelligence community;

54

1        ''(3) impose any administrative sanction on an

2  electronic communication service provider for assist-

3  ance to an element of the intelligence community; or

4        ''(4) commence or maintain a civil action or

5  other proceeding to enforce a requirement that an

6  electronic communication service provider disclose

7  information concerning alleged assistance to an ele-

8  ment of the intelligence community.

9       ''(b) SUITS BY THE UNITED STATES.—The United

10  States may bring suit to enforce the provisions of this sec-

11  tion.

12       ''(c) JURISDICTION.—The district courts of the

13  United States shall have jurisdiction over any civil action

14  brought by the United States to enforce the provisions of

15  this section.

16       ''(d) APPLICATION.—This section shall apply to any

17  investigation, action, or proceeding that is pending on or

18  filed after the date of enactment of the FISA Amendments

19  Act of 2007.''.

20  **SEC. 205. TECHNICAL AMENDMENTS.**

21       The table of contents in the first section of the For-

22  eign Intelligence Surveillance Act of 1978 (50 U.S.C.

23  1801 et seq.), as amended by section 101(b), is further

24  amended by adding at the end the following:

''TITLE VIII—PROTECTION OF PERSONS ASSISTING THE
GOVERNMENT

55

"Sec. 801. Definitions.
"Sec. 802. Procedures for implementing statutory defenses.
"Sec. 803. Preemption.".

# TITLE III—OTHER PROVISIONS

## SEC. 301. SEVERABILITY.

If any provision of this Act, any amendment made by this Act, or the application thereof to any person or circumstances is held invalid, the validity of the remainder of the Act, any such amendments, and of the application of such provisions to other persons and circumstances shall not be affected thereby.

## SEC. 302. EFFECTIVE DATE; REPEAL; TRANSITION PROCE-DURES.

(a) IN GENERAL.—Except as provided in subsection (c), the amendments made by this Act shall take effect on the date of the enactment of this Act.

(b) REPEAL.—

(1) IN GENERAL.—Except as provided in subsection (c), sections 105A, 105B, and 105C of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1805a, 1805b, and 1805c) are repealed.

(2) TABLE OF CONTENTS.—The table of contents in the first section of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.) is amended by striking the items relating to sections 105A, 105B, and 105C.

(c) TRANSITIONS PROCEDURES.—

56

1      (1) PROTECTION FROM LIABILITY.—Notwith-

2   standing subsection (b)(1), subsection (l) of section

3   105B of the Foreign Intelligence Surveillance Act of

4   1978 (50 U.S.C. 1805b) shall remain in effect with

5   respect to any directives issued pursuant to such

6   section 105B for information, facilities, or assistance

7   provided during the period such directive was in ef-

8   fect.

9      (2) ORDERS IN EFFECT.—

10         (A) ORDERS IN EFFECT ON THE DATE OF

11      ENACTMENT.—Notwithstanding any other pro-

12      vision of this Act or of the Foreign Intelligence

13      Surveillance Act of 1978 (50 U.S.C. 1801 et

14      seq.)—

15            (i) any order in effect on the date of

16         enactment of this Act issued pursuant to

17         the Foreign Intelligence Surveillance Act of

18         1978 or section 6(b) of the Protect Amer-

19         ica Act of 2007 (Public Law 110–55; 121

20         Stat. 556) shall remain in effect until the

21         date of expiration of such order; and

22            (ii) at the request of the applicant,

23         the court established under section 103(a)

24         of the Foreign Intelligence Surveillance Act

25         of 1978 (50 U.S.C. 1803(a)) shall reau-

57

1          thorize such order if the facts and cir-
2          cumstances continue to justify issuance of
3          such order under the provisions of such
4          Act, as in effect on the day before the date
5          of the enactment of the Protect America
6          Act of 2007, except as amended by sec-
7          tions 102, 103, 104, 105, 106, 107, and
8          108 of this Act.
9          (B) ORDERS IN EFFECT ON DECEMBER 31,
10         2013.—Any authorization or order issued under
11         title VII of the Foreign Intelligence Surveillance
12         Act of 1978, as amended by section 101 of this
13         Act, in effect on December 31, 2013, shall con-
14         tinue in effect until the date of the expiration
15         of such authorization or order.
16         (3) DIRECTIVES IN EFFECT.—Notwithstanding
17    any other provision of this Act or of the Foreign In-
18    telligence Surveillance Act of 1978 (50 U.S.C. 1801
19    et seq.), any directive in effect on the date of the en-
20    actment of this Act issued pursuant to the Protect
21    America Act of 2007 (Public Law 110–55; 121 Stat.
22    552), or any amendment made by that Act, shall re-
23    main in effect until the date of expiration of such di-
24    rective.

58

1        (4) NEW ORDERS.—Notwithstanding any other

2    provision of this Act or of the Foreign Intelligence

3    Surveillance Act of 1978 (50 U.S.C. 1801 et seq.)—

4            (A) the head of an appropriate agency or

5        department of the United States may file an

6        application for an order under the Foreign In-

7        telligence Surveillance Act of 1978 (50 U.S.C.

8        1801 et seq.), as in effect on the day before the

9        date of the enactment of the Protect America

10       Act of 2007 (Public Law 110–55; 121 Stat.

11       552), except as amended by sections 102, 103,

12       104, 105, 106, 107 and 108 of this Act; and

13           (B) the court established under section

14       103(a) of the Foreign Intelligence Surveillance

15       Act of 1978 (50 U.S.C. 1803(a)) shall enter an

16       order granting such an application if the appli-

17       cation meets the requirements of such Act, as

18       in effect on the day before the date of the en-

19       actment of the Protect America Act of 2007,

20       except as amended by sections 102, 103, 104,

21       105, 106, 107, and 108 of this Act.

22       (5) EXTANT AUTHORIZATIONS.—At the request

23   of the applicant, the court established under section

24   103(a) of the Foreign Intelligence Surveillance Act

25   of 1978 (50 U.S.C. 1803(a)) shall extinguish any

59

1    extant authorization to conduct electronic surveil-

2    lance or physical search entered pursuant to such

3    Act.

4        (6) APPLICABLE PROVISIONS.—Any surveillance

5    conducted pursuant to an order entered pursuant to

6    this subsection shall be subject to the provisions of

7    the Foreign Intelligence Surveillance Act of 1978

8    (50 U.S.C. 1801 et seq.), as in effect on the day be-

9    fore the date of the enactment of the Protect Amer-

10   ica Act of 2007 (Public Law 110–55; 121 Stat.

11   552), except as amended by sections 102, 103, 104,

12   105, 106, 107, and 108 of this Act.