EXHIBIT M

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF


Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00079

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

> **". . . ODNI's communications with telecommunications companies about updating FISA to provide them retroactive legal immunity for illegal activities."**

We accept your request and have assigned it the reference number above. Please use this number when corresponding with us so that we can identify it easily. In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
      1 - PIPD/DF-2007-00079 ACC

**FOIA\RFC 00079 DNI Hofmann ACC.doc**

# EXHIBIT N

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF


Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00080

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

> "...exchanges that Director McConnell or other ODNI officials have had with members of the Senate or House of Representatives concerning amendments to FISA..."

We accept your request and have assigned it the reference number above. Please use this number when corresponding with us so that we can identify it easily. In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
        1 - PIPD/DF-2007-00080 ACC

**FOIA\RFC 00080 DNI Hofmann ACC.doc**

EXHIBIT O

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELEC. FRONTIER FOUND.,

    Plaintiff,

    v.

DEP'T OF JUSTICE,

    Defendant.

Civil Action No.  07-0656 (JDB)

## ORDER

Plaintiff Electronic Frontier Foundation ("EFF") seeks a preliminary injunction that would require defendant United States Department of Justice ("DOJ") to process plaintiff's Freedom of Information Act ("FOIA") request within twenty days and provide a Vaughn index ten days later.  The FOIA request, submitted on March 12, 2007, is for records relating to the use of National Security Letters ("NSLs") by the Federal Bureau of Investigation ("FBI").  Expedited processing of the request was sought, see 28 C.F.R. § 16.5(d)(1)(iv), and on March 30, 2007, the FBI informed plaintiff that expedited processing had been granted because of the exceptional media interest involving issues of government integrity relating to a report by the DOJ Inspector General on the FBI's use of NSLs.[*]

Dissatisfied with the pace of the expedited processing, plaintiff filed this action and its motion for a preliminary injunction on April 10, 2007.  After full briefing of the motion, the

---

[*]Indeed, recent news reports concerning an ongoing internal FBI investigation into NSL abuses confirms that there is a continuing high level of public interest in this issue.  See Pl.'s Suppl. Mem. in Support of Pl.'s Proposal for a FOIA Production Schedule.

-1-

Court held a conference with the parties on May 21, 2007, at which it was clear that although there remained some distance between the two sides, DOJ was expediting its processing of this request ahead of all but two other FOIA requests pending at the FBI, and EFF no longer realistically expected the degree of expedition originally sought in its motion for a preliminary injunction.  The Court therefore ordered the parties to meet and confer on scheduling and to submit a joint, if possible, scheduling proposal or, more likely, competing proposals -- which the Court has now received from each side.  The Court now resolves EFF's pending motion and sets a processing schedule in light of the parties' competing proposals.

1.  Expedited processing is underway at the FBI, based on the statutory directive that agencies must "process <u>as soon as practicable</u> any request for records to which [they have] granted expedited processing."  5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); <u>see also</u> 28 C.F.R. § 16.5(d)(4) ("If a request for expedited processing is granted, the request shall be given priority and should be processed as soon as practicable.").  The pace and status of that expedited processing of EFF's request is described in two detailed declarations from David M. Hardy, the responsible FOIA official at the FBI.  As he explains, the volume of potentially responsive material is extensive (estimated at well over 100,000 pages), and the FBI's expedited processing is extraordinary (at least ten full-time employees assigned exclusively to this request), but nonetheless the <u>search</u> for records will not even be completed until August 24, 2007.  <u>See</u> Apr. 24, 2007, Decl. of David M. Hardy ¶¶ 26-28; May 25, 2007, Second Decl. of David M. Hardy ¶¶ 7-12.  DOJ therefore proposes a rolling basis for processing under the following schedule: the first response/release 45 days from this scheduling order; further responses/releases at 30-day intervals; 2000 pages processed every 30 days; the search for records completed by August 24,

2007; a report to the Court regarding the completion of processing on August 24, 2007; and a

Vaughn index and briefing schedule delayed until after that time.  See Def.'s Notice of Filing of

Proposed Scheduling Order and Second Decl. of David M. Hardy at 2.  EFF counters with a

somewhat more expedited processing proposal, also on a rolling basis: the first response/release

20 days from this scheduling order; further responses/releases at 15-day intervals; 1500 pages

processed every 15 days; (presumably) a report to the Court when processing is complete; a

Vaughn index 15 days after processing is complete; and DOJ's motion for summary judgment 30

days thereafter.  See Notice of Filing of Pl.'s Proposal for a FOIA Production Schedule at 3-4.

      2.  Some courts have used the preliminary injunction vehicle to order expedition of the

processing of FOIA requests, most often where the agency has denied expedition.  See Elec.

Privacy Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30, 42 (D.D.C. 2006); Am. Civil Liberties

Union v. Dep't of Defense, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004); see also, e.g., Aguilera v.

FBI, 941 F. Supp. 144, 152-53 (D.D.C. 1996) (reviewing agency's decision to deny expedition);

Cleaver v. Kelley, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (same).  Other courts have declined to

employ preliminary injunctions, finding them generally inappropriate in FOIA settings.  See

Elec. Privacy Info. Ctr. v. Dep't of Justice, No. 03-cv-2078, slip op. at 1-2 (D.D.C. Oct. 20,

2003), vacated as moot, 2004 WL 2713119 (D.C. Cir. 2004); Judicial Watch v. Dep't of Justice,

No. 00-cv-1396, slip op. at 1-2 (D.D.C. June 27, 2000); see also, e.g., Al-Fayed v. CIA, No. 00-

cv-2092, 2000 WL 34342564, at *6 (D.D.C. Sept. 20, 2000) (denying preliminary injunction

filed after agency denied expedited processing); Assassination Archives & Research Ctr., Inc. v.

CIA, No. 88-cv-2600, 1988 U.S. Dist. LEXIS 18606, at *1 (D.D.C. Sept. 29, 1988) (same).

Certainly, the vehicle of a preliminary injunction motion is an imperfect means to address what

is, in essence, a scheduling issue.  Moreover, the possibility of overuse, or even abuse, of preliminary injunction requests in the FOIA scheduling context is obvious.  Nonetheless, where a plaintiff contends in good faith that an agency has failed to expedite processing of a FOIA request in accordance with statute or regulation -- as seems to be the case here -- the availability of an order that effectively is an injunction, preliminary or otherwise, should not be foreclosed.

3.  Here, the Court concludes that it need not grapple with and resolve issues of the propriety of a preliminary injunction under the traditional four-factor test.  The FBI has granted expedited processing, the parties have now proposed competing but parallel expedited processing schedules that are not dramatically different, and the Court's task boils down to assessing which proposed schedule better comports with the "as soon as practicable" statutory and regulatory standard under the circumstances reflected in the record.  Upon consideration of the parties' proposals, the Hardy declarations, and that standard, the Court concludes that a schedule that is more expedited than DOJ requests, but not quite as expedited as EFF's latest proposal, is warranted under the circumstances.

4.  Accordingly, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**, and the following schedule is **ORDERED** for processing EFF's March 12, 2007, request:

    a.  processing, and resulting responses and releases, shall be on a "rolling basis" as agreed by EFF and DOJ;

    b.  DOJ and the FBI shall provide the first response/release within 20 days from this Order -- i.e., by not later than July 5, 2007 -- in light of the time that has already passed since filing of the Second Hardy Declaration and the parties' scheduling proposals;

c.    subsequent responses/releases shall be provided every 30 days, given that the
preparation of a response every 15 days (as suggested by EFF) would be
inefficient and unduly burdensome;

d.    the FBI shall process 2500 pages every 30 days;

e.    the search for responsive records shall be completed by August 10, 2007, given
the somewhat lower volume of potentially responsive records reflected in the
representations to the Court since the first Hardy Declaration and the slightly
faster pace of processing the Court is requiring;

f.    DOJ shall file a report regarding the completion of the search for responsive
records and the status of the ongoing processing of records by not later than
August 14, 2007;

g.    the parties shall, by not later than August 20, 2007, meet and confer regarding the
completion of processing, the provision of a <u>Vaughn</u> index, and a summary-
judgment briefing schedule; and

h.    the parties shall file a joint scheduling proposal, or competing proposals if they
cannot agree, by not later than August 24, 2007.


**SO ORDERED.**


                                   /s/ John D. Bates
                                   JOHN D. BATES
                                   United States District Judge

Dated: <u>June 15, 2007</u>

-5-

EXHIBIT P

# Office of the Director of National Intelligence

## FREEDOM OF INFORMATION ACT ANNUAL REPORT

## FISCAL YEAR 2006

[This report contains information in the format specified in Department of Justice guidance to the EFOIA.  Text in *italics* is the information provided in response to specified headings.]

## I.  Basic Information Regarding Report

A.  Name, title, address, and telephone number of person to be contacted with questions about the report.

> *Mr. John F. Hackett*
> *Director, Information Management Office*
> *Office of the Director of National Intelligence*
> *Washington DC  20511*
> *(703) 482-1707*

B.  Electronic address for report on the World Wide Web.

> *An electronic copy of this report will be posted to www.dni.gov*

C.  How to obtain a copy of the report in paper form.

> *Write to the above address.*

## II.  How to Make a FOIA Request

*Submit a written request to the mail address provided.  Transmission via facsimile also is acceptable, (703) 482-2144.*

A.  Names, addresses, and telephone numbers of all individual agency components and offices that receive FOIA requests.

> *The mailing address in section I. A., is the single, central office that receives all FOIA requests for the Director of National Intelligence (DNI).  However, FOIA requests received by components of the Office of the DNI (ODNI) are referred to Mr. Hackett.*

B.  Brief description of the agency's response-time ranges.

*For those FOIA cases closed in FY 2006, 100% were closed within 190 days; median response time was 43 days; average response time was 56 days.*

*For those Privacy Act cases closed in FY 2006, 100% were closed within 150 days; median response time was 127 days; average response time was 127 days.*

C.  Brief description of why some requests are not granted.

*Of the 20 requests completed in FY 2006, six were either withdrawn by the requester or cancelled because the information sought had been posted to the ODNI public web site; six requests were for information under the auspices of other government agencies; three requests resulted in no records being located; one request was granted in part with only non-substantive administrative information being removed; one request was cancelled because the requester failed to provide the necessary follow-up data; three requests were cancelled and consolidated into a single request.*

## III.  Definitions of Terms and Acronyms Used in the Report

A.  Agency-specific acronyms or other terms.

*ODNI:  Office of the Director of National Intelligence*

B.  Basic terms, expressed in common terminology.

1.  FOIA/PA Request – Freedom of Information Act/Privacy Act request.  A FOIA request is generally a request for access to records concerning a third party, an organization, or a particular topic of interest.  A Privacy Act request is a request for records concerning oneself; such requests are also treated as FOIA requests.  (All requests for access to records, regardless of which law is cited by the requester, are included in this report.)

2.  Initial Request – a request to a federal agency for access to records under the Freedom of Information Act.

3.  Appeal – a request to a federal agency asking that it review at a higher administrative level a full denial or partial denial of access to records under the Freedom of Information Act, or any other FOIA determination such as a matter pertaining to fees.

4.  Processed Request or Appeal – a request or appeal for which an agency has taken a final action on the request or the appeal in all respects.

5.  Multi-track Processing – a system in which simple requests requiring relatively minimal review are placed in one processing track and more voluminous and complex requests are placed in one or more other tracks.  Requests in each track are processed on a first-in/first-out

basis.  A requester who has an urgent need for records may request expedited processing (see below).

6.  Expedited Processing – an agency will process a FOIA request on an expedited basis when a requester has shown an exceptional need or urgency for the records which warrants prioritization of his or her request over other requests that were made earlier.

7.  Simple Request – a FOIA request that an agency using multi-track processing places in its fastest (non-expedited) track based on the volume and/or simplicity of records requested.

8.  Complex Request – a FOIA request that an agency using multi-track processing places in a slower track based on the volume and/or complexity of records requested.

9.  Grant – an agency decision to disclose all records in full in response to a FOIA request.

10.  Partial Grant – an agency decision to disclose a record in part in response to a FOIA request, deleting information determined to be exempt under one or more of the FOIA exemptions; or a decision to disclose some records in their entireties, but to withhold others in whole or in part.

11.  Denial – an agency decision not to release any part of a record or records in response to a FOIA request because all the information in the requested records is determined by the agency to be exempt under one or more of the FOIA's exemptions, or for some procedural reason (such as because no record is located in response to a FOIA request).

12.  Time Limits – the time period in the Freedom of Information Act for an agency to respond to a FOIA request (ordinarily 20 working days from proper receipt of a "perfected" FOIA request).

13.  "Perfected" Request – a FOIA request for records which adequately describes the records sought, which has been received by the FOIA office of the agency or agency component in possession of the records, and for which there is no remaining question about the payment of applicable fees.

14.  Exemption 3 Statute – a separate federal statute prohibiting the disclosure of a certain type of information and authorizing its withholding under FOIA subsection (b)(3).

15. Median Number – the middle, not average, number.  For example, of 3, 7, and 14, the median number is 7.

16. Average Number – the number obtained by dividing the sum of a group of numbers by the quantity of numbers in the group.  For example, of 3, 7, and 14, the average number is 8.

## IV.  Exemption 3 Statutes

List of Exemption 3 Statutes relied on by agency during current fiscal year.

*(1)  Section 6 of the Central Intelligence Agency Act of 1949, as amended, codified at 50 U.S.C. § 403g.*

1.  Brief description of type(s) of information withheld under each statute.

*Among other things, the Central Intelligence Agency Act of 1949 authorizes the Agency to protect from disclosure information relating to the organization, functions, names, official titles, salaries, or numbers of personnel employed by the CIA, including information relating to intelligence sources and methods.  CIA information on one document was withheld pursuant to this statute.*

2.  Statement of whether a court has upheld the use of each statute.  If so, cite example.

*Courts have upheld the use of the following statutes:*

*CIA v. Sims, 471 U.S. 159 (1985), National Security Act of 1947*

*Halperin v. CIA, 629 F.2d 144 (D.C. Cir. 1980) (section 6, CIA Act of 1949)*

*Minier v. CIA, 88 F.3d 796 (9th Cir. 1996) (section 6, CIA Act of 1949)*

*See "U.S. Department of Justice Freedom of Information Act Guide and Privacy Act Overview" for additional examples.*

## V.  Initial FOIA/PA Access Requests

A.  Numbers of initial requests.

1.  Requests pending as of end of preceding year:  *0*

2.  Requests received during current fiscal year:  *44*

3.  Requests processed during current fiscal year:  *20*

4.  Requests pending as of end of current fiscal year:  *24*

B.  Disposition of initial requests.

1. Number of total grants: *0*

2. Number of partial grants: *1*

3. Number of denials: *0*

    Number of times each FOIA exemption used (counting each exemption once per request):

        (1) Exemption 1: *0*

        (2) Exemption 2: *0*

        (3) Exemption 3: *1*

        (4) Exemption 4: *0*

        (5) Exemption 5: *0*

        (6) Exemption 6: *0*

        (7) Exemption 7(a): *0*

        (8) Exemption 7(b): *0*

        (9) Exemption 7(c): *0*

        (10) Exemption 7(d): *0*

        (11) Exemption 7(e): *0*

        (12) Exemption 7(f): *0*

        (13) Exemption 8: *0*

        (14) Exemption 9: *0*

4. Other reasons for nondisclosure (total):

    a. no records: *3*

    b. referrals: *6*

    c. request withdrawn: *3*

    d. fee-related reason: *N/A*

e.  records not reasonably described:  *0*

f.  not a proper FOIA request for some other reason:  *0*

g.  not an agency record:  *0*

h.  duplicate request:  *0*

i.  other:  *Cancellations*:  *7 (Four similar requests from the same requester were consolidated into one request and four requests were cancelled because the information sought was on the ODNI public web site.)*

## VI. Appeals of Initial Denials of FOIA/PA Requests

A.  Numbers of appeals.  *0*

    1.  Number of appeals received during fiscal year:  *N/A*

    2.  Number of appeals processed during fiscal year:  *N/A*

B.  Disposition of appeals.  *N/A.*

    1.  Number completely upheld:  *N/A*

    2.  Number partially reversed:  *N/A*

    3.  Number completely reversed:  *N/A*

        Number of times each FOIA exemption used (counting each exemption once per appeal):

        (1) Exemption 1:  *N/A*

        (2) Exemption 2:  *N/A*

        (3) Exemption 3:  *N/A*

        (4) Exemption 4:  *N/A*

        (5) Exemption 5:  *N/A*

        (6) Exemption 6:  *N/A*

        (7) Exemption 7(a):  *N/A*

(8) Exemption 7(b):  *N/A*

(9) Exemption 7(c):  *N/A*

(10) Exemption 7(d):  *N/A*

(11) Exemption 7(e):  *N/A*

(12) Exemption 7(f):  *N/A*

(13) Exemption 8:  *N/A*

(14) Exemption 9:  *N/A*

4.  Other reasons for nondisclosure (total):

a.  no records:  *N/A*

b.  referrals:  *N/A*
c.  request withdrawn:  *N/A*

d.  fee-related reason:  *N/A*

e.  records not reasonably described:  *N/A*

f.  not a proper FOIA request for some other reason:  *N/A*

g.  not an agency record:  *N/A*

h.  duplicate request:  *N/A*

i.  other:  *N/A*

## VII.  Compliance With Time Limits/Status of Pending Requests

*A.*  Median processing time for requests processed during the year.

1.  Simple requests.

a.  number of requests processed:  *20*

b.  median number of days to process:  *43*

2.  Complex requests.  *0*

        a.  number of requests processed:  *0*

        b.  median number of days to process:  *N/A*

    3.  Requests accorded expedited processing.  *0*

        a.  number of requests processed:  *0*

        b.  median number of days to process:  *N/A*

B.  Status of pending requests.

    1.  Requests pending as of end of current fiscal year:  *24*

    2.  Median number of days that such requests were pending as of that date:  *80*

## VIII.  Comparisons With Previous Year(s)

A.  Comparison of number of requests received:  *44 in FY 06 vs. 7 in FY 05*

*B.*  Comparison of number of requests processed:  *20 in FY 06 vs. 7 in FY 05*

C.  Comparison of median numbers of days requests were pending as of end of fiscal year:  *No requests were pending from FY 05*

D.  Other statistics significant to agency:  *There were 0 requests for expedited processing received in FY06, 0 requests granted.*

## IX.  Costs/FOIA Staffing

A.  Staffing levels.

    1.  Number of full-time FOIA personnel:  *0*

    2.  Number of personnel with part-time or occasional FOIA duties (estimated FTE):  *.93*

    3.  Total estimated number of personnel (FTE):  *.93*

B.  Total estimated costs (including staff and all resources).

    1.  FOIA processing (including appeals):  *$84,763*

    2.  Litigation-related activities:  *$1,781*

    3.  Total estimated costs:  *$86,544*

C.  Statement of additional resources needed for FOIA compliance (optional)

**X.  Fees**

A.  Total amount of fees collected by agency for processing requests:  *$0.00*

B.  Percentage of total costs:  *N/A*

**XI.  FOIA Regulations (Including Fee Schedule)**

*The ODNI was established on April 21, 2005, and is preparing its FOIA Regulations to be published in the Federal Register.*

## XII.  Report on Executive Order 13392 Implementation

The Office of the Director of National Intelligence made progress in improving its FOIA processes and procedures as required by EO 13392, *Improving Agency Disclosure of Information.* During the reporting period of 14 June 2006, through 31 January 2007, the ODNI received a surge of FOIA and Privacy Act requests. Despite this increase, the FOIA Office, with a small staff, was able to make progress on implementing the planned improvements that were submitted in June.

### A.  Description of Supplementation/Modification of Agency Improvement Plan (if applicable)

Not applicable

### B.  Report on the ODNI's Implementation of its FOIA Improvement Plan

The ODNI's FOIA Improvement Plan focused on three areas of improvement, *Affirmative and Proactive Disclosures; Overall FOIA Web Site Improvements; and the Centralization of the FOIA Process.* During the reporting period, the ODNI was able to make progress in most of the plan's improvement areas and was able to meet many of its milestones.

1.  Affirmative and Proactive Disclosures – The ODNI met and completed all milestones in this improvement area including preliminary review of current materials to be posted on its public web site. During the reporting period, the office increased content to its public web site and to the web sites of its components.  The content consisted of many documents of interest including its unclassified policy documents, and other documents including the *Declassified Key Judgments for the National Intelligence Estimate, "Trends in Global Terrorism: Implications for the United States," dated April 2006*; *US Intelligence Community Estimate Products on Yugoslavia, 1948-1990;* and the *ODNI Progress Report relating to the WMD Commission Recommendations* to name a few.  In addition, the National Counterterrorism Center (NCTC), the National Counterintelligence Executive (NCIX), the National Intelligence Council (NIC), and the Program Manager for the Information Sharing Environment (PM ISE) all posted documents of interest to their respective public web sites.

2.  Overall Web Site Improvements – The ODNI reviewed all FOIA-related content on its public web sites, and established FOIA links on all public web sites where FOIA information and FOIA points of contact information may be found.  In addition, all of the ODNI web sites now either have FOIA reading rooms or have areas where frequently requested documents are posted.  Most of the web sites post current or recent disclosures on their front web site pages. Since there are links between all of the ODNI web sites, a "virtual" catalog of all ODNI released materials has been created.  The office continues to work on internal policies regarding technology standards for the creation, formatting, and maintenance of new ODNI web sites.

3.  Centralization of the FOIA Process – During the reporting period, progress was made in the ODNI in centralizing FOIA processes and procedures. The FOIA staff made

contact with various directorate and component chiefs of staff to informally establish the authority of the Chief FOIA Officer and Director of Information Management as the primary responsible officers for FOIA. Other contacts were made within various offices to try to establish a FOIA network of points of contact to assist with the handling of FOIA requests. In addition, the mail handling and faxing policies and procedures were reviewed to ensure the proper distribution of all mail addressed to the Chief FOIA Officer and Director of Information Management.

### C.  Identification and Discussion of any Deficiency in Meeting Plan Milestones

Despite the improvement efforts, ODNI did not meet all of its milestones in the *Centralization of the FOIA Process* improvement area.  The departures of key staff during this period prevented additional improvements in this area.  During this period, the new attorney in the Office of General Counsel, who was responsible for the drafting of the FOIA regulations, departed in August after just three months on the job.  In addition, the candidate chosen to be the Deputy Information Release Officer to handle day-to-day FOIA and PA requests withdrew her application just prior to her arrival in November.  As a result of these staffing issues, the ODNI has not yet published its FOIA regulations, developed its own written internal FOIA instructions, or produced a FOIA handbook.

However, the ODNI has taken significant action to correct these deficiencies.  A new FOIA attorney was hired November 2006, went through security processing, and arrived in the Office of General Counsel on 8 January 2007.  This attorney is currently reviewing the draft FOIA regulations, which are near completion.  We hope to have the regulations sent to the Office of Management and Budget by mid- February. The Information Management Office reposted its job announcement for Deputy Information Release Officer. The vacancy closed 5 January and the office received several strong applications from people who have not only managed FOIA operations but have written policies and procedures and provided training for FOIA and PA processing.  We will be scheduling candidate interviews within the next two weeks.  Once the regulations are finalized, the ODNI will draft and promulgate the FOIA handbook and its own internal instructions on FOIA and PA procedures.

### D.  Other Executive Order Activities

During the reporting period, the office witnessed a surge in FOIA requests due to the public's interest in the ODNI's work. To respond to requests as quickly as possible, the office acknowledged, clarified, and responded to requests by telephone, e-mail, and fax in addition to US mail.  The office also posted items of high interest, such as DNI statements and speeches, as quickly as possible directly to its unclassified web site.  The ODNI also continues to work with the CIA, the ODNI's FOIA support provider to streamline processes and procedures to provide better service to the public.

### E.  Concise Descriptions of FOIA Exemptions

- (b)(1) exempts from disclosure material properly classified, pursuant to an Executive Order, because it is related to matters of national defense or foreign policy.

- (b)(2) exempts from disclosure information, which pertains solely to the internal personnel rules and practices of the Agency.

- (b)(3) exempts from disclosure materials that another federal statute protects, provided that the other federal statute either requires that the matters be withheld, or establishes particular criteria for withholding or refers to particular types of matters to be withheld.

- (b)(4) exempts from disclosure information such as trade secrets and commercial or financial information obtained from a person on a privileged or confidential basis.

- (b)(5) exempts from disclosure inter- and intra-agency communications protected by legal privileges.

- (b)(6) exempts from disclosure material that would be an unwarranted invasion of the personal privacy of other individuals.

- (b)(7) exempts from disclosure law enforcement investigatory records that, if released, would either (A) interfere with enforcement proceedings, (B) deprive a person of the right to a fair trial; (C) be an unwarranted invasion of personal privacy; (D) identify a confidential source; (E) reveal investigative techniques and procedures; or (F) endanger someone's life or physical safety.

- (b)(8) exempts from disclosure information contained in reports or examinations of an agency responsible for regulating or supervising banks, savings and loans, or other financial institutions.

- (b)(9) exempts from disclosure information about wells.

**F. Additional Statistics**

     1. Time range of requests pending, by date of request (or, where applicable, date of referral from another agency)

           23 January 2006 to 3 January 2007

     2. Time range of consultations pending with other agencies, by date of initial interagency communication.

           Not applicable