PETER D. KEISLER
Assistant Attorney General
SCOTT N. SCHOOLS
United States Attorney
ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN Bar No. 23840-49)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6120
Washington, D.C. 20530
Telephone: (202) 616-5084
Facsimile: (202) 616-8460
Andrew.Warden@usdoj.gov

*Attorneys for Defendant Office of the*
*Director of National Intelligence*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

_____

|  |  |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| OFFICE OF THE DIRECTOR OF NATIONAL | ) |
| INTELLIGENCE, | ) |
|  | ) |
| Defendant. | ) |

Civil Action No. 3:07-5278 (SI)

**DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR
PRELIMINARY INUNCTION**

Hearing Date: November 30, 2007

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................1

II.    BACKGROUND

    1.    Statutory and regulatory framework............................................................3

    2.    Factual background......................................................................................5

    3.    ODNI's efforts to process plaintiff's FOIA requests..................................5

III.    ARGUMENT

    1.    Preliminary injunctions are generally not appropriate in FOIA cases.........7

    2.    Plaintiff has failed to demonstrate a likelihood of success on the
        merits because the FOIA's expedited processing provisions do
        not require that processing be completed within a time certain.................9

    3.    Plaintiff has not established a significant risk of irreparable
        injury in the absence of a preliminaryinjunction.......................................15

    4.    An order requiring ODNI to accelerate processing of plaintiff's
        FOIA requests would not serve the public interest....................................19

IV.    CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Al-Fayed v. Central Intelligence Agency*,
    2000 WL 34342564 (D.D.C. Sept. 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -16-

*Al-Fayed v. Central Intelligence Agency*,
    254 F.3d 300 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -19-

*American Civil Liberties Union v. Dep't of Justice*,
    321 F. Supp. 2d 24 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*American Civil Liberties Union  v. Dep't of Justice*,
    2005 WL 588354 (N.D. Cal. Mar. 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*American Civil Liberties Union v. Dep't of Defense*,
    339 F. Supp. 2d 501 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -14-

*Associated General Contractors of Calif. v. Coalition for Economic Equity*,
    950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -16-

*Assassination Archives & Research Ctr., Inc. v. Central Intelligence Agency*,
    1988 U.S. Dist. LEXIS 18606 (D.D.C., Sept. 29, 1988) . . . . . . . . . . . . . . . . . . . . . -7-

*Caribbean Marine Services Co., Inc. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Dahl v. HEM Pharmaceuticals Corp.*,
    7 F.3d 1399 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Electronic Frontier Foundation v. Dep't of Justice*,
    slip op., No. 06-1773 (D.D.C. Sept. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -15-

*Electronic Frontier Foundation v. Dep't of Justice*,
    slip op., No. 07-656 (D.D.C. June 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -19-

*Electronic Privacy Information Center ("EPIC") v. Dep't of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -14-, -18-

*Electronic Privacy Info. Center v. Dep't of Justice*,
    2005 U.S. Dist. LEXIS 40318 (D.D.C., Nov. 16, 2005) . . . . . . . . . . . . . . . . . . . . . -14-

*Gerstein v. Central Intelligence Agency*,
    2006 WL 3462658 (N.D. Cal. Nov. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -15-

*Judicial Watch v. Dep't of Energy*,
    191 F. Supp. 2d 138 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, 13-

*Judicial Watch v. Rossotti*,
        285 F. Supp. 2d 17 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Judicial Watch v. Dep't of Justice*,
        slip op., No. 00-1396  (D.D.C., June 27, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

*King v. Saddleback Junior College Dist.*,
        425 F.2d 426 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Massey v. Federal Bureau of Investigation*,
        3 F.3d 620 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Mazurek v. Armstrong*,
        520 U.S. 968, 972 (1997) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -12-

*Miller v. California Pacific Medical Center*,
        19 F.3d 449 (9th Cir. 1994) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

*Miscavige v. IRS*,
        2 F.3d 366 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*The Nation Magazine v. Dep't of State*,
        805 F. Supp. 68 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -16-, -18-, -19-

*Natural Resources Defense Council v. Dep't of Energy*,
        191 F. Supp. 2d 41 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Payne Enterprises v. United States*,
        837 F.2d 486 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Taylor v. Westly*,
        488 F.3d 1197 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

*Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*,
        127 S. Ct. 1199 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Univ. of Texas v. Camenisch*,
        451 U.S. 390 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-


**STATUTES**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

5 U.S.C. § 552(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

5 U.S.C. § 552(a)(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-, -8-

5 U.S.C. § 552(a)(6)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

5 U.S.C. § 552(a)(6)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -11-

5 U.S.C. § 552(a)(6)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

5 U.S.C. § 552(a)(6)(E)(i)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

5 U.S.C. § 552(a)(6)(E)(i)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

5 U.S.C. § 552(a)(6)(E)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-, -4-, -10-

5 U.S.C. § 552(a)(6)(E)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

5 U.S.C. § 552(a)(6)(E)(v)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

5 U.S.C. § 552(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

50 U.S.C. § 1801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

50 U.S.C. §§ 403(b)(1), (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

Federal Rule of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

Federal Rule of Civil Procedure 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Pub. L. No. 104-231, 110 Stat 3048 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

Pub. L. No. 108-458, 118 Stat. 3638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

Pub. L. No. 110-55, 121 Stat. 552. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

**FEDERAL REGULATIONS**

28 C.F.R. § 16.5(d)(1)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

32 C.F.R. § 1700 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

32 C.F.R. § 1700.12(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

32 C.F.R. § 1700.12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -10-

32 C.F.R. § 1700.12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

32 C.F.R. § 1700.12(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

**OTHER AUTHORITIES**

Executive Order 12958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

H. R. Rep. No. 104-795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -10-, -12-, -20-

S. Rep. 104-272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

Implementation of the USA Patriot Act: Sections of the
Act that Address the Foreign Intelligence Surveillance Act (FISA),
109th Cong. (April 26 & 28, 2005), Hearing Before the Subcommittee
on Crime, Terrorism, and Homeland Security of the Committee on the
Judiciary of the House of Representatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

Tim Starks, Senators Get to See NSA Documents in an Attempt to Break
FISA Logjam (Oct. 25, 2007), *available at*
 http://public.cq.com/docs/cqt/news110-000002613484.html . . . . . . . . . . . . . . . . . . . . . -17-

Ellen Nakashima, A Story of Surveillance, WASHINGTON POST, Nov. 7, 2007, at D1 . . . . . . -19-

# INTRODUCTION

Plaintiff Electronic Frontier Foundation ("EFF" or "plaintiff") asks the Court to invoke its extraordinary powers to award temporary emergency relief by issuing a preliminary injunction to require defendant, Office of the Director of National Intelligence ("ODNI"), to complete the processing of plaintiff's requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, within ten days and to provide a *Vaughn* index ten days thereafter.  Plaintiff's FOIA requests seek documents regarding ODNI's communications with Members of Congress and telecommunications companies concerning proposed amendments to the Foreign Intelligence Surveillance Act ("FISA").  Plaintiff argues it will suffer irreparable harm if ODNI does not complete processing of plaintiff's FOIA requests before Congress acts to amend the FISA.

Plaintiff's motion should be denied.  Plaintiff's request for relief by way of a preliminary injunction – which is not preliminary in any sense but rather is an attempt to use a procedural mechanism intended to provide emergency relief as a scheduling tool – is generally inappropriate in FOIA cases.  Plaintiff also offers the Court no compelling reason that justifies granting the extraordinary relief it seeks.

Indeed, the relief plaintiff seeks is inconsistent with the way FOIA requests are processed generally, and is also inconsistent with the plain language of the expedited processing provision of the FOIA.  Plaintiff attempts to invent a time limit by which ODNI must complete its FOIA processing by citing to the provision of the FOIA that gives agencies twenty business days to make a determination about FOIA requests in the first instance.  That provision, however, does not establish a mandatory time by which the agency must release responsive documents to plaintiff.  Instead, the inability to respond within the 20-day period simply means that the requester may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies.

In any event, ODNI has already granted plaintiff's request to expedite processing under the FOIA, and, as explained in the attached declaration of John Hackett, ODNI's Director of Information Management, ODNI is working diligently to process plaintiff's requests as soon as

1    practicable.  ODNI anticipates providing plaintiff with an interim release before the end of

2    November, and a final response before December 31, 2007.  Contrary to the claims made by

3    plaintiff, the expedited processing provision of the FOIA provides that expedited FOIA requests

4    are to be processed by the agency "as soon as practicable." *Id.* § 552(a)(6)(e)(iii).  Plaintiff

5    simply misunderstands the purpose and implications of FOIA's expedited processing provisions.

6    A determination that a request warrants expedited processing means only that the request should

7    be processed ahead of other requests that have not been granted expedited treatment.  A grant of

8    expedited processing by an agency does not mean that the request can or should be processed

9    within a specified time frame or on a schedule dictated by the individual or organization who

10   made the FOIA request.  Instead, the FOIA provides that requests, which are granted expedition

11   by an agency, should be processed "as soon as practicable," with due regard for the agency's

12   processing capacity and current workload and the need to ensure that requests are processed

13   properly.  ODNI, having granted plaintiff's request for expedited treatment, is already working

14   to complete the processing of plaintiffs's requests as soon as practicable and has taken

15   appropriate steps to that end.  Notably, plaintiff has been moved to the front of ODNI's FOIA

16   queue, ahead of forty-two non-expedited requests.  Plaintiff's demand that processing be

17   completed within 10 days is not required by the FOIA and is simply not practicable, for reasons

18   explained in the Hackett declaration.

19           In addition to lacking success on the merits, plaintiff has failed to meet its essential

20   burden of identifying any irreparable harm that it might suffer if the requested relief is not

21   granted.  Plaintiff's claim that it will suffer irreparable harm if ODNI does not complete

22   processing of the requests according to plaintiff's proposed 10 day time line is entirely

23   speculative.  Further, plaintiff has not produced sufficient evidence to establish that it will suffer

24   irreparably absent the requested injunction.  Instead, plaintiff seeks to use the preliminary

25   injunction provisions of Federal Rule of Civil Procedure 65, which are intended to provide a

26   shield against imminent and irreparable injury while a court considers the merits of a dispute, to

27

28

accelerate artificially the proceedings in this case.[1]  The injunction proposed by plaintiff does not seek to maintain the status quo; rather plaintiff's proposed injunction seeks a version of ultimate relief – the immediate disclosure of non-exempt documents.  Awarding plaintiff the ultimate relief it seeks by way of a preliminary injunction at this early stage of these proceedings, before defendant is even required to answer plaintiff's complaint, is without an appropriate basis in law.

For these reasons, as discussed further below, plaintiff's motion for preliminary injunction should be denied.

## BACKGROUND

### 1.    Statutory and regulatory framework

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis.  In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests.  *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles requesters to move immediately to the front of an agency processing queue, ahead of requests filed previously by other persons.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency."  *Id.* § 552(a)(6)(E)(i)(II).  FOIA defines "compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."

---

[1] Congress already has specifically recognized that litigation involving FOIA claims is to be accelerated.  *See* 5 U.S.C. § 552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA complaint as opposed to the ordinary 60 days provided by Fed. R. Civ. P. 12).  Plaintiff's effort to seek a preliminary injunction is nothing more than an effort to bypass these already-accelerated procedures.

5 U.S.C. § 552(a)(6)(E)(v).[2]  The requester bears the burden of showing that expedition is appropriate.  *See Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001).  FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition."  5 U.S.C. § 552(a)(6)(E)(iii).

ODNI recently issued regulations addressing its FOIA administration and compliance with EFOIA by final rule effective August 16, 2007.[3]  *See* 32 C.F.R. § 1700 *et seq*.  With respect to processing FOIA requests, ODNI's regulations generally provide that "[a]ll requests will be handled in the order received on a strictly 'first-in, first-out' basis."  *See* 32 C.F.R. § 1700.12(a).  The regulations also include a provision addressing expedited processing, which allows requests to "be taken out of order and given expedited processing treatment whenever it is determined that they involve:

> (1) Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
> (2) An urgency to inform the public concerning an actual or alleged Federal Government activity, if made by a person primarily engaged in disseminating information.

32 C.F.R. § 1700.12 (c).  In the event a request for expedited processing is granted by ODNI, "the request shall be given priority and shall be processed as soon as practicable" 32 C.F.R. § 1700.12(b).

---

[2]  Both Congress and the D.C. Circuit have recognized that the expedition categories are to be "narrowly applied" because, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requesters who do not qualify for its treatment."  *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, *reprinted at* 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

[3]  The position of Director of National Intelligence was created by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of the Title I of the National Security Act of 1947).  The DNI serves as the head of the United States Intelligence Community and as the principal advisor to the President, the National Security Council, and the Homeland Security Council, for intelligence-related matters related to national security.  *See* 50 U.S.C. §§ 403(b)(1), (2).

### 2.     Factual background

By letters dated August 31, 2007, plaintiff submitted two FOIA requests to ODNI for the following documents: "all agency records from April 2007 to the present concerning briefings, discussions, or other exchanges that Director McConnell or other ODNI officials have had with": a) "members of the Senate or House of Representatives"; and b) "representatives of telecommunications companies concerning amendments to FISA [Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*, as amended]. *See* Hackett Decl. ¶ 3. Plaintiff's letters also sought expedited processing of their FOIA requests pursuant to 32 C.F.R. § 1700.12(c)(2), asserting that the public has a significant interest in ODNI's efforts to amend the FISA. *See id.* ¶¶ 3-4.

On September 11, 2007, ODNI sent plaintiff two separate response letters acknowledging receipt of plaintiff's FOIA requests and granting expedited processing for both requests. *See id.* ¶ 4. ODNI also informed plaintiff that the requests will be processed "as soon as practicable." *See id.*

Plaintiff filed its complaint in this action under the FOIA on October 17, 2006, seeking expedited processing and release of the records that plaintiff requested from ODNI in its two FOIA requests. *See* Complaint For Injunctive Relief (dkt. no. 1). On October 29, 2007, plaintiff filed a motion for preliminary injunction (dkt. no. 6), requesting that the Court order ODNI: (1) to complete processing of plaintiff's FOIA requests within 10 days, (2) to submit a *Vaughn* index within 20 days, and (3) to provide plaintiff with a declaration within 30 days describing ODNI's compliance the two aforementioned requests for relief. *See* Plaintiff's Proposed Order.

### 3.     ODNI's efforts to process plaintiff's FOIA requests.

Since receiving plaintiff's requests, ODNI has worked diligently to process them. *See* Declaration of John F. Hackett (attached as Exhibit 1). As soon as the decision was made to expedite plaintiff's FOIA requests, they were given priority status and moved to the front of the FOIA queue. *See* Hackett Dec. ¶ 5. Plaintiff's requests were the first ever granted expedited processing by ODNI, and they are currently being processed ahead of forty-two pending FOIA requests. *See id.*

1    Upon granting expedited processing, ODNI immediately began coordinating how the

2    requests should be handled, including whether and where searches should be performed within

3    ODNI. *Id.* ¶ 6. ODNI determined that searches should be performed in a variety of offices

4    reasonably likely to have responsive material. *Id.* ODNI also determined that individuals

5    reasonably likely to have responsive material should search their electronic and paper files and

6    advise if they maintain any responsive records. *Id.* In those instances where records are located,

7    the records are forwarded for processing. *Id.* The individuals asked to search for records

8    responsive to plaintiff's FOIA requests also work on significant mission-related matters relating

9    to the national security of the United States. *Id.* ¶ 7. These ODNI officials and employees are

10   required to stop this very important work in order to perform the necessary searches for this case,

11   and all of them are doing so as soon as practicable. *Id.*

12   As of the date of this filing, most of the searches for responsive material have been

13   completed and ODNI is currently processing the material located thus far. *Id.* ¶ 8. As

14   documents are located, ODNI conducts a continual analysis and review of the documents. *Id.*

15   This process includes the identification and removal of duplicative and non-responsive material,

16   the creation of working copies of the documents and document indexes, and an assessment of

17   any necessary consultations and/or referrals with those entities maintaining an equity in the

18   documents, as well as review for the application of any FOIA exemptions. *Id.*

19   As a result of ODNI's comprehensive search and review process, approximately 250

20   pages of unclassified material and approximately sixty-five pages of classified material have

21   been identified thus far. *Id.* ¶ 9. Because the existence of any classified material contributes

22   significantly to the complexities attendant to processing any FOIA request, s*ee id.* ¶¶ 10-11,

23   ODNI is focusing primarily on processing the unclassified materials as soon as practicable. *Id.* ¶

24   12. Based on these efforts, ODNI anticipates providing plaintiff with an interim response by

25   November 30, 2007, and with a final response by December 31, 2007. *Id.* ¶¶ 12-13. Given the

26   complexity of plaintiff's requests and the sensitivity of some of the materials at issue, this

27   schedule will require ODNI's small FOIA stall to work almost exclusively on plaintiff's case

28   until the end of the year. *Id.* ¶ 13.

1    For the reasons explained herein, plaintiff's motion should be denied.

2    **ARGUMENT**

3    "A preliminary injunction is an extraordinary and drastic remedy, one that should not be

4    granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.*

5    *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M.

6    Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed.1995)).  In determining

7    whether to grant a preliminary injunction, courts in the Ninth Circuit traditionally consider

8    "(1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable

9    injury to the moving party if the relief is not granted; (3) the extent to which the balance of

10   hardships favors the respective parties; and (4) in certain cases, whether the public interest will

11   be advanced by granting the preliminary relief." *Miller v. California Pacific Medical Center*, 19

12   F.3d 449, 456 (9th Cir. 1994) (en banc).  The moving party must demonstrate either "(1) a

13   combination of probable success on the merits and the possibility of irreparable harm, or (2) the

14   existence of serious questions going to the merits, the balance of hardships tipping sharply in its

15   favor, and at least a fair chance of success on the merits." *Id.* (internal quotation omitted); *see*

16   *also Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007).  "Under either formulation of the

17   test, the party seeking the injunction must demonstrate that it will be exposed to some significant

18   risk of irreparable injury." *Associated General Contractors of Calif. v. Coalition for Economic*

19   *Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

20   **1.    Preliminary injunctions are generally not appropriate in FOIA cases.**

21   Plaintiff's request for a preliminary injunction here is even more extraordinary than in the

22   usual case because plaintiff seeks such relief based on claims made under the FOIA where, for a

23   variety of reasons, such motions are generally inappropriate.[4]  A number of courts have denied

24

25   [4] S*ee Al-Fayed v. CIA*, 2000 WL 34342564 at *6 (D.D.C. 2000) (finding that "upon
     consideration of the parties' arguments, the statutory and regulatory context, and the applicable

26   case law," emergency relief was not warranted despite the agency's delay in responding to FOIA
     requests); *Judicial Watch v. U.S. Dep't of Justice*, slip op., No. 00-1396  (D.D.C., June 27, 2000)

27   (attached as Exhibit 2) (denying plaintiff's emergency motion for expedited treatment seeking to
     compel defendant to respond to plaintiff's FOIA request); *Assassination Archives & Research*

28   *Ctr., Inc. v. CIA*, No. 88-2600, 1988 U.S. Dist. LEXIS 18606 at *1 (D.D.C., Sept. 29, 1988)

1   requests for preliminary injunctive relief for claims brought under the FOIA, including most

2   recently a motion filed by the plaintiff in this case seeking similar relief against the Department

3   of Justice.  *See Electronic Frontier Foundation v. Dep't of Justice*, slip op., 06-CV-1773 (RBW)

4   (attached as Exhibit 3) ("[T]he Court agrees with the defendant's position that EFF misconstrues

5   the purpose and implications of the FOIA's expedited processing provisions.").  Indeed, plaintiff

6   concedes that a "preliminary injunction is not the norm in FOIA cases."  *See* Plaintiff's

7   Memorandum at 11:21.

8       FOIA already establishes its own specialized procedural framework controlling the

9   processing of FOIA requests and procedures for FOIA litigation.  *See, e.g.*, 5 U.S.C.

10  § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and

11  must be filed in accordance with published rules and procedures); *id.* § 552(a)(4)(C) (requiring

12  responsive filing within thirty days of service of a complaint); *id.* § 552(a)(6)(C) (providing for

13  stay of litigation when agency is faced with exceptional circumstances).  Plaintiff's should not be

14  permitted to casually sidestep this statutory framework through a request for preliminary relief.

15  *Cf. Electronic Frontier Foundation v. Department of Justice*, No. 07-CV-0656 (JDB) at 3-4

16  (June 15, 2007) (attached as Exhibit O. to Hofmann Declaration) (imposing an accelerated

17  production schedule on the defendant, but noting, "[c]ertainly, the vehicle of a preliminary

18  injunction motion is an imperfect means to address what is, in essence, a scheduling issue.

19  Moreover, the possibility of overuse, or even abuse, of preliminary injunction requests in the

20  FOIA scheduling context is obvious.").

21      The traditional purpose of a preliminary injunction is to preserve the status quo so that

22  the court can issue a meaningful decision on the merits.  *See King v. Saddleback Junior College*

23  *Dist.*, 425 F.2d 426 (9th Cir. 1970).  That purpose is not served in this case because plaintiff

24

25  ──────────────

26  (rejecting motion for preliminary injunction asking the Court to order expedited processing of a
    FOIA request).  Although preliminary injunctive relief has been granted (rarely, and arguably

27  erroneously) in FOIA cases, *see, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp.
    2d 30, 35 (D.D.C. 2006) (finding preliminary injunction analysis appropriate); *NRDC v. Dep't of*

28  *Energy*, 191 F. Supp. 2d 41, 43–44 (D.D.C. 2002) (granting expedited motion for release of
    responsive records), the circumstances of this case do not warrant such relief.

1   seeks "mandatory preliminary relief" – that is, an order compelling accelerated processing that

2   would not merely preserve the status quo but would force specific action by ODNI to grant the

3   ultimate relief to which plaintiff thinks it is entitled.  Accordingly, the Ninth Circuit has held that

4   such relief is "subject to heightened scrutiny and should not be issued unless the facts and law

5   clearly favor the moving party."  *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th

6   Cir. 1993).  Further, because preliminary injunctive relief is not intended to provide plaintiffs

7   with a means to bypass the litigation process and achieve rapid victory, a preliminary injunction

8   should not work to give a party essentially the full relief he seeks on the merits.  *See Univ. of*

9   *Texas v. Camenisch*, 451 U.S. 390, 397 (1981) ("[I]t is generally in appropriate for a federal

10  court at the preliminary injunction stage to give a final judgment on the merits.").  Indeed, this

11  case provides a particularly apt example of the poor fit between the preliminary injunction

12  procedure and the FOIA.  Plaintiff's proposed order, for example, asks that the Court order

13  defendants to provide *Vaughn* indexes within 30 days of the Court's order even though courts

14  generally do not require *Vaughn* indexes, if ever, until dispositive motions are filed.[5]  Plaintiff

15  does not even attempt to explain why, for example, the failure to obtain a *Vaughn* index would

16  result in irreparable harm.

17      For these reasons, plaintiff has not met the exacting standard required for the relief it

18  seeks, and plaintiff's motion should be denied because it is inappropriate for claims such as those

19  made under the FOIA.

20      **2.  Plaintiff has failed to demonstrate a likelihood of success on the merits
            because the FOIA's expedited processing provisions do not require that
21          processing be completed within a time certain.**

22      Plaintiff's allegation that ODNI has violated the FOIA is predicated on the mistaken

23  assumption that the expedited processing provision of FOIA requires an agency to complete its

24  processing within a specific period of time.  The statute, however, does not require agencies to

25

26          [5] *See Gerstein v. C.I.A.*, 2006 WL 3462658 (N.D. Cal. Nov. 26, 2006), at *8 (denying
        request for *Vaughn* index as premature); *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) (The
27      "early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the
        government has first had the chance to provide the court with the information necessary to make
28      a decision on the applicable exemptions.").

1  process expedited requests within a specific time limit.  Instead, the statute directs agencies to

2  "process *as soon as practicable* any request for records to which [they have] granted expedited

3  processing."  5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); *see also* 32 C.F.R. § 1700.12(b) ("If

4  a request for expedited processing is granted, the request shall be given priority and shall be

5  processed *as soon as practicable*") (emphasis added).  As the Senate Report accompanying the

6  FOIA amendments which inserted the expedited processing procedures explains, the intent of the

7  expedited processing provision was to give certain requests priority, not to require that such

8  requests be processed within ten days or any other specific period of time:

9      [Once] the request for expedited processing is granted, the agency must then
       proceed to process the request "as soon as practicable."  No specific number of
10     days for compliance is imposed by the bill since depending on the complexity of
       the request, the time needed for compliance may vary.  The goal is not to get the
11     request processed within a specific time period, but to give the request priority in
       processing more quickly than would otherwise occur.

12  S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996); *see also* H. R. Rep. No. 104-795,

13  *reprinted at* 1996 U.S.C.A.A.N. 3448, 3461 (Sept. 17, 1996) ("certain categories of requesters

14  would receive priority treatment of their requests . . . .").  Thus, the expedited processing

15  provision of FOIA is an ordering mechanism, allowing certain FOIA requesters to jump to the

16  head of the line and avoid the ordinary "first in, first out" processing queue.  *See ACLU v. DOJ*,

17  2005 WL 588354 (Mar. 11, 2005 N.D. Cal), at *1 ("If a request for expedited processing is

18  granted, the request moves to the front of the processing queue, ahead of previously filed

19  requests.").  Once a request is at the front of the line, however, "practicability" is the standard

20  that governs how quickly any particular request can be processed.  *See, e.g.*, *ACLU v. Dep't of

21  Justice*, 321 F. Supp. 2d 24, 38 (D.D.C. 2004) (reversing agency's denial of expedited

22  processing and ordering the agency to "process plaintiffs' request . . . consistent with 5 U.S.C. §

23  552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(1)(4) ('as soon as practicable')").

24      Plaintiff ignores the plain language of the statute and clear legislative intent, and instead,

25  attempts to invent a time limit applicable to its expedited requests by citing 5 U.S.C. §

26  552(a)(6)(A)(i), which it characterizes as the "20-working-day deadline imposed by the FOIA

27  for processing a nonexpedited request."  *See* Plaintiff's Memorandum at 13:7-8.  That provision

28  has no bearing on when expedited processing must be completed.  *See American Civil Liberties

*Union v. DOD*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) ("While it would appear that

expedited processing would necessarily require compliance in fewer than 20 days, Congress

provided that the executive was to 'process as soon as practicable' any expedited request.").  An

agency's inability to respond to a FOIA request within the 20-day period simply means that the

requester may, before a response has been made, file suit and be found to have constructively

exhausted administrative remedies.  *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68,

72 (D.D.C. 1992).  The provision does not, in any event, purport to establish an "outside" time

limit on what is "practicable" in responding to an expedited request, nor does it mandate that an

agency fully process all requests within 20 days.  Indeed, courts have found that the 20-working

day response time is not itself a rigid requirement, and have routinely allowed agencies sufficient

time to process FOIA requests.  *See Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C.

2003) ("Certainly, it took longer than twenty days to respond to Judicial Watch's FOIA requests,

but that is explained by the nature of these requests, the many offices to which they were

directed, the number of FOIA requests [the agencies] regularly receive, and the treatment of

FOIA requests on a first in/first out basis."); *see also id.* ("there are often instances where an

agency will not be able to meet [the twenty-day] deadline").  Thus, under FOIA, a court may

grant an extension to allow the agency to finish its search and processing where the agency has

been unable to meet the deadline because of exceptional circumstances.  *See* 5 U.S.C. §

552(a)(6)(c); *see also Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605,

615 (D.C. Cir. 1976).[6]  Such circumstances make the 20-day deadline "not mandatory but

directory."  *Id.* at 616.  As such, the 20-day requirement can hardly be found to establish a

mandatory deadline as to the "practicability" of responding to expedited requests.

Instead, what is practicable will vary depending on a host of factors, including the size,

scope, detail, number of offices with responsive documents, other agencies or components that

must be consulted or to which documents might have to be referred for additional review, and

---

[6] As the D.C. Circuit explained in *Ogelsby v. United States Dept. of Army*, 920 F.2d 57
(D.C. Cir. 1990), "[f]requently if the agency is working diligently, but exceptional circumstances
have prevented it from responding on time, the court will refrain from ruling on the request itself
and allow the agency to complete its determination."  *Id.* at 64.

1    exemption issues.  *See* Hackett Decl. ¶¶ 5-9.  Further, the existence of classified materials, which

2    are present in this case, contributes significantly to the complexities attendant to processing a

3    FOIA request.  *See* Hackett Decl. ¶ 10-11.  Responsive documents that may contain classified

4    information must undergo an additional, and time-sensitive, review to ensure that all documents

5    are appropriately classified in accordance with Executive Order 12958, as amended.  *Id.* ¶ 10.

6    Such review also includes a page-by-page and line-by-line review of the documents to determine

7    which, if any, FOIA exemptions may apply.  *Id.*  In light of the sensitive nature of classified

8    information, potentially responsive material must then be reviewed by any appropriate entities

9    with equities in the documents to ensure that no processing errors have been made and that no

10   improper disclosures are made.  *Id.*  In addition, some of the responsive material is so highly

11   classified that it is in a classification compartment that is extremely sensitive.  *Id.*  Only a small

12   number of ODNI officials are able to access this material and it must be handled under special

13   security procedures, which also contributes to the complexity of processing.  *Id.* ¶ 11.  As

14   Congress has recognized, this type of review may require additional time.  *See* H. R. Rep. No.

15   104-795, 1996 U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to

16   requests in a timely manner, the Committee does not intend to weaken the interests protected by

17   the FOIA exemptions.  Agencies processing some requests may need additional time to

18   adequately review requested material to protect these exemption interests.  For example,

19   processing some requests may require additional time to properly screen material against the

20   inadvertent disclosure of material covered by the national security exemption").

21       Moreover, documents subject to other exemptions, *see generally* 5 U.S.C. § 552(b), must

22   similarly be identified and, where necessary, redacted, and documents generated by other

23   agencies or authorities must be referred for review back to those same agencies or authorities.

24   *See* Hackett Decl. ¶8.  Plaintiff offers no reason to believe that the agency is not performing

25   these tasks as soon as practicable, and thus fails to meet its burden of demonstrating, "by a clear

26   showing," *Mazurek*, 520 U.S. at 972, that a preliminary injunction is warranted at this juncture.

27       The obstacles that make it impracticable to process plaintiff's requests on its desired

28   schedule relate to the amount and intensity of work that FOIA processing entails and the

1  limitations of and burdens on ODNI's processing capacity—not to any failure with respect to the

2  grant of expedited treatment.  As discussed above, ODNI has appropriately implemented the

3  grant of expedited treatment by processing EFF's requests ahead of all other FOIA requests.  *See*

4  Hackett Decl. ¶ 5.  However, a grant of expedited treatment does not eliminate any of the time-

5  consuming and labor-intensive steps required to complete processing:  the review of potentially

6  responsive documents to isolate the documents falling within the scope of the plaintiff's FOIA

7  requests; the review of documents for classified information; the review to determine whether

8  documents are exempt from disclosure; and appropriate conferral with entities that have equities

9  in the documents.  ODNI has already made considerable progress on plaintiff's requests and

10  expects to provide a final response to plaintiff before December 31, 2007, with an interim release

11  before the end of this month.  *See* Hackett Decl. ¶ 13.  This is an ambitious schedule that will

12  require ODNI's FOIA staff to work primarily on plaintiff's requests between now and the end of

13  the year.  *Id.*  That said, it is simply not practicable for the ODNI to complete this process

14  according to the ten-day schedule that plaintiff desires.  *Id.*

15         In addition to the factual basis supporting the denial of relief, the cases that plaintiff cites

16  in support of its claim that "this Court and others have imposed specific processing deadlines on

17  agencies, requiring prompt delivery of non-exempt FOIA records to requesters," *see* Plaintiff's

18  Memorandum at 19:25-26, are inapposite.  None of those cases sought preliminary injunctions

19  within weeks of a FOIA request, as is the case here, and all of these decisions were issued

20  following litigation on the merits, where the relevant agencies had opportunities to provide the

21  Court with necessary information regarding processing needs.  Moreover, each case allowed the

22  agency far more time to complete processing the FOIA requests at issue than plaintiff demands

23  in this case.  *See, e.g., Judicial Watch v. Dept. of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002)

24  (ordering that responsive non-exempt documents, and *Vaughn* indices, be produced within

25  approximately a year of filing of the complaint), *Natural Resources Defense Council v. DOE*,

26  191 F. Supp. 2d 41 (D.D.C. 2002) (ordering responsive non-exempt documents and *Vaughn*

27  index to be filed within approximately one year date the FOIA request was made to agency and

28  within approximately 4 months of filing complaint); *American Civil Liberties Union v. DOD*,

1    339 F. Supp. 2d 501 (S.D.N.Y. 2004) (ordering the identification or production of responsive

2    documents within approximately one year of submitting FOIA request and three months of filing

3    of complaint); *Electronic Privacy Info. Center v. DOJ*, Civ. No. 05-845, 2005 U.S. Dist. LEXIS

4    40318, at ** 5-6 (D.D.C., Nov. 16, 2005) (ordering processing and release of documents on a

5    rolling basis until processing complete).  These cases are thus wholly unlike this one, where

6    plaintiff seeks "preliminary" relief demanding processing at an artificial pace despite the fact

7    that ODNI is not even required at this time to answer plaintiff's Complaint, and only some nine

8    weeks have passed since plaintiff's FOIA requests were received by ODNI.

9        Although plaintiff relies heavily upon the decision in *Electronic Privacy Information*

10   *Center ("EPIC") v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006), in which a preliminary

11   injunction was granted in the FOIA expedited processing context requiring the agency to

12   produce or identify all responsive documents within 20 days, as discussed above, *EPIC* is in

13   tension with the FOIA statutory and regulatory framework and the general principles governing

14   issuance of preliminary relief.  Moreover, plaintiff  fails to note that the preliminary injunction

15   entered in that case was later modified upon reconsideration, following a submission by the

16   government regarding its processing capacity.  *See EPIC*, slip op., No. 06-0096 (D.D.C. Mar. 24,

17   2006) (Kennedy, J.) (attached as Exhibit 3) (granting in part the government's expedited motion

18   for relief from the February 16, 2006 Order, extending the deadline for several DOJ components

19   to process plaintiff's FOIA request by 60 days or 120 days, respectively; and ordering that no

20   *Vaughn* index would be required before a dispositive motion was filed).  ODNI respectfully

21   submits that the *EPIC* decision relied on by plaintiff was wrongly decided.  *See EPIC*, 416 F.

22   Supp. 2d at 39 (holding that an agency is presumed to have violated FOIA's expedited

23   processing provisions when it fails to process the request within 20 days.).  In any event, the

24   Court's decision in *EPIC* was greatly influenced by its view that the agency did not "present[]

25   evidence that processing EPIC's FOIA requests within the next twenty days would be

26   impracticable." *Id.* at 39-40.  Here, however, ODNI has submitted a detailed declaration

27   explaining its efforts to respond to plaintiff's FOIA requests and the reasons why plaintiff's

28   request for relief is unreasonable and not practicable.

For similar reasons, plaintiff's reliance on *Gerstein v. C.I.A.*, 2006 WL 3462658 (N.D. Cal. Nov. 26, 2006), is misplaced. In that case, the court granted the FOIA plaintiff's motion for expedited processing after the agency denied the plaintiff's request at the administrative level. After analyzing and reversing the agency's decision, the court went on to discuss the time line for processing responsive documents, noting that "FOIA does not set forth a specific deadline by which expedited processing must be concluded." *Id.* at *8. The court, however, granted plaintiff's request to produce responsive documents within 30 days of the court's ruling because the defendant did "not respond to this request and, in particular, [did] not contend that it is not 'practicable' for them to process [plaintiff's] FOIA request within 30 days." *Id. Gerstein* is distinguishable for several reasons. First, the FOIA request in *Gerstein* had been pending "for more than eight months" without production of any responsive documents whereas the request in this case has been pending roughly nine weeks. *Id.* Second, unlike the defendant in *Gerstein*, ODNI has produced a detailed explanation that it is working diligently to process plaintiff's requests as soon as practicable. *See Electronic Frontier Foundation v. Dep't of Justice*, slip op., 06-CV-1773 (RBW) (attached as Exhibit 3) at 5 (denying motion for preliminary injunction seeking expedited processing in FOIA case based on, *inter alia*, the fact that "defendant has demonstrated that it is processing plaintiff's FOIA request as soon as practicable."). Consequently, there is no appropriate legal or factual basis for the Court to order ODNI to meet plaintiff's proposed processing schedule, particularly where no such requirement is found in the FOIA statute and, indeed, such a requirement is at odds with the statute.

### 3.   Plaintiff has not established a significant risk of irreparable injury in the absence of a preliminary injunction.

In addition to failing to demonstrate a likelihood of success on the merits, plaintiff also has not established that the preliminary injunction it requests is necessary to prevent irreparable harm. In this case, the focus of this inquiry is whether plaintiff will suffer irreparable injury if its FOIA requests are not processed on the schedule that plaintiff's requests but instead are processed according to the time frame that Congress has established, "as soon as practicable." Plaintiff speculates that the denial of emergency relief in this case could impose irreparable harm

1  because the information plaintiff seeks from ODNI is only of value now – that is, before

2  Congress considers any amendments to the FISA – but the information will be useless if it

3  produced after Congress amends the FISA.  Plaintiff's argument is pure speculation, and it is not

4  sufficient to support issuance of a preliminary inunction.  *See Caribbean Marine Services Co.,*

5  *Inc. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ("Speculative injury does not constitute irreparable

6  injury sufficient to warrant granting a preliminary injunction.").

7          Plaintiff purports to seek documents that will contribute to a public debate regarding the

8  FISA, but at this stage plaintiff does not know, and certainly has not established, whether its

9  request will produce any responsive, non-exempt documents that will contribute to that debate.

10 Presumably, the very reason plaintiff has requested the documents is because plaintiff does not

11 know what the documents contain.  Thus, even assuming that the inability to use certain

12 documents in a public debate constitutes irreparable harm, plaintiff is only guessing whether any

13 irreparable harm exists because plaintiff does not know whether there will be responsive, non-

14 exempt documents and whether, if so, the responsive documents will contribute in any

15 meaningful way to the public debate over the FISA.  *See The Nation Magazine v. Dep't of State*,

16 805 F. Supp. 68, 74 (D.D.C. 1992) (finding no irreparable harm because even if the Court "were

17 to direct the speed up of the *processing* of their requests," plaintiffs had not shown that they were

18 "entitled to *release* of the documents they" were seeking) (emphasis in original).  Such

19 speculation is not sufficient to establish a "significant risk of irreparable injury."  *Associated*

20 *General Contractors of Calif.*, 950 F.2d at 1410.

21         Furthermore, even if plaintiff's FOIA requests result in the disclosure of responsive, non-

22 exempt documents, plaintiff has not established that production of those documents according to

23 a schedule guided by the "as soon as practicable" standard will diminish their value to the public,

24 let alone impose irreparable injury to plaintiff.  *See Al-Fayed v. C.I.A.*, 2000 WL 34342564 at *5

25 (D.D.C. Sept. 20, 2000) (denying preliminary inunction for expedited processing based in part

26 on plaintiff's failure to explain why "information will not retain its value if procured through the

27 normal FOIA channels.").  The public debate regarding proposed amendments to the FISA has

28 been ongoing for several years, *see, e.g.*, Implementation of the USA Patriot Act: Sections of the

1   Act that Address the Foreign Intelligence Surveillance Act (FISA), 109th Cong. (April 26 & 28,

2   2005), Hearing Before the Subcommittee on Crime, Terrorism, and Homeland Security of the

3   Committee on the Judiciary of the House of Representatives, and it is likely to continue for the

4   foreseeable future.  *See* Tim Starks, Senators Get to See NSA Documents in an Attempt to Break

5   FISA Logjam (Oct. 25, 2007), *available at*

6   http://public.cq.com/docs/cqt/news110-000002613484.html (noting that House Democrats are

7   considering extending the temporary FISA amendments passed in August through March or

8   April while discussion concerning amendments to the FISA continues).  Although the recent,

9   temporary amendments to the FISA, *see* Protect America Act of 2007, Pub. L. No. 110-55, 121

10  Stat. 552. (Aug. 5, 2007), are set to expire in February 2008 and members of Congress have

11  expressed an intent to pass additional amendments before the end of the year, *see* Starks *supra*, it

12  is nothing more than pure speculation to suggest that public interest in this issue will suddenly

13  evaporate in the event Congress passes any amendments to the FISA.  Indeed, it is just as likely

14  that new information may reinvigorate the public's interest in this matter.  Further, even

15  assuming Congress acts to amend the FISA prior to processing plaintiff's FOIA requests,

16  plaintiff has offered nothing more than speculative and conclusory allegations it would be

17  irreparably harmed by such a development.  Even with respect to any non-exempt documents

18  that may be released once processing is complete, plaintiff's ability to inform the public about

19  the subject matter of its FOIA requests will not be precluded altogether, but merely postponed.

20  Thus, even if a delay in the release would cause some unidentified harm – and plaintiff makes no

21  showing of such – that harm, which can be cured at a later date, is hardly irreparable.  Indeed,

22  there can be no "irreparable" harm to plaintiff because legislation is always subject to further

23  amendment by Congress.[7]  *See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec.*

24  *Co.*, 127 S. Ct. 1199, 1206 (2007).

25      There is also no appropriate legal basis to tether release of documents in a FOIA case to

26

27  _____

28      [7] In fact, the proposed FISA amendments that are currently under consideration in
    Congress contain "sunset" provisions that would require reauthorization by Congress after
    several years.  *See* Hofmann Dec., Exhibit I.

Congress's legislative calendar, particularly given that the FOIA provides that expedited

processing shall proceed "as soon as practicable." Such a decision would improperly convert

any request for documents relating to pending legislation into an emergency requiring immediate

release of documents prior to a vote on the legislation, without any consideration of the equities

and burdens on the government agency processing the documents and in direct contravention of

the terms of the FOIA statue. Indeed, similar requests to condition FOIA processing deadlines

upon upcoming elections have been denied. *See The Nation Magazine*, 805 F. Supp. at 73-74

(denying motion for temporary restraining order in FOIA case seeking release of records about

presidential candidate prior to 1992 election and citing cases). While plaintiff claims that its

statutory right to expedition will be "irretrievably lost" if the preliminary injunction it seeks is

not granted, ODNI has already granted plaintiff's request for expedited processing, has moved

plaintiff's request to the front of its queue for processing, and has undertaken significant efforts

to respond to plaintiff's request as soon as practicable.[8] If plaintiff's view prevailed, anyone

who sought to have their FOIA request processed on an expedited basis would automatically

have a claim of irreparable injury regardless of whether any real harm existed. This is not the

proper standard to be applied in the issuance of a preliminary injunction, and it is not the result

contemplated by Congress when it authorized a limited exception for expedited processing.

Instead, Congress deferred to the necessity for ensuring adequate time for appropriate agency

processing, and mandated only that expedited requests be processed "as soon as practicable."

Thus, while the purported urgency of plaintiff's request may be a factor in determining whether a

request for expedited treatment will be granted by the agency, *see* 5 U.S.C. § 552(a)(6)(E)(v)(ii),

it is not a factor in determining the speed by which an agency is required to complete processing

_____

[8] Neither of the two cases plaintiff has cited, *Payne Enterprises v. United States*, 837 F.2d 486 (D.C. Cir. 1988), and *EPIC*, 416 F. Supp. 2d at 30, held that a delay in processing always amounts to de facto irreparable harm in FOIA cases. The court in each case merely found that delay amounted to irreparable harm based on the specific circumstances of the case. *See Payne Enters.*, 837 F.2d at 490 (noting that delays in compliance were "frustrating, costly, and detrimental to Payne's business" because Payne's clients needed up-to-date information to prepare bids for government contracts); *EPIC*, 416 F. Supp. 2d at 40–41 ("[T]ime is necessarily of the essence in cases like this . . . ."). As discussed above, the facts of this case do not warrant preliminary injunctive relief.

of the request, nor does it mean that plaintiff will suffer any irreparable harm by adhering to the terms of the FOIA statute.

> **4.** **An order requiring ODNI to accelerate processing of plaintiff's FOIA requests would not serve the public interest.**

Plaintiff also has not shown that a preliminary injunction order will serve the public interest.[9] In addition to potentially imposing unreasonable burdens on ODNI, the proposed preliminary injunction in ths case has the potential to complicate and disrupt the processing of other FOIA requests. *Cf. Al-Fayed*, 254 F.3d at 310; *The Nation Magazine*, 805 F. Supp. at 74 (finding that a temporary restraining order would likely harm third parties in light of the defendants' limited FOIA processing resources and the court's load of cases seeking judicial review of FOIA activities). Expedition already disadvantages normal FOIA requestors by placing them farther back in an agency's processing queue, *see supra* note 2, and imposing artificial deadlines beyond an agency's capabilities through the use of preliminary injunctions would only hinder the average FOIA requestor even further by favoring the most litigious FOIA requestors. *Cf. Electronic Frontier Foundation v. Department of Justice*, No. 07-CV-0656 (JDB) at 4 (June 15, 2007) (attached as Exhibit O. to Hofmann Declaration) ("Moreover, the possibility of overuse, or even abuse, of preliminary injunction requests in the FOIA scheduling context is obvious."). The public interest, therefore, is not well served by permitting FOIA requestors to avoid the plain terms of the FOIA, nor is it served by forcing government agencies to accelerate FOIA processing based on nothing more than speculative claims that the requested information is time sensitive and potentially perishable due to pending legislation in Congress.

Plaintiff's request for the proposed preliminary injunction ignores these realities, and, as a result, threatens to compromise the delicate balancing of the public interest that Congress

---

[9] Of course, plaintiff's personal interest in its FOIA requests for its private lobbying efforts in support of collateral litigation should not be equated with the public interest. *See* Ellen Nakashima, A Story of Surveillance, WASHINGTON POST, Nov. 7, 2007, at D1 ("lawyers for the Electronic Frontier Foundation, which filed [a class action lawsuit against various telecommunications companies] . . . are urging key U.S. senators to oppose a pending White House-endorsed immunity provision that would effectively wipe out the lawsuits."). *See also Massey v. FBI*, 3 F.3d 620, 625 (2d Cir. 1993) ("[T]he mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest.").

undertook in enacting FOIA between the general interest in disclosure of government information and the necessity of ensuring that certain types of documents, the disclosure of which would cause harm, were not to be disclosed. *See* 5 U.S.C. §522(b). Congress specifically noted that even with respect to expedited requests, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised. *See* H. R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466, *quoted supra*. As Congress acknowledged, those concerns are only heightened in a case such as this one, where the request involves classified information, and ODNI has independent obligations under federal statutes, regulations, and Executive Orders to ensure that no unwarranted disclosure occurs. Ordering ODNI to disclose documents on plaintiff's desired time frame and other than "as soon as practicable," as dictated by the FOIA, causes significant harm to this predetermined balancing of competing public interests.

## CONCLUSION

For all the foregoing reasons, plaintiff's motion for preliminary injunction should be denied.[10] A proposed order is attached hereto.

Dated: November 9, 2007                    Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

SCOTT N. SCHOOLS
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch

*/S/ Andrew I. Warden*

---

[10] Although plaintiff's motion and proposed order request production of a *Vaughn* index and a declaration certifying ODNI's compliance with whatever order is issued by the Court, plaintiff does not provide any argument or legal authority in support of this relief. Accordingly, these requests should be summarily denied. *See supra* note 5 (citing cases denying requests to produce *Vaughn* index prior to dispositive motion stage, if ever).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANDREW I. WARDEN (IN Bar No. 23840-49)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6120
Washington, D.C. 20530
Telephone: (202) 616-5084
Facsimile: (202) 616-8460
Andrew.Warden@usdoj.gov

*Attorneys for Defendant Office of the
Director of National Intelligence*