IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | No. C 07-5278 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, | |
| Defendant. | |

Before the Court is plaintiff's motion for a preliminary injunction. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the November 30, 2007 hearing. Having considered the papers submitted, and for the reasons set forth below, the Court GRANTS in part and DENIES in part plaintiff's motion.

**BACKGROUND**

This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff, the non-profit Electronic Frontier Foundation ("EFF"), seeks a preliminary injunction ordering defendant, the Office of the Director of National Intelligence ("ODNI"), to expedite the processing and release of records concerning the defendant's communications with telecommunications carriers and members of Congress regarding pending legislation that would amend the Foreign Intelligence Surveillance Act ("FISA").

**I.      The debate over telecommunications carriers' liability for their role in surveillance activity**

Since late 2005, numerous lawsuits have been filed throughout the United States challenging the legality of a U.S. government-run domestic surveillance program, and seeking information about corporate involvement in the surveillance activities. *See In re NSA Telecommunications Records Litigation*, Case No. MDL 06-1791 VRW) (N.D. Cal. Aug. 14, 2006) (order transferring consolidated cases).

On August 5, 2007, President Bush signed into law the Protect America Act of 2007, which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's authority to gather intelligence with the help of domestic communications service providers, and to protect telecommunications companies from future legal liability for their role in the intelligence-gathering activity. Pub. L. No. 110-55, 121 Stat. 552. While the Protect America Act is set to expire in February 2008 without further Congressional action, the administration has stated it is seeking further legislative reform that would include legal immunity for telecommunications companies:

> When Congress returns in September [2007] the Intelligence committees and leaders in both parties will need to complete work on the comprehensive reforms requested by Director [of National Intelligence Mike] McConnell, including the important issue of providing meaningful liability protection to those who are alleged to have assisted our Nation following the attacks of September 11, 2001.

Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation, Aug. 6, 2007, Hoffman Decl. Ex. F.

Congress has held numerous hearings regarding possible additional changes to FISA, and bills are currently pending before both houses of Congress that, if passed, would amend FISA further. *See* RESTORE Act of 2007, H.R. 3773, 110th Cong. (introduced Oct. 9, 2007); FISA Act of 1978 Amendments Act of 2007, S. 2248, 110th Cong. (introduced Oct. 19, 2007). The Senate bill in particular purports to require dismissal of any state or federal lawsuit against a telecommunications carrier for facilitating government surveillance if the Attorney General certifies to the court that the company was assisting in activity that was authorized by the President. *See* S. 2248 § 202, Hoffman Decl. Ex. I.

## II.     Statutory framework

Government agencies normally process FOIA requests for agency records on a first-in, first-out basis. Ordinarily agencies must respond to FOIA requests within 20 working days of their receipt of the requests. 5 U.S.C. § 552(a)(6)(A)(i). In 1996, Congress amended the FOIA to provide for "expedited processing" of certain requests. *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)). Expedited processing, when granted, entitles the requester to move immediately to the front of an agency processing queue.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need," and (ii) "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). FOIA defines "compelling need" to mean, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). FOIA further provides that "[a]n agency shall process *as soon as practicable* any request for records to which the agency has granted expedition." 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added).

## III.    Plaintiff's expedited FOIA requests, and defendant's response to date

On August 31, 2007, plaintiff faxed two letters to defendant that requested, under FOIA, all records from April 2007 to August 31, 2007 concerning briefings, discussions, or other exchanges that Director McConnell or ODNI officials have had concerning amendments to FISA with (a) representatives of telecommunications companies, and (b) offices of members of the Senate or House of Representatives, including any discussion immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. Hoffman Decl. Exs. K & L. In those letters, plaintiff also asked that the requests be expedited because they seek the disclosure of information about which there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity," and were "made by a person primarily engaged in disseminating information," as provided in 5 U.S.C. § 552(a)(6)(E)(v)(II) and 32 C.F.R. § 1700.12(c)(2). *Id.*

On September 10, 2007, defendant faxed two letters to plaintiff acknowledging the FOIA

requests, and stating that they would receive expedited treatment. However, defendants have not provided any responsive materials to plaintiff to date.

To aid the Court in understanding the reason for the delay, defendant submitted the declaration of John F. Hackett, Director of the Information Management Office ("IMO") for the ODNI. He explained that plaintiff's requests were granted expedited status, and were moved to the front of defendant's FOIA request queue ahead of forty-two other pending requests. Hackett Decl. ¶ 5. To respond to the requests, defendant determined it would search for records in a number of offices within ODNI, and that individuals likely to have responsive materials would search their electronic and paper files. *Id.* ¶. 6. "As of [November 9, 2007], most of the searches for responsive material have been completed" and they are now being processed. *Id.* ¶ 8. Mr. Hackett describes the processing in this case as follows:

> As the records are located and forwarded to the IMO, the FOIA analyst handling this case conducts a continual analysis and review of the documents located. During the review process the analyst handling this case first removes any non-responsive and duplicative material from the records that are received. She then creates working copies of the documents and document indexes and assesses whether there would be any necessary consultations and/or referrals with those entities maintaining equity in the documents. She also reviews the records for the application of any FOIA exemptions.

*Id*. Defendant asserts it has identified approximately 250 pages of unclassified material and about sixty-five page of classified material so far. *Id.* at ¶ 9. Defendant asserts it is focusing primarily on processing unclassified materials as soon as practicable. *Id.* at ¶ 12. It anticipates providing plaintiffs an interim response by November 30, 2007, and a final response by December 31, 2007.

Now before the Court is plaintiff's motion for a preliminary injunction seeking an order requiring defendant to produce or identify all responsive records within ten days of the issuance of the order, and an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), ten days thereafter.

## LEGAL STANDARD

Requests for injunctive relief may be satisfied by either of two sets of criteria. The "traditional" test requires the movant to: (1) establish a strong likelihood of success on the merits; (2) show the

4

possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring the movant; and (4) show that granting the injunction favors the public interest. *See L.A. Mem. Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). The "alternative" test requires that the movant demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor. *See Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). Under either test, plaintiff must demonstrate that there exists a significant threat of irreparable injury. *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

**DISCUSSION**

**I.   Preliminary injunctions may be granted in FOIA cases**

Defendant contends that a preliminary injunction is generally inappropriate to obtain relief on claims sought under FOIA. Defendant relies on several cases, including *Al-Fayed v. CIA*, 2000 WL 34342564 at *6 (D.D.C. Sept. 20, 2000) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests); *Assassination Archives & Research Ctr., Inc. v. CIA*, Case No. 88-2600, 1988 U.S. Dist. LEXIS 18606 at *1 (denying motion for preliminary injunction to expedite processing of FOIA request).

Plaintiff concedes that preliminary injunctive relief is not the normal enforcement mechanism in FOIA cases. However, it contends that such relief has been found appropriate where a requesting party establishes that its requests are entitled to expedited processing under the Act, and the government fails to process them in a timely manner. *See Gerstein v. CIA*, Case No. 06-4643 MMC, 2006 WL 3462659, at *5 (N.D. Cal. Nov. 29, 2006) (granting a motion to compel the processing of a FOIA request within 30 days); *see also Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) (issuing a preliminary injunction requiring response to a FOIA request within 21 days due to an "exceptional and urgent need"); *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) (issuing a preliminary injunction requiring compliance with FOIA requests within 30 days). Plaintiff relies most heavily on *Electronic*

*Privacy Information Center v. Department of Justice* ("*EPIC*"), 416 F. Supp. 2d 30 (D.D.C. 2006). In that case, the court found that "[o]n numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions." *Id.* at 35 (citations omitted). Plaintiff contends that the government is attempting to re-litigate the *EPIC* case here by re-asserting the same arguments that were considered by the district court in the District of Columbia.

While defendant has presented examples of cases where the courts declined to issue preliminary injunctions, those cases were not decided on jurisdictional grounds. *See, e.g., Al-Fayed,* 2000 WL 34342564. Instead, the courts found that injunctive relief was not warranted based on the specific facts of each case. *Id.* In contrast, plaintiff has presented examples of cases where courts have issued preliminary injunctions. *See, e.g., EPIC*, 416 F. Supp. 2d at 35 (citing cases). As the D.C. Circuit has found, "[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974). Accordingly, the Court finds that it may consider the merits of plaintiff's motion for a preliminary injunction.

## II.  Plaintiff is entitled to a preliminary injunction in this case

The parties disagree over whether plaintiff can meet its burden to show it is entitled to a preliminary injunction. That is, they dispute whether plaintiff can: (1) establish a strong likelihood of success on the merits; (2) show the possibility of irreparable injury to plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring plaintiff; and (4) show that granting the injunction favors the public interest. *See L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1200.

### A.  Plaintiff is likely to prevail on the merits of its claim

The essence of plaintiff's claim centers on the question of whether defendant has processed plaintiff's FOIA requests in an expedited manner within the time frame required by the FOIA and the defendant's own regulations. As recounted above, the FOIA requires each agency to "promulgate regulations . . . providing for expedited processing requests for records . . . in cases in which the person requesting the records demonstrates a compelling need and . . . in other cases determined by the

6

1  agency." 5 U.S.C. § 552(a)(6)(E)(i). Pursuant to the statutory directive, defendant ODNI has issued
2  regulations providing, in relevant part, that expedited requests "will be taken out of order and given
3  expedited processing treatment," which means they will be handled "as soon as practicable." See 32
4  C.F.R. §§ 1700.12(b), (c)(2); 5 U.S.C. § 552(a)(6)(E)(iii). Here, defendant has already determined that
5  plaintiffs' request is entitled to expedited processing. Thus the only question remaining is whether
6  defendant is actually processing the request "as soon as practicable."

7  Plaintiff relies on *EPIC* for the proposition that the statute's "phrase 'as soon as practicable,' in
8  the context of a provision of FOIA allowing for expedited processing cannot be interpreted to impose
9  a lower burden on the agency than would otherwise exist." 416 F. Supp. at 39. The *EPIC* case was
10 based on facts nearly identical to those presented here. In that case, an electronic privacy organization
11 sought expedited release, under FOIA, of information possessed by the Department of Justice relating
12 to the government's domestic surveillance program. *Id.* at 34. The court held that where an agency fails
13 to comply with the twenty-day deadline applicable to a standard FOIA request, the agency
14 "presumptively also fails to process an expedited request 'as soon as practicable.'" *Id.* at 39. While the
15 agency may rebut the presumption by showing that the twenty-day time period is "truly not practicable,"
16 courts are not required simply to "take at face value an agency's determination that more time is
17 necessary." *Id.* at 37, 39. To require courts to accept agency determinations at face value "would give
18 the agency unchecked power to drag its feet and pay lip service to a requester's statutory and regulatory
19 entitlement to expedition." *Id.* at 37 (international quotation marks and citations omitted). Instead, the
20 *EPIC* court required the agency to present credible evidence, rather than vague assertions, to show that
21 further delay is necessitated by "exceptional circumstances." *Id.* at 38-39.

22 Defendant contends that the statutory and regulatory language does not require processing within
23 a specific time period. Instead, defendant argues that the expedited processing provision of FOIA is
24 merely an ordering mechanism, allowing certain FOIA requests to jump to the front of the agency's
25 processing queue and avoid the customary "first in, first out" processing practice. Afer that happens,
26 defendant asserts that "practicability" is the only standard that governs how quickly the request can be
27 processed. Defendant further contends that the provision requiring an agency response within twenty
28 working days for a non-expedited request "has no bearing on when expedited processing must be

7

completed." Opp'n at 10. Rather, it argues that "a court may grant an extension to allow the agency to finish its search and processing where the agency has been unable to meet the deadline because of *exceptional circumstances.*" *Id.* at 11, citing *Ogelsby v. United States Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("Frequently if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination.") (emphasis added).

The Court notes that the agency has not formally requested an extension beyond the twenty working-day deadline that has already passed in this case. Furthermore, defendant's explanation for its delay does not appear to demonstrate the existence of "exceptional circumstances." Defendant contends that what is practicable will depend on factors including the size and scope of the request, the level of detail involved, the number of offices with responsive documents, other agencies that must be consulted, as well as the existence of classified materials. Defendant asserts that its review includes page-by-page and line-by-line review of the documents to determine which, if any, FOIA exemptions may apply. They also assert that classified materials require extra scrutiny.

These assertions appear to the Court to be generically applicable to all FOIA requests that would be received by the ODNI. Defendant has offered no explanation or evidence of the existence of "exceptional circumstances" specific to this case. Furthermore, the agency's description of its processing methods in this case—which apparently are assigned to a single agent—appear to be wholly inadequate to the task of handling an expedited request, let alone a standard request, on the timely basis required by Congress. *See* Hackett Decl. ¶ 8. While defendant notes that it has a small FOIA staff, that argument is more properly directed at Congress, not to the courts. *Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999). As the Ninth Circuit stated:

> Though FOIA doubtless poses practical difficulties for federal agencies, federal agencies can persuade Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance. So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have . . . . It may be that agency heads, such as the Attorney General in this case, can be forced by the Freedom of Information Act to divert staff from programs they think more valuable to Freedom of Information Act compliance . . . . But these policy concerns are legislative, not judicial . . . . Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher.

*Id.* Plaintiff is correct that defendant has failed to provide the Court with "specific information that

8

might explain why it will require *four months* to process 'approximately 250 pages of unclassified material and approximately sixty-five pages of classified material' identified as responsive to the FOIA requests." Reply at 6 (quoting Opp'n at 6). Accordingly, the Court finds that plaintiff is likely to prevail on the merits of its claim.

### B. Plaintiff will suffer irreparable injury in the absence of relief

Plaintiff cites *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), for the proposition that our democracy has an interest in "the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry." *See also Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985) (quoting *Sullivan*); *Bd. of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("the Constitution presupposes the existence of an informed citizenry prepared to participate in governmental affairs"). On that basis, plaintiff contends that the very nature of its claim depends on timeliness because, as the D.C. Circuit has recognized, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *EPIC*, 416 F. Supp. 2d at 40. As the *EPIC* court found, "the loss of that 'value' constitutes a cognizable harm," which, in cases like this "will likely be irreparable." 416 F. Supp. 2d at 40-41. Plaintiff asserts that defendant's proposed December 31, 2007 release date "appears designed to keep the requested documents from contributing to the critical portion of the debate that will occur in November and December." Reply at 10 n.8.

Defendant acknowledges that plaintiff seeks the information it requested in order to inform the public debate over the FISA amendments Congress is currently and actively considering. Nevertheless, defendant characterizes as "pure speculation" plaintiff's argument that the information will be useless if it is produced after Congress amends the law. Opp'n at 16. Specifically, defendant contends that plaintiff has not established that its request will produce any responsive, non-exempt documents that will contribute to the debate. While defendant is aware that members of Congress have expressed an intent to pass amendments to the FISA before the end of the year, it argues that the debate over that law has been going on for many years, and that any harm would not be "irreparable" because "legislation

9

is always subject to further amendment by Congress." Opp'n at 17.[1]

Defendant's position is without merit. As another court in this district found, irreparable harm can exist in FOIA cases such as this because ongoing public and congressional debates about issues of vital national importance "cannot be restarted or wound back." *Gerstein v. CIA*, 2006 WL 3462659 at *4 (N.D. Cal. Nov. 29 2006) (order granting motion to compel responses to FOIA requests); *see also EPIC*, 416 F. Supp. 2d at 41 (finding an adequate showing of irreparable harm to support a preliminary injunction). Here, the Protect America Act is set to expire in February 2008, and Congress is currently considering legislation that would amend the FISA further. Plaintiff seeks information from defendant specifically so that plaintiff, Congress, and the public may participate in the debate over the pending legislation on an informed basis. Accordingly, the Court finds that plaintiff has shown the likelihood of irreparable injury.

### C. Injunctive relief will not burden others' interests

Plaintiff asserts that defendant cannot be "burdened" by a requirement that it merely comply with the law. As plaintiff suggests, the relief it seeks is nothing more than the expedited treatment to which defendant concedes plaintiff is entitled. Defendant makes no argument that it would be burdened by complying with the law, except to the extent that it may be required to readjust its internal priorities. As discussed above, any complaints about the burdens of complying with the law are best addressed to Congress, not the courts. *See Fiduccia*, 185 F.3d at 1041. Accordingly, the Court finds that there is no undue burden here that would militate against issuing a preliminary injunction.

### D. The public interest favors the requested relief

Plaintiff contends a preliminary injunction in this case will serve the public interest in two ways. First, "there is an overriding public interest . . . in the general importance of an agency's faithful

---

[1] Defendant relies on *Travelers Casualty and Surety Company of America v. Pacific Gas and Electric Company*, 127 S. Ct. 1199, 1206 (2007) in support of its argument that any harm would not be "irreparable" because Congress can always change the law again. However, the *Travelers* Court was merely pointing out the obvious fact that Congress could change the Bankruptcy Code to allow for recovery of attorneys fees if it so chose. The Supreme Court said absolutely nothing in that case about the nature of the harm that would result due to an agency delay in a FOIA case such as this.

10

adherence to its statutory mandate." *Jacksonville Port. Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *EPIC*, 416 F. Supp. 2d at 42. Second, the public interest will be served by the expedited release of the requested records because it will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

Defendant argues that a preliminary injunction would disrupt the "delicate balance" Congress mandated between the interest of disclosure and the need to protect documents that would cause harm. *See* 5 U.S.C. § 552(b).

The Court finds that, because defendant has failed to produce any evidence of extraordinary circumstances that would justify an extension of time in this case, the balance over which Congress is justifiably concerned is not implicated here. Defendant has already identified responsive documents, has segregated potentially classified portions thereof, and has had ample time to process and release the documents. If defendant is truly concerned about achieving the delicate balance required by Congress, it should consider assigning more than one agent to the processing of plaintiff's requests.

Accordingly, the Court GRANTS plaintiff's request for a preliminary injunction requiring defendant to comply with the law and process plaintiff's FOIA requests within ten days of this order.

### E.    Ordering production of a *Vaughn* index is premature at this point

In addition to requesting an order requiring defendant to release documents within ten days of this order, plaintiff also seeks a *Vaughn* index of withheld records ten days thereafter. A *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), "must identify each document withheld, and provide a particularized explanation of how disclosure would violate an exemption" under FOIA. *See Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996). Production of a *Vaughn* index is not necessary in all cases, and in particular, is unnecessary where an "affidavit submitted by an agency is sufficient to establish that the requested documents should not be disclosed," or where "a FOIA requester has sufficient information to present a full legal argument." *Id.* at 804; *see also Gerstein*, 2006 WL 3462659 at *5. Accordingly, the Court DENIES plaintiff's request for a *Vaughn* index WITHOUT PREJUDICE to such relief in the future should it be necessary.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court GRANTS in part and DENIES in part plaintiff's motion for a preliminary injunction [Docket No. 6]. Defendant SHALL respond to plaintiff's FOIA request and provide an initial release no later than **November 30, 2007**, as it suggested it would do in its brief. Defendant is further ORDERED to provide a final release of all responsive, non-exempt documents no later than **December 10, 2007.** Defendant is also ORDERED to provide an affidavit with its final response setting forth the basis for withholding any responsive documents it does not release.

**IT IS SO ORDERED.**

Dated: November 27, 2007

SUSAN ILLSTON
United States District Judge