1   JEFFREY S. BUCHOLTZ
    Acting Assistant Attorney General
2
    CARL J. NICHOLS
3   Deputy Assistant Attorney General

4   SCOTT N. SCHOOLS
    United States Attorney
5
    ELIZABETH J. SHAPIRO
6   Assistant Director, Federal Programs Branch

7   ANDREW I. WARDEN (IN Bar No. 23840-49)
    Trial Attorney, U.S. Department of Justice
8   Civil Division, Federal Programs Branch
    20 Massachusetts Ave., N.W., Room 7332
9   Washington, D.C. 20530
    Telephone: (202) 616-5084
10  Facsimile: (202) 616-8460
    Andrew.Warden@usdoj.gov
11
    *Attorneys for Defendant Office of the*
12  *Director of National Intelligence*

13
                 **UNITED STATES DISTRICT COURT**
14
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15
                    **SAN FRANCISCO DIVISION**
16

17  _____
                                            )    No. C 07-5278 SI
18  ELECTRONIC FRONTIER FOUNDATION,         )
                                            )    **MEMORANDUM OF POINTS**
19            Plaintiff,                     )    **AND AUTHORITIES IN**
                                            )    **SUPPORT OF DEFENDANT'S**
20                                           )    **MOTION FOR SUMMARY**
         v.                                  )    **JUDGMENT**
21                                           )
    OFFICE OF THE DIRECTOR OF NATIONAL      )    HEARING ON MOTION FOR
22  INTELLIGENCE,                            )    SUMMARY JUDGMENT
                                            )    Date: March 7, 2008
23            Defendant,                     )    Time: 9:00 a.m.
    _____)
24

25

26

27

28

1

## TABLE OF CONTENTS

Introduction ........................................................................................................1

Background ........................................................................................................1

Office of the Director of National Intelligence .......................................1

Foreign Intelligence Surveillance Act......................................................2

FISA Modernization Debate.....................................................................2

Plaintiff's FOIA Requests.........................................................................3

Scope Of The Dispute In This Case..........................................................5

Argument............................................................................................................5

I.    ODNI Is Entitled To Summary Judgment
      On Plaintiff's FOIA Claims...........................................................5

II.   ODNI Conducted An Adequate Search For
      Responsive Records.......................................................................7

III.  ODNI Properly Withheld The Briefing
      Slides...............................................9

      A.  ODNI Properly Withheld The Briefing Slides
          Under Exemption 3....................................................9

          1.    Applicable Exemption Three Statutes.............................10

          2.    The Briefing Slides Fall Within the
                Scope of Exemption 3.......................................12

      B.  ODNI Properly Withheld The Briefing Slides
          Under Exemption 1....................................................13

IV.   ODNI Properly Withheld The Telephone Message Slip..........................16

      A.  The Telephone Message Slip Is Not An Agency
          Record Under The FOIA...............................................16

      B.  ODNI Properly Withheld The Telephone Message
          Slip Under Exemption 5..............................................20

          1.  The Attorney Work Product Doctrine.....................................20

          2.  The Deliberative Process Privilege...........................................22

      C.  ODNI Properly Withheld The Telephone Message
          Slip Under Exemptions 1 & 3........................................23

Conclusion........................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AFGE, Local 2782 v. Dep't of Commerce*,
    632 F. Supp. 1272 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Baizer v. Dep't of the Air Force*,
    887 F. Supp. 225 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Baker & Hostetler v. Dep't of Commerce*,
    473 F.3d 312 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Berman v. Central Intelligence Agency*,
    501 F.3d 1136 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 23-25

*Bloomberg v. SEC*,
    357 F. Supp. 2d 156 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bureau of National Affairs, Inc. v. United States Dep't of Justice* ("BNA"),
    742 F.2d 1484 ((D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17, 20

*Carter v. U.S. Dep't of Commerce*,
    307 F.3d 1084 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Center for Nat'l Security Studies v. U.S. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004) . . . . . . . . . . . . . . . . 7

*Central Intelligence Agency v. Sims*,
    471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7, 10-11

*The Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Security Agency*,
    610 F.2d 824 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Citizens Commission on Human Rights v. Federal Drug Administration*,
    45 F.3d 1325 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Consumer Federation of America v. Dep't of Agriculture*,
    455 F.3d 283 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Department of Navy v. Egan*,
    484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Feshbach v. SEC*,
    5 F. Supp. 2d 774 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Fitzgibbon v. Central Intelligence Agency,*
        911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Florida Immigrant Advocacy Ctr. v. Nat'l Security Agency,*
        380 F. Supp. 2d 1332 (S.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People for the American Way Foundation ("PFAW") v. Nat'l Security Agency,*
        462 F. Supp. 2d 28 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Washington Post v. Dep't. of State,*
        632 F. Supp. 607 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fortson v. Harvey,*
        407 F. Supp. 2d 13  (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gallant v. NLRB,*
        26 F.3d 168 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Grand Central Partnership v. Cuomo,*
        166 F.3d 473 (2d Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Halperin v. CIA,*
        629 F.2d 144 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hayden v. National Security Agency,*
        608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

*Hickman v. Taylor,*
        329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Hiken v. Department of Defense,*
        521 F. Supp. 2d 1047 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

*Hunt v. Central Intelligence Agency,*
        981 F.2d 1116 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 13

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management),*
        357 F.3d 900 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Sealed,*
        146 F.3d 881 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Inner City Press/Community on the Move v. Board of Governors of Federal Reserve System*,
 1998 WL 690371 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Iturralde v. Comptroller of the Currency*,
 315 F.3d 311 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*John Doe Agency v. John Doe Corp.*,
 493 U.S. 146 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Judicial Watch of Florida v. Dep't of Justice*,
 102 F. Supp. 2d 6 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Judicial Watch v. Clinton*,
 880 F. Supp. 1 (D.D.C. 1995), *aff'd on other grounds* 76 F.3d 1232 (D.C. Cir. 1996)17-18

*Kalmin v. Dep't of Navy*,
 605 F. Supp. 1492 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kissinger v. Reporters Comm. for Freedom of the Press*,
 445 U.S. 136 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lahr v. National Transp. Safety Bd.*,
 453 F. Supp. 2d 1153 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Linder v. Nat'l Security Agency*,
 94 F.3d 693 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lion Raisins v. USDA*,
 354 F.3d 1072 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
 108 F.3d 1089 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Marriott Employees' Federal Credit Union v. National Credit Union Admin.*,
 1996 WL 33497625 (E.D. Va. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Minier v. Central Intelligence Agency*,
 88 F.3d 796, 803 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 13

*Miranda Manor, Ltd. V. Dep't of Health and Human Services*,
 1986 WL 4426 (N.D. Ill. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

1

2

*National Labor Relations Bd. v. Sears, Robuck & Co.*,
    421 U.S. 132 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

3

4

*Pollard v. F.B.I.*,
    705 F.2d 1151 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5

6

*Sibille v. Federal Reserve Bank of New York*,
    770 F. Supp. 134 (S.D.N.Y 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

7

8

*United States Dep't of Justice v. Tax Analysts*,
    492 U.S. 136 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

9

*Weiner v. FBI*,
    943 F.2d 972 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

10

11

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

13

## FEDERAL STATUTES

5 U.S.C. § 552. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

14

18 U.S.C. § 798 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

15

50 U.S.C. § 1801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

16

50 U.S.C. § 402 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

17

50 U.S.C. § 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-25

18

Pub. L. No. 110-55, 121 Stat. 552. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20

## OTHER AUTHORITIES

21

32 C.F.R. § 1700.12(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22

Executive Order 12,958, as amended , 68 Fed. Reg. 15315 (Mar. 28, 2003) . . . . . . . . 14, 15, 23

23

24

Dan Egan, *Surveillance Law Extended For 15 Days*,
    Washington Post, A5, February 1, 2008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25

*See* Fiscal Year 2008 Intelligence Authorization Act, *available at*
    http://intelligence.senate.gov/hearings.cfm?hearingid=2643&witnessId=6412 . . . . . . . . 3

26

27

28

Hearing Before the United States Senate Committee on the Judiciary,
    *FISA Amendments: How to Protect Americans' Security and Privacy and Preserve the
    Rule of Law and Government Accountability*, 100th Cong. (Oct. 31, 2007), *at*
    http://judiciary.senate.gov/hearing.cfm?id=3009. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1

## **INDEX OF EXHIBITS**

2

3      Exhibit A – Declaration of John H. Hackett

4

5      Exhibit B – Declaration of Rhea D. Siers

6

7      Exhibit C – Declaration of Lieutenant General of Ronald L. Burgess, Jr.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff in this case, the Electronic Frontier Foundation, challenges the decision of the Office of the Director of National Intelligence to withhold records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff's requests seek records regarding ODNI's communications with members of Congress and telecommunications companies about proposed amendments to the Foreign Intelligence Surveillance Act. ODNI released approximately 500 pages of records responsive to plaintiff's requests and, as relevant to the present motion, withheld only 13 pages of exempt material. The withheld documents consist of highly sensitive classified slides that were used to brief members of Congress regarding national security matters and a classified telephone message slip containing the thoughts and mental impressions of an ODNI attorney. The detailed declarations accompanying this memorandum demonstrate the dangers to the national security that could result if ODNI is compelled to disclose these documents. Further, these declarations establish that ODNI has properly withheld the documents because the message slip is not an "agency record" under the FOIA and because the documents are protected from disclosure pursuant to FOIA exemptions (b)(1), (3), (5) and/or (6). For these reasons, ODNI hereby seeks summary judgment under Federal Rule of Civil Procedure 56 with respect to the withholding of these documents.

## BACKGROUND

Office of the Director of National Intelligence. The defendant in this FOIA action is the Office of the Director of National Intelligence ("ODNI"). The position of Director of National Intelligence ("DNI") was created in 2004 by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of the Title I of the National Security Act of 1947). The Director of National Intelligence serves as the head of the United States Intelligence Community and as the principal advisor to the President, the National Security Council, and the Homeland Security Council, for intelligence-related matters related to national security. *See* 50 U.S.C. §§ 403(b)(1), (2).

The responsibilities and authorities of the Director of National Intelligence are set forth

in the National Security Act, as amended. *See* 50 U.S.C. § 403-1. These responsibilities include, *inter alia*, ensuring that national intelligence is provided to the President, the heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. *See* 50 U.S.C. § 403-l(a)(1). The amendments to the National Security Act also created an Office of the Director of National Intelligence, which assists the DNI in carrying out his duties and responsibilities under the law. *See* 50 U.S.C. § 403-3.

Foreign Intelligence Surveillance Act. Congress enacted the Foreign Intelligence Surveillance Act ("FISA"), as amended, 50 U.S.C. §§ 1801-1811, in 1978 to "provide a procedure under which the Attorney General can obtain a judicial warrant authorizing the use of electronic surveillance in the United States for foreign intelligence purposes." S. Rep. No. 95-604, 95th Cong. 2d 5, reprinted at 1978 U.S.C.C.A.N. 3906. In 1994, the statute was amended to permit applications for orders authorizing physical searches as well as electronic surveillance. 50 U.S.C. §§ 1821-1829.

FISA Modernization Debate. In April 2007, in response to a request from Congress, the DNI proposed amendments to the FISA designed to update it with changes in telecommunications technology that have taken place since 1978. *See* Fiscal Year 2008 Intelligence Authorization Act, *available at* http://intelligence.senate.gov/hearings.cfm?hearingid=2643&witnessId=6412. Among other provisions, the DNI proposed amendments to the FISA that would provide retroactive immunity to electronic communication service providers that are alleged to have assisted the Government with intelligence activities following the September 11, 2001 attacks. Since 2005, numerous lawsuits have been filed throughout the United States challenging the legality of the Government's intelligence gathering activities since September 11, 2001. *See, e.g.*, *In re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW). The plaintiff in this FOIA action, the Electronic Frontier Foundation, is one of the lead counsel in this litigation. *See* Complaint ¶ 10 n.1.

The DNI's proposal to amend the FISA led to significant legislative debate during the

1    Spring and Summer of 2007.  Various committees of Congress held hearings on the issue of

2    FISA modernization and the DNI played an active role in this process, including testifying

3    before Congress on several occasions.  *See* Declaration of John Hackett ¶ 7 (attached as Exhibit

4    A) (hereinafter "Hackett Decl.").

5        On August 5, 2007, the President of the United States signed the Protect America Act of

6    2007 ("PAA"), a law that created temporary amendments to the FISA for a period of six months.

7    *See* Protect America Act of 2007, Pub. L. No. 110-55, 121 Stat. 552.  Although the PAA

8    amended the FISA in several important ways, it did not include retroactive liability protection to

9    electronic communication service providers alleged to have assisted the Government's

10   intelligence gathering activities.  *See id.*  Since the passage of the PAA, the debate regarding

11   permanent FISA modernization and liability protection has continued in Congress.  *See, e.g.*,

12   Hearing Before the United States Senate Committee on the Judiciary, *FISA Amendments: How to*

13   *Protect Americans' Security and Privacy and Preserve the Rule of Law and Government*

14   *Accountability*, 100th Cong. (Oct. 31, 2007), *at* http://judiciary.senate.gov/hearing.cfm?id=3009.

15   Most recently, with the PAA set to expire on February 1, 2008, Congress passed, and the

16   President signed, a temporary extension to the PAA that will keep the law in force through

17   February 16, 2008, while Congress considers permanent amendments to the FISA.  *See* Dan

18   Egan, *Surveillance Law Extended For 15 Days*, WASHINGTON POST, A5, February 1, 2008.

19       Plaintiff's FOIA Requests.  By letters dated August 31, 2007, plaintiff submitted two

20   FOIA requests to ODNI for the following documents: "all agency records from April 2007 to the

21   present concerning briefings, discussions, or other exchanges that Director McConnell or other

22   ODNI officials have had with": a) "members of the Senate or House of Representatives"; and b)

23   "representatives of telecommunications companies concerning amendments to FISA [Foreign

24   Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*, as amended], including any discussion of

25   immunizing telecommunications companies or holding them otherwise unaccountable for their

26   role in government surveillance activities."  *See* Hackett Decl. ¶ 8.  Plaintiff's letters also sought

27   expedited processing of its FOIA requests pursuant to 32 C.F.R. § 1700.12(c)(2), asserting that

28   the public has a significant interest in ODNI's efforts to amend the FISA.  *See* Hackett Decl. ¶ 9.

On September 11, 2007, ODNI sent plaintiff two separate response letters acknowledging receipt of plaintiff's FOIA requests and granting expedited processing for both requests. *See id.* ODNI also informed plaintiff that the requests would be processed as soon as practicable. *See id.*

Plaintiff filed its complaint in this action under the FOIA on October 17, 2007, seeking expedited processing and release of the records that plaintiff requested from ODNI in its two FOIA requests. *See* Complaint For Injunctive Relief (dkt. no. 1). On October 29, 2007, plaintiff filed a motion for preliminary injunction (dkt. no. 6) seeking a Court order to compel ODNI to complete processing of its FOIA requests. *See* Plaintiff's Proposed Order. ODNI opposed plaintiff's motion. *See* Defendant's Opposition To Plaintiff's Motion For Preliminary Injunction (dkt. no. 22). On November 27, 2007, the Court granted plaintiff's motion in part and denied it in part. *See* Order (dkt. no. 26). The Court ordered that ODNI provide an interim release of responsive records on November 30, 2007 and a final release no later than December 10, 2007. *Id.* The Court also ordered ODNI to provide "an affidavit with its final response setting forth the basis for withholding any responsive documents it does not release." *Id.*

Pursuant to the Court's order, ODNI provided plaintiff with an interim release of responsive records on November 30, 2007. ODNI released 242 pages of responsive records, 230 of which were disclosed in full, and twelve of which were withheld in part pursuant to 5 U.S.C. § 552(b)(2). These records consisted of correspondence between ODNI and members of Congress, attachments to that correspondence, and official statements by the DNI during congressional hearings. The information withheld in part from these records consisted exclusively of non-public ODNI fax numbers and telephone numbers. *See* Hackett Decl ¶ 15.

On December 10, 2007, ODNI provided a final release of responsive records as well as a declaration from John Hackett, ODNI's Director of the Information Management Office, explaining the basis for its withholdings. ODNI released an additional 267 pages of responsive records consisting of correspondence between ODNI and members of Congress, attachments to that correspondence, and statements by the DNI during congressional hearings. 238 of these pages were unclassified records that were released in full, twenty-eight pages containing

1    classified information were withheld in part pursuant to 5 U.S.C. §§ 552(b)(1) & (3), and one

2    page containing a non-public ODNI telephone number was withheld in part pursuant to 5 U.S.C.

3    § 552(b)(2).  *See* Hackett Decl ¶ 16.

4        ODNI withheld only fourteen pages of responsive records in full.  First, ODNI withheld

5    eleven pages of classified briefing materials (*i.e.*, Power Point slides) used by the DNI to brief

6    members of Congress, in classified setting, regarding national security and intelligence matters.

7    These records were withheld pursuant to 5 U.S.C. §§ 552(b)(1) and (3).  Second, ODNI withheld

8    a one-page personal hand-written note from a member of Congress to the ODNI General

9    Counsel because it is not an agency record under the FOIA and because it qualifies for

10   withholding under 5 U.S.C. § 552 (b)(6).  Third, ODNI withheld a telephone message slip that

11   contains the handwritten personal notes and mental impressions of an ODNI employee.  This

12   document was withheld because it is not an agency record under the FOIA and it qualifies for

13   withholding pursuant to 5 U.S.C. §§ 552(b)(1), (3), (5) & (6).  *See* Hackett Decl ¶ 17.

14       Scope Of The Dispute In This Case.  As explained in the Joint Case Management

15   Statement (dkt. no. 32), the parties have agreed to narrow significantly the disputed legal issues

16   in this case.  Plaintiff challenges only the withholding of the following documents: 1) eleven

17   pages of classified briefing materials (*i.e.*, Power Point slides) used by the DNI to brief members

18   of Congress regarding national security and intelligence matters; and 2) the classified telephone

19   message slip that contains the handwritten personal notes and mental impressions of an ODNI

20   employee.  As explained below, ODNI is entitled to summary judgment with respect to these

21   withholdings.

22                                    **ARGUMENT**

23   **I.    ODNI IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
              FOIA CLAIMS.**

24       The FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure

25   unless information is exempted under clearly delineated statutory language."  *John Doe Agency*

26   *v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  "Congress recognized, however, that public

27   disclosure is not always in the public interest."  *Central Intelligence Agency v. Sims*, 471 U.S.

28   159, 167 (1985).  The FOIA is designed to achieve a "workable balance between the right of the

1   public to know and the need of the Government to keep information in confidence to the extent

2   necessary without permitting indiscriminate secrecy." *John Doe*, 493 U.S. at 152 (quoting H.R.

3   Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2416, 2423).

4       To that end, FOIA mandates disclosure of government records unless the requested

5   information falls within one of nine enumerated exceptions, *see* 5 U.S.C. § 552(b). "A district

6   court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records,"

7   *i.e.*, records that do "not fall within an exemption." *Minier v. Central Intelligence Agency*, 88

8   F.3d 796, 803 (9th Cir. 1996) (emphasis by the court); *see also Kissinger v. Reporters Comm. for*

9   *Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal

10  jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3)

11  'agency records.'"). Despite the "liberal congressional purpose" of FOIA, the statutory

12  exemptions must be given "meaningful reach and application." *John Doe*, 493 U.S. at 152.

13  "Requiring an agency to disclose exempt information is not authorized by FOIA." *Minier*, 88

14  F.3d at 803 (quoting *Spurlock v. Fed. Bureau of Investigation*, 69 F.3d 1010, 1016 (9th Cir.

15  1995)).

16      The Government bears the burden of proving that the withheld information falls within

17  the exemptions it invokes. 5 U.S.C. § 552(a)(4)(b). Where, as here, responsive records are

18  withheld, "[c]ourts are permitted to rule on summary judgment . . . solely on the basis of

19  government affidavits describing the documents sought." *Lion Raisins v. USDA*, 354 F.3d 1072,

20  1082 (9th Cir. 2004). All that is required is that "the affiants [be] knowledgeable about the

21  information sought" and that "the affidavits [be] detailed enough to allow the court to make an

22  independent assessment of the government's claim." *Id.* The court may award summary

23  judgment to an agency on the basis of information provided in affidavits or declarations that

24  describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that

25  the information withheld logically falls within the claimed exemptions, and show that the

26  justifications are not controverted by contrary evidence in the record or by evidence of . . . bad

27  faith." *Hunt v. Central Intelligence Agency*, 981 F.2d 1116, 1119 (9th Cir. 1992). "'If the

28  affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to

1    establish an exemption, the district court need look no further.'" *Citizens Commission on*

2    *Human Rights v. Federal Drug Administration*, 45 F.3d 1325, 1329 (9th Cir. 1995) (quoting

3    *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).

4         In evaluating the applicability of FOIA exemptions for purposes of deciding the

5    summary judgment motion in this case, the Court must be mindful that the information sought by

6    plaintiff implicates national security, an area where the Executive Branch's judgment is due "the

7    utmost deference" from the Judicial Branch. *See Department of Navy v. Egan*, 484 U.S. 518,

8    530 (1988). Both the Supreme Court and the Court of Appeals for the Ninth Circuit have

9    specifically recognized the courts must give "great deference" to the Executive in the context of

10   FOIA claims that implicate national security. *Sims*, 471 U.S. at 179; *Berman v. Central

11   Intelligence Agency*, 501 F.3d 1136, 1140 (9th Cir. 2007). Indeed, courts have routinely and

12   repeatedly emphasized that "weigh[ing] the variety of subtle and complex factors in determining

13   whether disclosure of information may lead to an unacceptable risk of compromising the

14   [nation's] intelligence-gathering process" is a task best left to the Executive Branch and not

15   attempted by the judiciary. *Sims*, 471 U.S. at 180; s*ee Center for Nat'l Security Studies v. U.S.

16   Dept. of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004) ("the

17   judiciary is in an extremely poor position to second-guess the executive's judgment in this area

18   of national security."). Accordingly, the Court must give substantial weight to agency

19   determinations regarding national security. *See Berman*, 501 F.3d at 1143; *Hunt*, 981 F.2d at

20   119; *Hiken v. Department of Defense*, 521 F. Supp. 2d 1047, 1056 (N.D. Cal. 2007).

21        Given these standards of review, the discussion below and the accompanying

22   declarations demonstrate that the documents withheld by ODNI plainly fall within exemptions to

23   FOIA's disclosure requirements or are otherwise outside the scope of the FOIA.

24   **II.    ODNI CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE
                RECORDS.**

25        To obtain summary judgment on the issue of the adequacy of the records search, an

26   agency must "conduct a search reasonably calculated to uncover all relevant documents."

27   *Citizens Comm'n*, 45 F.3d at 1328 (9th Cir. 1995) (internal quotations omitted). "[A]ffidavits

28   describing agency search procedures are sufficient for purposes of summary judgment . . . if they

are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." *Citizens Comm'n*, 45 F.3d at 1328.

In determining the sufficiency of a search, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Citizens Comm'n*, 45 F.3d at 1328 (court's emphasis). In general, the sufficiency of a search is determined by the "appropriateness of the methods" used to carry it out, "not by the fruits of the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Accordingly, "the agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). In the absence of "countervailing evidence" or "substantial doubt," agency affidavits or declarations describing a reasonable and adequate search are sufficient to demonstrate an agency's compliance with FOIA. *See Iturralde*, 315 F.3d at 314 (citations omitted).

ODNI has conducted an appropriate search in this case. As described in the attached declaration of John Hackett, ODNI's Director of Information Management (IMO), after ODNI granted expedited processing of plaintiff's requests, the IMO examined how the requests should be handled, including where searches should be performed within the ODNI. *See* Hackett Decl. ¶ 10. The IMO identified all offices within ODNI likely to possess records responsive to plaintiff's requests. *Id.* Searches were conducted in the following ODNI offices: the ODNI Executive Secretariat, the Office of the Director and his staff, the Office of General Counsel, the Office of Legislative Affairs, and the Office of the Deputy Director of National Intelligence For Collection. *Id.* Given the nature and scope of plaintiff's requests, no other offices within ODNI would reasonably be expected to possess responsive documents. *Id.*

The ODNI Executive Secretariat serves as the DNI's focal point for the receiving, handling, and intra-agency distribution of internal and external correspondence. *Id.* ¶ 11. It reviews and distributes official DNI and Principal Deputy Director of National Intelligence

1    (PDDNI) internal and external correspondence that goes through the Executive Secretariat for

2    principal review, approval, or signature, and maintains hard copies to those records. *Id.* The

3    ODNI's Executive Secretariat performed a search for records responsive to plaintiff's requests

4    and located official correspondence between the DNI and members of Congress. *Id.* The

5    Executive Secretariat maintains an electronic database that serves as an index to the

6    corresponding hardcopy case files. *Id.* This electronic database covers all of the correspondence

7    handled by the Executive Secretariat. *Id.* The Executive Secretariat searched this database, as

8    well as its Microsoft Word share drive, using the terms "FISA," "FISA Amendment" and

9    "Telecommunication." *Id.*

10       Notices regarding plaintiff's request were also sent to individuals in the Office of the

11   Director, the Office of General Counsel, the Office of Legislative Affairs, and the Office of the

12   Deputy Director of National Intelligence For Collection, as well as some former members of

13   these Offices. *Id.* ¶ 12. These Offices were selected for search because their duties and

14   responsibilities are such that it was reasonably likely that individual employees within these

15   offices would have been involved in ODNI's FISA modernization effort. *Id.* All of these

16   individuals were provided with a copy of plaintiff's request letters and were asked to search their

17   electronic and hard copy files in order to locate records responsive to plaintiff's requests. *Id.*

18   After these individuals performed their searches they either forwarded responsive records or

19   advised the IMO that they did not locate any responsive records. *Id.* As the records were

20   located and forward to the IMO, the FOIA analyst handling this case conducted a continual

21   analysis and review of the documents located. *Id.* ¶ 13. Review of these records did not suggest

22   that searching additional components or offices within ODNI would reasonably be expected to

23   locate additional responsive documents. *Id.*

24       For these reasons, ODNI's search was reasonably calculated to identify documents

25   responsive to plaintiff's requests and ODNI is entitled to summary judgment.

26   **III.    ODNI PROPERLY WITHHELD THE BRIEFING SLIDES**

27   **A.    ODNI Properly Withheld the Briefing Slides Under Exemption 3.**

28       The classified briefing slides were properly withheld pursuant to Exemption 3 of the

1  FOIA.

2       Exemption 3 permits the withholding of information "specifically exempted from

3  disclosure" by a statute "refer[ring] to particular types of matters to be withheld."  5 U.S.C. §

4  552(b)(3).  In examining an Exemption 3 claim, a court must determine first whether the claimed

5  statute is a statute of exemption under FOIA, and second, whether the withheld material satisfies

6  the criteria of the exemption statute.  *See Sims*, 471 U.S. at 167; *Minier*, 88, F.3d at 801.

7       When Congress has enacted statutes that particularly identify certain categories of

8  information that are exempt from public disclosure notwithstanding the requirements of the

9  FOIA, Congress makes "manifest" its intent to require the withholding of documents falling

10 within the terms of those statutes.  *Fitzgibbon v. Central Intelligence Agency*, 911 F.2d 755, 761

11 (D.C. Cir. 1990); *see also id.* at 764 ("exemption statutes were congressionally designed to

12 shield processes at the very core of the intelligence agencies – intelligence-collection and

13 intelligence-source evaluation").  Under Exemption 3, a withholding agency "need not

14 demonstrate disclosure . . . will damage national security."  *Weiner v. FBI*, 943 F.2d 972, 983

15 n.18. (9th Cir. 1991).  By enacting a specific withholding statute, Congress already "decided that

16 disclosure of [the specified information] is potentially harmful."  *Hayden v. National Security*

17 *Agency*, 608 F.2d 1381, 1390 (D.C. Cir. 1979).  Thus, "Exemption 3 differs from other FOIA

18 exemptions in that its applicability depends less on the detailed factual contents of specific

19 documents; the sole issue for decision is the existence of a relevant statute and the inclusion of

20 withheld material within the statute's coverage." *Fitzgibbon*, 911 F.2d at 761-62 (internal

21 quotations omitted).

22       1.     Applicable Exemption 3 Statutes

23       Three withholding statutes are applicable to the briefing slides withheld by ODNI.  First,

24 Section 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64,

25 codified at 50 U.S.C. § 402 note, provides:

26       [N]othing in this Act or any other law . . . shall be construed to require the
         disclosure of the organization or any function of the National Security Agency, of
27       any information with respect to the activities thereof, or of the names, titles,
         salaries, or number of persons employed by such agency.

28 It is well-established that Section 6 "is a statute qualifying under Exemption 3."  *The Founding*

1   *Church of Scientology of Washington, D.C., Inc. v. Nat'l Security Agency*, 610 F.2d

2   824, 828 (D.C. Cir. 1979); *see also Lahr v. National Transp. Safety Bd.*, 453 F. Supp. 2d 1153,

3   1171-72 (C.D. Cal. 2006). Section 6 reflects a "congressional judgment that in order to preserve

4   national security, information elucidating the subjects specified ought to be safe from forced

5   exposure." *Church of Scientology*, 610 F.2d at 828. In enacting Section 6, Congress was "fully

6   aware of the 'unique and sensitive' activities of the [NSA] which require 'extreme security

7   measures.'" *Hayden*, 608 F.2d at 1390 (citing legislative history). Thus, "[t]he protection

8   afforded by section 6 is, by its very terms, absolute. If a document is covered by section 6, NSA

9   is entitled to withhold it. . . ." *Linder v. Nat'l Security Agency*, 94 F.3d 693, 698 (D.C. Cir.

10  1996).

11      Second, the National Security Act of 1947 as amended by Section 102A(i)(1) of the

12  Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638

13  (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1), requires the Director of National

14  Intelligence to "protect intelligence sources and methods from unauthorized disclosure." The

15  Court of Appeals for the Ninth Circuit has concluded that the National Security Act of 1947, as

16  amended, is a withholding statute for purposes of Exemption 3. *See Berman*, 501 F.3d at 1140.

17  Indeed, in the context of the FOIA, the Ninth Circuit has described the National Security Act as

18  providing the DNI with "sweeping power" and "very broad authority to protect all sources of

19  intelligence information from disclosure." *Berman*, 501 F.3d at 1140 (quoting *Sims*, 471 U.S. at

20  168-69); *see also id.* ("We have acknowledged that after *Sims*, there exists a near-blanket FOIA

21  exemption" for intelligence sources and methods.).

22      The third applicable statute is 18 U.S.C. § 798. This statute prohibits, on pain of criminal

23  penalty, the disclosure of various kinds of classified information, including information

24  "concerning the communications intelligence activities of the United States." *Id.* Specifically,

25  18 U.S.C. § 798(a) provides, in pertinent part, that

26          Whoever knowingly and willfully communicates, furnishes, transmits or
            otherwise makes available to an unauthorized person, or publishes, or uses in any

27          manner prejudicial to the safety or interest of the United States . . . any classified
            information . . . (3) concerning the communications intelligence activities of the

28          United States . . . shall be fined under this title or imprisoned for not more than
            ten years, or both.

*Id.* The term "communications intelligence" means "all procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients." *Id.* § 798(b). This statute clearly identifies matters to be withheld from the public and refers to particular types of matters to be withheld. *See* 5 U.S.C. § 552(b)(3). Thus, this statute qualifies as an Exemption 3 statute under the FOIA. *See People for the American Way Foundation ("PFAW") v. Nat'l Security Agency*, 462 F. Supp. 2d 21, 28 (D.D.C. 2006); *Florida Immigrant Advocacy Ctr. v. Nat'l Security Agency*, 380 F. Supp. 2d 1332, 1340 (S.D. Fla. 2005); *Winter*, 569 F. Supp. at 548.

       2.    <u>The Briefing Slides Fall Within the Scope of Exemption 3.</u>

In this case the briefing slides withheld by ODNI are squarely within the scope of the Exemption 3 statutes that ODNI has invoked. The attached declaration of Rhea Siers of the National Security Agency explains how compelled disclosure of the documents would harm national security and reveal important information about the United States' intelligence sources and methods.[1] *See* Declaration of Rhea Siers (attached as Exhibit B) (hereinafter "Siers Decl.").

ODNI has withheld two sets of nearly identical classified briefing materials (*i.e.*, Power Point slides) titled "FISA Modernization" that were used to brief members of Congress regarding national security and intelligence matters. *See* Siers Decl. ¶ 10. The first set is five pages and it is classified as SECRET//NOFORN. *Id.* The second set is similar to the first set – the first five pages contain the same slides, but the second set has one additional page consisting of statistical information on the NSA's targeting for foreign intelligence collection. *Id.* The second set of slides is classified as TOP SECRET//COMINT//NOFORN. *Id.* These briefing slides contain highly sensitive information discussing how the NSA collects communications, including information about the specific types of communications collected and the transmission paths of these communications. *Id.* ¶ 11. Further, the information contained on these slides reveals the intelligence sources and methods that NSA uses to collect communications. *Id.* ¶ 20.

_____

[1] Because the information in the briefing slides originated with the National Security Agency, that agency has submitted a declaration explaining the basis for the withholding. *See* Hackett Decl. ¶ 20.

1    As described in the Siers Declaration, one of the NSA's primary missions is to intercept

2   communications in order to obtain foreign intelligence information necessary to the national

3   defense, national security, and foreign affairs of the United States.[2]  *Id.* ¶ 4.  These intelligence

4   gathering methods include collection of signals intelligence ("SIGINT"), which is information

5   derived from foreign electromagnetic signals.  *Id.*  The briefing slides at issue in this case discuss

6   important aspects of the NSA's SIGINT and intelligence gathering capabilities.  *Id.* ¶ 20.  This

7   information goes to the core of the NSA's mission, as it specifically discusses the NSA's

8   organization, functions, activities, and the process by which intelligence information is collected.

9   *Id.*; *see Hayden*, 608 F.2d at 1389 ("signals intelligence is one of the NSA's primary functions";

10  and the release of information related to SIGINT collection would "disclose information with

11  respect to [NSA] activities, since an intercepted communication concerns an NSA activity").

12  Consequently, the slides fall squarely within the scope of Section 6, which requires the

13  withholding of information related to "any function of the National Security Agency, or any

14  information with respect to the activities thereof,"[3] as well as the National Security Act and 18

15  U.S.C. § 798.  *See PFAW*, 462 F. Supp. 2d at 29 (affirming NSA decision to withhold "briefing

16  slides" that detail intelligence capabilities and activities).

17       **B.    ODNI Properly Withheld the Briefing Slides Under Exemption 1.**

18       The briefing slides withheld by ODNI pursuant to Exemption 3 are also properly

19  withheld pursuant to Exemption 1 of the FOIA.[4]

20

21       [2] For additional information about the NSA's mission and intelligence functions, *see*
22  Siers Decl. ¶¶ 3-9.

23       [3] Under Section 6, the NSA need only show that information "concerns a specific NSA
     activity and that its disclosure would reveal information integrally related to that activity."  *Lahr*,
24  453 F. Supp. 2d at 1192.  No showing need be made concerning the particular security threats
     posed by the release of the information.  *Id.*
25

26       [4] In both *Miner* and *Hunt*, the Ninth Circuit upheld the CIA's withholding of information
     concerning intelligence sources and methods based on the National Security Act and found it
27  unnecessary to decide whether FOIA Exemption 1 was also applicable.  *Minier*, 88 F.3d at 800
     n.5; *Hunt,* 981 F.2d at 1118.  Likewise here, Exemption 3 clearly encompasses the briefing slides
28  at issue, and there is no need to consider the applicability of additional exemptions.  This section
     nevertheless explains that Exemption 1 also applies to the documents and supplies an additional

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exemption 1 allows an agency to protect records that are: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to Executive Order." *See* 5 U.S.C. § 552 (b)(1).  In short, under Exemption 1 material that has been properly classified is exempt from disclosure.  *See Weiner*, 943 F.2d at 979.

The Executive Order applicable to the documents at issue in this case is Executive Order ("E.O.") 12958, "Classified National Security Information," as amended by E.O. 13,292.  *See* 68 Fed. Reg. 15315 (Mar. 28, 2003).  Under section 1.1(a) of E.O. 12958, information may be classified if the following conditions are met:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

E.O. 12958, § 1.1 (a).  Two categories of information that may be properly classified under the E.O., both of which are applicable to this case, are "intelligence activities (including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to national security, which includes defense against transnational terrorism."  E.O. 12958, § 1.4 (c), (g).

As discussed above, in reviewing national security classification determinations under Exemption 1, the Ninth Circuit has emphasized that, like the Exemption 3 analysis, "substantial weight" must be accorded to agency affidavits concerning the classified status of the records at issue.  *Weiner*, 943 F.2d at 980; *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (stating that the "court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the

grounds on which to grant summary judgment in ODNI's favor.

1   expert opinion of the agency.").

2          With regard to the briefing slides, the NSA has submitted a declaration from a TOP

3   SECRET classification authority confirming that the slides meet the criteria for classification as

4   set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958, as amended.  *See*

5   Sires Decl. ¶¶ 1, 12-15.  Specifically, the slides reveal sensitive sources and methods of the

6   NSA's intelligence operations, including how the NSA collects communications, information

7   and statistics about the specific types of communications collected, and the transmission paths of

8   these communications.  Sires Decl. ¶¶ 13-15.  Accordingly, the information in the slides is

9   properly classified at the SECRET and TOP SECRET levels, which means that unauthorized

10  disclosure reasonably could be expected to cause serious and exceptionally grave damage to the

11  national security, respectively.[5]  *Id.* ¶¶ 14-15.

12         The Siers declaration also explains in sufficient detail why disclosure of the information

13  in the slides will result in damage to the national security.  Public disclosure of the slides would

14  reveal information regarding the types of communications NSA collects and how it collects such

15  communications.  *Id.* ¶ 15.  This information would allow adversaries of the United States to

16  accumulate information and draw conclusions about the NSA's technological capabilities,

17  sources, and methods.  *Id.*  Disclosure would thus provide these adversaries with a road map to

18  the NSA's intelligence capabilities, thereby educating them as to which of their communication

19  modes remain safe or are successfully defeating the NSA's capabilities.  *Id.*  Further, public

20  disclosure of information about the NSA's intelligence capabilities could easily alert potential

21  intelligence targets to the vulnerabilities of their communications and would encourage them

22  implement countermeasures.  *Id.*  ¶ 8.  If a target is successful in defeating the NSA's targeting

23  efforts, all of the intelligence from that source would be lost and the government officials that

24  rely on that information –  military, national policymakers, intelligence community – would have

25  to operate and make decisions without that information.  *Id.* ¶ 9.  Such losses are extremely

26  harmful to national security, to say nothing of the significant cost and effort that would be

27

28         [5] The Siers Declaration also explains that no portion of the slides can be meaningfully
    segregated so as to release non-exempt material.  Siers Decl. ¶ 11.

1    required to implement new intelligence gathering technology to replace the methods

2    compromised by public disclosure.  *Id.* ¶¶ 7, 9.

3        For these reasons, ODNI is entitled to summary judgment with respect to its withholding

4    of the briefing slides.

5    **IV.    ODNI PROPERLY WITHHELD THE TELEPHONE MESSAGE SLIP**

6        **A.    The Telephone Message Slip Is Not An Agency Record Under The FOIA.**

7        The telephone message slip that contains the handwritten personal notes and mental

8    impressions of an ODNI attorney is not an agency record under the FOIA.

9        To qualify as an "agency record" subject to the FOIA, two conditions must be satisfied:

10   (1) "an agency must either create or obtain the requested materials," and (2) "the agency must be

11   in control of the requested materials at the time the FOIA request is made."  *United States Dep't*

12   *of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *see also Baizer v. Department of the Air*

13   *Force*, 887 F. Supp. 225, 227 (N.D. Cal. 1995) ("Both possession and control by an agency are

14   therefore required for materials to fall within the FOIA.").  ODNI concedes the first prong of this

15   test and agrees that an ODNI employee created the phone message slip at issue in this case, but

16   ODNI disputes that it possess the requisite degree of "control" over the phone message slip for it

17   to fall within the scope of the FOIA.

18       With respect to the "control" prong of the analysis, courts have focused on "a variety of

19   factors surrounding the creation, possession, control and use of the document by an agency."

20   *Bureau of National Affairs, Inc. v. United States Dep't of Justice* ("*BNA*"), 742 F.2d 1484, 1490

21   (D.C. Cir. 1984); *see Baizer*, 887 F. Supp at 227-28.  These factors include: "whether the

22   document was generated within the agency, has been placed into the agency's files, is in the

23   agency's control, and has been used by the agency for an agency purpose."  *BNA*, 742 F.2d at

24   1493; *see Baizer*, 887 F. Supp. at 227-28 (citing *BNA*); *Grand Central Partnership v. Cuomo*,

25   166 F.3d 473, 479 (2d Cir. 1999) (relying on *BNA*); *Sibille v. Federal Reserve Bank of New*

26   *York*, 770 F. Supp. 134, 138 (S.D.N.Y 1991) ("courts have followed the lead of *BNA* in deeming

27   agency or personal use to be an important element in determining whether documents created by

28   agency personnel are agency records.").  In particular, courts in both the Ninth and D.C. Circuits

1  have "focused on how the agency used the requested material." *Baizer*, 887 F. Supp. at 228; *see*

2  *Consumer Federation of America v. Department of Agriculture,* 455 F.3d 283, 290-91 (D.C. Cir.

3  2006); *BNA*, 742 F.2d at 1492.  At bottom, however, the central inquiry when considering the

4  totality of these factors is "whether, when an employee creates a document, that creation can be

5  attributed to the agency under the FOIA."  *BNA*, 742 F.2d at 1492.

6      Importantly, the Supreme Court has emphasized that "the term 'agency records' is not so

7  broad as to include personal materials in an employee's possession, even though the materials

8  may be physically located at the agency."  *See Tax Analysts*, 492 U.S. at 144.  Employing agency

9  resources, standing alone, is not sufficient to render a document an agency record.  *See Gallant*

10  *v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994); *BNA*, 742 F.2d at 1493 (documents subject to the

11  FOIA must be "agency records" and "not an employee's record that happens to be located

12  physically within an agency").  Records may be personal both "in the sense of not related to

13  agency business and in the sense of being utilized by only one individual."  *Cuomo*, 166 F.3d at

14  480.  Indeed, "the use of documents solely for personal convenience strongly reinforces the

15  conclusion that disputed documents are not agency records subject to the FOIA."  *Washington*

16  *Post v. Dep't. of State*, 632 F. Supp. 607, 615 (D.D.C. 1986).  "In short, documents are typically

17  not agency records under the Act unless and until they are included within material controlled,

18  created, approved and utilized by the agency itself."  *Judicial Watch v. Clinton*, 880 F. Supp. 1,

19  11 (D.D.C. 1995), *aff'd on other grounds* 76 F.3d 1232 (D.C. Cir. 1996).

20      Applying this distinction between personal and agency records, courts have consistently

21  held that documents such as telephone message slips and personal notes of government

22  employees are not agency records subject to the FOIA.  *See BNA* at 1495 (telephone message

23  slips intended for personal use, not placed in agency files, not relied on by any other agency

24  official, and where employee had freedom to dispose at any time were not agency records);

25  *Fortson v. Harvey*, 407 F. Supp. 2d 13, 15-16 (D.D.C. 2005) (notes taken by government

26  employee investigating equal opportunity complaint are not agency records where no agency

27  obligation on employee to keep such notes, the notes were not relied upon by other agency

28  personnel, employee stored notes in personal folder, notes not integrated into agency's general

1  system of records, and employee used notes only to refresh recollection); *Bloomberg v. SEC*, 357

2  F. Supp. 2d 156, 166 (D.D.C. 2004) (telephone message slip and personal notes taken by

3  government employee during an agency meeting are not agency records because they were

4  intended for personal use of government employee, not circulated to other agency employees,

5  not relied on by agency, and not incorporated into agency files); *Clinton*, 880 F. Supp. at 11

6  (telephone logs, calendar markings and personal staff notes intended for personal use and not

7  incorporated into the agency's record keeping system are not agency records); *Sibille*, 770 F.

8  Supp. at 138 (handwritten notes of meetings and telephone conversations created for the personal

9  convenience of government employees that were not circulated within the agency, not stored

10  with agency records and not accessible by others within the agency are not agency records);

11  *Inner City Press/Community on the Move v. Board of Governors of Federal Reserve System*,

12  1998 WL 690371 at *6 (S.D.N.Y. 1998) (notes taken by government attorney during telephone

13  call with two outside companies are not agency records where the notes were taken on the

14  lawyer's own initiative and, although the notes were in furtherance of his official duties, the

15  lawyer neither shared them with other agency employees nor placed them in agency files);

16  *Kalmin v. Dep't of Navy*, 605 F. Supp. 1492, 1494-95 (D.D.C. 1986) (personal notes created by

17  government employee are not agency records because notes were made for the sole purpose of

18  refreshing the writer's memory, maintained in writer's personal files, never circulated to other

19  agency employees, never under the agency's control, and could have been discarded at will in

20  the writer's sole discretion); *Marriott Employees' Federal Credit Union v. National Credit*

21  *Union Admin.*, 1996 WL 33497625 at *7 (E.D. Va. 1996) (handwritten and computer notes that

22  were created by agency employees for their personal use and to assist them in the performance of

23  their official duties by cataloguing meetings, contacts and conversations for future reference, not

24  incorporated into the agency's files, not made available to or accessible by others, and not

25  created for an agency purpose are not agency records); *AFGE, Local 2782 v. Dep't of*

26  *Commerce*, 632 F. Supp. 1272, 1277 (D.D.C. 1986) (personal notes and logs, "although

27  undoubtedly work-related" and created by an employee for the purpose of "facilitat[ing] her own

28  performance of her duties" are not agency records); *Miranda Manor, Ltd. v. Dep't of Health and*

1    *Human Services*, 1986 WL 4426 at *2-3 (N.D. Ill. 1986) (notes taken by government employee

2    during official licensing inspection of nursing home are not agency records because employee

3    voluntarily created the notes to refresh memory, notes were not circulated among agency staff,

4    and employee was free to discard notes at any time).

5          Applying these factors to the present case, the ODNI phone message slip is not an agency

6    record under the FOIA.  As explained in the Hackett declaration, the message slip is a personal

7    record because (1) it was prepared for the personal convenience of an ODNI attorney, (2) it did

8    not circulate to anyone other than the attorney's assistant within the agency, (3) it was kept in the

9    attorney's personal files and not in any agency files, (4) it was not used by the agency to conduct

10   official business, (5) the attorney was not instructed or otherwise required to make or keep the

11   slip, and (6) the attorney was free to retain or discard the slip at any time.  *See* Hackett Decl. ¶¶

12   22-25.

13         The message slip at issue in this case resulted from an incoming telephone call intended

14   for an ODNI attorney.  Hackett Decl. ¶ 23.  The attorney's assistant received the call and

15   completed a standard message form by noting the caller's name, the caller's phone number, the

16   date and time of the call, and checked the box "please call."  *Id.* ¶¶ 22-23.  The secretary

17   provided the message slip to the ODNI attorney and the attorney returned the telephone call.  *Id.*

18   ¶ 23.  During that telephone conversation, the attorney wrote notes on the blank lines on the

19   bottom of the message slip as well as on the back side of the slip.  *Id.*  These handwritten

20   personal notes consist of the attorney's mental impressions during the phone call, as well as

21   attorney work product and deliberative information.  *Id.*

22         The message slip was created by an administrative assistant voluntarily and  purely for

23   the personal use and convenience of an ODNI attorney in order to advise that person of a missed

24   telephone call.  *Id.* ¶ 24.   The notes written on the slip were intended only to later refresh the

25   memory of the attorney regarding the telephone conversation and the attorney's mental

26   impressions of that conversation.  *Id.*  The message slip was not created to satisfy any

27   agency-imposed requirement or obligation.  *Id.*  Neither the attorney nor the assistant were under

28   any agency directive to create the telephone message slip and ODNI does not have a formal

1  agency policy regarding the creation, storage, or disposal of telephone message slips. *Id.*  Indeed,

2  the ODNI attorney was under no obligation to maintain this message slip and could have

3  disposed of it at any time.  *Id.*

4       Furthermore, the message slip was not integrated into the ODNI official filing system but

5  rather was kept in the attorney's personal files.[6]  *Id.* ¶ 25.  No copies of the slip were made, it

6  was not stored electronically in any fashion, and it was not integrated into a computer network

7  accessible by other ODNI employees.  *Id.*  Other than the attorney's assistant, who initially took

8  the message, the slip was not accessible by other employees within the agency and it was not

9  shared with or circulated to any other ODNI employees.  *Id.*; *see BNA*, 742 F.2d at 1496-97

10  (holding that appointment calendar prepared by employee's secretary but not otherwise

11  circulated to agency employees is not agency record).  The slip was not used by the agency to

12  conduct official business nor was it used as part of any official decision-making.  Hackett Decl. ¶

13  25.  No other agency employee used or relied on the information on this message slip to conduct

14  agency business.  *Id.*  Consequently, and consistent with the case law discussed above, this

15  document is not an agency record subject to the FOIA.

16       **B.       The Telephone Message Slip Was Properly Withheld Under Exemption 5.**

17       Even assuming the telephone message slip is an agency record, it is protected from

18  disclosure pursuant to FOIA Exemption 5, which protects from disclosure "inter-agency or

19  intra-agency memorandums or letters which would not be available by law to a party other than

20  an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The exemption covers documents

21  "normally privileged in the civil discovery context."  *National Labor Relations Bd. v. Sears,*

22  *Robuck & Co.*, 421 U.S. 132, 149 (1975); *see Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084,

23  1088 (9th Cir. 2002).  In this case the civil discovery privileges at issue are the attorney work-

24  product doctrine and the deliberative process privilege.

25       The Attorney Work Product Doctrine.  The attorney work product doctrine protects from

26  disclosure "documents and tangible things prepared by a party or his representative in

27

28       [6] The slip was kept on the attorney's desk for a number of weeks before being placed into
one of the attorney's unofficial miscellaneous files pertaining to the FISA.  Hackett Decl. ¶ 25.

1  anticipation of litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Environmental*

2  *Management)*, 357 F.3d 900, 906 (9th Cir. 2004).  These documents include "the files and the

3  mental impressions of an attorney . . . reflected, of course, in interviews, statements,

4  memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other

5  tangible and intangible ways." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  The doctrine,

6  thus, protects information generated by legal counsel where "the document can fairly be said to

7  have been prepared or obtained because of the prospect of litigation."[7] *In re Grand Jury*

8  *Subpoena*, 357 F.3d at 907; *see Feshbach v. SEC*, 5 F. Supp. 2d 774, 782 (N.D. Cal. 1997).

9      Disclosure of the information in the message slip would reveal the mental impressions

10  and thought processes of the attorney who wrote the notes.  Hackett Decl. ¶ 27.  In this instance

11  a government lawyer made certain handwritten notations during a conversation with a

12  representative of a telecommunications company.[8]  *Id.*  This document was most certainly

13  prepared because of the prospect of litigation, specifically the lawsuits against the Government

14  and various telecommunications companies pending in the Northern District of California

15  challenging the legality of the Government's intelligence gathering activities since September

16  11, 2001, including challenges to the Government's compliance with the FISA.  *Id.*; s*ee In re*

17  *NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW).  Additionally,

18  the Government anticipates ongoing constitutional and legal challenges to its intelligence

19  activities and specific challenges to the Protect America Act as well as any permanent

20  amendments to the FISA.  Hackett Decl. ¶ 27.  Disclosure of this information would severely

21  hamper the adversarial process as attorneys at ODNI working on litigation or anticipating

22  litigation would no longer feel free to write down important thoughts on cases for fear that the

23  information might be publicly disclosed to their adversaries.  *Id.*  Further, such disclosure is

24

25      [7] Because the work product doctrine in the FOIA context is absolute, "there is no

26  obligation to segregate factual from deliberative material where documents are withheld
   pursuant to the attorney work product privilege."  *Feshbach*, 5 F. Supp. 2d at 783.

27

28      [8] The message slip meets the "inter-agency or intra-agency "threshold criteria for
   Exemption 5 because it is an internal agency document created by an ODNI employee that was
   never transmitted outside the agency.  Hackett Decl. ¶ 26.

1   particularly problematic in this case because EFF is one of the lead counsel in the litigation

2   related to the creation of the attorney's notes.  *Sears*, 421 U.S. at 143 (stating that FOIA's

3   primary purpose was not to benefit private litigants or to substitute for civil discovery).  For the

4   work product doctrine to have vitality, attorneys must be permitted to "work with a certain

5   degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to

6   "assemble information, sift what [they] consider[ ] to be the relevant from the irrelevant facts,

7   prepare [their] legal theories and plan [their] strateg[ies] without undue and needless

8   interference."  *Hickman*, 329 U.S. at 510-11; *In re Sealed*, 146 F.3d 881, 884 (D.C. Cir. 1998)

9   ("Without a strong work-product privilege, lawyers would keep their thoughts to themselves,

10  avoid communicating with other lawyers, and hesitate to take notes.").

11          The Deliberative Process Privilege.  In addition, the notes written by the attorney on

12  telephone message slip are protected from disclosure by the deliberative process privilege.

13  Records are covered by that privilege if they are "predecisional in nature" and form "part of the

14  agency's deliberative process."  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089,

15  1092 (9th Cir. 1997) (internal quotations omitted).  "A predecisional document is one prepared

16  in order to assist an agency decisionmaker in arriving at his decision, and may include

17  recommendations, draft documents, proposals, suggestions, and other subjective documents

18  which reflect the personal opinions of the writer rather than the policy of the agency."  *Id.* at

19  1093.  "As a general matter, notes taken by government officials often fall within the

20  deliberative process privilege."  *Baker & Hostetler v. Dep't of Commerce*, 473 F.3d 312, 321

21  (D.C. Cir. 2006).  "Notes generally are selective and deliberative – and routine public disclosure

22  of meeting notes and other notes would hinder government officials from debating issues

23  internally, deter them from giving candid advice, and lower the overall quality of the government

24  decisionmaking process."  *Id.*

25          The notes on the phone message slip are protected by the deliberative process privilege

26  because it contains the handwritten mental deliberations of its author.  *See* Hackett Dec. ¶ 28.  In

27  this case an ODNI attorney wrote down certain notes during the course of a telephone

28  conversation.  *Id.*  These notes reflect this attorney's thoughts and mental impressions regarding

1    the conversation in order to later refresh the attorney's memory.  *Id.*  The notations on this

2    document are pre-decisional and deliberative as they relate to the ongoing discussions regarding

3    FISA modernization, the Protect America Act, and the pending litigation discussed above.  *Id.*

4    These informal and unofficial handwritten notations contain no final decisions, but instead

5    reflect a government lawyer's thoughts and mental impressions regarding a telephone

6    conversation.  *Id.* Disclosure of this type of deliberative materials would inhibit government

7    employees from writing notes of their conversations, thereby hindering the overall quality of

8    government decisionmaking.[9]  *Id.*; *see Judicial Watch of Florida v. Dep't of Justice*, 102 F.

9    Supp. 2d 6, 12-13 (D.D.C. 2000) (holding that Attorney General's hand written notes are

10   protected from disclosure by deliberative process privilege).

11        **C.  The Telephone Message Slip Was Properly Withheld Under Exemptions 1 & 3.**

12        ODNI also withheld certain portions of the telephone message slip under Exemptions 1 &

13   3.  The attached declaration of Lieutenant General of Ronald L. Burgess, Jr. (attached as Exhibit

14   C) (hereinafter "Burgess Decl."), who is an original classification authority, explains that certain

15   information on the message slip is currently and properly classified as TOP SECRET under

16   subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958, as amended.  As noted

17   above, the Court must give "substantial weight" to the agency's determinations regarding

18   national security issues.  *See, e.g.*, *Berman*, 501 F.3d at 1140.

19        The handwritten notes on the slip contain the ODNI attorney's mental impressions of a

20

21   _____

22        [9] The FOIA requires that any "reasonably segregable portion of a record shall be
     provided to any person requesting such record after deletion of the portions which are exempt."
23   5. U.S.C. § 552(b).  Because the phone message slip is not an agency record under the FOIA, it
     is not necessary to segregate any portions of it.  Even assuming it is considered to be an agency
24   record, the attorney work-product doctrine protects the entire document from disclosure.
     *Feshbach*, 5 F. Supp. 2d at 783.  Furthermore, even assuming the Court disagrees with these
25   positions, the attorney's notes on the slip are protected by the deliberative process privilege for
     the reasons discussed above and the factual portions of the slip, such as the name and phone
26   number of the caller, as well as the name of the ODNI attorney, are protected from disclosure
     under FOIA exemption 6 because disclosure of this factual information would be an unwarranted
27   invasion of personal privacy.  *See* Hackett Decl. ¶ 29-30; 5 U.S.C. § 552(b)(6).  Additionally, as
     discussed further below, certain portions of information on the slip are classified and exempt
28   from disclosure under Exemption 1 & 3.

1    conversation with a representative of a telecommunication company.  Burgess Decl. ¶ 5.  The

2    issues discussed during the conversation focused on the various options that are available to

3    address the litigation facing the telecommunications carriers.  *Id.*  As noted above, this litigation

4    consists of civil lawsuits based on the telecommunication carriers' alleged involvement in United

5    States Government intelligence activities.  *Id.*  The ODNI attorney and the caller discussed issues

6    such as court orders and legislation.  *Id.*

7        No further information about the contents of this message slip can be disclosed without

8    revealing classified information as well as the information protected from disclosure under FOIA

9    Exemptions 3, 5, and 6.  *Id.*  Recognizing this difficult position for the Government in national

10   security FOIA cases, the Ninth Circuit has noted the tension between "justifying the applicability

11   of the exemption with sufficient specificity to permit [the plaintiff] meaningfully to challenge it"

12   and the Government's "need to avoid providing a description that is so specific that it risks

13   disclosing protected sources and methods."  *Berman*, 501 F.3d at 1142; *see Hiken*, 521 F. Supp.

14   2d at 1058 ("Providing more detailed descriptions may subvert the purpose of the exemption.").

15   Any further public details about the contents of the message slip would tend to confirm the

16   existence or non-existence of a relationship with a telecommunications carrier, which is

17   currently and properly classified.  Burgess Decl. ¶ 5.  Disclosure of such information would

18   harm the national security.  Specifically, if ODNI were to release information that would tend to

19   confirm the existence or non-existence of a relationship with a particular telecommunications

20   carrier, then this fact would allow individuals, including adversaries of the United States, to

21   accumulate information and draw conclusions about how the United States Government collects

22   communications, its technical capabilities and its sources and methods of collection.  *Id.* ¶ 6.

23   Confirmation by ODNI that the Government does or does not have a relationship with a

24   particular telecommunications carrier for an intelligence activity would provide adversaries of

25   the United States with a road map, instructing them which communications modes and personnel

26   remain safe or are successfully defeating the Government's capabilities.  *Id.*  For example, if

27   ODNI were to admit publicly in response to an information request that no relationship with

28   telecommunications companies A, B, and C exists, but in response to a separate information

1  request about company D state only that no response could be made, this would give rise to the

2  inference that the Government has a relationship with company D. *Id.* Over time, the

3  accumulation of these inferences would disclose the capabilities (sources and methods) of the

4  Government's intelligence activities and inform adversaries of the United States of the degree to

5  which the Government can successfully exploit particular communications. *Id.* Adversaries can

6  then develop countermeasures to thwart the Government's abilities to collect their

7  communications. *Id.* Accordingly, release of this information or providing any further public

8  description of its contents would reveal Top Secret information that could reasonably be

9  expected to cause exceptionally grave harm to national security.[10] *Id. ¶ 9; see Berman*, 501 F.3d

10  at 1142-43 (upholding CIA declaration where more specific response might allow foreign

11  intelligence agents to determine contours of intelligence operations, sources, and methods).

12      For these same reasons, the classified information in the message slip is also protected

13  from disclosure under Exemption 3.[11] *See* Burgess Decl. ¶¶ 10-11. Disclosure of this

14  information is prohibited by the National Security Act of 1947 as amended, which requires the

15  Director of National Intelligence to "protect intelligence sources and methods from unauthorized

16  disclosure." *See* 50 U.S.C. § 403-1(i)(1); *See* Burgess Decl. ¶¶ 10-11. Accordingly, release of

17  any additional information in the message slip, beyond that which is described above, would

18  inappropriately reveal sensitive intelligence sources and methods.

19                                   **CONCLUSION**

20      For the reasons stated herein, ODNI is entitled to summary judgment.

21

22  Dated: February 5, 2008                          Respectfully submitted,

23  _____

24      [10]  In the event ODNI's various arguments for withholding the message slip and briefing
25  slides are not accepted by the Court on the current public record, ODNI reserves the right to
    provide more detailed explanations for the withholding pursuant to Exemptions 1 and 3 by way
26  of an *in camera*, *ex parte* classified submission to the Court. *See, e.g., Pollard v. F.B.I.*, 705
    F.2d 1151, 1153-54 (9th Cir. 1983).

27      [11] *See supra* note 4 (noting that the classification of sources and methods information is
28  irrelevant for purposes of the statutory protection afforded under Exemption 3).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

SCOTT N. SCHOOLS
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch


*/S/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7332
Washington, D.C. 20530
Telephone: (202) 616-5084
Facsimile: (202) 616-8460
E-mail: Andrew.Warden@usdoj.gov

*Attorneys for Defendant Office of the
Director of National Intelligence*