# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION<br>　　　　　Plaintiff,<br><br>v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL<br>INTELLIGENCE,<br>　　　　　Defendant. | Civil Action No. 07-5278 |

### DECLARATION OF JOHN F. HACKETT

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare the following to be true and correct:

1. I am the Director of the Information Management Office (IMO) for the Office of the Director of National Intelligence ("ODNI"). In this capacity I am the final decision-making authority for the IMO which receives, processes, and responds to requests for ODNI records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

2. I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

### Background

3. Congress created the position of the Director of National Intelligence (DNI) in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the United States

Intelligence Community and as the principal advisor to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to the national security. 50 U.S.C. § 403(b)(1), (2).

4. The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. These responsibilities include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. 50 U.S.C. § 403-1(a)(1). The DNI is charged with establishing the objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the Intelligence Community. 50 U.S.C. § 403-1(f)(1)(A)(i) and (ii).

5. In addition, the National Security Act of 1947, as amended, states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of information under applicable law, Executive Orders, or other Presidential directives and for access to and dissemination of intelligence. 50 U.S.C. § 403-(i)(2)(A), (B).

6. Finally, the National Security Act of 1947, as amended, created an Office of the Director of National Intelligence. The function of this Office is to assist the DNI in carrying out the duties and responsibilities of the Director under the Act and other

applicable provisions of law, and to carry out such other duties as may be prescribed by the President or by law.

7. The DNI and his staff have played an active role in seeking modernization of the Foreign Intelligence Surveillance Act (FISA), including providing liability protection for the private sector. The DNI has testified before Congress on the issue of FISA modernization on a number of occasions.

### Administrative Processing of Plaintiff's FOIA Requests

8. By facsimile dated August 31, 2007, plaintiff Electronic Frontier Foundation submitted two FOIA requests to ODNI for records concerning 1) briefings, discussions, or other exchanges that Director McConnell or other ODNI officials have had with representatives of telecommunications companies concerning amendments to FISA, including any discussion of immunizing such companies or holding them otherwise unaccountable for their role in government surveillance activities; and 2) briefings, discussions, or other exchanges that Director McConnell or other ODNI officials have had with members of the Senate or House of Representatives concerning amendments to FISA, including, but not limited to, any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities.[1] ODNI received the requests on September 4, 2007. (Copies of plaintiff's initial request letters are attached as Exhibits K & L to the Declaration of Marcia Hofmann, filed in support of plaintiff's motion for preliminary injunction.)

---

[1] Both of plaintiff's requests seek information pertaining to, among other things, "any discussion of immunizing such companies or holding them otherwise unaccountable for their role in government surveillance activities." Nothing in this declaration should be construed to confirm or deny any role that telecommunications companies may or may not have in any government surveillance activities.

9. In its initial FOIA request letters, plaintiff requested expedited processing based on assertions that there is "an urgency to inform the public about an actual or alleged Federal Government activity" and that the requests are being "made by a person primarily engaged in disseminating information." By letters dated September 11, 2007, ODNI acknowledged receipt of plaintiff's FOIA requests and granted expedited processing. ODNI advised plaintiff that its requests would be processed as soon as practicable, as required by the FOIA. (Copies of ODNI's September 11, 2007 letters are attached as Exhibits M & N to the Declaration of Marcia Hofmann, filed in support of plaintiff's motion for preliminary injunction.)

10. Upon granting expedited processing of plaintiff's requests, the IMO began to coordinate within the ODNI how the requests should be handled, including where searches should be performed within the ODNI. The IMO identified all offices within ODNI likely to possess records responsive to plaintiff's requests. Searches were conducted in the following ODNI offices: the ODNI Executive Secretariat, the Office of the Director and his staff, the Office of General Counsel, the Office of Legislative Affairs and the Office of the Deputy Director of National Intelligence for Collection. Given the nature and scope of plaintiff's requests, no other offices within ODNI would reasonably be expected to possess responsive documents.

11. The ODNI Executive Secretariat serves as the DNI's focal point for the receiving, handling, and intra-agency distribution of internal and external correspondence. It reviews and distributes official DNI and Principal Deputy Director of National Intelligence (PDDNI) internal and external correspondence that goes through the Executive Secretariat for principal review, approval or signature, and maintains

hardcopies of those records. The ODNI's Executive Secretariat performed a search for records responsive to plaintiff's requests and located official correspondence between the DNI and members of Congress. The Executive Secretariat maintains an electronic database that serves as an index to the corresponding hardcopy case files. This electronic database covers all of the correspondence handled by the Executive Secretariat. The Executive Secretariat searched this database, as well as its Microsoft Word share drive, using the terms "FISA," "FISA Amendment" and "Telecommunication."

12. In addition, notices regarding plaintiff's request were sent to individuals in the Office of the Director, the Office of General Counsel, the Office of Legislative Affairs, and the Office of the Deputy Director of National Intelligence for Collection, as well as some former members of these Offices. These Offices were selected for search because their duties and responsibilities are such that it was reasonably likely that individual employees within these offices would have been involved in ODNI's FISA modernization effort. All of these individuals were provided with a copy of plaintiff's request letters and were asked to search their electronic and hard copy files in order to locate records responsive to plaintiff's requests. After these individuals performed their searches they either forwarded responsive records or advised the IMO that they did not locate any responsive records.

13. As the records were located and forward to the IMO, the FOIA analyst handling this case conducted a continual analysis and review of the documents located. Review of these records did not suggest that searching additional components or offices within ODNI would reasonably be expected to locate additional responsive documents.

Release of Responsive Records To Plaintiff

14. On November 27, 2007, the Court in the above-captioned matter granted in part and denied in part plaintiff's motion for a preliminary injunction. The Court ordered ODNI to "respond to plaintiff's FOIA request and provide an interim release no later than November 30, 2007." The Court further ordered ODNI "to provide a final release of all responsive, non-exempt documents no later than December 10, 2007" and to provide an "affidavit with its final response setting forth the basis for withholding any responsive documents it does not release."

15. Pursuant to the Court's order, ODNI provided plaintiff with an interim release of responsive records on November 30, 2007. ODNI released 242 pages of responsive records, 230 of which were disclosed in full, and twelve of which were withheld in part pursuant to 5 U.S.C. § 552(b)(2). These records consisted of correspondence between ODNI and members of Congress, attachments to that correspondence, and official statements by the DNI during congressional hearings. The information withheld in part from these records consisted exclusively of non-public ODNI fax numbers and telephone numbers.

16. On December 10, 2007, ODNI provided a final release of responsive records to plaintiff as well as a declaration setting forth the basis for withholding responsive documents that were not released. ODNI released an additional 267 pages of responsive records consisting of correspondence between ODNI and members of Congress, attachments to that correspondence, and statements by the DNI during congressional

hearings. 238 of these pages were unclassified records that were released in full, twenty-eight pages containing classified information were withheld in part pursuant to 5 U.S.C. § 552(b)(1) and (3), and one page containing a non-public ODNI telephone number was withheld in part pursuant to 5 U.S.C. § 552(b)(2).

17. ODNI withheld only fourteen pages of responsive records in full. First, ODNI withheld eleven pages of classified briefing materials (*e.g.*, Power Point slides) used by the ODNI to brief members of Congress regarding national security and intelligence matters. These records were withheld pursuant to Exemptions 1 and 3 of the FOIA, 5 U.S.C. § 552(b)(1) and (3). Second, ODNI withheld a one-page personal handwritten note from a member of Congress to the ODNI General Counsel because it is not an agency record under the FOIA and because it qualifies for withholding under Exemption 6 of the FOIA, 5 U.S.C. § 552 (b)(6). Third, ODNI withheld a telephone message slip that contains the handwritten personal notes and mental impressions of an ODNI employee. This document was withheld because it is not an agency record under the FOIA and pursuant to Exemptions 1, 3, 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(1), (3), (5) and (6).

18. I have been advised that the plaintiff is challenging ODNI's withholding of thirteen of the pages that were withheld in full, consisting of the briefing slides and the telephone message slip. This material was withheld pursuant to FOIA Exemptions 1, 3, 5, and 6, and because one of the documents is not an agency record under the FOIA.

<u>Explanation of Withheld Material</u>

19. The thirteen pages withheld in full consist of eleven pages of power point slides used to brief members of Congress on FISA matters and a telephone message slip.

7

The power point slides and the message slip were withheld pursuant to Exemptions 1 and 3 of the FOIA. The withheld information is currently and properly classified under Executive Order 12958, as amended. Specifically, the withheld information contained in these documents meets the criteria for classification set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958, as amended, which authorizes the classification of information concerning "intelligence activities (including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to national security, which includes defense against transnational terrorism." The withheld information is classified at the Secret and Top Secret levels, which means that unauthorized disclosure could reasonably be expected to cause serious and in some cases exceptionally grave damage to the national security of the United States. Additionally the withheld information must be protected from disclosure pursuant to other statutes, in this instance, 50 U.S.C. § 402 note, 18 U.S.C. § 798 and 50 U.S.C. § 403-1(i).

20. The classified information and the sensitive sources and methods information in the briefing slides originated with the National Security Agency (NSA). Therefore, the basis for the withholding of the briefing slides is contained in a separate declaration from an NSA official. See Declaration of Rhea D. Siers.

21. The telephone message slip was withheld because it is not an agency record under the FOIA. In addition, this document was withheld pursuant to FOIA Exemptions 1, 3, 5 and 6. The withholding of this document pursuant to FOIA Exemptions 1 and 3 is discussed separately in the declaration of LTG Ronald Burgess, who holds original

classification authority in the ODNI. My declaration will explain why this document is not an agency record and why it was withheld pursuant to FOIA Exemptions 5 and 6.

22. The telephone message slip is not an agency record under the FOIA. The message slip is a standard message slip common to most office settings. The top of the slip states "Important Message" and the slip has lines below to indicate the recipient of the message, the date and time of the message, the caller, and the caller's phone number. The message slip also contains several "check boxes" to indicate specific information related to the message, such as "please call," "came to see you," and "returned your call." Below the check boxes are several blank lines for notes.

23. The message slip at issue in this case resulted from an incoming telephone call intended for an ODNI attorney that was received by the attorney's administrative assistant and recorded on a standard telephone message slip. The attorney's assistant received the call and completed the form by noting the caller's name, the caller's phone number, the date and time of the call, and checked the box "please call." The assistant provided the message slip to the ODNI attorney and the attorney returned the telephone call. During that telephone conversation, the attorney wrote notes on the blank lines on the bottom of the message slip as well as on the back side of the slip. These handwritten personal notes consist of the attorney's mental impressions during the phone call, as well as attorney work-product and deliberative information.

24. The message slip was created by an administrative assistant voluntarily and purely for the personal use and convenience of an ODNI attorney in order to advise that person of a missed telephone call. The notes written on the slip were intended only to later refresh the memory of the attorney regarding the telephone conversation and the

attorney's mental impressions of that conversation. The message slip was not created to satisfy any agency-imposed requirement or obligation. Neither the attorney nor the assistant were under any agency directive to create the telephone message slip and ODNI does not have a formal agency policy regarding the creation, storage, or disposal of telephone message slips. Indeed, the ODNI attorney was under no obligation to maintain this message slip and could have disposed of it at any time.

25. Furthermore, the message slip was not integrated into the ODNI official filing system but rather was kept on the employee's desk for a number of weeks before being placed in one of the attorney's unofficial miscellaneous files pertaining to the FISA. No copies of the slip were made, it was not stored electronically in any fashion, and it was not integrated into a computer network accessible by other ODNI employees. Other than the attorney's assistant, who initially took the message, the slip was not accessible by other employees within the agency and it was not shared with or circulated to any other ODNI employees. The slip was not used by the agency to conduct official business nor was it used as part of any official decision-making. No other agency employee used or relied on the information on this message slip to conduct agency business. As a result, this document is not an agency record and is not required to be disclosed under the FOIA.

26. The telephone message slip is also exempt from disclosure pursuant to Exemption 5 of the FOIA, which protects inter- and intra-agency communications protected by certain privileges; in this instance, the attorney work-product and deliberative process privileges. The message slip meets the threshold of Exemption 5 because it is an internal agency document created by an ODNI employee that was never transmitted outside of the agency.

27. The message is protected from disclosure by the attorney work-product privilege. This privilege protects information written by or on behalf of an attorney in anticipation of litigation. Disclosure of the information on the message slip would reveal the mental impressions and thought processes of the attorney who wrote the notes. In this instance, a government lawyer made certain handwritten notations regarding a conversation with a representative of a telecommunications company. There is ongoing litigation against the government and various telecommunications companies pending in the Northern District of California challenging the legality of the government's intelligence gathering activities since September 11, 2001, including challenges to the government's compliance with the FISA. *See, e.g., In re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW). Additionally, the government anticipates ongoing constitutional and legal challenges to its intelligence activities and specific challenges to the Protect America Act as well as any permanent amendments to the FISA. Thus, these notes were written by an attorney in anticipation of litigation. Disclosure of this information would severely hamper the adversarial process as attorneys at ODNI working on litigation or anticipating litigation would no longer feel free to write down important thoughts on cases for fear that the information might be publicly disclosed to their adversaries.

28. Furthermore, the message slip is protected by the deliberative process privilege because it contains the handwritten mental deliberations of its author. The deliberative process privilege is intended to protect the decision-making processes of government agencies from public scrutiny in order to enhance the quality of agency decisions. In this case, a government lawyer wrote down certain notes during the course

of a telephone conversation. These notes reflect this attorney's thoughts and mental impressions regarding the conversation in order to later refresh the employee's memory. The notations on this document are pre-decisional and deliberative as they relate to the ongoing discussions regarding FISA modernization, the Protect America Act, and the litigation described above. These informal and unofficial handwritten notations contain no final decisions, but instead reflect a government lawyer's thoughts and mental impressions regarding a telephone conversation. Agency officials must be permitted to write down notes as necessary without having to be concerned about the potential public disclosure of such notes.

29. The name and phone number of the caller, as well as the name of the ODNI employee that received the message and returned the phone call is protected pursuant to Exemption 6 of the FOIA, which protects information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. In making this determination we balanced the privacy interests of the individuals involved in this conversation with the public interest in knowing their identities and determined that the privacy interest outweighed the public interest in this instance.[2]

30. Individuals who call the ODNI to discuss matters that are viewed as controversial by some public interest groups have an expectation that their names and phone numbers will not be publicly disclosed. It is imperative that such an expectation continue so that important lines of communication remain open between the private sector and the ODNI. Furthermore, the ODNI employee who received the phone call has an expectation that his or her name will not be revealed in connection with such matters.

---

[2] This information may also be protected by Exemptions 1 and 3 of the FOIA and therefore, as with the rest of this document, would also be covered by the declaration of LTG Burgess, discussed above.

Employees of the intelligence community have a heightened privacy interest in their identities given the extremely sensitive nature of the work they perform.

31. While there is certainly a public interest in the FISA legislative debate in general, such an interest has been overwhelmingly met by the numerous public Congressional hearings on this matter, including the Statements for the Record from the DNI as well as the Department of Justice, and the lengthy public debate that has taken place on the floor of the Senate and House of Representatives. The public interest would not be furthered in any way by disclosing the identities of these individuals.

### Conclusion

32. In sum, the briefing slides and the telephone message slip at issue in this case were properly withheld from plaintiff pursuant to Exemptions 1, 3, 5, and 6 of the FOIA, 5 U.S.C. § 552(b)(1), (3), (5), (6). The telephone message slip was also properly withheld because it is not an agency record under the FOIA.

33. We carefully reviewed the message slip to determine if any information could be segregated for release. We determined that because the entire document is not an agency record under the FOIA it was not necessary to segregate any portions of it. In addition, even if this document were to be considered an agency record, because it was prepared by an attorney in anticipation of litigation it is protected in its entirety by the attorney work-product privilege. Because it is exempt in full, it contains no reasonably

segregable, nonexempt information.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 5th day of February, 2008.

*John F. Hackett* (signature)

John F. Hackett
Director, Information Management Office