IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELECTRONIC FRONTIER FOUNDATION,   *
                                       *
      Plaintiff,                *
                                       *
      v.                          *     Civil Action No. 07-5278
                                     *
OFFICE OF THE DIRECTOR OF,        *
NATIONAL INTELLIGENCE,           *
                                     *
      Defendant.             *
                              *****

### DECLARATION OF RHEA D. SIERS

I, Rhea D. Siers, declare as follows:

1. I am the current Deputy Associate Director for Policy and Records for the National Security Agency ("NSA" or "Agency"). I have served with NSA for 25 years, and prior to my current assignment, I held various leadership positions throughout the Agency. As the Deputy Associate Director for Policy and Records, I am responsible for the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a (2000) for NSA records. It is also my responsibility to assert the FOIA/PA exemptions in the course of litigation. In addition, I am a TOP SECRET classification authority, pursuant to Section 1.3 of Executive Order 12958, as amended 25 March 2003. A copy of which is attached as Exhibit 1.

2. Through the exercise of my official duties as Deputy Associate Director for Policy and Records, I have become familiar with the current litigation arising out of requests for records filed by Plaintiff, Electronic Frontier Foundation ("EFF"), which were made to the Office of the Director of National Intelligence ("ODNI"). The purpose

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION,   *
                              *

        Plaintiff,                     *

                                     *

      v.                                  *      Civil Action No. 07-5278

                                     *

OFFICE OF THE DIRECTOR OF,       *
NATIONAL INTELLIGENCE,          *

                                     *

        Defendant.                  *

                                  *****

### DECLARATION OF RHEA D. SIERS

I, Rhea D. Siers, declare as follows:

1. I am the current Deputy Associate Director for Policy and Records for the
National Security Agency ("NSA" or "Agency"). I have served with NSA for 25 years,
and prior to my current assignment, I held various leadership positions throughout the
Agency. As the Deputy Associate Director for Policy and Records, I am responsible for
the processing of all requests made pursuant to the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552, and Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a (2000) for
NSA records. It is also my responsibility to assert the FOIA/PA exemptions in the course
of litigation. In addition, I am a TOP SECRET classification authority, pursuant to
Section 1.3 of Executive Order 12958, as amended 25 March 2003. A copy of which is
attached as Exhibit 1.

2. Through the exercise of my official duties as Deputy Associate Director for
Policy and Records, I have become familiar with the current litigation arising out of
requests for records filed by Plaintiff, Electronic Frontier Foundation ("EFF"), which
were made to the Office of the Director of National Intelligence ("ODNI"). The purpose

of this declaration is to describe NSA's review of two sets of classified briefing materials

consisting of eleven pages that were used by the ODNI to brief members of Congress

regarding national security and intelligence matters.  NSA reviewed these two sets of

classified briefing materials because they were responsive to Plaintiff's FOIA request for

records concerning briefings, discussions, or other exchanges that Director McConnell or

other ODNI officials have had with members of the Senate of House of Representatives

concerning amendments to the FISA, including but not limited to, any discussions of

immunizing telecommunications companies for their alleged role in government

surveillance activities[1], and they contained NSA equities, as discussed below.

## ORIGIN AND MISSION OF NSA

3.  NSA was established by Presidential Directive in 1952 as a separately

organized agency within the Department of Defense.  See Executive Order 12333,

Section 1.12(b).  NSA's cryptologic mission has three functions: to collect, process, and

disseminate signals intelligence ("SIGINT") information for national foreign intelligence

purposes; to conduct information security activities; and to conduct operations security

training for the United States Government.

4.  Signals intelligence is one of NSA's primary missions.  NSA's SIGINT

mission is to obtain information from foreign electromagnetic signals and to provide,

frequently on a rapid response basis, reports derived from such information or data to

national policy makers, combatant commanders, and the intelligence community of the

United States Government.  A primary SIGINT mission of NSA is to intercept

---

[1] My office reviewed twelve documents, to include the two sets of classified briefing slides, totaling 70
pages, that were referred to NSA by the ODNI in response to EFF's FOIA requests.  This declaration does
not address NSA's review of the 10 other documents since they are no longer at issue in this litigation.

communications in order to obtain foreign intelligence information necessary to the national defense, national security, or the conduct of the foreign affairs of the United States. The SIGINT collection mission of NSA provides national policy makers and the intelligence community with highly reliable foreign intelligence information.

5. The Agency's SIGINT mission includes intelligence sources and methods, which enable it to keep pace with challenging developments in communications technology. In the course of fulfilling its mission, NSA produces foreign intelligence and reports it to customers within the United States Government.

6. There are two primary reasons for gathering and analyzing intelligence information. The first, and most important, is to gain the information required to direct U.S. resources as necessary to counter external threats. The second reason is to obtain the information necessary to direct the foreign policy of the United States. Information produced by SIGINT is relevant to a wide range of important issues, including military order of battle; threat warnings and readiness; arms proliferation; terrorism; and foreign aspects of international narcotics trafficking. This information is often critical to the formulation of U.S. foreign policy and the support of U.S. military operations around the world. Moreover, intelligence produced by NSA is often unobtainable by other means.

7. NSA has developed a sophisticated worldwide SIGINT collection network that acquires, among other things, foreign and international electronic communications. The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a substantial cost and untold human effort. It relies on sophisticated collection and processing technology.

8.  NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications. Further, SIGINT technology is both expensive and fragile. Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Disclosure of even a single communication holds the potential of revealing the intelligence collection techniques that are applied against targets around the world.  Once alerted, SIGINT targets can implement measures to thwart continued SIGINT collection.

9.  Information obtained from intercepted foreign communications is called communications intelligence ("COMINT"). NSA's COMINT efforts constitute only part of the functions and activities of the Agency.  A fundamental tenet of the COMINT process is that the identity of specific communications (commonly referred to as "targets"), the degree of success in exploiting these targets, and the vulnerability of particular foreign communications are all matters that must be maintained in strictest secrecy because of the fragility of the ability to exploit foreign communications. Disclosure of the identity of the targets, the ability to exploit those targets, and the vulnerability of particular foreign communications would encourage countermeasures by the targets of NSA'S COMINT efforts.  If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of that target's signals. If a source becomes unavailable, the military, national policymakers, combatant commanders, and the intelligence community must operate without the information the signals provided. Such losses are extremely harmful to the national security of the United States.

## DOCUMENTS AT ISSUE

10. The two sets of classified briefing materials at issue in this litigation are two almost identical versions of briefing materials for members of Congress that are titled FISA Modernization. One set is five pages, and is classified SECRET//NOFORN. The second set is similar to the first— four of the first five pages contain the same slides but one slide has additional information about NSA's collection capabilities. In addition, this set has one additional page consisting of statistical information on NSA targeting for foreign intelligence collection. This set is classified TOP SECRET//COMINT//NOFORN.

11. Each set of briefing materials contains information on how NSA collects communications to include the types of communications collected and the transmission paths of these communications. No further details can be provided to describe these documents without revealing classified information and information protected by statutes and thus undermining the very exemptions the Defendant has invoked to withhold the information contained in these briefing materials. Additionally, no portion of these materials can be meaningfully segregated so as to release non-exempt material to the Plaintiff in this case.

## FOIA EXEMPTION ONE

12. Exemption One of the FOIA protects the release of matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order. 5 U.S.C. § 552(b)(1). The current Executive Order, which establishes such criteria, is Executive Order 12958, as amended 25 March 2003.

13.  Executive Order 12958 Section 1.4 provides that information may not be considered for classification unless it falls within seven specifically enumerated categories of information.  The information at issue in these two sets of briefing slides pertains to categories of classified information found in Section 1.4 (c), intelligence activities (including special activities), intelligence sources and methods, or cryptology; and Section 1.4(g), vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism.

14.  Additionally, releasing the documents to the Plaintiff or providing a further description of these briefing materials would disclose information that is currently and properly classified TOP SECRET (for the set consisting of six pages) pursuant to Executive Order 12958, as amended 25 March 2003, sections 1.2(1), because the disclosure of this information reasonably could be expected to cause exceptionally grave damage to the national security, and SECRET (for the set consisting of five pages) pursuant to section 1.2(2), because the disclosure of this information reasonably could be expected to cause serious damage to the national security.  Quite simply, disclosure of these briefing materials, which again discusses the types of communications NSA collects and how it collects such communications, would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods.  Our adversaries would have a road map, instructing them which communications modes remain safe or are successfully defeating NSA's capabilities.

15.  Accordingly, since I reviewed the information sought by EFF and determined that it pertains to information that meets the criteria for classification under Executive

Order 12958, as amended, the information sought by EFF is properly exempt from disclosure pursuant to FOIA Exemption 1.

## FOIA EXEMPTION THREE

16. The FOIA protects the release of matters that are specifically exempted from disclosure by statute, provided that the relevant statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matter to be withheld. See 5 U.S.C. § 552(b)(3). Information about NSA's SIGINT efforts directly relates to the Agency's most core functions and activities. These functions and activities are protected from public disclosure by several statutes. Congress has passed these statutes to protect the fragile nature of NSA's SIGINT efforts, including, but not limited to, the existence and depth of signal intelligence-related analytical successes, weaknesses, and exploitation techniques. These statutes recognize the vulnerability of SIGINT to countermeasures by targets and the significance of the loss of valuable foreign intelligence information to national policymakers and the intelligence community.

17. The first of these statutes is a statutory privilege unique to NSA. NSA's statutory privilege is set forth in section 6 of the National Security Agency Act of 1959, Public Law 86-36 (50 U.S.C. § 402 note). Section 6 of the NSA Act provides that **"[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, . . . "** (emphasis added). By this language, Congress expressed its finding that disclosure of any information relating to NSA activities is potentially harmful. The courts have held that the protection

provided by this statutory privilege is, by its very terms, absolute. See, e.g., Linder v. NSA, 94 F. 3d 693 (D.C. Cir. 1996). Section 6 states unequivocally that, notwithstanding any other law, including the FOIA, NSA cannot be compelled to disclose any information with respect to its activities. See Hayden v. NSA, 608 F.2d 1381 (D.C. Cir. 1979). Further, while in this case the harm would be very serious, NSA is not required to demonstrate specific harm to national security when invoking this statutory privilege, but only to show that the information relates to its activities. *Id.* To invoke this privilege, NSA must demonstrate only that the information sought to be protected falls within the scope of section 6. Id. NSA's functions and activities are therefore protected from disclosure regardless of whether or not the information is classified. Id.

    18. The second applicable statute is 18 U.S.C. § 798. This statute prohibits the unauthorized disclosure of classified information (i) concerning the communications intelligence activities of the United States or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government. The term "communications intelligence," as defined by Section 798, means the procedures and methods used in the interception of communications and obtaining of information from such communications by other than the intended recipients. This statute clearly identifies matters to be withheld from the public and refers to particular types of matters to be withheld. See 5 U.S.C. § 552(b)(3). Thus, this statute qualifies as an Exemption Three statute under FOIA. See Florida Immigrant Advocacy Ctr. V. Nat'l Security Agency, 380 F. Supp. 2d 1332, 1340 (S.D. Fla. 2005) ("Other exempting statutes include. . . 18 U.S.C. § 798"); Winter v. Nat'l Security Agency, 569 F. Supp. 545 (S.D. Cal. 1983) (18 U.S.C. § 798 is a "statute[] within Exemption 3").

19. The third applicable statute is Section 102A(i)(l) of the Intelligence Reform

and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), which states that the

Director of National Intelligence shall protect intelligence sources and methods from

unauthorized disclosure." In this case, NSA has been authorized to invoke this statute in

order to protect NSA's sources and methods, which are present in the information

contained in these two briefing slides. Like the protection afforded to core NSA

activities by Section 6 of the NSA Act of 1959, the protection afforded to intelligence

sources and methods is absolute. See Central Intelligence Agency v. Sims, 471 U.S. 159

(1985); People for the American Way v. Nat'l. Security Agency, 462 F. Supp. 2d. 21, 31

n.8. Whether the sources and methods at issue are classified is irrelevant for purposes of

the protection afforded by 50 U.S.C. § 403-l(i)(1). Id.

20. As set forth above, the information contained in these two sets of briefing

slides pertains to NSA's organization, functions and activities as it reveals how NSA

collects communications. This information also reveals the intelligence sources and

methods that NSA uses to collect communications. Revelation of this information is

prohibited pursuant to Section 6 of the National Security Agency Act of 1959, 50 U.S.C.

§ 402 note, and Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention

Act of 2004, 50 U.S.C. § 403-1(i)(1). Finally, this information would reveal important

aspects of NSA's SIGINT capabilities. This revelation of communications intelligence

capabilities and limitations is prohibited by 18 U.S.C. § 798. Thus, disclosure of the

information contained in these two briefing slides is prohibited by statute, and is properly

exempt from disclosure under FOIA Exemption 3.

20.  I declare under of penalty of perjury that the foregoing is true and correct.

Signed this ___/1st___ day of February 2008

_Rhea D. Siers_
_____
RHEA D. SIERS
Deputy Associate Director for Policy &
Records
National Security Agency

# EXHIBIT 1

Westlaw.

68 FR 15315                                                                                        Page 1

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**


### Executive Order 13292


Further Amendment to **Executive Order 12958**, as Amended, Classified National
Security Information

March 25, 2003

**\*15315** By the authority vested in me as President by the Constitution and the
laws of the United States of America, and in order to further amend **Executive
Order 12958**, as amended, it is hereby **ordered** that **Executive Order 12958** is
amended to read as follows:

"Classified National Security Information

This order prescribes a uniform system for classifying, safeguarding, and
declassifying national security information, including information relating to
defense against transnational terrorism. Our democratic principles require that
the American people be informed of the activities of their Government. Also, our
Nation's progress depends on the free flow of information. Nevertheless,
throughout our history, the national defense has required that certain information
be maintained in confidence in order to protect our citizens, our democratic
institutions, our homeland security, and our interactions with foreign nations.
Protecting information critical to our Nation's security remains a priority.

NOW, THEREFORE, by the authority vested in me as President by the Constitution
and the laws of the United States of America, it is hereby ordered as follows:

PART 1--ORIGINAL CLASSIFICATION

Sec. 1.1. Classification Standards. (a) Information may be originally classified
under the terms of this order only if all of the following conditions are met:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of
the United States Government;

(3) the information falls within one or more of the categories of information
listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized
disclosure of the information reasonably could be expected to result in damage to
the national security, which includes defense against transnational terrorism, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendant's
Exhibit 2

68 FR 15315                                                          Page 2

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

the original classification authority is able to identify or describe the damage.

 (b) Classified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information.

 (c) The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.

 Sec. 1.2. Classification Levels. (a) Information may be classified at one of the following three levels:

 (1) "Top Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority is able to identify or describe.

 (2) "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the **\*15316** national security that the original classification authority is able to identify or describe.

 (3) "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

 (b) Except as otherwise provided by statute, no other terms shall be used to identify United States classified information.

 Sec. 1.3. Classification Authority. (a) The authority to classify information originally may be exercised only by:

 (1) the President and, in the performance of executive duties, the Vice President;

 (2) agency heads and officials designated by the President in the Federal Register; and

 (3) United States Government officials delegated this authority pursuant to paragraph (c) of this section.

 (b) Officials authorized to classify information at a specified level are also authorized to classify information at a lower level.

 (c) Delegation of original classification authority.

 (1) Delegations of original classification authority shall be limited to the minimum required to administer this order. Agency heads are responsible for ensuring that designated subordinate officials have a demonstrable and continuing need to exercise this authority.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

  (2) "Top Secret" original classification authority may be delegated only by the President; in the performance of executive duties, the Vice President; or an agency head or official designated pursuant to paragraph (a)(2) of this section.

  (3) "Secret" or "Confidential" original classification authority may be delegated only by the President; in the performance of executive duties, the Vice President; or an agency head or official designated pursuant to paragraph (a)(2) of this section; or the senior agency official described in section 5.4(d) of this order, provided that official has been delegated "Top Secret" original classification authority by the agency head.

  (4) Each delegation of original classification authority shall be in writing and the authority shall not be redelegated except as provided in this order. Each delegation shall identify the official by name or position title.

  (d) Original classification authorities must receive training in original classification as provided in this order and its implementing directives. Such training must include instruction on the proper safeguarding of classified information and of the criminal, civil, and administrative sanctions that may be brought against an individual who fails to protect classified information from unauthorized disclosure.

  (e) Exceptional cases. When an employee, government contractor, licensee, certificate holder, or grantee of an agency who does not have original classification authority originates information believed by that person to require classification, the information shall be protected in a manner consistent with this order and its implementing directives. The information shall be transmitted promptly as provided under this order or its implementing directives to the agency that has appropriate subject matter interest and classification authority with respect to this information. That agency shall decide within 30 days whether to classify this information. If it is not clear which agency has classification responsibility for this information, it shall be sent to the Director of the Information Security Oversight Office. The Director shall determine the agency having primary subject matter interest and forward the information, with appropriate recommendations, to that agency for a classification determination.
*15317

  Sec. 1.4. Classification Categories. Information shall not be considered for classification unless it concerns:

    (a) military plans, weapons systems, or operations;

    (b) foreign government information;

    (c) intelligence activities (including special activities), intelligence sources or methods, or cryptology;

    (d) foreign relations or foreign activities of the United States, including

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                           Page 4

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

confidential sources;

   (e) scientific, technological, or economic matters relating to the national
security, which includes defense against transnational terrorism;

   (f) United States Government programs for safeguarding nuclear materials or
facilities;

   (g) vulnerabilities or capabilities of systems, installations,
infrastructures, projects, plans, or protection services relating to the national
security, which includes defense against transnational terrorism; or

   (h) weapons of mass destruction.

   Sec. 1.5. Duration of Classification. (a) At the time of original
classification, the original classification authority shall attempt to establish a
specific date or event for declassification based upon the duration of the
national security sensitivity of the information. Upon reaching the date or event,
the information shall be automatically declassified. The date or event shall not
exceed the time frame established in paragraph (b) of this section.

   (b) If the original classification authority cannot determine an earlier
specific date or event for declassification, information shall be marked for
declassification 10 years from the date of the original decision, unless the
original classification authority otherwise determines that the sensitivity of the
information requires that it shall be marked for declassification for up to 25
years from the date of the original decision. All information classified under
this section shall be subject to section 3.3 of this order if it is contained in
records of permanent historical value under title 44, United States Code.

   (c) An original classification authority may extend the duration of
classification, change the level of classification, or reclassify specific
information only when the standards and procedures for classifying information
under this order are followed.

   (d) Information marked for an indefinite duration of classification under
predecessor orders, for example, marked as "Originating Agency's Determination
Required," or information classified under predecessor orders that contains no
declassification instructions shall be declassified in accordance with part 3 of
this order.

   Sec. 1.6. Identification and Markings. (a) At the time of original
classification, the following shall appear on the face of each classified
document, or shall be applied to other classified media in an appropriate manner:

   (1) one of the three classification levels defined in section 1.2 of this order;

   (2) the identity, by name or personal identifier and position, of the original

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

classification authority;

 (3) the agency and office of origin, if not otherwise evident;

 (4) declassification instructions, which shall indicate one of the following:

 (A) the date or event for declassification, as prescribed in section 1.5(a) or section 1.5(c);

 (B) the date that is 10 years from the date of original classification, as prescribed in section 1.5(b); or

 (B) the date that is up to 25 years from the date of original classification, as prescribed in section 1.5 (b); and

 (5) a concise reason for classification that, at a minimum, cites the applicable classification categories in section 1.4 of this order. **\*15318**

   (b) Specific information described in paragraph (a) of this section may be excluded if it would reveal additional classified information.

   (c) With respect to each classified document, the agency originating the document shall, by marking or other means, indicate which portions are classified, with the applicable classification level, and which portions are unclassified. In accordance with standards prescribed in directives issued under this order, the Director of the Information Security Oversight Office may grant waivers of this requirement. The Director shall revoke any waiver upon a finding of abuse.

   (d) Markings implementing the provisions of this order, including abbreviations and requirements to safeguard classified working papers, shall conform to the standards prescribed in implementing directives issued pursuant to this order.

   (e) Foreign government information shall retain its original classification markings or shall be assigned a U.S. classification that provides a degree of protection at least equivalent to that required by the entity that furnished the information. Foreign government information retaining its original classification markings need not be assigned a U.S. classification marking provided that the responsible agency determines that the foreign government markings are adequate to meet the purposes served by U.S. classification markings.

   (f) Information assigned a level of classification under this or predecessor orders shall be considered as classified at that level of classification despite the omission of other required markings. Whenever such information is used in the derivative classification process or is reviewed for possible declassification, holders of such information shall coordinate with an appropriate classification authority for the application of omitted markings.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

    (g) The classification authority shall, whenever practicable, use a classified addendum whenever classified information constitutes a small portion of an otherwise unclassified document.

    (h) Prior to public release, all declassified records shall be appropriately marked to reflect their declassification.

  Sec. 1.7. Classification Prohibitions and Limitations.

    (a) In no case shall information be classified in order to:

 (1) conceal violations of law, inefficiency, or administrative error;

 (2) prevent embarrassment to a person, organization, or agency;

 (3) restrain competition; or

 (4) prevent or delay the release of information that does not require protection in the interest of the national security.

    (b) Basic scientific research information not clearly related to the national security shall not be classified.

    (c) Information may be reclassified after declassification and release to the public under proper authority only in accordance with the following conditions:

 (1) the reclassification action is taken under the personal authority of the agency head or deputy agency head, who determines in writing that the reclassification of the information is necessary in the interest of the national security;

 (2) the information may be reasonably recovered; and

 (3) the reclassification action is reported promptly to the Director of the Information Security Oversight Office.

    (d) Information that has not previously been disclosed to the public under proper authority may be classified or reclassified after an agency has received a request for it under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act of 1974 (5 U.S.C. 552a), or the mandatory review provisions of section 3.5 of this order only if such classification meets the requirements of this order and is accomplished on a document-by-document basis with *15319 the personal participation or under the direction of the agency head, the deputy agency head, or the senior agency official designated under section 5.4 of this order.

    (e) Compilations of items of information that are individually unclassified may be classified if the compiled information reveals an additional association or relationship that: (1) meets the standards for classification under this order;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                              Page 7

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

and (2) is not otherwise revealed in the individual items of information. As used in this order, "compilation" means an aggregation of pre-existing unclassified items of information.

Sec. 1.8. Classification Challenges. (a) Authorized holders of information who, in good faith, believe that its classification status is improper are encouraged and expected to challenge the classification status of the information in accordance with agency procedures established under paragraph (b) of this section.

(b) In accordance with implementing directives issued pursuant to this order, an agency head or senior agency official shall establish procedures under which authorized holders of information are encouraged and expected to challenge the classification of information that they believe is improperly classified or unclassified. These procedures shall ensure that:

(1) individuals are not subject to retribution for bringing such actions;

(2) an opportunity is provided for review by an impartial official or panel; and

(3) individuals are advised of their right to appeal agency decisions to the Interagency Security Classification Appeals Panel (Panel) established by section 5.3 of this order.

PART 2--DERIVATIVE CLASSIFICATION

Sec. 2.1. Use of Derivative Classification. (a) Persons who only reproduce, extract, or summarize classified information, or who only apply classification markings derived from source material or as directed by a classification guide, need not possess original classification authority.

(b) Persons who apply derivative classification markings shall:

(1) observe and respect original classification decisions; and

(2) carry forward to any newly created documents the pertinent classification markings. For information derivatively classified based on multiple sources, the derivative classifier shall carry forward:

(A) the date or event for declassification that corresponds to the longest period of classification among the sources; and

(B) a listing of these sources on or attached to the official file or record copy.

Sec. 2.2. Classification Guides. (a) Agencies with original classification authority shall prepare classification guides to facilitate the proper and uniform derivative classification of information. These guides shall conform to standards contained in directives issued under this order.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                 Page 8

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**


(b) Each guide shall be approved personally and in writing by an official who:

(1) has program or supervisory responsibility over the information or is the senior agency official; and

(2) is authorized to classify information originally at the highest level of classification prescribed in the guide.

(c) Agencies shall establish procedures to ensure that classification guides are reviewed and updated as provided in directives issued under this order.

PART 3--DECLASSIFICATION AND DOWNGRADING

Sec. 3.1. Authority for Declassification. (a) Information shall be declassified as soon as it no longer meets the standards for classification under this order.
**\*15320**

(b) It is presumed that information that continues to meet the classification requirements under this order requires continued protection. In some exceptional cases, however, the need to protect such information may be outweighed by the public interest in disclosure of the information, and in these cases the information should be declassified. When such questions arise, they shall be referred to the agency head or the senior agency official. That official will determine, as an exercise of discretion, whether the public interest in disclosure outweighs the damage to the national security that might reasonably be expected from disclosure. This provision does not:

(1) amplify or modify the substantive criteria or procedures for classification; or

(2) create any substantive or procedural rights subject to judicial review.

(c) If the Director of the Information Security Oversight Office determines that information is classified in violation of this order, the Director may require the information to be declassified by the agency that originated the classification. Any such decision by the Director may be appealed to the President through the Assistant to the President for National Security Affairs. The information shall remain classified pending a prompt decision on the appeal.

(d) The provisions of this section shall also apply to agencies that, under the terms of this order, do not have original classification authority, but had such authority under predecessor orders.

Sec. 3.2. Transferred Records. (a) In the case of classified records transferred in conjunction with a transfer of functions, and not merely for storage purposes, the receiving agency shall be deemed to be the originating agency for purposes of this order.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                              Page 9

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

    (b) In the case of classified records that are not officially transferred as
described in paragraph (a) of this section, but that originated in an agency that
has ceased to exist and for which there is no successor agency, each agency in
possession of such records shall be deemed to be the originating agency for
purposes of this order. Such records may be declassified or downgraded by the
agency in possession after consultation with any other agency that has an interest
in the subject matter of the records.

    (c) Classified records accessioned into the National Archives and Records
Administration (National Archives) as of the effective date of this order shall be
declassified or downgraded by the Archivist of the United States (Archivist) in
accordance with this order, the directives issued pursuant to this order, agency
declassification guides, and any existing procedural agreement between the
Archivist and the relevant agency head.

    (d) The originating agency shall take all reasonable steps to declassify
classified information contained in records determined to have permanent
historical value before they are accessioned into the National Archives. However,
the Archivist may require that classified records be accessioned into the National
Archives when necessary to comply with the provisions of the Federal Records Act.
This provision does not apply to records being transferred to the Archivist
pursuant to section 2203 of title 44, United States Code, or records for which the
National Archives serves as the custodian of the records of an agency or
organization that has gone out of existence.

    (e) To the extent practicable, agencies shall adopt a system of records
management that will facilitate the public release of documents at the time such
documents are declassified pursuant to the provisions for automatic
declassification in section 3.3 of this order.

    Sec. 3.3. Automatic Declassification. (a) Subject to paragraphs (b)-(e) of this
section, on December 31, 2006, all classified records that (1) are more than 25
years old and (2) have been determined to have permanent historical value under
title 44, United States Code, shall be automatically declassified whether or not
the records have been reviewed. Subsequently, all classified records shall be
automatically declassified on December 31 of the year *15321  that is 25 years
from the date of its original classification, except as provided in paragraphs
(b)-(e) of this section.

    (b) An agency head may exempt from automatic declassification under paragraph
(a) of this section specific information, the release of which could be expected
to:

    (1) reveal the identity of a confidential human source, or a human intelligence
source, or reveal information about the application of an intelligence source or
method;

    (2) reveal information that would assist in the development or use of weapons of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                                    Page 10

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

mass destruction;

 (3) reveal information that would impair U.S. cryptologic systems or activities;

 (4) reveal information that would impair the application of state of the art technology within a U.S. weapon system;

 (5) reveal actual U.S. military war plans that remain in effect;

 (6) reveal information, including foreign government information, that would seriously and demonstrably impair relations between the United States and a foreign government, or seriously and demonstrably undermine ongoing diplomatic activities of the United States;

 (7) reveal information that would clearly and demonstrably impair the current ability of United States Government officials to protect the President, Vice President, and other protectees for whom protection services, in the interest of the national security, are authorized;

 (8) reveal information that would seriously and demonstrably impair current national security emergency preparedness plans or reveal current vulnerabilities of systems, installations, infrastructures, or projects relating to the national security; or

 (9) violate a statute, treaty, or international agreement.

 (c) An agency head shall notify the President through the Assistant to the President for National Security Affairs of any specific file series of records for which a review or assessment has determined that the information within that file series almost invariably falls within one or more of the exemption categories listed in paragraph (b) of this section and which the agency proposes to exempt from automatic declassification. The notification shall include:

 (1) a description of the file series;

 (2) an explanation of why the information within the file series is almost invariably exempt from automatic declassification and why the information must remain classified for a longer period of time; and

 (3) except for the identity of a confidential human source or a human intelligence source, as provided in paragraph (b) of this section, a specific date or event for declassification of the information. The President may direct the agency head not to exempt the file series or to declassify the information within that series at an earlier date than recommended. File series exemptions previously approved by the President shall remain valid without any additional agency action.

 (d) At least 180 days before information is automatically declassified under this section, an agency head or senior agency official shall notify the Director

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                 Page 11

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

of the Information Security Oversight Office, serving as Executive Secretary of
the Panel, of any specific information beyond that included in a notification to
the President under paragraph (c) of this section that the agency proposes to
exempt from automatic declassification. The notification shall include:

 (1) a description of the information, either by reference to information in
specific records or in the form of a declassification guide; **\*15322**

 (2) an explanation of why the information is exempt from automatic
declassification and must remain classified for a longer period of time; and

 (3) except for the identity of a confidential human source or a human
intelligence source, as provided in paragraph (b) of this section, a specific date
or event for declassification of the information. The Panel may direct the agency
not to exempt the information or to declassify it at an earlier date than
recommended. The agency head may appeal such a decision to the President through
the Assistant to the President for National Security Affairs. The information will
remain classified while such an appeal is pending.

    (e) The following provisions shall apply to the onset of automatic
declassification:

 (1) Classified records within an integral file block, as defined in this order,
that are otherwise subject to automatic declassification under this section shall
not be automatically declassified until December 31 of the year that is 25 years
from the date of the most recent record within the file block.

 (2) By notification to the Director of the Information Security Oversight Office,
before the records are subject to automatic declassification, an agency head or
senior agency official designated under section 5.4 of this order may delay
automatic declassification for up to 5 additional years for classified information
contained in microforms, motion pictures, audiotapes, videotapes, or comparable
media that make a review for possible declassification exemptions more difficult
or costly.

 (3) By notification to the Director of the Information Security Oversight Office,
before the records are subject to automatic declassification, an agency head or
senior agency official designated under section 5.4 of this order may delay
automatic declassification for up to 3 years for classified records that have been
referred or transferred to that agency by another agency less than 3 years before
automatic declassification would otherwise be required.

 (4) By notification to the Director of the Information Security Oversight Office,
an agency head or senior agency official designated under section 5.4 of this
order may delay automatic declassification for up to 3 years from the date of
discovery of classified records that were inadvertently not reviewed prior to the
effective date of automatic declassification.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                          Page 12

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

(f) Information exempted from automatic declassification under this section shall remain subject to the mandatory and systematic declassification review provisions of this order.

(g) The Secretary of State shall determine when the United States should commence negotiations with the appropriate officials of a foreign government or international organization of governments to modify any treaty or international agreement that requires the classification of information contained in records affected by this section for a period longer than 25 years from the date of its creation, unless the treaty or international agreement pertains to information that may otherwise remain classified beyond 25 years under this section.

(h) Records containing information that originated with other agencies or the disclosure of which would affect the interests or activities of other agencies shall be referred for review to those agencies and the information of concern shall be subject to automatic declassification only by those agencies, consistent with the provisions of subparagraphs (e)(3) and (e)(4) of this section.

Sec. 3.4. Systematic Declassification Review. (a) Each agency that has originated classified information under this order or its predecessors shall establish and conduct a program for systematic declassification review. This program shall apply to records of permanent historical value exempted from automatic declassification under section 3.3 of this order. Agencies *15323 shall prioritize the systematic review of records based upon the degree of researcher interest and the likelihood of declassification upon review.

(b) The Archivist shall conduct a systematic declassification review program for classified records: (1) accessioned into the National Archives as of the effective date of this order; (2) transferred to the Archivist pursuant to section 2203 of title 44, United States Code; and (3) for which the National Archives serves as the custodian for an agency or organization that has gone out of existence. This program shall apply to pertinent records no later than 25 years from the date of their creation. The Archivist shall establish priorities for the systematic review of these records based upon the degree of researcher interest and the likelihood of declassification upon review. These records shall be reviewed in accordance with the standards of this order, its implementing directives, and declassification guides provided to the Archivist by each agency that originated the records. The Director of the Information Security Oversight Office shall ensure that agencies provide the Archivist with adequate and current declassification guides.

(c) After consultation with affected agencies, the Secretary of Defense may establish special procedures for systematic review for declassification of classified cryptologic information, and the Director of Central Intelligence may establish special procedures for systematic review for declassification of classified information pertaining to intelligence activities (including special activities), or intelligence sources or methods.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                                                    Page 13

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

  Sec. 3.5. Mandatory Declassification Review. (a) Except as provided in paragraph
(b) of this section, all information classified under this order or predecessor
orders shall be subject to a review for declassification by the originating agency
if:

  (1) the request for a review describes the document or material containing the
information with sufficient specificity to enable the agency to locate it with a
reasonable amount of effort;

  (2) the information is not exempted from search and review under sections 105C,
105D, or 701 of the National Security Act of 1947 (50 U.S.C. 403-5c, 403-5e, and
431); and

  (3) the information has not been reviewed for declassification within the past 2
years. If the agency has reviewed the information within the past 2 years, or the
information is the subject of pending litigation, the agency shall inform the
requester of this fact and of the requester's appeal rights.

   (b) Information originated by:

  (1) the incumbent President or, in the performance of executive duties, the
incumbent Vice President;

  (2) the incumbent President's White House Staff or, in the performance of
executive duties, the incumbent Vice President's Staff;

  (3) committees, commissions, or boards appointed by the incumbent President; or

  (4) other entities within the Executive Office of the President that solely
advise and assist the incumbent President is exempted from the provisions of
paragraph (a) of this section. However, the Archivist shall have the authority to
review, downgrade, and declassify papers or records of former Presidents under the
control of the Archivist pursuant to sections 2107, 2111, 2111 note, or 2203 of
title 44, United States Code. Review procedures developed by the Archivist shall
provide for consultation with agencies having primary subject matter interest and
shall be consistent with the provisions of applicable laws or lawful agreements
that pertain to the respective Presidential papers or records. Agencies with
primary subject matter interest shall be notified promptly of the Archivist's
decision. Any final decision by the Archivist may be appealed by the requester or
an agency to the Panel. The information shall remain classified pending a prompt
decision on the appeal.

   (c) Agencies conducting a mandatory review for declassification shall
declassify information that no longer meets the standards for classification *15324
  under this order. They shall release this information unless withholding is
otherwise authorized and warranted under applicable law.

   (d) In accordance with directives issued pursuant to this order, agency heads

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                           Page 14

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

shall develop procedures to process requests for the mandatory review of
classified information. These procedures shall apply to information classified
under this or predecessor orders. They also shall provide a means for
administratively appealing a denial of a mandatory review request, and for
notifying the requester of the right to appeal a final agency decision to the
Panel.

    (e) After consultation with affected agencies, the Secretary of Defense shall
develop special procedures for the review of cryptologic information; the Director
of Central Intelligence shall develop special procedures for the review of
information pertaining to intelligence activities (including special activities),
or intelligence sources or methods; and the Archivist shall develop special
procedures for the review of information accessioned into the National Archives.

    Sec. 3.6. Processing Requests and Reviews. In response to a request for
information under the Freedom of Information Act, the Privacy Act of 1974, or the
mandatory review provisions of this order, or pursuant to the automatic
declassification or systematic review provisions of this order:

    (a) An agency may refuse to confirm or deny the existence or nonexistence of
requested records whenever the fact of their existence or nonexistence is itself
classified under this order or its predecessors.

    (b) When an agency receives any request for documents in its custody that
contain information that was originally classified by another agency, or comes
across such documents in the process of the automatic declassification or
systematic review provisions of this order, it shall refer copies of any request
and the pertinent documents to the originating agency for processing, and may,
after consultation with the originating agency, inform any requester of the
referral unless such association is itself classified under this order or its
predecessors. In cases in which the originating agency determines in writing that
a response under paragraph (a) of this section is required, the referring agency
shall respond to the requester in accordance with that paragraph.

    Sec. 3.7. Declassification Database. (a) The Director of the Information
Security Oversight Office, in conjunction with those agencies that originate
classified information, shall coordinate the linkage and effective utilization of
existing agency databases of records that have been declassified and publicly
released.

    (b) Agency heads shall fully cooperate with the Director of the Information
Security Oversight Office in these efforts.

    PART 4--SAFEGUARDING

    Sec. 4.1. General Restrictions on Access. (a) A person may have access to
classified information provided that:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                 Page 15

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**


 (1) a favorable determination of eligibility for access has been made by an
agency head or the agency head's designee;

 (2) the person has signed an approved nondisclosure agreement; and

 (3) the person has a need-to-know the information.

   (b) Every person who has met the standards for access to classified
information in paragraph (a) of this section shall receive contemporaneous
training on the proper safeguarding of classified information and on the criminal,
civil, and administrative sanctions that may be imposed on an individual who fails
to protect classified information from unauthorized disclosure.

   (c) Classified information shall remain under the control of the originating
agency or its successor in function. An agency shall not disclose information
originally classified by another agency without its authorization. An official or
employee leaving agency service may not remove classified information from the
agency's control. **15325**

   (d) Classified information may not be removed from official premises without
proper authorization.

   (e) Persons authorized to disseminate classified information outside the
executive branch shall ensure the protection of the information in a manner
equivalent to that provided within the executive branch.

   (f) Consistent with law, directives, and regulation, an agency head or senior
agency official shall establish uniform procedures to ensure that automated
information systems, including networks and telecommunications systems, that
collect, create, communicate, compute, disseminate, process, or store classified
information have controls that:

 (1) prevent access by unauthorized persons; and

 (2) ensure the integrity of the information.

   (g) Consistent with law, directives, and regulation, each agency head or
senior agency official shall establish controls to ensure that classified
information is used, processed, stored, reproduced, transmitted, and destroyed
under conditions that provide adequate protection and prevent access by
unauthorized persons.

   (h) Consistent with directives issued pursuant to this order, an agency shall
safeguard foreign government information under standards that provide a degree of
protection at least equivalent to that required by the government or international
organization of governments that furnished the information. When adequate to
achieve equivalency, these standards may be less restrictive than the safeguarding
standards that ordinarily apply to United States "Confidential" information,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                    Page 16

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

including modified handling and transmission and allowing access to individuals with a need-to-know who have not otherwise been cleared for access to classified information or executed an approved nondisclosure agreement.

(i) Except as otherwise provided by statute, this order, directives implementing this order, or by direction of the President, classified information originating in one agency shall not be disseminated outside any other agency to which it has been made available without the consent of the originating agency. An agency head or senior agency official may waive this requirement for specific information originated within that agency. For purposes of this section, the Department of Defense shall be considered one agency. Prior consent is not required when referring records for declassification review that contain information originating in several agencies.

Sec. 4.2. Distribution Controls. (a) Each agency shall establish controls over the distribution of classified information to ensure that it is distributed only to organizations or individuals eligible for access and with a need-to-know the information.

(b) In an emergency, when necessary to respond to an imminent threat to life or in defense of the homeland, the agency head or any designee may authorize the disclosure of classified information to an individual or individuals who are otherwise not eligible for access. Such actions shall be taken only in accordance with the directives implementing this order and any procedures issued by agencies governing the classified information, which shall be designed to minimize the classified information that is disclosed under these circumstances and the number of individuals who receive it. Information disclosed under this provision or implementing directives and procedures shall not be deemed declassified as a result of such disclosure or subsequent use by a recipient. Such disclosures shall be reported promptly to the originator of the classified information. For purposes of this section, the Director of Central Intelligence may issue an implementing directive governing the emergency disclosure of classified intelligence information.

(c) Each agency shall update, at least annually, the automatic, routine, or recurring distribution of classified information that they distribute. Recipients shall cooperate fully with distributors who are updating distribution lists and shall notify distributors whenever a relevant change in status occurs. **\*15326**

Sec. 4.3. Special Access Programs. (a) Establishment of special access programs. Unless otherwise authorized by the President, only the Secretaries of State, Defense, and Energy, and the Director of Central Intelligence, or the principal deputy of each, may create a special access program. For special access programs pertaining to intelligence activities (including special activities, but not including military operational, strategic, and tactical programs), or intelligence sources or methods, this function shall be exercised by the Director of Central Intelligence. These officials shall keep the number of these programs at an absolute minimum, and shall establish them only when the program is required by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                 Page 17

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

statute or upon a specific finding that:

(1) the vulnerability of, or threat to, specific information is exceptional; and

(2) the normal criteria for determining eligibility for access applicable to information classified at the same level are not deemed sufficient to protect the information from unauthorized disclosure.

(b) Requirements and limitations. (1) Special access programs shall be limited to programs in which the number of persons who will have access ordinarily will be reasonably small and commensurate with the objective of providing enhanced protection for the information involved.

(2) Each agency head shall establish and maintain a system of accounting for special access programs consistent with directives issued pursuant to this order.

(3) Special access programs shall be subject to the oversight program established under section 5.4(d) of this order. In addition, the Director of the Information Security Oversight Office shall be afforded access to these programs, in accordance with the security requirements of each program, in order to perform the functions assigned to the Information Security Oversight Office under this order. An agency head may limit access to a special access program to the Director and no more than one other employee of the Information Security Oversight Office, or, for special access programs that are extraordinarily sensitive and vulnerable, to the Director only.

(4) The agency head or principal deputy shall review annually each special access program to determine whether it continues to meet the requirements of this order.

(5) Upon request, an agency head shall brief the Assistant to the President for National Security Affairs, or a designee, on any or all of the agency's special access programs.

(c) Nothing in this order shall supersede any requirement made by or under  10 U.S.C. 119.

Sec. 4.4. Access by Historical Researchers and Certain Former Government Personnel. (a) The requirement in section 4.1(a)(3) of this order that access to classified information may be granted only to individuals who have a need-to-know the information may be waived for persons who:

(1) are engaged in historical research projects;

(2) previously have occupied policy-making positions to which they were appointed by the President under section 105(a)(2)(A) of title 3, United States Code, or the Vice President under 106(a)(1)(A) of title 3, United States Code; or

(3) served as President or Vice President.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                              Page 18

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

   (b) Waivers under this section may be granted only if the agency head or
senior agency official of the originating agency:

   (1) determines in writing that access is consistent with the interest of the
national security;

   (2) takes appropriate steps to protect classified information from unauthorized
disclosure or compromise, and ensures that the information is safeguarded in a
manner consistent with this order; and **\*15327**

   (3) limits the access granted to former Presidential appointees and Vice
Presidential appointees to items that the person originated, reviewed, signed, or
received while serving as a Presidential appointee or a Vice Presidential
appointee.

   PART 5--IMPLEMENTATION AND REVIEW

   Sec. 5.1. Program Direction. (a) The Director of the Information Security
Oversight Office, under the direction of the Archivist and in consultation with
the Assistant to the President for National Security Affairs, shall issue such
directives as are necessary to implement this order. These directives shall be
binding upon the agencies. Directives issued by the Director of the Information
Security Oversight Office shall establish standards for:

   (1) classification and marking principles;

   (2) safeguarding classified information, which shall pertain to the handling,
storage, distribution, transmittal, and destruction of and accounting for
classified information;

   (3) agency security education and training programs;

   (4) agency self-inspection programs; and

   (5) classification and declassification guides.

   (b) The Archivist shall delegate the implementation and monitoring functions
of this program to the Director of the Information Security Oversight Office.

   Sec. 5.2. Information Security Oversight Office. (a) There is established within
the National Archives an Information Security Oversight Office. The Archivist
shall appoint the Director of the Information Security Oversight Office, subject
to the approval of the President.

   (b) Under the direction of the Archivist, acting in consultation with the
Assistant to the President for National Security Affairs, the Director of the
Information Security Oversight Office shall:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                              Page 19

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**


(1) develop directives for the implementation of this order;

(2) oversee agency actions to ensure compliance with this order and its
implementing directives;

(3) review and approve agency implementing regulations and agency guides for
systematic declassification review prior to their issuance by the agency;

(4) have the authority to conduct on-site reviews of each agency's program
established under this order, and to require of each agency those reports,
information, and other cooperation that may be necessary to fulfill its
responsibilities. If granting access to specific categories of classified
information would pose an exceptional national security risk, the affected agency
head or the senior agency official shall submit a written justification
recommending the denial of access to the President through the Assistant to the
President for National Security Affairs within 60 days of the request for access.
Access shall be denied pending the response;

(5) review requests for original classification authority from agencies or
officials not granted original classification authority and, if deemed
appropriate, recommend Presidential approval through the Assistant to the
President for National Security Affairs;

(6) consider and take action on complaints and suggestions from persons within or
outside the Government with respect to the administration of the program
established under this order;

(7) have the authority to prescribe, after consultation with affected agencies,
standardization of forms or procedures that will promote the implementation of the
program established under this order;

(8) report at least annually to the President on the implementation of this
order; and

(9) convene and chair interagency meetings to discuss matters pertaining to the
program established by this order. **\*15328**

 Sec. 5.3. Interagency Security Classification Appeals Panel.

   (a) Establishment and administration.

 (1) There is established an Interagency Security Classification Appeals Panel.
The Departments of State, Defense, and Justice, the Central Intelligence Agency,
the National Archives, and the Assistant to the President for National Security
Affairs shall each be represented by a senior-level representative who is a
full-time or permanent part-time Federal officer or employee designated to serve
as a member of the Panel by the respective agency head. The President shall select
the Chair of the Panel from among the Panel members.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                Page 20

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

(2) A vacancy on the Panel shall be filled as quickly as possible as provided in paragraph (a)(1) of this section.

(3) The Director of the Information Security Oversight Office shall serve as the Executive Secretary. The staff of the Information Security Oversight Office shall provide program and administrative support for the Panel.

(4) The members and staff of the Panel shall be required to meet eligibility for access standards in order to fulfill the Panel's functions.

(5) The Panel shall meet at the call of the Chair. The Chair shall schedule meetings as may be necessary for the Panel to fulfill its functions in a timely manner.

(6) The Information Security Oversight Office shall include in its reports to the President a summary of the Panel's activities.

(b) Functions. The Panel shall:

(1) decide on appeals by persons who have filed classification challenges under section 1.8 of this order;

(2) approve, deny, or amend agency exemptions from automatic declassification as provided in section 3.3 of this order; and

(3) decide on appeals by persons or entities who have filed requests for mandatory declassification review under section 3.5 of this order.

(c) Rules and procedures. The Panel shall issue bylaws, which shall be published in the Federal Register. The bylaws shall establish the rules and procedures that the Panel will follow in accepting, considering, and issuing decisions on appeals. The rules and procedures of the Panel shall provide that the Panel will consider appeals only on actions in which:

(1) the appellant has exhausted his or her administrative remedies within the responsible agency;

(2) there is no current action pending on the issue within the Federal courts; and

(3) the information has not been the subject of review by the Federal courts or the Panel within the past 2 years.

(d) Agency heads shall cooperate fully with the Panel so that it can fulfill its functions in a timely and fully informed manner. An agency head may appeal a decision of the Panel to the President through the Assistant to the President for National Security Affairs. The Panel shall report to the President through the Assistant to the President for National Security Affairs any instance in which it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                      Page 21

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

believes that an agency head is not cooperating fully with the Panel.

   (e) The Panel is established for the sole purpose of advising and assisting
the President in the discharge of his constitutional and discretionary authority
to protect the national security of the United States. Panel decisions are
committed to the discretion of the Panel, unless changed by the President.

   (f) Notwithstanding paragraphs (a) through (e) of this section, whenever the
Panel reaches a conclusion that information owned or controlled by the Director of
Central Intelligence (Director) should be declassified, and the Director notifies
the Panel that he objects to its conclusion because he has determined that the
information could reasonably be expected to **\*15329** cause damage to the national
security and to reveal (1) the identity of a human intelligence source, or (2)
information about the application of an intelligence source or method (including
any information that concerns, or is provided as a result of, a relationship with
a cooperating intelligence element of a foreign government), the information shall
remain classified unless the Director's determination is appealed to the
President, and the President reverses the determination.

   Sec. 5.4. General Responsibilities. Heads of agencies that originate or handle
classified information shall:

   (a) demonstrate personal commitment and commit senior management to the
successful implementation of the program established under this order;

   (b) commit necessary resources to the effective implementation of the program
established under this order;

   (c) ensure that agency records systems are designed and maintained to optimize
the safeguarding of classified information, and to facilitate its declassification
under the terms of this order when it no longer meets the standards for continued
classification; and

   (d) designate a senior agency official to direct and administer the program,
whose responsibilities shall include:

   (1) overseeing the agency's program established under this order, provided, an
agency head may designate a separate official to oversee special access programs
authorized under this order. This official shall provide a full accounting of the
agency's special access programs at least annually;

   (2) promulgating implementing regulations, which shall be published in the
Federal Register to the extent that they affect members of the public;

   (3) establishing and maintaining security education and training programs;

   (4) establishing and maintaining an ongoing self-inspection program, which shall
include the periodic review and assessment of the agency's classified product;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                    Page 22

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

(5) establishing procedures to prevent unnecessary access to classified information, including procedures that:

(A) require that a need for access to classified information is established before initiating administrative clearance procedures; and

(B) ensure that the number of persons granted access to classified information is limited to the minimum consistent with operational and security requirements and needs;

(6) developing special contingency plans for the safeguarding of classified information used in or near hostile or potentially hostile areas;

(7) ensuring that the performance contract or other system used to rate civilian or military personnel performance includes the management of classified information as a critical element or item to be evaluated in the rating of:

(A) original classification authorities;

(B) security managers or security specialists; and

(C) all other personnel whose duties significantly involve the creation or handling of classified information;

(8) accounting for the costs associated with the implementation of this order, which shall be reported to the Director of the Information Security Oversight Office for publication; and

(9) assigning in a prompt manner agency personnel to respond to any request, appeal, challenge, complaint, or suggestion arising out of this order that pertains to classified information that originated in a component of the agency that no longer exists and for which there is no clear successor in function.

Sec. 5.5. Sanctions. (a) If the Director of the Information Security Oversight Office finds that a violation of this order or its implementing directives **15330 has occurred, the Director shall make a report to the head of the agency or to the senior agency official so that corrective steps, if appropriate, may be taken.

(b) Officers and employees of the United States Government, and its contractors, licensees, certificate holders, and grantees shall be subject to appropriate sanctions if they knowingly, willfully, or negligently:

(1) disclose to unauthorized persons information properly classified under this order or predecessor orders;

(2) classify or continue the classification of information in violation of this order or any implementing directive;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

(3) create or continue a special access program contrary to the requirements of this order; or

(4) contravene any other provision of this order or its implementing directives.

(c) Sanctions may include reprimand, suspension without pay, removal, termination of classification authority, loss or denial of access to classified information, or other sanctions in accordance with applicable law and agency regulation.

(d) The agency head, senior agency official, or other supervisory official shall, at a minimum, promptly remove the classification authority of any individual who demonstrates reckless disregard or a pattern of error in applying the classification standards of this order.

(e) The agency head or senior agency official shall:

(1) take appropriate and prompt corrective action when a violation or infraction under paragraph (b) of this section occurs; and

(2) notify the Director of the Information Security Oversight Office when a violation under paragraph (b)(1), (2), or (3) of this section occurs.

PART 6--GENERAL PROVISIONS

Sec. 6.1. Definitions. For purposes of this order:

(a) "Access" means the ability or opportunity to gain knowledge of classified information.

(b) "Agency" means any "Executive agency," as defined in 5 U.S.C. 105; any "Military department" as defined in 5 U.S.C. 102; and any other entity within the executive branch that comes into the possession of classified information.

(c) "Automated information system" means an assembly of computer hardware, software, or firmware configured to collect, create, communicate, compute, disseminate, process, store, or control data or information.

(d) "Automatic declassification" means the declassification of information based solely upon:

(1) the occurrence of a specific date or event as determined by the original classification authority; or

(2) the expiration of a maximum time frame for duration of classification established under this order.

(e) "Classification" means the act or process by which information is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                    Page 24

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

determined to be classified information.

(f) "Classification guidance" means any instruction or source that prescribes the classification of specific information.

(g) "Classification guide" means a documentary form of classification guidance issued by an original classification authority that identifies the elements of information regarding a specific subject that must be classified and establishes the level and duration of classification for each such element.

(h) "Classified national security information" or "classified information" means information that has been determined pursuant to this order or any **\*15331** predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form.

(i) "Confidential source" means any individual or organization that has provided, or that may reasonably be expected to provide, information to the United States on matters pertaining to the national security with the expectation that the information or relationship, or both, are to be held in confidence.

(j) "Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

(k) "Declassification" means the authorized change in the status of information from classified information to unclassified information.

(l) "Declassification authority" means:

(1) the official who authorized the original classification, if that official is still serving in the same position;

(2) the originator's current successor in function;

(3) a supervisory official of either; or

(4) officials delegated declassification authority in writing by the agency head or the senior agency official.

(m) "Declassification guide" means written instructions issued by a declassification authority that describes the elements of information regarding a specific subject that may be declassified and the elements that must remain classified.

(n) "Derivative classification" means the incorporating, paraphrasing, restating, or generating in new form information that is already classified, and marking the newly developed material consistent with the classification markings

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                        Page 25

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

that apply to the source information. Derivative classification includes the classification of information based on classification guidance. The duplication or reproduction of existing classified information is not derivative classification.

(o) "Document" means any recorded information, regardless of the nature of the medium or the method or circumstances of recording.

(p) "Downgrading" means a determination by a declassification authority that information classified and safeguarded at a specified level shall be classified and safeguarded at a lower level.

(q) "File series" means file units or documents arranged according to a filing system or kept together because they relate to a particular subject or function, result from the same activity, document a specific kind of transaction, take a particular physical form, or have some other relationship arising out of their creation, receipt, or use, such as restrictions on access or use.

(r) "Foreign government information" means:

(1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence;

(2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence; or

(3) information received and treated as "foreign government information" under the terms of a predecessor order.

(s) "Information" means any knowledge that can be communicated or documentary material, regardless of its physical form or characteristics, that **\*15332** is owned by, produced by or for, or is under the control of the United States Government. "Control" means the authority of the agency that originates information, or its successor in function, to regulate access to the information.

(t) "Infraction" means any knowing, willful, or negligent action contrary to the requirements of this order or its implementing directives that does not constitute a "violation," as defined below.

(u) "Integral file block" means a distinct component of a file series, as defined in this section, that should be maintained as a separate unit in order to ensure the integrity of the records. An integral file block may consist of a set of records covering either a specific topic or a range of time such as presidential administration or a 5-year retirement schedule within a specific file series that is retired from active use as a group.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                                    Page 26

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**


    (v) "Integrity" means the state that exists when information is unchanged from its source and has not been accidentally or intentionally modified, altered, or destroyed.

    (w) "Mandatory declassification review" means the review for declassification of classified information in response to a request for declassification that meets the requirements under section 3.5 of this order.

    (x) "Multiple sources" means two or more source documents, classification guides, or a combination of both.

    (y) "National security" means the national defense or foreign relations of the United States.

    (z) "Need-to-know" means a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.

    (aa) "Network" means a system of two or more computers that can exchange data or information.

    (bb) "Original classification" means an initial determination that information requires, in the interest of the national security, protection against unauthorized disclosure.

    (cc) "Original classification authority" means an individual authorized in writing, either by the President, the Vice President in the performance of executive duties, or by agency heads or other officials designated by the President, to classify information in the first instance.

    (dd) "Records" means the records of an agency and Presidential papers or Presidential records, as those terms are defined in title 44, United States Code, including those created or maintained by a government contractor, licensee, certificate holder, or grantee that are subject to the sponsoring agency's control under the terms of the contract, license, certificate, or grant.

    (ee) "Records having permanent historical value" means Presidential papers or Presidential records and the records of an agency that the Archivist has determined should be maintained permanently in accordance with title 44, United States Code.

    (ff) "Records management" means the planning, controlling, directing, organizing, training, promoting, and other managerial activities involved with respect to records creation, records maintenance and use, and records disposition in order to achieve adequate and proper documentation of the policies and transactions of the Federal Government and effective and economical management of agency operations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                                Page 27

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**


   (gg) "Safeguarding" means measures and controls that are prescribed to protect
classified information.

   (hh) "Self-inspection" means the internal review and evaluation of individual
agency activities and the agency as a whole with respect to the **\*15333**
implementation of the program established under this order and its implementing
directives.

   (ii) "Senior agency official" means the official designated by the agency head
under section 5.4(d) of this order to direct and administer the agency's program
under which information is classified, safeguarded, and declassified.

   (jj) "Source document" means an existing document that contains classified
information that is incorporated, paraphrased, restated, or generated in new form
into a new document.

   (kk) "Special access program" means a program established for a specific class
of classified information that imposes safeguarding and access requirements that
exceed those normally required for information at the same classification level.

   (ll) "Systematic declassification review" means the review for
declassification of classified information contained in records that have been
determined by the Archivist to have permanent historical value in accordance with
title 44, United States Code.

   (mm) "Telecommunications" means the preparation, transmission, or
communication of information by electronic means.

   (nn) "Unauthorized disclosure" means a communication or physical transfer of
classified information to an unauthorized recipient.

   (oo) "Violation" means:

 (1) any knowing, willful, or negligent action that could reasonably be expected
to result in an unauthorized disclosure of classified information;

 (2) any knowing, willful, or negligent action to classify or continue the
classification of information contrary to the requirements of this order or its
implementing directives; or

 (3) any knowing, willful, or negligent action to create or continue a special
access program contrary to the requirements of this order.

   (pp) "Weapons of mass destruction" means chemical, biological, radiological,
and nuclear weapons.

  Sec. 6.2. General Provisions. (a) Nothing in this order shall supersede any
requirement made by or under the Atomic Energy Act of 1954, as amended, or the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

68 FR 15315                                                              Page 28

68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

**(Cite as: 68 FR 15315)**

National Security Act of 1947, as amended. "Restricted Data" and "Formerly
Restricted Data" shall be handled, protected, classified, downgraded, and
declassified in conformity with the provisions of the Atomic Energy Act of 1954,
as amended, and regulations issued under that Act.

    (b) The Attorney General, upon request by the head of an agency or the
Director of the Information Security Oversight Office, shall render an
interpretation of this order with respect to any question arising in the course of
its administration.

    (c) Nothing in this order limits the protection afforded any information by
other provisions of law, including the Constitution, Freedom of Information Act
exemptions, the Privacy Act of 1974, and the National Security Act of 1947, as
amended. This order is not intended to and does not create any right or benefit,
substantive or procedural, enforceable at law by a party against the United
States, its departments, agencies, officers, employees, or agents. The foregoing
is in addition to the specific provisos set forth in sections 3.1(b) and 5.3(e) of
this **order**."

    (d) **Executive** Order 12356 of April 6, 1982, was revoked as of October 14,
1995. **\*15334**

    Sec. 6.3. Effective Date. This order is effective immediately, except for
section 1.6, which shall become effective 180 days from the date of this order.

    GEORGE W. BUSH

    THE WHITE HOUSE,

    March 25, 2003.

 68 FR 15315, Exec. Order No. 13292, 2003 WL 24028015 (Pres.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.