David L. Sobel *(pro hac vice)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Kurt Opsahl (191303)
*kurt@eff.org*
Marcia Hofmann (250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x116
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, <br><br> Defendant. | NO. C 07-5378 SI <br><br> **NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS** <br><br> Date:  May 16, 2008 <br> Time:  9:00 a.m. <br> Courtroom:  10, 19th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

I.    INTRODUCTION .................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 2

III.    ARGUMENT .......................................................................................................... 4

   A.   Plaintiff Meets the FOIA's Standard for Awarding Reasonable Attorney's Fees and Costs. 4

   B.   EFF Is Eligible for an Award of Attorney's Fees and Costs Because It Has Substantially Prevailed in This Action.................................................................................................. 5

   C.   EFF is Entitled to an Award of Attorney's Fees Because EFF is a Nonprofit Organization That Sought Government Information to Inform the Public Debate About Amending Federal Surveillance Law, and ODNI Had No Reasonable Basis for Failing to Process EFF's FOIA Requests in an Expedited Manner. ................................................................................. 7

      1.   EFF's Action Benefited the Public Because EFF Disseminated Government Information Broadly and Helped to Inform the Public Debate About Whether Telecommunications Carriers Should Be Held Accountable For Facilitating Unlawful Government Surveillance. ................................................................................. 8

      2.   EFF Has Derived No Commercial Benefit From The Speedy Release of the Records, but Rather Obtained the Material to Serve a Public Interest-Oriented Purpose. ................. 10

      3.   The Government's Refusal to Process EFF's Requests Expeditiously Was Unreasonable and Unjustified.......................................................................................... 11

   D.   The Fees EFF Seeks Are Reasonable.................................................................. 12

IV.    CONCLUSION .................................................................................................... 16

-ii-

PL.'S NOT. OF MOT. AND MOT. FOR AWARD OF ATTORNEY'S FEES AND
COSTS; MEM. IN SUPP. OF PL.'S MOT. FOR ATTORNEY'S FEES AND
COSTS

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004) ....................................... 12

4

*Apple v. Does* (Santa Clara Superior Ct., Case No. 1-04-CV-032178) .......................... 13

5

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ............................................................ 12

6

*Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978) ......................................... 8, 10

7

*Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001).................................................................................................. 4

8

9

*Chalmers v. Los Angeles*, 796 F.2d 1210 (9th Cir. 1986)............................................. 12

*Church of Scientology of Cal. v. United States Postal Service*, 700 F.2d 486 (9th Cir. 1983)............ ....................................................................................................................................passim

10

11

*Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977)................................................ 5, 11

12

*Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005)......................................................... 6

13

*Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007 WL 4203311, 2007 U.S. Dist. LEXIS 89585 (N.D. Cal. Nov. 27, 2007) ..........................passim

14

15

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 24 (D.D.C. 2006)............................ 12

16

*Exner v. FBI*, 443 F. Supp. 1349 (S.D. Cal. 1978), *aff'd*, 612 F.2d 1202 (9th Cir. 1980) ........passim

17

*Gerstein v. CIA*, No. C-06-4643 MMC, 2006 WL 3462658, 2006 U.S. Dist. LEXIS 89847 (N.D. Cal. Nov. 29, 2006)................................................................................................ 12

18

*Gerstein v. CIA*, No. C-06-4643 MMC, 2006 WL 3462659, 2006 U.S. Dist. LEXIS 89883 (N.D. Cal. Nov. 29, 2006) ........................................................................................... 11-12

19

20

*Hensley v. Eckhart*, 461 U.S. 424 (1983)................................................................ 5, 12

21

*In re Sony BMG CD Technologies Litigation* (S.D.N.Y. Case No 1:05-cv-09575-NRB)............... 13

22

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ................................ 12, 13

23

*Long v. United States IRS*, 932 F. 2d 1309 (9th Cir. 1991) .....................................6, 7, 12

24

*O'Neill, Lysaght & Sun v. DEA*, 951 F. Supp. 1413 (C.D. Cal. 1997)........................... 13

*OPG v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ........................................... 13

25

*Poulsen v. U.S. Customs and Border Protection*, No. 06-1743 SI, 2007 WL 160945, 2007 U.S. Dist. LEXIS 8488 (N.D. Cal. Jan. 17, 2007)...............................................4, 7, 10, 12

26

27

*Powell v. Dep't of Justice*, 569 F. Supp. 1192 (N.D. Cal. 1983) .............................. 6, 12

28

-iii-

1   *Seegull Mfg. Co. v. NLRB*, 741 F.2d 882 (6th Cir. 1984) ................................................ 8

2   *Wishart v. Commissioner ex rel. United States*, No. 97-20614 SW, 1998 WL 667638, 1998 U.S.
        Dist. LEXIS 13306 (N.D. Cal. Aug. 6, 1998) ................................................... 10, 11

3

4   **STATUTES**

5   32 C.F.R. § 1700.12(c)(2) ............................................................................................... 9

6   5 U.S.C. § 552(a)(4)(E) .................................................................................................. 5

7   5 U.S.C. § 552(a)(4)(E)(i) ............................................................................................. 4

8   5 U.S.C. § 552(a)(4)(E)(ii)(I) ..................................................................................... 4, 7

9   5 U.S.C. § 552(a)(4)(E)(ii)(II) ....................................................................................... 4

10  5 U.S.C. § 552(a)(6)(E)(v)(II) ....................................................................................... 9

11  Fed. R. Civ. P. 54(d) ....................................................................................................... 1

12  Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 .................................................. 1

13  OPEN Government Act, Pub. L. No. 110-175, § 4, 121 Stat. 2524 (2007) ...................... 4

14
    **OTHER AUTHORITIES**
15
16  Bob Egelko, "AT&T Case Lobbying Yields Just One Document, Federal Spy Chief Says," SAN
        FRANCISCO CHRONICLE, Dec. 12, 2007 .................................................................. 3-4

17  Declan McCullagh, "Declassified Docs Show Fight Over Surveillance, Telecom Immunity," CNET
        NEWS, Dec. 11, 2007 ................................................................................................ 4
18
19  Press Release, Elec. Frontier Foundation, EFF Obtains Documents Detailing High-Level Battles
        Over Surveillance Law (Nov. 30, 2007) .................................................................... 3

20  Press Release, Elec. Frontier Foundation, EFF Obtains Documents on Congressional Intelligence
        Briefings (Dec. 11, 2007) ........................................................................................ 3
21
22  Ryan Singel, "Top Spy Chief Pushed Congress For Wider Powers, Citing High Summer Threat
        Level, Docs Show," THREAT LEVEL, WIRED NEWS, Nov. 30, 2007 ........................... 4

23
    **LEGISLATIVE MATERIALS**
24
25  H. Rep. No. 93-1380, 93d Cong., 2d Sess. (1974) .......................................................... 8

26  S. Rep. No. 110-59, 110th Cong., 1st Sess. (2007) ........................................................ 4

    S. Rep. No. 93-854, 93d Cong., 2d Sess.  (1974) ................................................... passim
27
28

-iv-

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2008, or as soon thereafter as the matter may be heard in Courtroom 10 on the 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Electronic Frontier Foundation ("EFF") will, and hereby does, move for an order awarding attorney's fees and costs.

Pursuant to Fed. R. Civ. P. 54(d) and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, EFF seeks to recover attorney's fees and costs expended to initiate this action, obtain an order to enforce EFF's statutory right to the expedited processing of two FOIA requests submitted to the Office of the Director of National Intelligence ("ODNI"), and prepare this motion and accompanying papers. This motion is based on this notice of motion, the memorandum of points and authorities in support of this motion, the declarations and attached exhibits in support of this motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this action under the FOIA, EFF sought the expedited processing and release of records held by ODNI concerning the efforts of the agency and telecommunications carriers to campaign for changes to federal surveillance law, particularly to ensure that the carriers are not held accountable for their role in the government's unlawful surveillance of millions of Americans. Following its successful motion for a preliminary injunction, EFF now moves for an award of attorney's fees and costs.[1]

---

[1] On March 5, 2008, the Court entered an order approving a stipulated briefing and hearing schedule by which EFF was required to move for attorney's fees no later than April 11, 2008. (Dkt. No. 46.) On April 1, 2008, ODNI filed a stipulation in which the parties proposed a revised schedule requiring EFF to move for attorney's fees no later than May 9, 2008. (Dkt. No. 47.) As of the filing of this motion, the Court has not approved the April 1 stipulation. Accordingly, EFF has filed this motion in conformance with the schedule ordered by the Court on March 5, 2008.

## II.     STATEMENT OF FACTS

The Electronic Frontier Foundation is a nonprofit, member-supported civil liberties organization working to protect rights in the digital world.  Among other activities, EFF conducts the FOIA Litigation for Accountable Government ("FLAG") Project, which obtains government records about national security and technology-related matters and make them widely available to the public.

As part of the FLAG Project, EFF sent two letters to ODNI on August 31, 2007, requesting under the FOIA all records from April 2007 to August 31, 2007 concerning briefings, discussions, or other exchanges that ODNI Director Michael McConnell or other agency officials have had concerning amendments to the Foreign Intelligence Surveillance Act ("FISA") with (a) representatives of telecommunications companies, and (b) members of the Senate or House of Representatives, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities.  Exs. K & L to Hofmann Decl. in Support of Mot. Prelim. Inj. (Dkt. No. 7).  EFF asked that these requests be processed in an expeditious manner pursuant to the FOIA and agency regulations because they involve a matter about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and were "made by a person primarily engaged in disseminating information."  Exs. K & L to Hofmann Decl. in Support of Mot. Prelim. Inj. (Dkt. No. 7).

By two facsimiles sent September 10, 2007, ODNI informed EFF that its requests for expedited processing had been granted.  Exs. M & N to Hofmann Decl. in Support of Mot. Prelim. Inj. (Dkt. No. 7).  However, ODNI did not complete the processing of EFF's requests within the statutory deadline set forth by the FOIA.  Accordingly, EFF initiated this action on October 17, 2007, seeking the expedited processing and release of the requested documents.  *See* Compl. (Dkt. No. 1).

After filing the complaint, EFF contacted counsel for ODNI on numerous occasions to try to negotiate a mutually acceptable processing schedule for EFF's requests, but these overtures were unsuccessful.  Hofmann Decl. in Support of App. For Order Shortening Time for Hearing on Mot.

Prelim. Inj. ¶¶ 5-9 (Dkt. 11).   As a result, on October 29, 2007, EFF filed a motion for a preliminary injunction to compel the timely processing and production of the records.   *See* Mot. Prelim. Inj. (Dkt. No. 6).   In its opposition to the motion, the government offered to provide an interim release of records to EFF on November 30, 2007, and complete the processing of EFF's requests by December 31, 2007.   Def. Opp. Mot. Prelim. Inj. at 6 (Dkt. No. 22).   However, on November 27, 2007, this Court issued an order granting in part and denying in part EFF's motion for a preliminary injunction.   *Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007 WL 4203311, 2007 U.S. Dist. LEXIS 89585 (N.D. Cal. Nov. 27, 2007) (Dkt. No. 26).   Specifically, the Court ordered ODNI to "respond to plaintiff's FOIA request and provide an interim release no later than November 30, 2007," and to "provide a final release of all responsive, non-exempt documents no later than December 10, 2007."   *Id*. at *23. The Court also ordered ODNI to provide EFF an "affidavit with its final response setting forth the basis for withholding any responsive documents it does not release."   *Id.*

On November 30, 2007, ODNI released to EFF a total of 242 pages, 230 of which were disclosed in full, and 12 withheld in part.   ODNI provided its second disclosure to EFF on December 10, 2007, as well as the affidavit required by the Court explaining the grounds for the agency's withholdings.   In ODNI's December 10 release, the agency disclosed 238 pages in full, withheld 29 pages in part, and withheld 14 pages in full.[2]

EFF made all records released through this action available to the public on its web site at http://www.eff.org/issues/foia/cases/C-07-05278, and publicized the availability of the material through press releases.   Press Release, Elec. Frontier Foundation, EFF Obtains Documents Detailing High-Level Battles Over Surveillance Law (Nov. 30, 2007) (attached to Hofmann Decl. as Ex. A); Press Release, Elec. Frontier Foundation, EFF Obtains Documents on Congressional Intelligence Briefings (Dec. 11, 2007) (attached to Hofmann Decl. As Ex. B).   As a result, several media outlets reported on the documents and their contents.   *See* Bob Egelko, "AT&T Case

---

[2] EFF chose not to challenge ODNI's claimed exemptions, and the Court approved the parties' stipulation to voluntarily dismiss this case on March 5, 2008.   Order Dismissing Case (Dkt. No. 46).

Lobbying Yields Just One Document, Federal Spy Chief Says," SAN FRANCISCO CHRONICLE, Dec. 12, 2007 (attached to Hofmann Decl. As Ex. C); Declan McCullagh, "Declassified Docs Show Fight Over Surveillance, Telecom Immunity," CNET NEWS, Dec. 11, 2007 (attached to Hofmann Decl. As Ex. D); Ryan Singel, "Top Spy Chief Pushed Congress For Wider Powers, Citing High Summer Threat Level, Docs Show," THREAT LEVEL, WIRED NEWS, Nov. 30, 2007 (attached to Hofmann Decl. as Exhibit E).  ODNI also posted the records released to EFF on the agency's own web site.  *See* Office of the Director of National Intelligence, Electronic Reading Room, http://www.odni.gov/electronic_reading_room/electronic_reading_room.htm (last visited April 9, 2008) (attached to Hofmann Decl. as Exhibit F).

**III.   ARGUMENT**

    **A.   Plaintiff Meets the FOIA's Standard for Awarding Reasonable Attorney's Fees and Costs.**

    The FOIA provides, in pertinent part, that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  The statute explains that the complainant has "substantially prevailed" where it "has obtained relief through either a judicial order, or an enforceable written agreement or consent decree; or a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II).[3]  *See also Church of Scientology of Cal. v. United*

---

[3] As the OPEN Government Act of 2007 recently made clear, a complainant may substantially prevail even when a court does not issue an order granting relief in the complainant's favor. Pub. L. No. 110-175, § 4, 121 Stat. 2524 (2007).  This amendment "responds to the Supreme Court's holding in *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001), which eliminated the 'catalyst theory' of attorney fee recovery under certain civil rights laws. . . . This section clarifies that *Buckhannon*'s holding does not and should not apply to FOIA litigation."  S. Rep. No. 110-59, 110th Cong. 1st Sess. 6 (2007).  Much of the recent case law on awarding attorney's fees in FOIA actions has been based on the *Buckhannon* approach.  *See*, *i.e.*, *Poulsen v. U.S. Customs and Border Protection*, No. 06-1743 SI, 2007 WL 160945, 2007 U.S. Dist. LEXIS 8488, at *3 (N.D. Cal. Jan. 17, 2007).  However, the Court need not be concerned about how those past analyses square with this matter.  EFF's eligibility for attorney's fees is based on a court order requiring ODNI to process EFF's requests by a date certain, not a voluntary change in the agency's position.  Thus, EFF has substantially prevailed regardless of whether *Buckhannon* applies to FOIA cases.

*States Postal Service*, 700 F.2d 486, 489 (9th Cir. 1983) ("If the facts show that the plaintiff has substantially prevailed on his or her FOIA action, then such party is eligible for an award of attorney's fees.")

The legislative history of 5 U.S.C. § 552(a)(4)(E) shows that Congress intended the provision of attorney's fees to encourage private citizens to challenge the wrongful withholding of government records where it might otherwise be cost-prohibitive to do so.  S. Rep. No. 93-854, 93d Cong., 2d Sess. 17 (1974).  "Congress realized that too often the insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA enabled the government to escape compliance with the law."  *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364-65 (D.C. Cir. 1977).  The provision was also meant to punish agencies that assume recalcitrant positions against requesters without reasonable basis.  S. Rpt. No. 93-854 at 17 ("[I]f the government had to pay legal fees each time it lost a case . . . it would be much more careful to oppose only those areas it had strong chance of winning.") (citation omitted).

The Ninth Circuit has adopted a two-step approach to determine whether a complainant should be awarded fees and costs under 5 U.S.C. § 552(a)(4)(E).  First, the complainant must demonstrate that it is eligible to recover fees by showing that it has substantially prevailed.  *Church of Scientology*, 700 F.2d at 489; *see also Exner v. FBI*, 443 F. Supp. 1349, 1354 (S.D. Cal. 1978), *aff'd*, 612 F.2d 1202 (9th Cir. 1980) (This standard "does not require complete success.  It requires only that the complainant substantially prevail.")  Once the complainant has satisfied this threshold, the Court may exercise its discretion to decide that the complainant is entitled to attorney's fees.  *Church of Scientology,* 700 F.2d at 492.  The Court calculates a reasonable fee award based on a lodestar figure, which is the number of attorney hours reasonably spent on the matter multiplied by the lawyers' reasonable hourly rates.  *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983).

**B.     EFF Is Eligible for an Award of Attorney's Fees and Costs Because It Has Substantially Prevailed in This Action.**

The Ninth Circuit has found that "[t]o be eligible for an award of attorney's fees in a FOIA suit, the plaintiff must present convincing evidence that two threshold conditions have been

-5-

satisfied.  The plaintiff must show that: (1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information; and (2) the filing of the action had a *substantial causative* effect on the delivery of the information." *Church of Scientology*, 700 F.2d at 489 (citing *Exner,* 443 F. Supp. at 1353) (emphases in original); *Long v. United States IRS*, 932 F. 2d 1309, 1313 (9th Cir. 1991) (per curiam).

A plaintiff may substantially prevail in a FOIA action by obtaining a court order requiring the government to process a FOIA request on an expedited basis.  *Exner*, 443 F. Supp. at 1353 ("[*W*]hen information is delivered may be as important as *what* information is delivered.  The purpose of this suit was the *immediate* production of documents and plaintiff accomplished this goal.") (emphases in original).  *See also Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005) (holding that a complainant substantially prevailed where she secured a court order compelling the government to process a request expeditiously, and stating, "[p]lainly, there is a value to obtaining something earlier than one otherwise would.").

EFF has substantially prevailed because the filing of this action (1) was necessary to obtain the information EFF requested under the FOIA in a timely manner, and (2) had a substantial causative effect on the delivery of the information.  As EFF explained in its motion for a preliminary injunction, ODNI granted expedited processing for EFF's requests, but failed to comply with its statutory obligation to process the information in a timely manner.  Mot. Prelim. Inj. at 12-13.  EFF made repeated attempts to negotiate a mutually agreeable processing schedule with the government, the failure of which prompted EFF to seek preliminary relief from the Court. Hofmann Decl. in Support of Mot. Prelim. Inj. ¶ 17 (Dkt. No. 7).  It is clear that the government would not have processed EFF's requests in a timely fashion without the threat and ultimate issuance of the Court's order.  *See Powell v. Dep't of Justice*, 569 F. Supp. 1192, 1200-01 (N.D. Cal. 1983) (finding the complainant's action necessary when needed "to a secure the release of the requested documents within a period of time even remotely approaching the statutorily mandated periods.")

Furthermore, EFF's action directly caused ODNI to process EFF's requests expeditiously

and release non-exempt information.  EFF successfully obtained a court order on November 27, 2007 requiring ODNI to "respond to plaintiff's FOIA request and provide an interim release no later than November 30, 2007," and to "provide a final release of all responsive, non-exempt documents no later than December 10, 2007."  *Elec. Frontier Foundation,* No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at *23.  It was only as a result of this order that the agency processed 523 records, releasing 509 in part or full, on or before December 10, 2007.

Thus, EFF "obtained relief through . . . a judicial order" as provided in 5 U.S.C. § 552(a)(4)(E)(ii)(I), which was not only necessary to compel the government to process the records expeditiously, but by its very terms forced ODNI to process and deliver the requested information to EFF.  Furthermore, this result constituted a substantial amount of the relief EFF sought in its complaint. Compl. at 7 ¶¶ A & B (Dkt. No. 1) (asking the Court to order ODNI "to process immediately the requested records in their entirety" and "upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to Plaintiff.").  Thus, EFF substantially prevailed on its complaint and motion for a preliminary injunction.

**C.   EFF is Entitled to an Award of Attorney's Fees Because EFF is a Nonprofit Organization That Sought Government Information to Inform the Public Debate About Amending Federal Surveillance Law, and ODNI Had No Reasonable Basis for Failing to Process EFF's FOIA Requests in an Expedited Manner.**

Once a complainant demonstrates that it has substantially prevailed on its claims, the Court next considers whether the complainant is entitled to an award of attorney's fees.  *Church of Scientology*, 700 F.2d at 492; *Long*, 932 F. 2d at 1313; *Poulsen*, No. 06-1743 SI, 2007 U.S. Dist. LEXIS 8488, at **5-6.  "Entitlement is left to the Court's discretion."  *Church of Scientology*, 700 F.2d at 490.

The Court balances the following factors to determine whether a complainant is entitled to recover its attorney's fees and litigation costs: (1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a

reasonable basis in law.  *Church of Scientology*, 700 F.2d at 492; *see also Long*, 932 F.2d at 1313;

*Poulsen*, No. 06-1743 SI, 2007 U.S. Dist. LEXIS 8488, at *6.  This list is non-exclusive, and the

Court may weigh "whatever factors it deems relevant in determining whether an award of

attorney's fees is appropriate."  *Church of Scientology*, 700 F.2d at 492 (quoting *Exner*, 443 F.

Supp. at 1352).[4]  As explained below, all these factors favor an award of attorney's fees in this

case.

> 1.   <u>EFF's Action Benefited the Public Because EFF Disseminated Government
> Information Broadly and Helped to Inform the Public Debate About
> Whether Telecommunications Carriers Should Be Held Accountable For
> Facilitating Unlawful Government Surveillance.</u>

The first criterion supports an award of attorney's fees and costs where there is a benefit to

the public resulting from the plaintiff's successful litigation of its case.  The Court should take into

account whether the "complainant's victory is likely to add to the fund of information that citizens

may use in making vital political choices."  *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir.

1978).  The legislative history plainly contemplates that obtaining information for publication or to

advance the public interest would satisfy this factor: "[u]nder the first criterion a court would

award attorney's fees, for example, where a newsman was seeking information to be used in a

publication or *a public interest group was seeking information to further a project benefiting the

general public*."   S. Rep. No. 93-854 at 19 (emphasis added).[5]   The legislative history also

"strongly suggest[s] that in weighing this factor a court should taken into account the degree of

dissemination and likely public impact that might be expected from a particular disclosure."  *Blue*,

---

[4] The FOIA itself does not list these four factors, which were included in the Senate's version of
the legislation that ultimately added the attorney's fee provision to the statute.  As *Exner* explains,
"The compromise bill which emerged from conference retained the 'substantially prevailed'
language of the Senate bill but eliminated the four criteria [to determine entitlement to fees].
Although the conferees did not wish to preclude the courts from taking such criteria into
consideration, they believed the courts should not be limited to these criteria in exercising their
discretion. *Exner*, 443 F. Supp. 1349 at 1352 (citing H. Rep. No. 93-1380, 93d Cong., 2d Sess. 9
(1974)).

[5] The courts have taken an expansive view of this factor, even finding that the "vindication of the
[FOIA] itself" may be sufficient to satisfy the standard.  *Seegull Mfg. Co. v. NLRB*, 741 F.2d 882,
886 n.1 (6th Cir. 1984).

570 F.2d at 534, cited approvingly by *Church of Scientology*, 700 F.2d at 493.

EFF has delivered these public benefits.  EFF has made all records released by ODNI through this action available to the public on its web site and publicized the availability of the material through press releases.  *See* Hofman Decl. Exh. A & B.  As a result, several media outlets reported on the documents and their contents. *See* Hofman Decl. Exh. C, D & E.  Indeed, ODNI even posted the records released to EFF on its own web site, thus voluntarily disseminating the information to the public through another channel.  *See* Hofmann Decl. Exh. F.  If EFF had not requested the information, there is no reason to believe that it would have been collected, reviewed, and made publicly available by the government.

Furthermore, EFF provided a public benefit by compelling the immediate production of documents, which "establish[ed] the principle that there are some exceptional cases where the government must specifically process requests for information on a priority basis.  In effect, plaintiff acted as a private attorney general in vindicating an important public policy." *Church of Scientology*, 700 F.2d at 493 (quoting *Exner*, 443 F. Supp. at 1353).  EFF requested that ODNI process EFF's requests expeditiously because they concerned a matter about which there was "[a]n urgency to inform the public about an actual or alleged Federal Government activity," and were "made by a person primarily engaged in disseminating information," as provided in 5 U.S.C. § 552(a)(6)(E)(v)(II) and 32 C.F.R. § 1700.12(c)(2).  Exh. K & L to Hofmann Decl. in Support of Mot. Prelim. Inj. (Dkt. No. 7).  The government conceded that there was an urgency to inform the public about telecommunications carriers' efforts to ensure they are not held accountable for participating in unlawful government activities, and purported to grant EFF's requests for expedited processing.  Exh. M & N to Hofmann Decl. in Support of Mot. Prelim. Inj. (Dkt. No. 7).  However, it was only after the Court issued a preliminary injunction that the government actually processed the documents and released the non-exempt portions to EFF and the public in a timely manner.  *Elec. Frontier Foundation*, No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at *22 (granting EFF's motion for a preliminary injunction and "requiring defendant to *comply with the law and process plaintiff's FOIA requests within ten days of this order*.") (emphasis added).

Thus, EFF's action resulted in the dissemination of information that contributed to the public debate about whether telecommunications carriers should be held responsible for their participation in a massive, well-documented government surveillance program.  EFF's lawsuit also vindicated the central purpose of the FOIA by forcing the government to carry out its statutory obligations and process EFF's requests in an expedited manner.  Accordingly, the Court should award EFF its attorney's fees and costs because EFF's action has undeniably served to benefit the public.

        2.     <u>EFF Has Derived No Commercial Benefit From The Speedy Release of the Records, but Rather Obtained the Material to Serve a Public Interest-Oriented Purpose.</u>

The second and third criteria, which the Ninth Circuit has considered jointly, are the commercial benefit to the complainant and the nature of the complainant's interest in the records. *Church of Scientology*, 700 F.2d 486 at 494.  The FOIA clearly contemplates that nonprofit organizations with no commercial benefit in the information they request should recover attorney's fees and costs pursuant to the statute.  As the legislative history explains, "a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group" rather than "a large corporate interest." S. Rep. No. 93-854 at 19.[6]  *See also Blue*, 570 F.2d at 534 (the legislative history "shows a preference for public interest groups, indigents and disinterested scholars over private commercial enterprises' efforts for disclosure.").  The Ninth Circuit has concluded likewise: "where plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Church of Scientology*, 700 F.2d at 494.

With respect to the requester's interest in government records, the legislative history has similarly noted, "a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature."  S. Rep. No. 93-854 at 19; *see also*

_____

[6] The legislative history also makes clear that "[f]or the purposes of applying this criterion, news interests should not be considered commercial interests." *Id.*

*Poulsen*, No. 06-1743 SI, 2007 U.S. Dist. LEXIS 8488, at *8 (quoting the legislative history); *Wishart v. Commissioner ex rel. United States*, No. 97-20614 SW, 1998 WL 667638, 1998 U.S. Dist. LEXIS 13306, at *22 (N.D. Cal. Aug. 6, 1998) (denying costs where complainant had "a private, purely commercial interest, as opposed to a scholarly, journalistic, or public interest.")

EFF is precisely the sort of requester that Congress intended to recover attorney's fees under the FOIA.  EFF is a nonprofit, member-supported civil liberties organization working to protect rights in the digital world.  EFF has derived no commercial benefit from the requested information.  Furthermore, EFF's interest in seeking the records at issue in this case was public interest-oriented.  EFF initiated this action to obtain the timely release of government information relevant to a contentious debate of national importance about whether telecommunications carriers should be given legal immunity for their role in highly controversial government surveillance activity.  These factors strongly favor an award of attorney's fees and costs.

3.    The Government's Refusal to Process EFF's Requests Expeditiously Was Unreasonable and Unjustified.

The final factor requires the Court to consider whether the agency's withholding had a reasonable basis in the law.  This factor weigh in favor of recovery of attorney's fees because ODNI did not have a reasonable basis for its position and has been "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  *Cuneo*, 552 F.2d 1366; *see also Wishart*, No. 97-20614 JW, 1998 U.S. Dist. LEXIS 13306, at *23.  According to the FOIA's legislative history, "a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or frustrate the requester."  S. Rep. No. 93-854 at 19.

As the Court found in its November 27, 2007 order, ODNI's failure to make the records promptly available to EFF had no basis in the law.  *Elec. Frontier Foundation*, No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at **17-18 ("Plaintiff is correct that defendant has failed to provide the Court with specific information that might explain why it will require *four months* to process approximately 250 pages of unclassified material and approximately sixty-five pages of classified material identified as responsive to the FOIA requests.") (emphasis in original) (internal quotation

-11-

1   marks omitted).  To justify its conduct, the government offered arguments that have been weighed

2   and firmly rejected by courts time and time again.  *See*, *e.g.*, *Gerstein v. CIA*, No. C-06-4643

3   MMC, 2006 WL 3462659, 2006 U.S. Dist. LEXIS 89883 (N.D. Cal. Nov. 29, 2006); *Gerstein v.*

4   *CIA*, No. C-06-4643 MMC, 2006 WL 3462658, 2006 U.S. Dist. LEXIS 89847 (N.D. Cal. Nov. 29,

5   2006); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 24 (D.D.C. 2006); *ACLU v.*

6   *Dep't of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004).  Much like the defendant agency in *Powell*,

7   ODNI failed to offer "any plausible basis for its 'foot-dragging' in releasing these documents,

8   especially in light of the clear congressional intent for prompt and efficient dissemination under the

9   [FOIA]."  *Powell*, 569 F. Supp. at 1201. Accordingly, ODNI's failure to comply with the statute's

10  requirements was without reasonable basis.

11          **D.      The Fees EFF Seeks Are Reasonable.**

12          Once the Court has determined that the complainant is both eligible and entitled to

13  attorney's fees, the Court has discretion only to determine the reasonableness of the amount sought.

14  *Long*, 932 F.2d 1314.  To obtain fees, a plaintiff must submit a lodestar figure representing the

15  number of attorney hours reasonably expended on the matter multiplied by each attorney's

16  reasonable hourly rate.  *Hensley*, 461 U.S. at 430; *Poulsen*, No. 06-1743 SI, U2007 U.S. Dist.

17  LEXIS 8488, at *9.  There is a "strong presumption" that the lodestar is reasonable if the Court

18  finds that the hours expended and corresponding rates are both reasonable.  *Long*, 932 F.2d at

19  1314.  The proper hourly rate is the "rate prevailing in the community for similar work performed

20  by attorneys of comparable skill, experience, and reputation." *Barjon v. Dalton*, 132 F.3d 496, 502

21  (9th Cir. 1997) (quoting *Chalmers v. Los Angeles*, 796 F.2d 1210-11 (9th Cir. 1986)).  The Court

22  may adjust the lodestar in its discretion for various reasons including "time spent by attorney;

23  novelty and complexity of the issues presented; level of skill required; customary fee charged by

24  attorney or firm; experience, reputation, and ability of attorney; and awards in similar cases."

25  *Exner*, 443 F. Supp. at 1254; *Powell*, 569 F. Supp. at 1202.[7]  The cost of litigating a FOIA request

26  ───────────
27  [7] The Ninth Circuit has identified a total of twelve factors that may be relevant to a Court's
    determination of a reasonable fees award.  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70
28  (9th Cir. 1975).  These considerations are:

1  may increase when the government prolongs an action by refusing to comply with the law's

2  requirements. *See, e.g., O'Neill, Lysaght & Sun v. DEA*, 951 F. Supp. 1413, 1413 (C.D. Cal. 1997)

3  (agency's "recalcitrance and resistance" responsible for litigation taking longer than necessary to

4  resolve, resulting in substantial attorney's fee award).

5       EFF should be awarded attorney's fees because it prevailed on its motion for preliminary

6  injunction, and expeditious processing and release of records was the basis of EFF's complaint.

7  EFF's attorneys seek compensation only for the time and costs expended to initiate this action,

8  secure a favorable order on the motion for preliminary injunction, and seek attorney's fees, and the

9  amount of time spent by EFF attorneys on these aspects of the litigation have been reasonable.

10  Hofmann Decl. ¶ 13.

11       EFF's billable rates are also reasonable, and are well within the prevailing hourly rates in

12  the San Francisco Bay Area for lawyers of comparable education, expertise, and experience who

13  handle matters of the type involved in this litigation.  Sobel Decl. at ¶ 5; Granick Decl. ¶ 5; Opsahl

14  Decl. ¶ 6; Hofmann Decl. ¶ 5.  Indeed, EFF has been paid attorney's fees at its prevailing hourly

15  rates in other cases.  Opsahl Decl. ¶ 5.  For instance, in *Apple v. Does* (Santa Clara Superior Ct.,

16  Case No. 1-04-CV-032178), EFF was awarded attorney's fees in accordance with their lawyers'

17  2006 and 2007 rates.  *Id.*  In *In re Sony BMG CD Technologies Litigation* (S.D.N.Y. Case No 1:05-

18  cv-09575-NRB), EFF attorneys were paid fees at their hourly rates as part of the settlement of the

19  action in June 2006.  *Id.*  Further, in *OPG v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), EFF

20  attorneys were paid fees after a summary judgment victory at the organization's 2004 hourly rates.

21

22  ___

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*  The Court need only consider those factors applicable to the instant case.  *Powell*, 569 F. Supp. at 1202.

1    The declarations filed with this motion attest to the skill and expertise of the attorneys who

2    worked on this matter on EFF's behalf.  David L. Sobel has been Senior Counsel to EFF since

3    2006.  Sobel Decl. at ¶ 2 & 6.  He received his Juris Doctor degree from the University of Florida

4    College of Law in 1979.  Sobel Decl. at ¶ 6.  Since graduation he has continuously practiced civil

5    law, specializing in FOIA litigation.  *Id.*  Prior to joining EFF, Mr. Sobel was General Counsel at

6    the Electronic Privacy Information Center ("EPIC"), where he directed the public interest

7    organization's FOIA litigation.  Sobel Decl. at ¶ 7.  Prior to this case, Mr. Sobel litigated numerous

8    FOIA cases, including many cases involving the expedited processing of FOIA requests.  Sobel

9    Decl. at ¶ 8.  He was the co-editor of the 2002 and 2004 editions of *Litigation Under the Federal*

10   *Open Government Laws*, a leading treatise on FOIA litigation.  Sobel Decl. at ¶ 9.  Mr. Sobel was

11   the recipient of the American Library Association's James Madison Award in 2004 in recognition

12   of his contribution to FOIA litigation and open government efforts, and was inducted into the First

13   Amendment Center's National FOIA Hall of Fame in 2006.  *Id.*

14   Jennifer Stisa Granick has been Director of Civil Liberties at EFF since 2007.  Granick

15   Decl.¶ 2 & 6.  In 1993, she received her Juris Doctor degree from the University of California at

16   Hastings School of Law.  Granick Decl.¶ 6.  Since graduation she has continuously practiced

17   criminal and civil law.  Granick Decl.¶ 6.  Before joining EFF, Ms. Granick was the Executive

18   Director of the Center for Internet and Society at Stanford Law School, where she taught the

19   Cyberlaw Clinic and Cybercrime Seminar and supervised litigation conducted by the Fair Use

20   Project.  Granick Decl.¶ 7.  Prior to this case, she co-counseled on at least two FOIA cases,

21   including *Poulsen*, No. C-06-1743 SI (N.D. Cal. 2007). Granick Decl.¶ 8.

22   Kurt Opsahl has been Senior Staff Attorney at EFF since 2004.  Opsahl Decl. ¶ 2 & 8.  In

23   1997, he received his Juris Doctor degree from the University of California at Berkeley School of

24   Law (Boalt Hall), where he was an editor of both the California Law Review and the Berkeley

25   Technology Law Journal.  Opsahl Decl. ¶ 7.  Prior to joining EFF, he worked for the law firms of

26   Perkins Coie LLP (1999-2004) and Severson & Werson PC (1997-1998).  In addition, he was the

27   Research Fellow to Professor Pamela Samuelson at the University of California at Berkeley,

28

1   School of Information Management & Systems (1998-1999).  Mr. Opsahl has authored more than

2   15 articles for legal publications, and was a co-editor of the *Electronic Media and Privacy Law*

3   *Handbook*. Opsahl Decl. ¶ 8.   In 2007, he received a California Lawyer of the Year (CLAY)

4   Award for Media Law. Opsahl Decl. ¶ 8.

5          Marcia Hofmann has been Staff Attorney at EFF since 2006.  Hofmann Decl. ¶ 2.  She

6   received her Juris Doctor degree from the University of Dayton School of Law in 2003, and is

7   admitted to the bars of the District of Columbia and California.  Hofmann Decl. ¶ 6.  Before

8   joining EFF she was Staff Counsel and Director of the Open Government Project at EPIC, where

9   she led the public interest organization's efforts to learn about emerging policies in the post-9/11

10  era.  Hofmann Decl. ¶ 7.  She has litigated more than a dozen FOIA lawsuits, and documents made

11  public as a result of these cases have been reported by the *New York Times*, *Washington Post*,

12  National Public Radio, Fox News, and CNN, among others.  Hofmann Decl. ¶ 8.  Ms. Hofmann is

13  a co-author of *Proskauer on Privacy: A Guide to Privacy and Data Security Law in the*

14  *Information Age*, as well as a contributor to the two-volume *Encyclopedia of Privacy*, for which

15  she authored the "Freedom of Information Act" entry.  Hofmann Decl. ¶ 9.

16         In total, EFF seeks $48,520.00 in fees for the time expended by EFF attorneys on this

17  matter, as more fully detailed in the declarations accompanying this motion.  Hofmann Decl. ¶ 12.

18  EFF also seeks to recover reasonable costs in the amount of $731.97for filing fees, mailing costs,

19  and messenger expenses.  Hofmann Decl. ¶ 13.

20         //

21         //

22         //

23

24

25

26

27

28

1

IV.      **CONCLUSION**

2

      For the foregoing reasons, EFF's motion for an award of attorney's fees and costs should be

3

granted.

4

DATED:  April 11, 2008                    David L. Sobel (*pro hac vice*)

5

                                ELECTRONIC FRONTIER FOUNDATION
                                1875 Connecticut Ave. NW

6

                                Suite 650
                                Washington, DC  20009

7

                                Telephone: (202) 797-9009 x104
                                Facsimile: (202) 707-9066

8

9

                                  /s/ *Marcia Hofmann*

10

                                Kurt Opsahl, Esq.
                                Marcia Hofmann, Esq.

11

                                ELECTRONIC FRONTIER FOUNDATION
                                454 Shotwell Street

12

                                San Francisco, CA  94110
                                Telephone:  (415) 436-9333

13

                                Facsimile:  (415) 436-9993

14

                                Attorneys for Plaintiff
                                ELECTRONIC FRONTIER FOUNDATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28