1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2
   CARL J. NICHOLS
3  Deputy Assistant Attorney General

4  JOSEPH P. RUSSONIELLO
   United States Attorney
5
   ELIZABETH J. SHAPIRO
6  Assistant Director, Federal Programs Branch

7  ANDREW I. WARDEN (IN Bar No. 23840-49)
   Trial Attorney, U.S. Department of Justice
8  Civil Division, Federal Programs Branch
   20 Massachusetts Ave., N.W., Room 7332
9  Washington, D.C. 20530
   Telephone: (202) 616-5084
10 Facsimile: (202) 616-8460
   Andrew.Warden@usdoj.gov
11
   *Attorneys for Defendant Office of the*
12 *Director of National Intelligence*

13
                **UNITED STATES DISTRICT COURT**
14
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15
                    **SAN FRANCISCO DIVISION**
16

17 _____ )    No. C 07-5278 SI
                                          )
18 ELECTRONIC FRONTIER FOUNDATION,        )    **MEMORANDUM OF POINTS**
                                          )    **AND AUTHORITIES IN**
19         Plaintiff,                      )    **OPPOSITION TO PLAINTIFF'S**
                                          )    **MOTION FOR AWARD OF**
20     v.                                  )    **ATTORNEY'S FEES AND**
                                          )    **COSTS**
21 OFFICE OF THE DIRECTOR OF NATIONAL     )
   INTELLIGENCE,                          )
22                                         )    Hearing Date:  May 23, 2008
           Defendant,                      )    Time: 9:00 a.m.
23 _____ )    Courtroom: 10, 19th Floor

24

25

26

27

28

1

## TABLE OF CONTENTS

Introduction ...................................................................................................................1

Background ....................................................................................................................2

Argument.......................................................................................................................3

      I.      Plaintiff Is Not Entitled To An Award Of Attorney's
              Fees And Costs On Plaintiff's FOIA Claims...................................................3

              A.      No Significant Public Benefit Resulted From Plaintiff's
                           Limited Success On Its Motion For Preliminary Injunction............5

              B.      Plaintiff Had A Sufficient Commercial And Private
                           Interest To Pursue This Action........................................................6

              C.      A Reasonable Basis Existed in Law For ODNI's
                         Positions In This Case......................................................................9

      II.     Plaintiff's Request For Over $49,000 In Fees
              And Costs Is Unreasonable..........................................................................12

              A.      Plaintiff's Hourly Rates Are Not Reasonable...............................12

               B.      The Number Of Hours Expended By Plaintiff In
                         This Litigation Is Unreasonable And Subject To
                         Significant Reduction....................................................................18

Conclusion....................................................................................................................23

# **TABLE OF AUTHORITIES**

## **CASES**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   2008 WL 961313 (2d Cir. April 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Blue v. Bureau of Prisons*,
   570 F.2d 529 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Blum v. Stenson*,
   465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-, -13-, -14-

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*,
   532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

*Camacho v. Bridgeport Financial, Inc.*,
   2008 WL 1792808 (9th Cir. Apr. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Center For Food Safety v. Johanns*,
   2007 WL 3072860 (D. Haw. Oct. 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Chesapeake Bay Foundation v. Dep't of Agriculture*,
   108 F.3d 375 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -11-

*Church of Scientology v. U.S. Postal Service*,
   700 F.2d 486 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -6-, -8-, -9-

*Comm'r, INS v. Jean*,
   496 U.S. 154 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Defenbaugh v. JBC & Assocs., Inc.*,
   2004 WL 1874978 (N.D.Cal. Aug.10, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Dennis v. Chang*,
   611 F.2d 1302 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Doran v. Corte Madera Inn*,
   360 F. Supp. 2d 1057 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Education/Instruction v. United States Dep't of Justice*,
   87 F.R.D. 112 (D. Mass. 1980), *aff'd* 649 F.2d 4 (1st Cir. 1981) . . . . . . . . . . . . . . -8-, -9-

*Ellis v. United States*,
   941 F. Supp. 1068 (D. Utah 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -10-

*Electronic Privacy Information Center v. Dep't of Justice*,
   416 F. Supp. 2d 30 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Farrar v. Hobby*,
   506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Fenster v. Brown*,
   617 F.2d 740 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -6-

*Fischer v. SJB-P.D., Inc.*,
    214 F.3d 1115 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

*Gerstein v. C.I.A.*,
    2006 WL 3462658 (N.D. Cal. Nov. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Ginter v. Internal Revenue Serv.*,
    648 F.2d 469 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Guam Contractors Ass'n v. United States Department of Labor*,
    570 F. Supp. 163 (N.D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -6-

*Horsehead Industries, Inc. v. E.P.A..*,
    999 F. Supp. 59 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Hepting v. AT & T Corp.*,
    439 F. Supp. 2d 974 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Ilick v. Miller*,
    68 F. Supp. 2d 1169 (D. Nev. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*In re Chiron Corp. Securities Litigation*,
    2007 WL 4249902 (Nov. 30, 2007 N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*In re Portal Software, Inc. Securities Litigation*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Jones v. Espy*,
    10 F.3d 690 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Jordan v. Multnomah County*,
    815 F.2d 1258 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Kempf v. Barrett Business Services, Inc.*,
    2007 WL 4167016 (N.D. Cal. Nov. 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Laffey v. Northwest Airlines, Inc*,
    572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in*
    *part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . -17-

*LaSalle Extension University v. FTC*,
    627 F.2d 481 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Leaf v. County of Los Angeles,*
    2008 WL 686858 (9th Cir. Mar. 7, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Lipsett v. Blanco*,
    975 F.2d 934 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Long v. IRS*,
    932 F.2d 1309 (9th Cir. 1991) (per curiam)  . . . . . . . . . . . . . . . . . . . . . . . . -4-, -12-, -16-

*Manos v. Dep't of Air Force*,
    829 F. Supp. 1191 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Mahtesian v. Snow*,
    2004 WL 2889922 (N.D. Cal. Dec. 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*McGinnis v. Kentucky Fried Chicken of California*,
    51 F.3d 805 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Mendenhall v. National Transp. Safety Bd.*,
    213 F.3d 464 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Menlo Logistics, Inc. v. Western Express, Inc.*,
    2006 WL 436150 (N.D. Cal. Feb. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -15-

*Navarro v. General Nutrition Corp.*,
    2005 WL 2333803 (N.D. Cal. Sept. 22, 2005)  . . . . . . . . . . . . . . . . . . . . -13-, -14-, -18-

*National Ass'n of Concerned Vets v. Sec'y of Def.*,
    675 F.2d 1319 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*N.L.R.B. v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Pande v. Chevrontexaco Corp.*,
    2008 WL 906507 (N.D. Cal. April 1, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Petroleum Sales, Inc. v. Valero Ref. Co.*
    2007 WL 2694207 (N.D. Cal. Sept. 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Piper v. U.S. Dept. of Justice*,
    339 F. Supp. 2d 13 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

*Playboy Enter., Inc. v. United States Customs Serv.*,
    959 F. Supp. 11 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Pollard v. City of Portland*,
    2001 WL 34042624 (D. Or. Aug. 7, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Powell v. U.S. Dept. of Justice*,
    569 F. Supp. 1192 (N.D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Polynesian Cultural Center, Inc. v. NLRB*,
    600 F.2d 1327 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Republic of New Afrika v. F.B.I.*,
    645 F. Supp. 117 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Schwarz v. Sec'y of Health & Human Servs.,*
    73 F.3d 895 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -23-

*Simon v. United States*,
    587 F. Supp. 1029 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Tax Analysts v. U.S. Dep't of Justice*,
    965 F.2d 1092 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -8-, -9-

*Watson v. County of Riverside*,
    300 F.3d 1092 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

*Welch v. Metropolitan Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Zarcon v. NLRB*,
    06-3161-CV-S-RED (W.D. Mo. Mar. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

**STATUTES**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. § 1801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

OPEN Government Act of 2007,
    Pub. L. No. 110-175, 121 Stat. 2524, S.2488, 110th Cong. § (a)(4)(E)(ii) . . . . . . . . . . -4-

**FEDERAL REGULATIONS**

32 C.F.R. § 1700.12(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

**OTHER AUTHORITIES**

S. Rep. 110-209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

S. Rep. 104-272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

S. Rep. No. 93-854 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

Ellen Nakashima, *A Story of Surveillance*, Washington Post, Nov. 7, 2007, at D1 . . . . . . . . . -7-

Ryan Singel, *AT&T Sued Over NSA Eavesdropping, available at*
    http://www.wired.com/science/discoveries/news/2006/01/70126 . . . . . . . . . . . . . . . . . -7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Defendant Office of the Director of National Intelligence ("ODNI") hereby opposes plaintiff Electronic Frontier Foundation's ("EFF" or "plaintiff") motion for an award of $49,251.97 in attorney's fees and costs under the Freedom of Information Act ("FOIA").

Plaintiff's motion should be denied because plaintiff has not established an entitlement to a fee award.  First, any public benefit derived from the limited procedural relief plaintiff obtained in this case was marginal, at best.  Second, plaintiff had a sufficient private and commercial interest to pursue this case such that an award of fees would be inconsistent with the policy goals of the FOIA attorney's fees provision.  Indeed, plaintiff proudly promotes its representation of a class of individuals who have brought civil actions seeking monetary damages against telecommunications carriers alleged to have assisted the Government with intelligence activities following the September 11, 2001 attacks.  Accordingly, plaintiff's use of the FOIA in this case to further its lobbying campaign opposing legislative amendments that would potentially scuttle these lawsuits was sufficient motivation for plaintiff to vindicate its rights under FOIA without the need for an award of attorney's fees.  Third, ODNI's legal positions throughout this case had a reasonable basis in law and were not asserted for purposes of delay or to frustrate the plaintiff.

Even assuming, *arguendo*, that plaintiff is entitled to an award of fees, plaintiff is most certainly not entitled to the extraordinary fee award it seeks.  In light of the modest success that plaintiff obtained in this case, plaintiff's requested fee award is unreasonable, both with respect to its hourly rates and the hours it expended in connection with this case.  Plaintiff has not carried its burden of producing satisfactory evidence that attorneys of similar experience in the San Francisco legal community are billing paying clients at up to $700 per hour for FOIA work.  Further, plaintiff's time expenditures are subject to significant reduction because plaintiff seeks payment for excessive and redundant work that plaintiff's counsel has previously performed in other similar FOIA cases.  Applying these reductions, plaintiff should be awarded $9,979.31 in total fees and costs for this litigation.

1    For these reasons, as explained further below, plaintiff's motion for attorney's fees and

2    costs should be denied.

3                                    **BACKGROUND**

4
5        By letters dated August 31, 2007, plaintiff submitted two FOIA requests to ODNI for the

6    following documents: "all agency records from April 2007 to the present concerning briefings,

7    discussions, or other exchanges that Director McConnell or other ODNI officials have had with":

8    a) "members of the Senate or House of Representatives"; and b) "representatives of

9    telecommunications companies concerning amendments to FISA [Foreign Intelligence

10   Surveillance Act, 50 U.S.C. § 1801 *et seq.*, as amended], including any discussion of

11   immunizing telecommunications companies or holding them otherwise unaccountable for their

12   role in government surveillance activities." *See* Declaration of John F. Hackett ¶ 8 (attached as

13   Exhibit A to defendant's memorandum in support of motion for summary judgment; dkt. no. 37)

14   (hereinafter "Hackett Decl."). Plaintiff's letters also sought expedited processing of its FOIA

15   requests pursuant to 32 C.F.R. § 1700.12(c)(2), asserting that the public has a significant interest

16   in ODNI's efforts to amend the FISA. *See* Hackett Decl. ¶ 9.

17       On September 11, 2007, ODNI sent plaintiff two separate response letters acknowledging

18   receipt of plaintiff's FOIA requests and granting expedited processing for both requests. *See id.*

19   ODNI also informed plaintiff that the requests would be processed as soon as practicable. *See*

20   *id.*

21       Plaintiff filed its complaint in this action under the FOIA on October 17, 2007, seeking

22   expedited processing and release of the records described above. *See* Complaint For Injunctive

23   Relief (dkt. no. 1). On October 29, 2007, plaintiff filed a motion for preliminary injunction (dkt.

24   no. 6), requesting that the Court order ODNI: (1) to complete processing of plaintiff's FOIA

25   requests within 10 days, (2) to submit a *Vaughn* index within 20 days, and (3) to provide plaintiff

26   with a declaration within 30 days describing ODNI's compliance with the two aforementioned

27   requests for relief. *See* Plaintiff's Proposed Order.

28       On November 27, 2007, the Court granted plaintiff's motion in part and denied it in part.

*See* Order (dkt. no. 26).  First, the Court ordered ODNI to provide an interim release of responsive records to plaintiff on November 30, 2007, as ODNI had previously represented to the Court that it would do.  *See* Declaration of John F. Hackett ¶ 12 (attached as Exhibit 1 to defendant's opposition to motion for preliminary injunction; dkt no. 22) (stating that ODNI would provide interim release of records on November 30, 2007).  Second, the Court ordered ODNI to provide a final release of records no later than December 10, 2007.  Third, the Court denied plaintiff's request for a *Vaughn* index, but ordered ODNI to provide "an affidavit with its final response setting forth the basis for withholding any responsive documents it does not release." *Id.*

Consistent with the representations it made to the Court, ODNI provided plaintiff with an interim release of responsive records on November 30, 2007.  ODNI released 242 pages of responsive records in full or in part.  *See* Hackett Decl ¶ 15.  On December 10, 2007, ODNI provided a final release of responsive records as well as a declaration explaining the basis for its withholdings.  ODNI released an additional 267 pages of responsive records in full or in part. *See* Hackett Decl ¶ 16.  ODNI withheld only fourteen pages of responsive records in full.  *See* Hackett Decl ¶ 17.

On February 5, 2008, defendants moved for summary judgment with respect to certain documents that plaintiff argued were improperly withheld.  *See* dkt. no. 37 & 38.  In response, plaintiff changed its position and decided not to oppose defendant's motion.  Thereafter, plaintiff agreed to dismiss this action voluntarily with prejudice.  *See* Stipulation of Dismissal (dkt. no. 44).

Plaintiff now seeks an award of $49,251.97 in attorney's fees and costs for work associated with filing this action as well as for preparing the motion for preliminary injunction and the instant motion for fees.  For the reasons explained herein, plaintiff's motion should be denied.

## **ARGUMENT**

### **I.    Plaintiff Is Not Entitled To An Award Of Attorney's Fees And Costs.**

Under FOIA, a district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).   The award of attorney's fees is not mandatory.  *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991) (per curiam).  Consequently, plaintiff must establish both eligibility for and entitlement to attorney's fees.  *Church of Scientology v. U.S. Postal Service*, 700 F.2d 486, 489-90 (9th Cir. 1983).

ODNI does not contest plaintiff's eligibility for a fee award in light of the relief that plaintiff obtained from the Court's November 10, 2007 Order granting plaintiff's motion for preliminary injunction "in part."[1]  However, plaintiff has failed to establish an entitlement to an award of attorney's fees based on the facts and circumstances of this case.

The legislative history of FOIA "makes clear that Congress did not intend an award of attorney's fees to be automatic."  *Church of Scientology*, 700 F.2d at 492.  Instead, the Court must determine whether awarding fees in the instant case "furthers the overriding policy of the

_____

[1] ODNI notes its objection to plaintiff's contention that the new amendments to the FOIA attorney's fees provision apply retroactively to this case. *See* Plaintiff's Motion at 4-5.  On December 31, 2007, the President signed into law the OPEN Government Act of 2007, which amends the FOIA provision governing the award of attorney's fees. *See* Pub. L. No. 110-175, 121 Stat. 2524, S.2488, 110th Cong. § (a)(4)(E)(ii).  The amended attorney's fee provision legislatively overturns the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001), as applied in FOIA cases and restores the application of the "catalyst theory" to attorney fee eligibility determinations. Under the new FOIA fee amendment, the term "substantially prevail" is defined to include "a voluntary change or unilateral change in position by the agency, if the complainant's claim is not insubstantial." S.2488, 110th Cong. § (a)(4)(E)(ii).  This amendment, however, does not apply retroactively to a case such as this one where the parties' conduct and the Court's order giving rise to the claim for attorney's fees (*i.e.*, the November 10, 2007 Order) was issued prior to the passage of the new law.  Indeed, established Supreme Court precedent presumes that new statutes will not be applied retroactively absent a clear congressional intent to the contrary and Congress has expressed no such intent to apply the FOIA amendments retroactively, either in the statutory text or the legislative history. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 237 (1995); *see also Zarcon v. NLRB*, 06-3161-CV-S-RED (W.D. Mo. Mar. 25, 2008) (holding that OPEN Government Act does not apply retroactively) (attached as Exhibit 1).  In any event, even applying the *Buckhannon* standard to this case, ODNI does not dispute that plaintiff is eligible for an award of attorney's fees under Ninth Circuit precedent. *See Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*.").

FOIA." *Guam Contractors Ass'n v. United States Department of Labor*, 570 F. Supp. 163, 167 (N.D. Cal. 1983).  In exercising its discretion on this question, the district court must consider four criteria: "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Church of Scientology*, 700 F.2d at 492.

In the present case an award of attorney's fees would be contrary to the purposes of the FOIA because (1) any public benefit derived from the limited procedural relief plaintiff obtained from the Court's November 10, 2007 Order case was marginal, at best; (2) plaintiff had a sufficient private and commercial interest to pursue this case vigorously without the added incentive of an award of attorney's fees; and (3) ODNI possessed a reasonable basis to oppose the relief sought by plaintiff's motion for preliminary injunction and, indeed, prevailed "in part."

### A.     No Significant Public Benefit Resulted From Plaintiff's Limited Success On Its Motion For Preliminary Injunction.

Plaintiff misapprehends the public-benefit factor in contending that the public has benefitted from the records disclosed as a result of this lawsuit.  While it is axiomatic that the release of any information to the public increases its knowledge by that information, Congress did not have that broadly defined benefit in mind in enacting FOIA's fee provision.  *See Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979); *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978).  Rather, the benefit to the public must be evaluated in light of the benefit that derived from the litigation.  *Horsehead Industries, Inc. v. E.P.A.,* 999 F. Supp. 59, 68-69 (D.D.C. 1998); *see also Chesapeake Bay Foundation v. Dep't of Agriculture*, 108 F.3d 375, 378 (D.C. Cir. 1997).

In this case the net result of plaintiff's success "in part" on its motion for preliminary injunction was extremely limited.  As explained in ODNI's opposition to plaintiff's motion for preliminary injunction, ODNI represented to the Court that it would provide an initial release of records on November 30, 2007.  The Court agreed with this proposed date and it did not

accelerate this deadline.  The Court also denied plaintiff's request for a *Vaughn* index.  Thus, the

only substantive relief plaintiff achieved in this case was an order requiring ODNI to complete

processing of the FOIA requests by December 10, 2007, a mere 21 days sooner than the

December 31, 2007 date proposed by ODNI.  Plaintiff has not demonstrated how such minor

procedural relief "add[ed] to the fund of information that citizens may use in making vital

political choices."  *See Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).  Nor has plaintiff

established that the public received any significant benefit associated with the release of records

21 days sooner than ODNI's proposed schedule.

Moreover, plaintiff did not receive any more records that it would have otherwise

received had it never filed this lawsuit.  With respect to the records released by ODNI, the Court

did not overrule any of ODNI's FOIA exemption claims and plaintiff voluntarily dismissed this

case in the face of ODNI's motion for summary judgment.  Plaintiff, therefore, would have

received the same records from ODNI on December 31, 2007, in any event.  For this reason, the

limited scheduling relief that plaintiff obtained in this case falls squarely within the category of

"[m]erely incidental or inevitable public benefits of disclosure from a FOIA suit" that does not

"automatically satisfy th[e] intentionally more rigorous requirement in [FOIA's fee provision]."

*Guam Contractors*, 570 F. Supp. at 168.  Because plaintiff achieved extremely limited success in

this case, the Court should award no fees.  *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th

Cir. 2000) (noting that where a plaintiff received only limited or technical success, the district

court "can simply award 'low fees or no fees'").

## B.      Plaintiff Had A Sufficient Commercial And Private Interest To Pursue This Action.

The commercial-benefit and nature-of-complainant's-interest factors also weigh against

awarding plaintiff attorney's fees.  Courts have typically construed these two factors together in

determining whether a plaintiff is eligible for attorney's fees.  *See Church of Scientology*, 700

F.2d at 494. "[W]hen a litigant seeks disclosure for a commercial benefit or out of other personal

motives, an award of attorney's fees is generally inappropriate."  *Tax Analysts v. U.S. Dep't of*

1    *Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992).

2

3       Here, plaintiff had a strong commercial and private interest to pursue this case in order to

4    further its own lobbying and collateral litigation interests.  As noted in plaintiff's motion for

5    preliminary injunction, plaintiff is the "Co-Lead Coordinating Counsel" in a variety of lawsuits

6    that plaintiff characterizes as "seeking to hold the government and cooperating

    telecommunications carriers responsible for violating the law and privacy of individuals through

7    the NSA's massive and illegal warrantless spying program."  *See* Plaintiff's Memorandum in

8    Support Of Motion For Preliminary Injunction at 4 (dkt. no. 10).  A review of the complaints in

9    these actions reveals that plaintiff is seeking significant monetary and punitive damages from

10   these lawsuits.  *See Hepting v. AT&T*, No. C-06-0672-VRW, Amended Class Action Complaint

11   For Damages, Declaratory and Injunctive Relief (dkt. no. 8).  Media reports estimate that

12   plaintiff is seeking billions of dollars in damages.  *See Ryan Singel, *AT&T Sued Over NSA*

13   *Eavesdropping*, *available at* http://www.wired.com/science/discoveries/news/2006/01/70126.

14

15       Given plaintiff's significant financial stake in the outcome of this litigation, plaintiff has

16   launched a sophisticated lobbying campaign to defeat legislative amendments to the FISA that

    would potentially end these lawsuits.  *See* Ellen Nakashima, *A Story of Surveillance*, Washington

17   Post, Nov. 7, 2007, at D1 ("lawyers for the Electronic Frontier Foundation, which filed [a class

18   action lawsuit against various telecommunications companies] . . . are urging key U.S. senators

19   to oppose a pending White House-endorsed immunity provision that would effectively wipe out

20   the lawsuits.").[2]  Plaintiff has devoted significant attention to the FISA immunity issue on its

21   web sites, urging visitors to contact their elected representatives to "oppose immunity for

22   lawbreaking telephone companies."  *See* http://www.stopthespying.org; http://www.eff.org/nsa.

23   More significantly, plaintiff candidly admits that the documents released in this litigation "play a

24

25

26       [2] *See also* Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2007, S.
Rep. 110-209, 110th Congress, 1st Session, at 11 (concluding that telecommunications provides
27   "had a good faith basis for responding to the requests for assistance they received" and "should
be entitled to protection from civil suit").

28

role" in plaintiff's campaign to oppose "amnesty for telecommunications companies taking part in illegal electronic surveillance." *See* EFF Wins Fast-Track Release of Telecom Lobbying Records, *available at* http://www.eff.org/press/archives/2007/11/28-0.

In light of plaintiff's commercial and private interest to pursue this case, an award of attorney's fees would be contrary to the underlying purpose of FOIA's attorney-fees provision. The purpose of that provision is "to remove the often insurmountable financial barriers the average citizen face[s] when attempting to force governmental compliance with (FOIA), not to provide an award to any plaintiff who successfully forced the government to disclose the requested information." *Ginter v. Internal Revenue Serv.*, 648 F.2d 469 (8th Cir. 1981), *cited with approval in Church of Scientology*, 700 F.2d at 489. The statute, therefore, "acts as an incentive for private individuals to pursue vigorously their claims for information." *Manos v. Dep't of Air Force*, 829 F. Supp. 1191, 1192 (N.D. Cal. 1993). In this case, however, plaintiff had sufficient motivation to bring this action independent of the attorney's fees incentive. *See Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979) ("The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA.") (quoting S. Rep. No. 93-854, 93 Cong., 2d Sess. (1974)). To be sure, given plaintiff's significant financial stake in the pending telecommunication litigation, plaintiff most certainly would have brought this lawsuit regardless of the availability of fees. Although plaintiff disclaims a commercial benefit from the requested information in the sense of directly soliciting business or revenue with the information it obtained, its private interest in opposing legislation that would preemptively terminate its class action lawsuit was a sufficient incentive for plaintiff to prosecute this case. *Tax Analysts*, 965 F.2d at 1095 (holding that "to suffice under the second and third factors, a motive need not be strictly commercial; any private interest will do.").

For these reasons, the "public should not be required to finance" plaintiff's private lobbying campaign, which was undertaken "with an eye toward prosecuting some litigation to [its] own benefit." *Education/Instruction v. United States Dep't of Justice*, 87 F.R.D. 112, 116

(D. Mass. 1980), *aff'd* 649 F.2d 4 (1st Cir. 1981). In a line of cases analogous to the present context, courts have consistently held that "the use of FOIA as a substitute for discovery constitutes a private, noncompensable interest." *Ellis v. United States,* 941 F. Supp. 1068, 1079 (D. Utah 1996) (citing cases); *see also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 (1975) (stating that FOIA's primary purpose was not to benefit private litigants or to substitute for civil discovery). Similarly, here, plaintiff employed the FOIA to gain access to the communications of its adversary (ODNI) regarding legislative proposals that have the potential to scuttle plaintiff's class action lawsuits. *See Republic of New Afrika v. F.B.I.*, 645 F. Supp. 117, 121 (D.D.C. 1986) (concluding that plaintiff was "not simply acting as a nonprofit, public interest group" when it employed FOIA in "order to aid its litigation" efforts); *see also Ellis*, 941 F. Supp. at 1079 (holding that plaintiffs "had a strong personal interest" in obtaining information via FOIA because plaintiffs sought the information for use multi-million dollar litigation). The legislative history of the FOIA confirms that Congress certainly did not intend for litigants such as the plaintiff in this case to receive attorney's fees when using the FOIA to pursue their own private interests. *See* S. Rep. No. 93-854, 93 Cong., 2d Sess. (1974) (stating that courts "would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.").

## C.    A Reasonable Basis Existed in Law For ODNI's Positions In This Case.

ODNI's conduct in this litigation also demonstrates that plaintiff is not entitled to an award of attorney's fees. In order to prevail on the fourth factor of the entitlement analysis, ODNI need only demonstrate that it had a reasonable basis for its positions. *See Church of Scientology*, 700 F.2d at 494. Indeed, the agency's position need not be ultimately vindicated in court in order to be found reasonable. *Education/Instruction, Inc. v. U.S. Dept. of Housing and Urban Development*, 649 F.2d 4, 8 (1st Cir. 1981). Rather, the agency must simply show that its positions had a "colorable" basis and were not asserted "to avoid embarrassment or to frustrate the requester." *Church of Scientology*, 700 F.2d at 494 n.6 (quoting S. Rep. No. 93-854, 93 Cong., 2d Sess. (1974)); *see also Tax Analysts*, 965 F.2d at 1097 (stating that "the

reasonable-basis-in-law factor is intended to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.").

Here, there is no evidence in the record that the ODNI delayed the processing of plaintiff's request "to avoid embarrassment or to frustrate the requester." To the contrary, ODNI granted plaintiff's request to expedite processing of the FOIA requests at issue. Consistent with the expedited processing provision of the FOIA, ODNI worked diligently to release responsive records to plaintiff "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). As described more fully in the November 9, 2007 declaration of John F. Hackett (attached as Exhibit 1 to defendant's opposition to motion for preliminary injunction; dkt no. 22), ODNI moved plaintiff's requests to the front of its processing queue (ahead of 42 other FOIA requests) and engaged in a comprehensive search and review process to provide plaintiff with responsive records on an expedited basis. ODNI never contended that it would not respond to Plaintiff's request, nor did ODNI seek to delay proceedings in this case in order to frustrate plaintiff. Rather, ODNI produced over 500 pages of records, including previously classified information, to plaintiff on an accelerated schedule. ODNI also agreed to litigate both the preliminary injunction motion and its final withholdings (which plaintiff ultimately declined to challenge) on an expedited schedule at plaintiff's request. Under these circumstances, it would be inconsistent with FOIA's attorney fee provision to award fees where there is no evidence of bad faith or recalcitrance by ODNI.[3] *See, e.g.*, *Ellis v. United States*, 941 F. Supp. 1068, 1080 (D. Utah 1996) ("Since plaintiffs' challenge is to the government's delay in releasing the records rather than its

---

[3] Plaintiff unfairly attempts to equate ODNI's conduct in this case with the defendant in *Powell v. U.S. Dept. of Justice*, 569 F. Supp. 1192 (N.D. Cal. 1983). *See* Plaintiff's Motion at 12 In *Powell*, the defendant took no action on the plaintiff's FOIA request for "three and one-half years." *Id.* at 1194. ODNI, by contrast, moved plaintiff to the front of its processing queue in a matter of days and provided plaintiff with all responsive records in less than three and one half *months*. In contrast to plaintiff's inapposite comparison, a case more analogous to the present context is *LaSalle Extension University v. FTC*, 627 F.2d 481 (D.C. Cir. 1980). In that case the D.C. Circuit explained that the agency "resisted disclosure of records for four months," but the court declined to award attorney's fees after the agency released the records because there was "no reason to conclude that the Commission's behavior was truly recalcitrant or obdurate." *Id.* at 483, 386.

substantive claims of exemption, the reasonableness factor does not favor a fee award so long as the government did not engage in obdurate behavior or bad faith."); *Simon v. United States*, 587 F. Supp. 1029, 1032-33 (D.D.C. 1984) ("Here, without evidence of bad faith, the court declines to impose a fee award to sanction sluggish agency response.").

Further, ODNI had a "reasonable basis in law" for its opposition to plaintiff's motion for preliminary injunction. As an initial matter, the reasonableness of ODNI's position is illustrated by the fact that the Court denied plaintiff's motion "in part" and did not alter or accelerate ODNI's proposed interim production date. *See Polynesian Cultural Center, Inc. v. NLRB*, 600 F.2d 1327 (9th Cir. 1979) (holding that fee award was improper where "Board's claim of exemption was not only reasonable but correct"); *Chesapeake Bay Found.*, 11 F.3d at 216 (internal citations omitted) (concluding that "there can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct"). With respect to the dispute regarding the deadline for final production of records, the Court merely required ODNI to complete processing of plaintiff's FOIA request 21 days sooner than ODNI's proposed date (*i.e.*, December 10, 2007 instead of December 31, 2007). To be sure, the Court's order provided plaintiff with some limited relief, but ODNI's position regarding a final production date was certainly not unreasonable, particularly given ODNI's diligent efforts to process plaintiff's requests and the fact that FOIA's expedited processing provisions do not require that processing be completed within a time certain.[4] 5 U.S.C. § 552(a)(6)(E)(iii) (directing agencies to "process as soon as practicable any request for records to which [they have] granted expedited

---

[4] Plaintiff's contention that ODNI asserted, in response to plaintiff's preliminary injunction motion, stale arguments that had previously been rejected by other courts is without merit. As explained more fully in ODNI's memorandum in opposition to plaintiff's motion for preliminary injunction, the cases relied upon by plaintiff involved situations in which the government did not present evidence that processing the FOIA requests at issue in those cases within twenty days would be impracticable. See *Electronic Privacy Information Center* ("*EPIC*") *v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006); *Gerstein v. C.I.A.*, 2006 WL 3462658 (N.D. Cal. Nov. 29, 2006). Given this state of the law, ODNI's decision to provide this Court with a factual presentation that was missing from those cases was an entirely reasonable legal position.

processing."); S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) ("No specific number of days for compliance is imposed by the bill since depending on the complexity of the request, the time needed for compliance may vary.").

\* \* \*

In sum, plaintiff's request for an award of attorney's fees should be denied.  At a minimum, the request can be rejected on the second and third factors alone, given plaintiff's private interest in the documents. When the reasonableness of ODNI's positions throughout this litigation is considered, along with the fact that the modest relief plaintiff obtained from its preliminary injunction motion did not provide a substantial public benefit, there is simply no basis for an award of attorney's fees in this case.

## II.     Plaintiff's Request For Over $49,000 In Fees And Costs Is Unreasonable.

Even assuming the Court concludes that plaintiff is entitled to a fee award, the Court should nevertheless decline to award fees in the amount requested.  Plaintiff's request for $48,520 in attorney fees and $731.97 in costs is unreasonable and cannot be justified.

When calculating an attorney's fee award, the plaintiff must "submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long*, 932 F.3d at 1313-14.  "If these two figures are reasonable, then there is a strong presumption that their product, the lodestar figure, represents a reasonable award." *Id.* at 1314.  The Court may then consider whether an adjustment to the lodestar figure is appropriate based on case-specific factors. *Id.* at 1314 & n.4 (listing twelve factors relevant to determination of a reasonable fee award).  As explained further below, plaintiff's lodestar calculation is unreasonable, both with respect to its hourly rates and the hours it expended in this litigation.

### A.     Plaintiff's Hourly Rates Are Not Reasonable.

The Supreme Court has defined a reasonable hourly rate as "one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *See Blum v.*

1   *Stenson*, 465 U.S. 886, 893-94 (1984) (citation and internal quotation marks omitted).

2   Specifically, this rate should be based on the amount "a reasonable, paying client would be

3   willing to pay," bearing in mind that a reasonable, paying client "wishes to pay the least amount

4   necessary to litigate the case effectively."[5]  *See Arbor Hill Concerned Citizens Neighborhood*

5   *Ass'n v. County of Albany*, 2008 WL 961313 (2d Cir. April 10, 2008).  The burden of

6   establishing the reasonableness of the hourly rate is on the fee applicant.  *Blum*, 465 U.S. at 887

7   (holding that "the burden is on the fee applicant to produce satisfactory evidence – *in addition to*

8   *the attorney's own affidavits* – that the requested rates are in line with those prevailing in the

9   community for similar services by lawyers of reasonably comparable skill, experience and

10  reputation.") (emphasis added).  This burden is generally met by "provid[ing] affidavits of

11  practitioners from the same forum with similar experience" and "[d]ecisions by other courts

12  regarding the reasonableness of the rate sought."  *Menlo Logistics, Inc. v. Western Express, Inc.*,

13  2006 WL 436150, at *6 (N.D. Cal. Feb. 21, 2006).  "The burden does not shift to [the defendant]

14  to produce rebuttal evidence unless and until Plaintiff meets [its] initial burden.  *Navarro v.*

15  *General Nutrition Corp.*, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) (noting that this burden

16  shifting approach to attorney's fees issues is "clearly established in the Ninth Circuit").

17      Plaintiff in this case has not carried its initial burden of producing satisfactory evidence

18  that attorneys of similar experience in the legal community are billing paying clients for FOIA

19  work at the rates plaintiff seeks.  Plaintiff's counsel assert that their billing rates are as follows:

20

21

| Attorney Name | 2007 Rate/hour | 2008 Rate/hour |
|---|---|---|
| David Sobel | $600 | $700 |
| Jennifer Granick | $500 | $600 |

22

23

24      [5] In *Arbor Hill*, the Second Circuit, in an opinion joined by former-Justice O'Connor
25  sitting by designation, noted a number of factors that a district court should consider when
    deciding the fee that a reasonable, paying client would be willing to pay to litigate a case.  As
26  relevant to the present case, the Second Circuit noted that the district court should consider
    "whether an attorney might have an interest (independent of that of his client) in achieving the
27  ends of the litigation" as well as whether the attorney might expect "other returns (such as
    reputation, etc.)" from the representation.
28

| Kurt Opsahl | $425 | $525 |
| Marcia Hoffman | $350 | $450 |

The only evidentiary support for these rates, however, is a conclusory, one sentence statement in each of plaintiff counsel's declarations that claims their "rates are well within the prevailing hourly rates in the San Francisco Bay Area for lawyers of comparable education, expertise, and experience who handle matter of the type involved in this litigation. *See* Hoffman Declaration ¶ 5; Granick Declaration ¶ 5; Opsahl Declaration ¶ 6; Sobel Declaration ¶ 5. In contravention of the "clearly established" Ninth Circuit precedent, plaintiff's counsel offer nothing other than their own speculative assertions to support their rates. This insufficient evidence should be rejected by the Court. Indeed, other courts have held that similar "generalized and conclusory 'information and belief' affidavits" are inadequate to establish market rate for attorney's fees. *See National Ass'n of Concerned Vets v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982).

As attorneys employed by a non-profit public interest organization that essentially represents itself in litigation, plaintiff's counsel does not have an established billing rate that reflects how their own services have been valued in the market by paying clients. Although the Supreme Court has held that attorneys for public interest organizations are entitled to "prevailing market rates in the relevant community," *Blum*, 465 U.S. at 895, plaintiff must nonetheless carry its burden of providing "evidence, other than the declarations of interested counsel, that 'the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.' " *Navarro*, 2005 WL 2333803 at *7 (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)). Plaintiff has submitted no such evidence that attorneys of similar experience in the San Francisco area are charging their paying clients up to $700/hour for FOIA work.[6] *Compare Mendenhall v. National Transp.*

---

[6] Of course, even assuming some attorneys in the San Francisco area bill clients at the hourly rates sought by plaintiff, there has been no showing in this case that those attorneys bill their clients at this rate for FOIA work. *See Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 908 (9th Cir.1995) (holding that plaintiff must submit evidence of the "prevailing rate . . . for similarly qualified lawyers working on a similar type of case"); *see also Camacho v.*

*Safety Bd.*, 213 F.3d 464, 472 (9th Cir. 2000) (holding that, in the absence of contrary evidence, the submission of affidavits by four different attorneys with the same specialization as that of fee applicant attorney explaining the market rate in the relevant fora satisfies the initial burden borne by the fee applicant); *Dennis v. Chang*, 611 F.2d 1302, 1309 (9th Cir. 1980) ("Six affidavits of other counsel were offered regarding the customary billing rate for attorneys in the community. . . . These affidavits were sufficient to permit the court to determine a reasonable rate for attorneys of comparable experience in cases of comparable complexity."). In short, plaintiff has cited no cases from the Northern District of California in which a court awarded plaintiff's requested hourly rates to attorneys of similar experience in FOIA cases, nor has plaintiff met its initial burden of introducing affidavits from comparable FOIA practitioners in the San Francisco area stating that plaintiff's rates are reasonable.[7]

Indeed, a review of recent decisions in this district shows that plaintiff's requested hourly rates far exceed those rates that courts have found reasonable. Notably, in a 2005 FOIA case before this Court, two attorneys with legal experience not dissimilar from two of plaintiff's counsel (Ms. Granick and Ms. Hoffman) submitted a fee bill for $300/hour and $180/hour,

_____

*Bridgeport Financial, Inc.,* 2008 WL 1792808 (9th Cir. Apr. 22, 2008) ("we remand to the district court with instructions to determine the proper amount of fees applying the legal standard set forth above, and specifically by determining the prevailing hourly rate in the Northern District [of California] for work that is similar to that performed in this case")*; Leaf v. County of Los Angeles,* 2008 WL 686858 (9th Cir. Mar. 7, 2008) (affirming district court's reduction of hourly rate where "plaintiffs did not show that other Los Angeles attorneys charge $400 for similar cases").

[7] Plaintiff argues that its counsel "was paid" its prevailing hourly rates in several other cases. *See* Opshal Declaration ¶ 5. "While an attorney's prior fee award may bear on the selection of a reasonable fee in a later case . . . simply offering the prior award is not enough." *Schwarz*, 73 F.3d at 908 (requiring additional evidence that the requested rates are in line with other attorneys in the community of similar skill). Moreover, it is unclear from plaintiff's declaration whether the rates paid to plaintiff's counsel were awarded by courts that considered the reasonableness of plaintiff's request hourly rates in light of the standards discussed above. To the extent the payment of fees in these case resulted from a private settlement by the parties or anything other than "[d]ecisions by other courts regarding the reasonableness of the rate sought," plaintiff's reliance on these cases is misplaced. *See Menlo Logistics, Inc.*, 2006 WL 436150, at *6.

respectively, based on rates derived from a paying client. *See American Small Business League v. United States Small Business Association*, 04-CV-04250 SI, Declaration of Robert E. Belshaw (attached as Exhibit 2). Even accounting for a modest increase in hourly rates from 2005 to 2007, the market rates established in *American Small Business League* are a far cry from the unreasonable $600/hour and $450/hour rates sought by Ms. Granick and Ms. Hoffman, respectively, in this case. *See Missouri v. Jenkins,* 491 U.S. 274, 286 (1989) (stating that a "reasonable attorney's fee" is "comparable to what is traditional with attorneys compensated by a fee-paying client.") (citations omitted).

In a recent attorney's fees decision in this district, the court issued a comprehensive opinion regarding reasonable hourly rates in the area of employment litigation in the San Francisco area. *See Pande v. Chevrontexaco Corp.*, 2008 WL 906507 (N.D. Cal. April 1, 2008). Notably, the *Pande* court reduced plaintiff's requested hourly rates by significant margins. The attorneys in that case were members of "sixty-five lawyer litigation firm located in San Francisco" that was named "litigation boutique of the year" by the *American Lawyer*. *See* http://www.kvn.com/. The senior partner (Susan Harriman) in a position similar to Mr. Sobel here, sought fees at $700/hour, but the Court reduced her rate to $575/hour. A junior partner (Crista Anderson) in the position similar to Ms. Granick here, sought fees at $600/hour, but the court reduced her rate to $400/hour. A third year associate (Audrey Walton-Hadlock) similar to Ms. Hoffman's position here, sought fees at $370/hour, but the Court reduced her fee to $200/hour. If anything, the rates sought by plaintiff in this case should be reduced further than the fees awarded in *Pande*, given the comparative credentials of the attorneys in the two cases and the relatively simple issues presented in this FOIA case when compared against the more complex issues presented by a multi-week jury trial involving an employment litigation issue. *See Long*, 932 F.2d at 1314 n.4 (holding that the "experience, reputation, and ability of the attorneys" and the "novelty and difficulty of the questions involved" are factors to consider when awarding fees) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). At a minimum, the *Pande* court's decision illustrates the unreasonable rates sought by plaintiff's

counsel in this case.

In lieu of plaintiff's *ipse dixit* approach to establishing the proper market rates, the Court should rely on the *Laffey* matrix to calculate the hourly rates in this case. The *Laffey* matrix is a "widely recognized compilation of attorney and paralegal rate data" that is designed to provide objective guidance in appropriate hourly rates for attorneys in the Washington, D.C. area.[8] *In re Chiron Corp. Securities Litigation*, 2007 WL 4249902 (Nov. 30, 2007 N.D. Cal.). District courts in the Northern District of California as well as other courts in the Ninth Circuit have accepted the *Laffey* matrix when calculating attorney's fees, with some modification for economic differences between the San Francisco Bay Area and Washington, D.C. *See, e.g.*, *Kempf v. Barrett Business Services, Inc.*, 2007 WL 4167016 (Nov. 20, 2007 N.D. Cal.); *In re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007); *see also Center For Food Safety v. Johanns*, 2007 WL 3072860 (D. Haw. Oct. 18, 2007) *Ilick v. Miller*, 68 F. Supp. 2d 1169 (D. Nev. 1999). Applying the 2007 adjusted *Laffey* matrix rates for the San Francisco Bay area, as adopted by the court in *In re Portal Software* and which compare favorably to the court-approved rates in *Pande*, plaintiff's hourly rates should be calculated as follows:[9]

---

[8] The *Laffey* matrix is so named because of the case that generated the index. *See Laffey v. Northwest Airlines, Inc*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).

[9] ODNI objects to plaintiff's claim that its work on the motion for attorney's fees is governed by plaintiff's "2008 hourly rate." Plaintiff has offered no evidentiary support for its higher rates, which have increased approximately 30% from its 2007 rates. *See Pollard v. City of Portland*, 2001 WL 34042624 at *4 (D. Or. Aug. 7, 2001) ("The reason for this annual incremental increase in hourly rates is not disclosed by the record and is rather suspect, given that the annual increase is more than the published annual cost of living increase and appears to have no relation to any other relevant market index concerning the cost of doing business."). Even assuming the Court concludes that plaintiff is entitled to a higher rate for 2008, the rate should increase no more than 3%, in accordance with the relative adjustments to the Consumer Price Index during the relevant time of this litigation. *See Jones v. Espy*, 10 F.3d 690 (9th Cir. 1993) (adjusting attorney's fee upward for increases in the cost of living as reflected in the Consumer Price Index); *see also* Consumer Price Index, *available at* http://data.bls.gov/cgi-bin/surveymost.

| Attorney Name | 2007 Rate/hour |
|---|---|
| David Sobel | $484 |
| Jennifer Granick | $429 |
| Kurt Opsahl | $346.50 |
| Marcia Hoffman | $270.50 |

**B.     The Number Of Hours Expended By Plaintiff In This Litigation Is Unreasonable And Subject To Significant Reduction.**

Once the hourly rates are established, the "next step in calculating the lodestar is for the Court to determine the number of hours reasonably expended in the litigation."  Navarro, 2005 WL 2333803, at *11.  The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must exercise the same "billing judgment" it would in billing a private client.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The court should "exclude from this initial fee calculation hours that were not 'reasonably expended," which includes hours that were "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.  Reducing plaintiff's claimed time expenditures in this case by such redundant and excessive hours, this Court, if it awards anything at all, should not award anything but low fees in this case.  As explained further below, ODNI's specific objections to plaintiff's hourly expenditures are well founded.

*Plaintiff Obtained Limited Success In This Litigation*.  As a threshold matter, plaintiff's hourly expenditures are subject to significant reduction in light of plaintiff's limited success of this litigation.  "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotations omitted); *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805 (9th Cir. 1994) ("It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee award.").  In this case, as described above, ODNI prevailed in significant part in this litigation.  The Court did not overrule any of ODNI's FOIA exemption claims and plaintiff voluntarily dismissed this case in the face of ODNI's motion for summary judgment.  Further, the Court's November 26,

2007 Order clearly holds that plaintiff's motion for preliminary injunction was denied "in part." Moreover, the Court declined to expedite the interim release of any records responsive to plaintiff's FOIA requests and adopted ODNI's proposed release date (November 30, 2007). ODNI went on to provide plaintiff with approximately half of the records responsive to its FOIA request by the interim release date. Consequently, with respect to half of the records produced in this case, plaintiff did not obtain any substantive relief from the Court beyond what ODNI was willing to provide plaintiff in any event. For this reason, plaintiff's hours should be reduced by 50%, commensurate with plaintiff's limited degree of success on its motion for preliminary injunction. *See Piper v. U.S. Dept. of Justice*, 339 F. Supp. 2d 13 (D.D.C. 2004) (reducing fees by 50% in case where plaintiff "failed in part and prevailed in part").

A 50% across-the-board reduction is also warranted in light of the plaintiff's private motivation to litigate this case. Even assuming the Court determines that plaintiff is entitled to a fee award, there can be no question that plaintiff had "mixed public and private reasons for pursuing this action and that fact must be taken into consideration" when calculating the fee award. *See Playboy Enter., Inc. v. United States Customs Serv.*, 959 F. Supp. 11 (D.D.C. 1997) (concluding that a reduction of 40% would properly reflect the costs that should be attributable to plaintiff's private benefit"). As discussed above, plaintiff had a commercial and private interest to pursue this case in order to further its own lobbying and collateral litigation interests.

*Improper Quarter Hour Billing* – In addition, plaintiff's hourly expenditures should be reduced further because plaintiff has engaged in the disfavored practice of quarter-hour billing. As reflected in plaintiff's billing records, plaintiff's counsel accounted for its time in quarter-hour increments. *See* Hoffman Declaration ¶ 10; Granick Declaration ¶ 9; Opsahl Declaration ¶ 9; Sobel Declaration ¶ 10. "Courts have recognized that the practice of billing by the quarter-hour, not by the tenth is a deficient practice because it does not reasonably reflect the number of hours actually worked." *Mahtesian v. Snow*, 2004 WL 2889922 at *9 (N.D. Cal. Dec. 14, 2005) (internal quotations omitted). Accordingly, "courts have found it appropriate to reduce the fee award by a percentage, to account for the unearned increment resulting from the practice

of quarter-hour billing." *Id.*  Indeed, the Ninth Circuit recently affirmed a "20 percent across-the-board reduction" in hours because a fee applicant "billed in quarter-hour increments." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).  Because plaintiff's use of quarter-hour billing practices resulted in a request for excessive hours, plaintiff's hours should be reduced by an additional 20% to ensure that plaintiff does not receive an undue benefit from its "deficient practice."

*Improper Block Billing* – Another significant problem with plaintiff's billing records is block billing.  A "fee award may be reduced when block billing – the lumping together of multiple tasks in a single time entry – makes it impossible to determine the reasonableness of the time spent on each task." *Petroleum Sales, Inc. v. Valero Ref. Co., C 05-3526*, 2007 WL 2694207, *7 (N.D. Cal. Sept. 11, 2007).  Courts in this district  "frow[n] on block billing where discrete and unrelated tasks are lumped into one entry, as the practice can make it impossible . . . to determine the reasonableness of the hours spent on each task." *Defenbaugh v. JBC & Assocs., Inc.*, 2004 WL 1874978, *9 (N.D.Cal. Aug. 10, 2004).  In particular, Ms. Hoffman has entered multiple tasks into several large time entries.  *See* Hoffman Decl. ¶ 10 (time entries listed on 10/25/07, 10/26/07, 10/28/07, 10/29/07).  When combined with plaintiff's practice of quarter-hour billing, it is impossible to determine how much time was spent on each task within these entries.  For this reason, Ms. Hoffman's time entries for the dates listed above should be reduced by an additional 10% to account for this unfavorable practice.[10]

*Redundant And Excessive Time Associated With Drafting Complaint.*  Plaintiff seeks 11.5 hours of time associated with drafting and reviewing the complaint in this case.  This figure should be reduced substantially because plaintiff filed a nearly identical FOIA complaint against the Department of Justice several weeks prior to filing its complaint in this case.  *See Electronic*

---

[10] Ms. Hoffman's billing summary also contains a mathematical error.  Although Ms. Hoffman states that her "Total 2007 hours" is 54.25, the sum of the hours listed in the itemized hours column is 66.  *See* Hoffman Decl. ¶ 10.  Because that plaintiff's counsel's records do not appear to be actual billing records, but are instead described as an "estimate" based on "a review of [plaintiff's] files," *id.*, errors like this one raise questions about the overall accuracy of the records.

1    *Frontier Foundation* v. *U.S. Department of Justice*, 07-CV-1732 (RBW) (D.D.C.) (Complaint

2    attached as Exhibit 3).  Like the complaint in this case, the complaint in the *U.S. Department of*

3    *Justice* case sought records regarding communications with Congress and telecommunications

4    companies concerning proposed amendments to the FISA.  It is also clear from the dates on

5    plaintiff's billing records, which begin with an entry on October 6, 2007, that plaintiff was in

6    possession of a final copy of the DoJ complaint, which was filed on September 27, 2007, when

7    plaintiff began work on this case.  In light of plaintiff's prior work on a nearly identical FOIA

8    case, there is no reasonable basis to expend 11.5 attorney hours on a project that involved little

9    more than making relatively minor formatting changes to an existing document.  *See Doran v.*

10   *Corte Madera Inn*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005) (reducing fee award for time

11   associated with preparing "a form pleading" that was used by counsel "in other ADA lawsuits).

12   Nor would any reasonable paying client pay an attorney for such redundant work.  Three hours,

13   at most, is a reasonable figure for time associated with work on the complaint in this case.

14   Consequently, Ms. Hoffman's time entries for 10/6/07, 10/8/07, 10/9/07, and 10/16/07

15   (collectively 9.0 hours) should be reduced to two hours and Mr. Sobel's time entry for 10/6/07

16   (2.5 hours) should be reduced to one hour.

17            *Unsuccessful Time Drafting Motion To Shorten Time* – Plaintiff also seeks some

18   unspecified amount of time associated with drafting a motion to compel ODNI to respond to the

19   preliminary injunction motion on an expedited basis.  The precise amount of time plaintiff's

20   counsel spent on this motion is impossible to determine, given Ms. Hoffman's block billing

21   practices discussed above, but it appears plaintiff seeks approximately 6 hours based on the time

22   entries of Ms. Hoffman and Ms. Granick's billing records.  No fees should be awarded for this

23   work because the Court did not grant plaintiff's motion.  To the contrary, the parties stipulated to

24   an expedited briefing schedule with respect to plaintiff's motion for preliminary injunction.  *See*

25   Joint Stipulation For Briefing And Hearing Schedule On Plaintiff's Motion For Preliminary

26   Injunction And Motion For Order Shortening Time For Hearing (dkt. no. 19.).  The Court

27   adopted this schedule and denied plaintiff's motion as moot.  *See* Order (dkt. no. 21).  Because

28

Case3:07-cv-05278-SI   Document56   Filed05/02/08   Page28 of 30

plaintiff did not prevail on this motion, it is not entitled to fees or costs associated with this work.  Accordingly, Ms. Granick is not entitled to an award in this case and Ms. Hoffman's entries on 10/25/07, 10/26/07, 10/28/07, and 10/29/07 (all of which are block billed) are each subject to a one hour reduction.

*Time Drafting Preliminary Injunction Motion and Reply* – Plaintiff seeks approximately 40 hours of attorney time associated with researching and drafting papers associated with its motion for preliminary injunction and reply brief.  This time should be reduced for several reasons.  First, the lead counsel in this matter, David Sobel and Marcia Hoffman, wrote similar briefs in *Electronic Privacy Information Center v. Department of Justice*, 06-0096 (HHK) (D.D.C.), the case plaintiff relied upon heavily in seeking relief in this case.  *See* Exhibits 4 & 5. To be sure, time is required to prepare any brief or motion, but it is quite clear that plaintiffs were not writing on a clean slate when they prepared the filings in this case.  *See Long*, 932 F.2d at 1314 n.4.  Second, Ms. Hoffman claims she spent 11.5 hours reviewing 9th Circuit law governing preliminary injunction standards.  *See* Hoffman Decl. ¶ 10 (time entries listed on 10/19/07, 10/22/07).  Given the large number of preliminary injunctions decided by the Court of Appeals and the courts of this district, researching the proper standards should have taken two hours, at most.  Indeed, plaintiff has filed similar preliminary injunctions in this circuit on several prior occasions.  *See, e.g.*, *Hepting v. AT & T Corp.*, 439 F. Supp. 2d 974, 979 (N.D. Cal. 2006).  Accordingly, no reasonable paying client would pay an attorney $4000 (the fee Ms. Hoffman seeks for this work) to perform such a simple research task that plaintiff had previously accomplished.  *Cf. Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (stating that attorney's fees statutes are not designed to serve as "continuing education programs for lawyers[.]").  For these reasons, any time entries associated with the preliminary injunction brief should be reduced by 10% and Ms. Hoffman's time entries, specifically, on 10/19/07 and 10/22/07 should be reduced to a combined two hours.

*Plaintiff's Request For "Fees For Fees" Should Be Reduced Based on Its Limited Success In The Litigation.*  In addition to fees related to the merits of this litigation, plaintiff

Case No. 3:07-cv-5278 SI – Defendants' Opposition To Motion For Attorney's Fees                    22

1 seeks $10,476.25 in fees related to the preparation of its motion for attorneys fees.  This amount,

2 however, should be reduced 70% in proportion to plaintiff's limited success in this litigation and

3 because of its quarter billing practice.  *See Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990)

4 (holding that because district courts must "consider the relationship between the amount of the

5 fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that

6 the applicant ultimately fails to prevail in such litigation."); *Schwarz*, 73 F.3d at 909 ("we have

7 held that a district court does not abuse its discretion by applying the same percentage of merits

8 fees ultimately recovered to determine the proper amount of the fees-on-fees award.").

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for attorney's fees and costs should be

denied.  In the event, however, that the Court concludes that fees should be awarded, the award

should be significantly less than plaintiff requests.  Specifically, the amount should be reduced to

$9,979.31, using the reduced hourly rates established by the *Laffey* Matrix and the reduced hours

identified above.  *See* Exhibit 6 (table itemizing reductions).


Dated: March 18, 2008                    Respectfully submitted,

                                        JEFFREY S. BUCHOLTZ
                                        Acting Assistant Attorney General

                                        CARL J. NICHOLS
                                        Deputy Assistant Attorney General

                                        JOSEPH P. RUSSONIELLO
                                        United States Attorney

                                        ELIZABETH J. SHAPIRO
                                        Assistant Director, Federal Programs Branch

                                        */S/ Andrew I. Warden*
                                        ANDREW I. WARDEN (IN Bar No. 23840-49)

Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7332
Washington, D.C. 20530
Telephone: (202) 616-5084
Facsimile: (202) 616-8460
E-mail: Andrew.Warden@usdoj.gov

*Attorneys for Defendants*