# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION**<br>1875 Connecticut Avenue NW<br>Suite 650<br>Washington, DC 20009,<br><br>      Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Avenue NW<br>Washington DC 20530,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case: 1:07-cv-01732<br>) Assigned To : Walton, Reggie B.<br>) Assign. Date : 9/27/2007<br>) Description: FOIA/Privacy Act<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiff seeks the expedited processing and release of records that Plaintiff requested from Defendant Department of Justice's component, the Office of Legislative Affairs, concerning the DOJ's efforts to push for changes to federal surveillance law and to ensure that telecommunications companies are not held responsible for their role in the government's unlawful surveillance of millions of Americans. There is no dispute that the requested records concern a matter about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and were "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). Therefore, Plaintiff is statutorily entitled to the expedited treatment it seeks.

### Jurisdiction and Venue

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This

Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

3. Plaintiff Electronic Frontier Foundation ("EFF") is a not-for-profit corporation established under the laws of the State of California, with offices in San Francisco, California and Washington, DC. EFF is a donor-supported membership organization that works to inform policymakers and the general public about civil liberties issues related to technology, and to act as a defender of those liberties. In support of its mission, EFF uses the FOIA to obtain and disseminate information concerning the activities of federal agencies.

4. Defendant Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). The Office of Legislative Affairs ("OLA") is a component of Defendant DOJ.

### The Administration's Campaign to Shield Telecommunications Companies From Liability for Their Role in Unlawful Surveillance Activity

5. On December 15, 2005, the *New York Times* reported:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.
>
> Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 15, 2005 at A1. The following day, President Bush confirmed in a radio address that he had authorized a surveillance program to intercept international communications in which one participant was suspected of having a connection to the terrorist organization al Qaeda.

President's Radio Address, Dec. 17, 2005, http://www.whitehouse.gov/news/releases/2005/12/20051217.html.

  6. Shortly thereafter, the *New York Times* reported that the NSA's surveillance activity was far more extensive than the operation President Bush had described. According to the *Times*:

> The National Security Agency has traced and analyzed large volumes of telephone and Internet communications flowing into and out of the United States as part of the eavesdropping program that President Bush approved after the Sept. 11, 2001, attacks to hunt for evidence of terrorist activity, according to current and former government officials.
>
> The volume of information harvested from telecommunication data and voice networks, without court-approved warrants, is much larger than the White House has acknowledged, the officials said. It was collected by tapping directly into some of the American telecommunication system's main arteries, they said.
>
> As part of the program approved by President Bush for domestic surveillance without warrants, the N.S.A. has gained the cooperation of American telecommunications companies to obtain backdoor access to streams of domestic and international communications, the officials said.

Eric Lictblau, *Spy Agency Mined Vast Data Trove*, N.Y. TIMES, Dec. 24, 2005.

  7. On February 6, 2006, *USA Today* reported, "[t]he National Security Agency has secured the cooperation of large telecommunications companies, including AT&T, MCI and Sprint, in its efforts to eavesdrop without warrants on international calls by suspected terrorists, according to seven telecommunications executives." Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006.

  8. Approximately forty-one lawsuits have been filed throughout the United States seeking to hold the government and cooperating telecommunications carriers responsible for violating the law and the privacy of individuals through the NSA's massive and illegal warrantless spying program. An additional seven suits have arisen out of attempts by state public utility commissioners and attorneys general to seek information from telecommunications

carriers about their involvement in warrantless surveillance activities. These lawsuits have been consolidated and are currently pending in the United States District Court for the Northern District of California. *In re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW).[1]

9. On August 5, 2007, President Bush signed into law the Protect America Act of 2007, legislation that amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept overseas communications of Americans without warrants. Pub. L. No. 110-55, 121 Stat. 552. Among other things, the law protects telecommunications companies from future legal liability for their role in certain government surveillance activity.

10. In an article published the same day, the *New York Times* reported:

> [The Protect American Act] gave the administration greater power to force telecommunications companies to cooperate with such spying operations. The companies can now be compelled to cooperate by orders from the attorney general and the director of national intelligence.
>
> Democratic Congressional aides said Sunday that some telecommunications company officials had told Congressional leaders that they were unhappy with that provision in the bill and might challenge the new law in court. The aides said the telecommunications companies had told lawmakers that they would rather have a court-approved warrant ordering them to comply.
>
> In fact, pressure from the telecommunications companies on the Bush administration has apparently played a major hidden role in the political battle over the surveillance issue over the past few months.

James Risen, *Bush Signs Law to Widen Reach for Wiretapping*, N.Y. TIMES, Aug. 5, 2007.

11. While the Protect America Act will expire in February 2008, President Bush has indicated that the Administration will push for even greater legal immunity for the telecommunications industry in the coming months:

> When Congress returns in September the Intelligence committees and leaders in both parties will need to complete work on the comprehensive reforms requested by Director [of National Intelligence Mike] McConnell, including the

---

[1] Plaintiff is Co-Lead Coordinating Counsel in this litigation.

important issue of providing meaningful liability protection to those who are alleged to have assisted our Nation following the attacks of September 11, 2001.

Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007, *available at* http://www.whitehouse.gov/news/releases/ 2007/08/20070805.html.

12.  In an interview discussing the government's warrantless surveillance activities published by the *El Paso Times* on August 22, 2007, Director McConnell stated:

> [U]nder the president's program, the terrorist surveillance program, the private sector had assisted us. Because if you're going to get access you've got to have a partner and they were being sued. Now if you play out the suits at the value they're claimed, it would bankrupt these companies. So my position was that we have to provide liability protection to these private sector entities.

Chris Roberts, *Transcript: Debate on the Foreign Intelligence Surveillance Act*, EL PASO TIMES, Aug. 22, 2007.

13.  According to a recent article published by *Newsweek*, "[t]he nation's biggest telecommunications companies, working closely with the White House, have mounted a secretive lobbying campaign to get Congress to quickly approve a measure wiping out all private lawsuits against them for assisting the U.S. intelligence community's warrantless surveillance programs." Michael Isikoff and Mark Hosenball, *The Phone Companies' Secret Lobbying Campaign*, NEWSWEEK, Sept. 20, 2007.

### Plaintiff's FOIA Requests and Request for Expedited Processing

14.  In two letters sent by facsimile to OLA and dated August 16, 2007, Plaintiff requested under the FOIA all records from December 2005 to August 16, 2007 concerning briefings, discussions, or other exchanges that Justice Department officials have had concerning amendments to FISA with a.) representatives of telecommunications companies, and b.) offices of members of the Senate or House of Representatives, including any discussion of immunizing

telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities.

15. In its August 16 letters, Plaintiff also formally requested that the processing of these requests be expedited because they pertain to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and were "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii).

16. By letter dated August 27, 2007, the DOJ Office of Information and Privacy acknowledged receipt of Plaintiff's FOIA requests and informed Plaintiff that its requests for expedited processing had been granted.

17. Notwithstanding Defendant DOJ's purported decision to expedite the processing of Plaintiff's FOIA requests, to date, OLA has neither completed the processing of Plaintiff's requests, nor informed Plaintiff of an anticipated date for the completion of the processing of the requests.

18. Not only has OLA failed to expedite the processing of Plaintiff's requests, it has also exceeded the generally applicable twenty-day deadline for the processing of *any* FOIA request.

19. Plaintiff has exhausted the applicable administrative remedies.

20. Defendant DOJ has wrongfully withheld the requested records from Plaintiff.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

21. Plaintiff repeats and realleges paragraphs 1-20.

22. OLA has wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for the processing of FOIA requests.

23. Plaintiff has exhausted the applicable administrative remedies with respect to OLA's wrongful withholding of the requested records.

24. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A. order Defendant DOJ and its component to process immediately the requested records in their entirety;

B. order Defendant DOJ and its component, upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to Plaintiff;

C. provide for expeditious proceedings in this action;

D. award Plaintiff its costs and reasonable attorneys fees incurred in this action; and

E. grant such other relief as the Court may deem just and proper.

DATED: September 27, 2007

Respectfully submitted,

_____ (BY DLS)
MARCIA HOFMANN
D.C. Bar No. 484136

_____
DAVID L. SOBEL
D.C. Bar No. 360418

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue NW
Suite 650

Washington, DC 20009
(202) 797-9009

Counsel for Plaintiff