# EXHIBIT A

# Newsweek

# Just Between Us

**Telecoms and the Bush administration talked about how to keep their surveillance program under wraps.**

Michael Isikoff and Mark Hosenball
NEWSWEEK WEB EXCLUSIVE
Updated: 6:09 PM ET Apr 30, 2008

The Bush administration is refusing to disclose internal e-mails, letters and notes showing contacts with major telecommunications companies over how to persuade Congress to back a controversial surveillance bill, according to recently disclosed court documents.

The existence of these documents surfaced only in recent days as a result of a Freedom of Information Act lawsuit filed by a privacy group called the Electronic Frontier Foundation. The foundation (alerted to the issue in part by a NEWSWEEK story last fall) is seeking information about communications among administration officials, Congress and a battery of politically well-connected lawyers and lobbyists hired by such big telecom carriers as AT&T and Verizon. Court papers recently filed by government lawyers in the case confirm for the first time that since last fall unnamed representatives of the telecoms phoned and e-mailed administration officials to talk about ways to block more than 40 civil suits accusing the companies of privacy violations because of their participation in a secret post-9/11 surveillance program ordered by the White House.

At the time, the White House was proposing a surveillance bill—strongly backed by the telecoms—that included a sweeping provision that would grant them retroactive immunity from any lawsuits accusing the companies of wrongdoing related to the surveillance program.

Although a version of this proposal has passed the Senate, it has so far been blocked in the House by Democrats who are demanding greater public disclosure about the scope of the administration's post-9/11 surveillance of individuals inside the United States. Negotiations between House Democrats, the Senate and administration representatives over a possible compromise have made little progress so far. Capitol Hill officials now say Congress may not get around to final action on new surveillance legislation until right before a one-year temporary law expires in August—right before the presidential nominating conventions.

The recent responses in the Electronic Frontier Foundation lawsuit provide no new information about the administration's controversial post-9/11 electronic surveillance program itself, but they do shed some light on the degree of anxiety within the telecom industry over the litigation generated by the carriers' participation in the secret spying. One court declaration, for example, confirms the existence of notes showing that a telecom representative called an Office of Director of National Intelligence (ODNI) lawyer last fall to talk about "various options" to block the lawsuits, including "such options as court orders and legislation." Another declaration refers to a letter and "four fax cover sheets" exchanged between the telecoms and ODNI over the surveillance matter. Yet another discloses e-mails in which lawyers for the telecoms and the Justice Department "seek or discuss recommendations on legislative strategy."

The declarations were filed in court by government lawyers only after U.S. Judge Jeffrey White in San Francisco, who is overseeing the case, ordered them to fully process the Electronic Frontier Foundation's FOIA request for documents showing lobbying contacts by the telecoms. The government initially resisted even responding to the FOIA request, but White found that disclosure was in the public interest because it "may enable the public to participate meaningfully in the debate over" the pending surveillance legislation.

But while complying with the judge's order to confirm the existence of some documents, administration officials have told the judge they cannot actually disclose the documents themselves, in part because to do so would undermine national security. Even to confirm the identity of any of the carriers with whom administration officials have discussed the surveillance issue would implicitly identify the carriers that participated in the program and therefore "would provide our adversaries with a road map" that would help them thwart surveillance against them, according to a court declaration filed by Lt. Gen. Ronald L. Burgess, director of the ODNI's intelligence staff.

Spokesmen for the Justice Department and ODNI today declined comment to NEWSWEEK on the grounds that neither agency will talk about pending litigation.

The revelation of the existence of the documents comes at a time when Congress is bracing for what is expected to be a grueling summerlong debate over the surveillance measure. Administration officials say that unless Congress acts by this summer, existing court orders permitting surveillance of suspected overseas terrorists will expire, threatening the U.S. government's ability to keep track of potential plots against the homeland. If new legislation is not enacted before the current stop-gap law expires, Republicans may try to use this as an election issue against Democrats.

The debate over a new surveillance authorization is likely to be complicated by figures showing sharp increases in the government's electronic eavesdropping on U.S. citizens. One report filed with the office of the administrator of the U.S. Courts shows that standard wiretaps approved by federal and state courts jumped 20 percent last year, from 1,839 in 2006 to 2,208 in 2007. Later this week another report is expected to also show increases in secret wiretaps and break-ins approved by the Foreign Intelligence Surveillance Court (FISC) in terror and espionage cases. But even these secret wiretaps and break-ins—estimated to be about 2,300—tell only part of the story. They don't include other secret methods the government uses to collect personal information on U.S. citizens.

URL: http://www.newsweek.com/id/134930

© 2008

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELECTRONIC FRONTIER FOUNDATION,

    Plaintiff,

v.

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE and DEPARTMENT OF JUSTICE,

    Defendants.

No. C 08-01023 JSW

**ORDER GRANTING PRELIMINARY INJUNCTION**

Before the Court is the motion for a preliminary injunction filed by Plaintiff Electronic Frontier Foundation ("Plaintiff"). Having considered the parties' pleadings, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Plaintiff's motion for a preliminary injunction.

**BACKGROUND**

On August 5, 2007, President Bush signed into law the Protect America Act of 2007, which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's authority to gather intelligence with the help of domestic communications service providers, and to protect telecommunications companies from future legal liability for their role in the surveillance activity. Pub. L. No. 110-55, 121 Stat. 552.

The Protect America Act was set to expire in February 2008 without further congressional action. President Bush indicated that the Administration would push for more extensive, and likely retroactive, legal immunity for the telecommunications companies.

1  (Declaration of Marcia Hofmann ("Hofmann Decl."), Ex. F.)  Since the time of the passage of
2  the Protect America Act, Congress has continued to consider additional changes to federal
3  surveillance law, and Congress still is considering whether to give telecommunications carriers
4  legal immunity for their cooperation in the government's surveillance program.  The House of
5  Representatives passed the RESTORE Act of 2007, which would not protect
6  telecommunications carriers from civil liability.  H.R. 3773 (as passed by House).  On February
7  21, 2008, however, the Senate passed a version of legislation to amend FISA, which purports to
8  require dismissal of any state or federal lawsuit against a telecommunications carrier for
9  facilitating government surveillance, if the Attorney General certifies to the court that the
10  company was assisting in certain intelligence activity authorized by the President.  H.R. 3773,
11  FISA Amendments Act of 2008 (amendment as agreed to by Senate).

12  This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.
13  Plaintiff, the non-profit Electronic Frontier Foundation, seeks a preliminary injunction ordering
14  defendants, the Office of the Director of National Intelligence ("ODNI") and the Department of
15  Justice ("DOJ") to expedite the processing and release of records concerning efforts of the
16  agencies and the telecommunication industry to push for changes to federal surveillance law,
17  especially to ensure that telecommunications carriers are not held accountable for their
18  participation in recent governmental surveillance efforts.  Defendants ODNI and the DOJ
19  acknowledge that the requested information qualifies for expedited processing, but nonetheless,
20  the defendant agencies have failed to process Plaintiff's requests within the statutory time frame
21  of twenty business days for a standard request that is not entitled to expedited treatment.

22  Plaintiff seeks an order compelling the timely processing and production of the
23  requested documents.  Plaintiff contends that such production is critical because the information
24  requested is directly relevant to understanding the agencies' roles in lobbying on behalf of
25  telecommunications providers for legislation designed to compel the dismissal of lawsuits
26  against the telecommunications companies, more than 40 of which are currently consolidated
27  and pending before this Court.  *In re NSA Telecommunications Records Litigation* (MDL
28  Docket No. 06-1791 VRW).

On December 21, 2007, Plaintiff faxed two letters to ODNI and the DOJ Office of the Attorney General, Office of Legislative Affairs, Office of Legal Policy, Office of Legal Counsel, and National Security Division, requesting under FOIA all records from September 1, 2007 to December 21, 2007 concerning "briefing, discussions, or other exchanges" that agency officials

> have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendment to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all email, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.[1]

(Hofmann Decl., Exs. K-N.) In each of its letters, Plaintiff requested that the processing of the requests be expedited because they seek the disclosure of information about which there is "[a]n urgency to inform the public about an actual or alleged [f]ederal [g]overnment activity," and were "made by a person primarily engaged in disseminating information," as provided in 5 U.S.C. § 522(a)(6)(E)(v)(II), 32 C.F.R. § 1700.12(c)(2), and 28 C.F.R. § 16.5(d)(1)(ii). (*Id.*)

Each of the agencies granted Plaintiff's request for expedition. (*Id.*, Exs. O, P, and S.) Notwithstanding the agencies' decisions to process Plaintiff's requests (made on December 21, 2007) in an expedited fashion, to date, neither defendant has completed the processing of those requests. The agencies have, therefore, exceeded the generally applicable twenty-day statutory deadline for processing standard, non-expedited FOIA requests. *See* 5 U.S.C. § 522(a)(6)(A).

---

[1] Each request contained the following footnote:

The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to *Newsweek*, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistance secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, *Case dismissed?*, NEWSWEEK, updated Sept. 26, 2007.

A governmental agency normally must process FOIA requests for agency records on a first-in, first-out basis. Ordinarily, agencies must respond to FOIA requests within twenty working days of their receipt of the requests. 5 U.S.C. § 552(a)(6)(A)(I). In 1996, Congress amended the FOIA to provide for "expedited processing" of certain requests. *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E). Expedited processing entitles the requester to move immediately to front of the agency's processing queue. As part of the EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting records demonstrates a compelling need," and (ii) "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(I). EFOIA defines "compelling need" to mean, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6(E)(v). The EFOIA further provides that "[a]n agency shall process *as soon as practicable* any request for records for which the agency has granted expedition." 5 U.S.C. § 522(a)(6)(E)(iii) (emphasis added).

In response to the current motion for a preliminary injunction, Defendants submitted declarations from various individuals tasked with conducting the subject searches. The individual declarants each concede that Plaintiff's requests were given expedited status, and were moved to the front of the FOIA request queue. However, none of the defendant agencies, nor defense counsel at oral argument, have adequately demonstrated that compliance with the FOIA would be impracticable.

## ANALYSIS

**A.  Legal Standards Applicable to Motions for Preliminary Injunction.**

The standards for obtaining a preliminary injunction are well established. It is appropriate to issue a preliminary injunction if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. *Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839-840 (9th Cir.

4

2001). "'These formulations are not different tests, but represent two points on a sliding scale in which the degree of irreparable harm increases as likelihood of success on the merits decreases.'" *Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991) (quoting *Big Country Foods, Inc. v. Board of Education*, 868 F.2d 1085, 1088 (9th Cir. 1989)). Under either formulation of the test, a party seeking a preliminary injunction always must show that a significant threat of irreparable harm exists. *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). Thus, if the moving party cannot show irreparable harm, a court need not reach the issue of likelihood of success on the merits. *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). In addition, within the Ninth Circuit, the Court must also consider the public interest when it assesses the propriety of issuing an injunction. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

Preliminary injunctive relief may not be the normal mechanism in FOIA cases. However, such relief has been found appropriate where a requesting party has established that its requests are entitled to expedited processing under the Act, and the government fails to process them in a timely manner. *See Electronic Frontier Foundation v. Office of the Director of National Intelligence ("EFF")*, 2007 U.S. Dist. LEXIS 89585, *9 (N.D. Cal., Nov. 27, 2007) (citing cases).

**B.      Likelihood of Success on the Merits.**

The Court finds this case remarkably similar to the facts presented in *EFF, supra*, wherein Judge Illston of this Court found that Plaintiff had carried its burden of demonstrating that it is likely to prevail on the merits of its claim. In that matter, Plaintiff here made similar requests to the ODNI for the processing and release of records concerning that office's communication with telecommunications carriers and members of Congress regarding the same pending legislation. *Id.* In that matter, the Court stated that the FOIA requires each agency to promulgate regulations providing for the expedited processing of records, meaning that such requests will be handled "as soon as practicable." *Id.*, citing 5 U.S.C. § 552(a)(6)(E)(iii); 32 C.F.R. §§ 1700.12(b), (c)(2). Where an agency fails to comply with the twenty-day deadline

5

applicable to a standard FOIA request, the agency "presumptively also fails to process an expedited request 'as soon as practicable.'" *Electronic Privacy Information Center v. Department of Justice ("EPIC")*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006). The agency may rebut the presumption by demonstrating that the twenty-day time period is "truly not practicable," but courts are not required simply to "take at face value an agency's determination that more time is necessary." *Id.* at 37, 39. The assertions made by the government to explain the delay in processing Plaintiff's requests in this case are generically applicable to all FOIA requests. Defendants' declarations and defense counsel's representations at oral argument demonstrate that expedited processing is not impracticable. The Court is satisfied that Plaintiff has met its burden to show that an expedited deadline for processing of its pending documents requests is practicable. Accordingly, the Court finds that Plaintiff is likely to prevail on the merits of its claims.

**C. Plaintiff Will Suffer Irreparable Harm.**

The Court finds that Plaintiff has met its burden of demonstrating that it will suffer irreparable injury in the absence of relief. The information it seeks is essential to inform the public debate over the possible FISA amendments now considered by the two houses of Congress. Although the government contends that there is a stalemate and that legislation may not be imminently forthcoming, the requested information will be rendered useless in the effort to educate the American public about the issues pertinent to the legislation if such information is produced after Congress amends the law. As this Court has found, irreparable harm can exist in FOIA cases such as this because it involves ongoing public and congressional debates about issues of vital national importance that "cannot be restarted or wound back." *Gerstein v. CIA*, 2006 WL 3462659 at \*4 (N.D. Cal., Nov. 29, 2006); *see also EPIC*, 416 S. Supp. 2d at 41 (finding an adequate showing of irreparable harm to support a preliminary injunction); *see also EFF*, 2007 U.S. Dist. LEXIS 89585 at \*19.

Since the Protect America Act has expired, the debate in Congress has been ongoing, and the White House continues to press the legislature for action to shield carriers from liability for their participation in the surveillance activities. On February 22, 2008, just after the

expiration of the Protect America Act, the Attorney General and Director of National Intelligence wrote a letter to the chairman of the House Permanent Select Committee on Intelligence concerning the "urgent need" to amend the FISA, declaring that it is "critical to our national security that Congress acts as soon as possible" to pass the Administration's preferred version of the amendments. (Declaration of Marcia Hofmann in support of reply, Ex. C.) On March 13, 2008, the House passed another version of proposed amendments that removed language that had been approved by the Senate, and that did not provide prospective or retroactive immunity for telecommunications carriers. H.R. 3773 (with House amendment to Senate amendment). In response, also on March 13, President Bush pushed for an immediate vote on the Senate versions of the legislation, stating that members of the House "should not leave for their Easter recess without getting the Senate bill to my desk." (*Id*., Ex. D; *see also* Ex. E (Administration press release states "[i]t is time for the House Democratic leaders to get serious about our national security, put aside these partisan games, and bring the bipartisan Senate bill to a vote immediately.").)

The Court finds, just as the Court in *EFF* found, that irreparable harm exists where Congress is considering legislation that would amend the FISA and the records may enable the public to participate meaningfully in the debate over such pending legislation. *See also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("FOIA requests could have a vital impact on development of the substantive record in favor of reauthorizing or making permanent the special voting provisions of the Voting Rights Act"); *ACLU v. Department of Justice*, 321 F. Supp. 2d 24, 30 (D.D.C. 2004) ("a principle aim of plaintiff's FOIA request is to provide information for the ongoing national debate about whether Congress should renew Section 215 and other Patriot Act surveillance provisions before they expire"). Although, and perhaps because, the Court cannot predict the timing of passage of the legislation in light of the ongoing debate in the legislature and with the Administration, the Court finds that delayed disclosure of the requested materials may cause irreparable harm to a vested constitutional interest in "the uninhibited, robust, and wide-open debate about matters of

public importance that secures an informed citizenry." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

**D.      Public Interest Favors Relief.**

The government contends that the public interest would be injured by complicating and disrupting the processing of other FOIA requests. However, the defendant agencies shall only be ordered to process the documents according to their preexisting obligations under the FOIA. In addition, the hastened processing of Plaintiff's requests will allow the agencies to return to the orderly and expeditious processing of other pending requests. Defendants have already identified responsive documents, segregated the potentially classified portions, and have had ample time to process and release the documents. The Court finds that the public interest favors the requested relief.

## CONCLUSION

Accordingly, the Court GRANTS Plaintiff's request for a preliminary injunction and requires Defendants to comply with the law and process Plaintiff's FOIA requests expeditiously. Defendants shall respond to Plaintiff's FOIA request and provide an initial release of documents no later than April 17, 2008. Defendants are further ordered to provide a final release of all responsive, non-exempt documents no later than April 21, 2008. Lastly, also on April 21, 2008, Defendants are ordered to file with the Court and serve upon Plaintiff's counsel, an affidavit or declaration attesting to Defendants' compliance and setting forth the basis for withholding any responsive documents it does not release.

**IT IS SO ORDERED.**

Dated: April 4, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

8